LUIS A. CARRILLO (SBN 70398)
MICHAEL S. CARRILLO (SBN 258878)
**CARRILLO LAW FIRM, LLP**
1499 Huntington Drive, Suite 402
South Pasadena, CA 91030
Tel: (626) 799-9375/ Fax: (626) 799-9380

**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (Bar No. 144074)
dalekgalipo@yahoo.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, California 91367
Tel: (818) 347-3333/ Fax: (818) 347-4118

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **EMILY GARCIA and C.G., by and through her guardian ad litem, Rosala Becerra, individually and as successors-in-interest,** | **CASE NO:  8:22-cv-131** |
| | **COMPLAINT FOR DAMAGES:** |
| **PLAINTIFFS,** | 1. Fourth Amendment – Excessive Force (42 U.S.C. § 1983) |
| **v.** | 2. Fourth Amendment – Denial of Medical Care (42 U.S.C. § 1983) |
| **CITY OF TUSTIN, ESTELLA SILVA, and DOES 1 through 10, Inclusive,** | 3. Substantive Due Process Deliberate Indifference to Serious Medical Needs and Interference with Familial Relationships (42 U.S.C. § 1983) |
| **DEFENDANTS.** | 4. Municipal Liability – Ratification (42 U.S.C. § 1983) |
| | 5. Municipal Liability – Failure to Train (42 U.S.C. § 1983) |
| | 6. Municipal Liability – Unconstitutional Custom, Practice, or Policy (42 U.S.C. § 1983) |
| | 7. Negligence (Wrongful Death) |
| | 8. Battery (Wrongful Death) |
| | 9. Violation of Bane Act (Cal. Civil Code § 52.1) |
| | **[DEMAND FOR JURY TRIAL]** |

## COMPLAINT FOR DAMAGES

PLAINTIFFS **EMILY GARCIA, C.G., A MINOR BY AND THROUGH HER GUARDIAN AD LITEM, ROSALIA BECERRA**, in each case individually and as a successor-in-interest to the DECEDENT, LUIS GARCIA, (collectively, "PLAINTIFFS"), for their Complaint against the **CITY OF TUSTIN, ESTELLA SILVA, AND DOES 1 THROUGH 10, INCLUSIVE,** (collectively, "DEFENDANTS") hereby allege as follows:

## JURISDICTION AND VENUE

1.     This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because PLAINTIFFS assert claims arising under the laws of the United States including 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution.

2.     This Court has supplemental jurisdiction over PLAINTIFFS' claims arising under state law pursuant to 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

3.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because DEFENDANTS reside in the Central District of California, and all incidents, events, and occurrences giving rise to this action occurred in the Central District.

## INTRODUCTION

4.     This civil rights and state tort action seeks compensatory damages from DEFENDANTS for violating various rights under the United States Constitution, the Federal Tort Claims Act, and state law in connection with the fatal deputy-involved shooting of PLAINTIFFS' father, Luis Garcia, on August 9, 2021. PLAINTIFFS allege that Luis Manuel Garcia's death was a result of the excessive use of deadly force of ESTELLA SILVA; and was also a result of DEFENDANTS' deliberate indifference to DECEDENT'S mental health and status as a homeless man living behind bushes.

5.     The policies and customs behind shootings of civilians such as Luis Garcia, are fundamentally unconstitutional and have violated the civil rights of residents of the

CITY, such as Plaintiffs and DECEDENT. Accordingly, PLAINTIFFS herein seek by means of this civil rights action to hold accountable those responsible for the death of Luis Garcia, and to challenge the unconstitutional policies and practices of the CITY and all DEFENDANTS.

## **PARTIES**

6.     At all relevant times, Luis Garcia ("DECEDENT") was an individual residing in the CITY OF TUSTIN, California. DECEDENT WAS 38 years old at the time of his death.

7.     At all relevant times, EMILY GARCIA ("EMILY GARCIA") was and is an individual residing in the CITY of Los Angeles, State of California. EMILY GARCIA is the daughter of DECEDENT. EMILY GARCIA sues both in her individual capacity for wrongful death damages as the daughter of DECEDENT and in a representative capacity as DECEDENT's successor in interest pursuant to California Code of Civil Procedure § 377.60. EMILY GARCIA seeks wrongful death damages under federal and state law.

8.     At all relevant times, C.G. ("C.G.") a minor, is an individual residing in the CITY of los Angeles, State of California and is the natural daughter of DECEDENT. C.G. sues in her individual capacity as the daughter of DECEDENT and also as a successor in interest to DECEDENT.  C.G. seeks wrongful death damages under federal and State law.

9.     The CITY OF TUSTIN ("CITY") is a government entity subject to the laws existing under the laws of the State of California. CITY is a chartered subdivision of the State of California with the capacity of the State to be sued. The CITY is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including the CITY OF TUSTIN POLICE DEPARTMENT, and its agents and employees.

10.     ESTELLA SILVA is an individual who was acting in the course of scope of her employment with the CITY as a police officer for the Tustin Police Department at the time she shot and unjustifiably killed DECEDENT.

11.    Several DEFENDANTS, DOES 1-10, are duly sworn police officers specifically authorized by the CITY to perform the duties and responsibilities of sworn law enforcement officers of the CITY, and all acts hereinafter complained of were performed by each of them within the course and scope of their duties, acting under the color of law, as Police Officers for the CITY, and as Police Officers for the CITY OF TUSTIN POLICE DEPARTMENT. DOE DEFENDANTS 1-10 were acting with the complete authority and ratification of their principal, CITY. DOE DEFENDANTS 1-10 are sued in their official and individual capacities. The true names and capacities are unknown to PLAINTIFFS, and are referred to in this complaint as DOE DEFENDANTS 1-10.  PLAINTIFFS will seek leave to amend their complaint to show the true names and capacity of these DEFENDANTS when they have been ascertained. Each of the fictitiously named DEFENDANTS is responsible in some manner for the conduct or liabilities alleged herein.

12.    On or about September 24, 2021, PLAINTIFFS filed comprehensive and timely claims for damages with the CITY pursuant to applicable sections of the California Government Code.  Those claims were rejected by operation of law pursuant to 912.4(c) as the CITY did not respond to PLAINTIFFS' claims.

## FACTS COMMON TO ALL CLAIM FOR RELIEF

13.    PLAINTIFFS repeat and re-allege each and every allegation in paragraphs 1 through 12 of this Complaint with the same force and effect as if fully set forth herein.

14.    This incident occurred on August 9, 2021, just past 10:00 a.m. just outside of the mobile home park in the 15400 block of Williams Avenue, City of Tustin, CA.

15.    Prior to August 9, 2021, DECEDENT had a history of mental illness and was homeless at the time of the shooting.

16.    A phone call was placed to alert law enforcement of a man who allegedly had a knife in his possession *the previous day*.  The alleged suspect described in that call does not match the description of Luis Garcia.  ESTELLA SILVA and other CITY police officers responded to the scene.

17.    While responding to the call on August 9, 2021, Officer SILVA and other CITY officers attempted to coax DECEDENT into leaving the bushes and coming out. While attempting to exit the bushes where he lived, DECEDENT had a stick that he used to collect cans and a bag of empty cans in his hands.  While barking orders at DECEDENT, an unknown CITY officer shot DECEDENT with a taser.  While receiving a cycle from the taser, without justification, Officer SILVA shot and killed Luis Garcia.

18.    DECEDENT never threatened Officer SILVA or other officers who had responded. DECEDENT did not pose an immediate threat of death or serious bodily injury, there was no verbal warning that deadly force would be used, and there were other reasonable options with respect to the use of force and detaining the DECEDENT.

19.    Despite the foregoing facts, Officer SILVA fired her gun at DECEDENT and DECEDENT was killed by Officer Silva. All DEFENDANTS participated in the use of deadly force against DECEDENT by either directly using force against DECEDENT, or by failing to intervene to stop the use of deadly force against DECEDENT.

20.    As a result of DEFENDANTS SILVA and DOES 1-10's negligence and excessive use of deadly force, DECEDENT died. The use of force against DECEDENT was excessive and objectively unreasonable under the circumstances, particularly because DEFENDANTS were aware that DECEDENT suffered from a mental illness, and because DECEDENT had not harmed anyone and did not pose a credible lethal threat to any person. DEFENDANTS were aware that he had not committed a crime, and that he did not pose an immediate threat of death or serious bodily injury to anyone at any time immediately prior to or during the use of force.

21.    PLAINTIFFS are DECEDENT's successors in interest as defined in Section 377.11 of the California Code of Civil Procedure and succeed to DECEDENT's interest in this action.

## FIRST CLAIM FOR RELIEF

### Fourth Amendment – Excessive Force (42 U.S.C. § 1983)

### Against OFFICER SILVA, and DOE DEFENDANTS 1-10

22.    PLAINTIFFS repeat and re-allege each and every allegation contained in paragraphs 1 through 21 of this complaint with the same force and effect as if fully set forth herein.

23.    The Fourth Amendment to the United States Constitution, and applied to state actors by the Fourteenth Amendment, provides citizens the right to be secure in their person against unreasonable searches and seizures, including the use of excessive deadly force.

24.    The excessive and unreasonable use of deadly force against DECEDENT deprived him of his right to be secure against unreasonable searches and seizures as guaranteed by the Fourth Amendment to the United States Constitution and made applicable to state actors by the Fourteenth Amendment. PLAINTIFFS were also deprived of due process guaranteed by the Fourteenth Amendment. Because of the unlawful excessive and unreasonable force purposefully utilized against DECEDENT, he suffered serious injuries resulting in death.

25.    DEFENDANTS DOES 1-10 did not properly assess the situation regarding DECEDENT's mental state; did not notify supervisors of the situation; did not employ tactics to de-escalate the situation; did not give DECEDENT sufficient time to comprehend the presence of Police Officers at the area where he lived; did not speak to DECEDENT in a sensitive and non-threatening manner; and did not give DECEDENT the opportunity to cooperate with the instructions of Police Officers.

26.    DECEDENT never verbally threatened any of the DEFENDANTS, Officer SILVA and DOES 1-10; DECEDENT made no assaultive movements toward any of the DEFENDANTS, Officer SILVA and DOES 1-10; DECEDENT did not make any movement suggesting he was intending to inflict harm on any of the DEFENDANTS, Officer SILVA and DOES 1-10.

27.    DEFENDANTS, Officer SILVA and DOES 1-10 did not employ tactics to de-escalate the scenario, failed to give DECEDENT time and space to understand the officers' presence, failed to give DECEDENT time and space to accept the police presence, failed to approach and speak to DECEDENT in a non-threatening manner, and failed to give DECEDENT the opportunity to consent to and cooperate with Police Officers instructions.

28.    The Plaintiffs are informed and believe that at no time prior to Officer Silva discharging her weapon, that no Tustin officer was facing an immediate threat of serious physical injury; or that no Tustin officer was incapable of neutralizing and/or effectuating the seizure of DECEDENT using any of a variety of readily available less-than-lethal means or strategies. The force used by Officer Silva was unnecessary, excessive, and unreasonable under the totality of the circumstances.

29.    The conduct of the DEFENDANTS was willful, wanton, malicious, and done with a deliberate indifference for the rights and safety of DECEDENT and therefore warrants the award of exemplary and punitive damages against Officer Silva and Does 1-10. All the DEFENDANTS, under 42 U.S.C. § 1983, are liable to the Plaintiffs for compensatory, including general and special, damages.

30.    As a result of their excessive use of deadly force which caused constitutional injuries to Plaintiffs, DOE DEFENDANTS 1-10 are liable for DECEDENT's injuries, either because they were integral participants in the wrongful use of excessive deadly force, or because they failed to intervene to prevent these constitutional violations.

31.    Plaintiffs bring these claims as successors in interest to the DECEDENT and seek wrongful death damages for the violation of Plaintiffs and DECEDENT's rights. Plaintiffs also seek attorneys' fees pursuant to 42 U.S.C. § 1988(b). Plaintiffs are seeking survival damages for pre-death pain and suffering, loss of life and loss of enjoyment of life under this claim.

## SECOND CLAIM FOR RELIEF

### Fourth Amendment – Denial of Medical Care (42 U.S.C. § 1983)

### Against OFFICER SILVA and DOE Defendants 1-10

32.    Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 31 of this complaint with the same force and effect as if fully set forth herein.

33.    The Fourth Amendment to the United States Constitution, as applied to state actors by the Fourteenth Amendment, provides the right of all persons to reasonable medical care during the course of a seizure and/or when in the custody of Police Officers. DEFENDANT SILVA and DOES 1-10, failed to provide reasonable medical care to DECEDENT despite DECEDENT's immediate need following the unjustified shooting. Their failure to provide reasonable medical care manifested deliberate indifference to DECEDENT'S serious medical issues and which resulted in his death.

34.    Defendants Silva and DOES 1-10 knew that DECEDENT had been shot by Officer Silva and yet failed to immediately summon medical attention to care for his gunshot wounds. Defendant Silva and Does 1-10 knew that failure to provide timely medical treatment for DECEDENT could result in further significant injury or the unnecessary and wanton infliction of pain, but disregarded that serious medical need, and refused to permit medical care givers to access and care for DECEDENT at the scene prior to and after the incident.

35.    In so doing the aforementioned acts before, during and after the use of force, the conduct of Officer Silva and Doe Defendants 1-10 were willful, wanton, malicious, and done with deliberate indifference for the rights and safety of DECEDENT and therefore warrants the imposition of exemplary and punitive damages as to the individual Defendants.

36.    As a result of their misconduct, Defendant Silva and DOES 1-10 are liable for Decedent's injuries, either because they were integral participants in the wrongful detention, arrest, and/or failure to summon immediate medical attention, or because they failed to

intervene to prevent these violations. Defendants, under 42 U.S.C. § 1983, are liable to the Plaintiffs for compensatory, including general and special, damages.

37.     Plaintiffs bring this claim as successors in interest to the DECEDENT, and seek survival damages for the violation of DECEDENT's rights. Plaintiffs also seeks attorney's fees pursuant to 42 U.S.C. § 1988(b).

## THIRD CLAIM FOR RELIEF

**Substantive and Procedural Due Process Interference with Familial Relationships**

**(42 U.S.C. § 1983)**

**Against OFFICER SILVA and DOE DEFENDANTS 1-10**

38.     PLAINTIFFS incorporate by reference each and every allegation in paragraphs 1 through 37 as if fully set forth herein.

39.     PLAINTIFFS had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive them of life, liberty, or property in such a manner as to shock the conscience, including but not limited to unwarranted state interference in the familial relationship with their father.

40.     The actions of Officer Silva and DEFENDANTS DOES 1-10, including the unjustified shooting of DECEDENT, along with other conduct of constitutional violations, shock the conscience, in that they acted with deliberate indifference to the constitutional rights of the DECEDENT and PLAINTIFFS, and with purpose to harm unrelated to any legitimate law enforcement objective.

41.     On August 9, 2021, DECEDENT was shot and killed by Officer Silva. DEFENDANTS violated the PLAINTIFFS' rights under the Fourth Amendment when DECEDENT was shot and killed; and violated the PLAINTIFFS' rights under the Fourteenth Amendment to substantive and procedural due process because DEFENDANTS manifested deliberate indifference to DECEDENT'S mental condition and to his living condition.

42.     DEFENDANTS did <u>not</u> investigate whether DECEDENT was mentally ill and able to comprehend the commands by Officer Silva and others. DEFENDANTS did <u>not</u> properly assess the situation regarding DECEDENT's mental state; did <u>not</u> notify supervisors of the situation; did <u>not</u> employ tactics to de-escalate the situation; did <u>not</u> give DECEDENT sufficient time to comprehend the presence of Police Officers at the area he lived; did <u>not</u> develop a tactical plan; did <u>not</u> speak to DECEDENT in a sensitive and non-threatening manner; and did <u>not</u> give DECEDENT the opportunity to cooperate with the instructions of Police Officers.

43.     Despite the foregoing facts, Officer Silva shot at DECEDENT multiple times, and DECEDENT was struck and was killed. DEFENDANTS participated in the use of force against DECEDENT by either directly using deadly force against DECEDENT, ordering another DEFENDANT to use deadly force against DECEDENT, or by failing to intervene to stop the use of deadly force against DECEDENT, and failed to provide medical treatment.

44.     DECEDENT had a cognizable interest under the Substantive Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive him of life, liberty, or property in such a manner as to shock the conscience, including actions that constitute deliberate indifference to serious medical needs, health, and safety, and from state actions that constitute violations of PLAINTIFFS' and DECEDENT'S constitutional right to prompt and adequate medical care.

45.     EMILY GARCIA had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive her of life, liberty, or property in such a manner as to shock the conscience, including but not limited to unwarranted state interference in EMILY GARCIA's familial relationship with her father, DECEDENT.

46.     C.G. had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive her of life, liberty, or property in such a manner as to shock the conscience, including but not

limited to unwarranted state interference in C.G.'s familial relationship with her father, DECEDENT.

47.    The aforementioned acts and omissions of ALL DEFENDANTS shock the conscience, in that the DEFENDANTS acted with deliberate indifference to the constitutional rights of DECEDENT and PLAINTIFFS, and with purpose to harm unrelated to any legitimate law enforcement objective.

48.    ALL DEFENDANTS also thus violated the substantive and procedural due process right of DECEDENT to be free from state actions that deprive life, liberty, or property in such a manner as to shock the conscience, including actions that constitute deliberate indifference to serious medical needs, health, and safety, and actions that constitute violations of Constitutional rights to prompt and adequate medical care.

49.    As a direct and proximate cause of the acts of ALL DEFENDANTS, PLAINTIFFS have been deprived of the life-long love, companionship, comfort, support, guidance society, care, and moral support of DECEDENT, and will continue to be so deprived for the remainder of their natural lives.

50.    The conduct of Officer Silva and DOES 1-10 was willful, wanton, malicious, and done with deliberate indifference for the rights and safety of DECEDENT and PLAINTIFFS and therefore warrants the imposition of exemplary and punitive damages as to Officer Silva and DOE DEFENDANTS 1-10.

51.    PLAINTIFFS EMILY GARCIA and C.G. each seek wrongful death damages under this claim in their individual capacities, and as successors in interest, for the violations of civil rights, including the interference with their familial relationship with DECEDENT. PLAINTIFFS also seek attorney's fees pursuant to 42 U.S.C. § 1988(b).

## FOURTH CLAIM FOR RELIEF

### Municipal Liability – Ratification (42 U.S.C. § 1983)

### Against Defendant CITY

52.    PLAINTIFFS incorporate by reference each and every allegation in paragraphs 1 through 51 as if fully set forth herein.

53.     DEFENDANTS SILVA and DOE DEFENDANTS 1-10 acted under color of law.

54.     The acts and omissions DEFENDANTS deprived DECEDENT and PLAINTIFFS of their constitutional rights under the United States Constitution.

55.     Upon information and belief, Tustin Police Chief Stu Greenberg and other supervisors and final policymakers, acting under color of law, and who had final policymaking authority concerning the acts of Officer Silva and DOE DEFENDANTS 1-10, *ratified*, and have specifically *approved*, the acts and omissions of DOE DEFENDANTS 1-10, and the basis for the acts and omissions. Defendant CITY OF TUSTIN, by and through their final policy makers and supervisors have *ratified*, and have specifically *approved*, the acts and omissions of Officer Silva and DOE DEFENDANTS 1-10.

56.     Defendant CITY OF TUSTIN have determined that the acts and omissions of Officer Silva and DOE DEFENDANTS 1-10 were "within policy" of the Tustin Police Department Policy Manual.

57.     Because Officer Silva and DOE DEFENDANTS 1-10, were <u>not</u> disciplined, reprimanded, retrained, suspended, have <u>not</u> suffered any administrative consequences, have <u>not</u> suffered any adverse employment consequences, or otherwise penalized in any way in connection with DECEDENT's death, the Defendant CITY OF TUSTIN, has *ratified*, and has specifically *approved*, of the acts and omissions of Officer Silva and DOE DEFENDANTS 1-10.

58.     Defendant CITY OF TUSTIN, by and through Chief Greenberg and other final policymakers manifested deliberate indifference with regard to the excessive use of deadly force, and the denial of medical care for DECEDENT, and deliberate indifference to DECEDENT's serious medical needs. PLAINTIFFS have suffered the loss of the love, companionship, affection, comfort, care, society, training, guidance, and moral support of DECEDENT.

59.     Defendant CITY OF TUSTIN, is liable to PLAINTIFFS for compensatory damages under 42 U.S.C. § 1983.

60.     PLAINTIFFS seek wrongful death damages for the violation of PLAINTIFFS and DECEDENT's rights under this claim. PLAINTIFFS also seek attorney's fees under this claim pursuant to 42 U.S.C. § 1988(b).

### FIFTH CLAIM FOR RELIEF

### Municipal Liability – Failure to Train (42 U.S.C. § 1983)

### Against the CITY OF TUSTIN

61.     PLAINTIFFS incorporate by reference each and every allegation in paragraphs 1 through 60 as if fully set forth herein.

62.     At all times herein mentioned, Defendants Silva and DOES 1-10 acted under color of law and the acts and omissions of Defendants Silva and DOES 1-10 deprived DECEDENT and PLAINTIFFS of their Constitutional rights under the United States Constitution. The training policies of Defendant CITY were not adequate to properly train Tustin Police Department officers to handle the usual and recurring situations in their interactions with residents, including responding to calls involving homeless and potentially mentally ill persons. The training policies of Defendant CITY were not adequate to properly train officers with regard to the use of deadly force, the permissible use of deadly weapons, and protecting the rights of persons to medical care during in the course of detaining individuals.

63.     The unjustified and excessive use of deadly force against DECEDENT by Officer Silva and DOES 1-10 was a result of the negligent training by Defendant CITY who failed to train police officers, such as Officer Silva and DOES-10 as to ***proper police tactics***, proper use of force, proper use of deadly force, and proper police tactics in the use of force with respect to homeless and mentally ill individuals. Defendant CITY is responsible for the training of Tustin police officers to ensure that the actions, procedures, and practices of Officer Silva and DOES 1-10 complied with Peace Officer Standards and Training (POST)

training standards regarding proper police tactics, proper use of force, and proper use of deadly force.

64.    Defendant CITY negligently failed to train CITY Police Officers, such as Officer Silva and DOES 1-10, to comply with POST training standards regarding proper police tactics, proper use of force, proper use of deadly force, and proper police tactics when dealing with homeless and mentally ill individuals. POST was established by the California Legislature in 1959 to set minimum training standards for California Police Officers. The training policies of Defendant CITY were not adequate to train its Police Officers to handle the usual and recurring situations with residents and pretrial detainees that Officer Silva and DOES 1 through 10 have contact with.

65.    The training policies of Defendant CITY were deficient in the following:

(a) Defendant CITY failed to properly train City of Tustin Police Officers, such as Officer Silva and DOES 1 through 10, to *de-escalate* interactions with residents or mentally ill individuals, so that Police Officers do not *escalate* their interactions with residents, or with mentally ill individuals, and do not overreact and resort to use of deadly force when the use of force was not necessary. Instead, Officer Silva and DOES 1-10 escalated their interactions with DECEDENT who was mentally ill and was homeless.

(b) Defendant CITY failed to properly train City of Tustin police officers, such as Officer Silva and DOES 1-10, to <u>not</u> permit fear to reach the point of becoming ***unreasonable fear***, and not objectively reasonable, which would result in the use of deadly force by Officer Silva and DOES 1-10 and would cause the death of mentally ill, homeless persons such as DECEDENT.

(c) Defendant CITY failed to properly train Tustin police officers, such as Officer Silva and DOES 1-10, to properly and ***adequately assess*** the need to use force against persons such as DECEDENT, who have a mental illness.

(d) Defendant CITY failed to properly train its police officers, such as Officer Silva and DOES 1-10, in proper police tactics, such as ***situational awareness***, so that police

officers, such as Officer Silva and DOES 1-10, do <u>not</u> utilize negligent tactics, which is what Officer Silva and DOES 1-10 did in this case. Because of this lack of proper training by Defendant CITY, Officer Silva and DOES 1-10 did not use proper police tactics in the handling of their contact and interaction with DECEDENT. Officer Silva and DOES 1-10 used *defective* police tactics, including the lack of a *situational awareness* by Officer Silva and DOES 1-10. These training failures by Defendant CITY, and *defective* tactics by Officer Silva and DOES 1-10, resulted in the death of DECEDENT.

(e) Defendant CITY failed to properly train City of Tustin police officers, such as Officer Silva and DOES 1 through 10, the importance of *effective communication* between officers prior to using any type of force.

(f) Because of the lack of proper training by CITY of Officer Silva and DOES 1 through 10, they did not use effective communication prior to and during the use of force against DECEDENT. This *ineffective* communication of information by Officer Silva and DOES 1 through 10, prior to and during the incident, resulted in the death of DECEDENT, causing constitutional injuries to DECEDENT and PLAINTIFFS.

66.    The failure of Defendant CITY to provide proper training to its officers caused the deprivation of PLAINTIFFS' rights by Defendants Silva and DOES 1-10. Defendant CITY's failure to train is so closely related to the deprivation of the PLAINTIFFS' rights as to be the moving force that caused the ultimate injuries to PLAINTIFFS.

67.    The training policies of the CITY were not adequate to train its police officers to handle the usual and common situations with which they must deal with, including mentally ill, homeless persons, such as DECEDENT herein. Defendant CITY was deliberately indifferent to the obvious consequences of its failure to properly train its officers.

68.    The failure of the CITY to provide adequate training to its officers caused the deprivation of PLAINTIFFS' rights by Officer Silva and DOE DEFENDANTS 1-10; the

CITY'S failure to train is so closely related to the deprivation of DECEDENT and PLAINTIFFS' rights as to be the moving force that caused the ultimate constitutional injuries to PLAINTIFF.

69.     By reason of the aforementioned acts and omissions of all the Defendants, and Defendant CITY, PLAINTIFFS have suffered loss of the love, companionship, affection, comfort, care, society, training, guidance, and moral support of DECEDENT. The aforementioned acts and omissions also caused DECEDENT's pain and suffering, loss of enjoyment of life, and death.

70.     Accordingly, Defendants CITY, Officer Silva and and DOES 1 through 10, each are liable to the PLAINTIFFS for compensatory damages under 42 U.S.C. § 1983. PLAINTIFFs bring these claims as DECEDENT's successors-in-interest as defined in Section 377.11 of the California Code of Civil Procedure and seek survival damages for the violation of DECEDENT's rights. PLAINTIFFS also seek reasonable attorneys' fees pursuant to 28 U.S.C. § 1988, costs, and interest.

## SIXTH CLAIM FOR RELIEF

### Municipal Liability – Unconstitutional Policy, Practice, or Custom

### (42 U.S.C. § 1983)

### Against the CITY

71.     PLAINTIFFS incorporate by reference each and every allegation contained in paragraphs 1 through 70 as if fully set forth herein.

72.     The acts of  Officer Silva and DOE DEFENDANTS 1-10 that deprived DECEDENT and PLAINTIFFS of their constitutional rights under the Fourth and Fourteenth Amendments as set forth above were done pursuant to a widespread and longstanding practice or custom of Defendant CITY which condones, ratifies, and acquiesces in the excessive use of deadly force by City of Tustin police officers. Officer Silva and DOE DEFENDANTS 1-10 caused the deprivation of the Plaintiffs' constitutional rights, and Decedent's constitutional rights, pursuant to this longstanding practice or custom of Defendant CITY. The CITY's widespread and longstanding practice or custom is so

closely related to the deprivation of the Plaintiffs' rights as to be the moving force that caused the Decedent's death.

73.     Pursuant to the CITY's widespread and longstanding practice or custom, which condones, ratifies, and acquiesces in the excessive use of deadly force by officers, Officer Silva and DOE DEFENDANTS 1-10, were <u>not</u> disciplined, reprimanded, retrained, or suspended, have <u>not</u> suffered any administrative consequences, and have <u>not</u> suffered any adverse employment consequences, or were otherwise penalized in any way in connection with DECEDENT's death.

74.     Defendants CITY, with CITY final policymakers and supervisors, including Chief Greenberg, maintained, *inter alia*, the following unconstitutional customs, practices, and policies:

(a) The use of excessive force, including excessive deadly force, by CITY officers, when there is no need for deadly force, or where there is no imminent threat to officers or others.

(b) The CITY's failure to provide adequate training regarding the use of force, and the use of deadly force.

(c) The CITY's employing and retaining as officers individuals such as Officer Silva and DOE DEFENDANTS 1-10, whom the CITY at all times herein knew or reasonably should have known, had dangerous propensities for abusing their authority and for using excessive deadly force.

(d) The CITY's maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling misconduct by CITY officers.

(e) The CITY's failures to adequately discipline CITY officers, including Officer Silva and DOE DEFENDANTS 1-10, for the above-referenced categories of misconduct, including "slap on the wrist" discipline that is so slight as to be out of proportion to the magnitude of the misconduct, and other inadequate discipline that is tantamount to encouraging misconduct.

(f) The CITY's custom and practice of concluding that acts of excessive use of force are "within policy" including use of deadly force instances that were later determined in court to be unconstitutional, and/or excessive use of force.

(g) Even where a police officer's use of force is determined in court to be unconstitutional, and/or excessive use of force, the CITY has refused to discipline, terminate, or retrain the deputies involved.

(h) The CITY's custom and practice of accommodating, or facilitating a "code of silence," pursuant to which City of Tustin police officers do not report other officer's errors, misconduct, or crimes. Pursuant to this code of silence, if questioned about an incident of misconduct involving another deputy, while following the code, the officer being questioned will claim ignorance of the other officer's wrongdoing.

(i) The CITY's maintaining a policy of inaction and an attitude of indifference towards soaring numbers of instances of use excessive force by officers, including by failing to discipline, retrain, investigate, terminate, and recommend officers for criminal prosecution who use excessive force against unarmed people.

(j) The CITY's custom and practice of providing inadequate training regarding handling situations with homeless, mentally ill persons and failing to provide adequate training in compliance with Welfare and Institutions Code § 5150 and 5158.

75.    Defendants CITY, through CITY officials, and final policy makers, had either actual or constructive knowledge of the unconstitutional policies, practices and customs alleged in the paragraphs above. Defendant CITY acted with deliberate indifference to the foreseeable effects and consequences of these customs and policies with respect to the constitutional rights of DECEDENT, Plaintiffs, and other individuals similarly situated.

76.    The CITY's longstanding practice or custom caused the deprivation of DECEDENT and PLAINTIFF' rights by Officer Silva and DOE DEFENDANTS; that is, the CITY's official policy condoning excessive force against homeless, mentally ill people is so closely related to the deprivation of the DECEDENT's and PLAINTIFFS' rights in this case as to be the moving force that caused DECEDENT's death.

77.     The CITY, through CITY officials with final policy making authority, had either actual or constructive knowledge of the unconstitutional policies, practices and customs alleged in the paragraphs above.

78.     Defendant CITY also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of DECEDENT, PLAINTIFFS, and other individuals similarly situated.

79.     By perpetrating, sanctioning, and ratifying the unconstitutional violations and other wrongful acts, Defendant CITY acted with deliberate indifference for the life of DECEDENT, and for DECEDENT's and PLAINTIFFS' constitutional rights. Furthermore, the policies, practices, and customs implemented, maintained, by all of the DEFENDANTS were affirmatively linked to and were the driving force for the constitutional injuries of DECEDENT and the PLAINTIFFS.

80.     By reason of the aforementioned acts and omissions, the PLAINTIFFS have suffered the loss of the love, companionship, affection, comfort, care, society, training, guidance, and moral support of DECEDENT. The aforementioned acts and omissions also caused DECEDENT's pain and suffering, loss of enjoyment of life, and death.

81.     Accordingly, each DEFENDANT is liable to PLAINTIFFS for compensatory damages under 42 U.S.C. § 1983.

82.     PLAINTIFFS bring their claim individually and as successors in interest to DECEDENT, and seek wrongful death damages under this claim. PLAINTIFFS also seek attorney's fees under this claim pursuant to 42 U.S.C. § 1988(b).

## SEVENTH CLAIM FOR RELIEF

### Negligence – Wrongful Death

### Against all DEFENDANTS

83.     PLAINTIFFS repeat and re-allege each and every allegation in paragraphs 1 through 82 of this complaint with the same force and effect as if fully set forth herein.

84.     City of Tustin Police Officers, including Officer Silva and DOES 1-10, have a duty to use reasonable care to prevent harm or injury to others. This duty includes using

appropriate tactics, giving appropriate commands, giving warnings, not using unnecessary force, using less than lethal options, and only using deadly force as a last resort.

85.   DEFENDANTS breached this duty of care. The actions and inactions of Officer Silva and Defendant DOES 1 through 10 were negligent and reckless.

86.   DEFENDANTS CITY, SILVA and DOES 1-10 knew that by acting as sworn officers under color of law, they were charged with ensuring the safety and well-being of DECEDENT. Defendants Silva, CITY and DOES 1-10 had the duty to protect and ensure the safety of persons, such as DECEDENT, including but not limited to:

(a)   the failure to properly and adequately assess the need to detain, arrest, restrain, and use force or deadly force against DECEDENT;

(b)   the negligent tactics and handling of the situation with DECEDENT, including negligence occurring immediately prior to the use of force, and negligent tactics in handling a situation with a mentally ill, homeless person;

(c)   the negligent detention, arrest, and use of force, including deadly force, against DECEDENT;

(d)   the failure to provide prompt medical care to DECEDENT;

(e)   the failure to properly train and supervise employees, both professional and non-professional, including Officer Silva and DOE DEFENDANTS 1-10;

(f)   the failure to ensure that adequate numbers of employees with appropriate education and training were available to meet the needs of and protect the rights of DECEDENT, including Officer Silva and DOE DEFENDANTS 1-10;

(g)   the negligent handling of evidence and witnesses; and

(h)   the negligent communication of information during the incident.

87.   As a direct and proximate result of DEFENDANTS' conduct as alleged above, and other undiscovered negligent conduct, DECEDENT was caused to suffer severe pain and suffering and ultimately died.

88.     Also as a direct and proximate result of DEFENDANTS' conduct as alleged above, PLAINTIFFS suffered emotional distress and mental anguish. PLAINTIFFS also have been deprived of the life-long love, companionship, comfort, support, society, care and moral support of DECEDENT, and will continue to be so deprived for the remainder of their natural lives.

89.     The CITY is vicariously liable for the wrongful acts of all the DEFENDANTS pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

90.     PLAINTIFFS bring this claim both individually and as successors in interest of DECEDENT, and seek wrongful death damages.

## EIGHTH CLAIM FOR RELIEF

### Battery – Wrongful Death

### Against the CITY, OFFICER SILVA and DOE DEFENDANTS 1-10

91.     PLAINTIFFS repeat and re-allege each and every allegation in paragraphs 1 through 90 of this complaint with the same force and effect as if fully set forth herein.

92.     Officer Silva and DOE DEFENDANTS 1-10, while working for the CITY OF TUSTIN, and acting within the course and scope of their employment and duties as police officers, intentionally shot DECEDENT, thereby using unreasonable and excessive force against him. As a result of the actions of Officer Silva and DOE DEFENDANTS 1-10, DECEDENT suffered severe pain and suffering and ultimately died from his injuries. Officer Silva and DOE DEFENDANTS 1-10 had no legal justification for using deadly force against DECEDENT, and their use of force while carrying out their duties as police officers was an unreasonable and non-privileged use of force.

93.     Each of DOE DEFENDANTS 1-10 integrally participated or failed to intervene in the use of force.

94.     As a result of the officers' excessive use of force, Officer Silva and DOE DEFENDANTS 1-10 are liable for DECEDENT's injuries, either because they were

integral participants in the wrongful excessive use of force, or because they failed to intervene to prevent these violations.

95.     The CITY is vicariously liable for the wrongful acts of all the DEFENDANTS pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

96.     As a direct and proximate result of the acts and omissions of Officer Silva and DOE DEFENDANTS 1-10 as alleged above, DECEDENT died and PLAINTIFFS have suffered the loss of the love, companionship, affection, comfort, care, society, training, guidance, and moral support of DECEDENT.

97.     The conduct of Officer Silva and DOE DEFENDANTS 1-10 was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of PLAINTIFF and DECEDENT, entitling PLAINTIFFS, individually and as successors-in-interest to DECEDENT, to an award of damages as to all DEFENDANTS.

98.     PLAINTIFFS each bring his or her claim individually and as a successor in interest to DECEDENT, and each also seeks wrongful death damages under this claim.

## NINTH CLAIM FOR RELIEF

### Violation of Cal. Civil Code § 52.1 (the Bane Act)

### Against All DEFENDANTS

99.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 98 of this complaint with the same force and effect as if fully set forth herein.

100.   California Civil Code, Section 52.1 (the Bane Act), prohibits any person from using violent acts or threatening to commit violent acts in retaliation against another person for exercising that person's constitutional rights.

101.   California Civil Code, Section 52.1 (the Bane Act), applies to this complaint with the same force and effect as fully set forth herein:

(a) If a person or person, whether or not acting under color of law, interferes by threat, intimidation, or coercion, or attempts to interfere

by threat, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals or rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state...a civil action for injunctive and other appropriate equitable relief may be brought.

102.    Any individual whose exercise or enjoyment of rights secured by the Constitution or laws of this state, has been interfered with, as described in subdivision (a), may institute and prosecute in his name and on his own behalf a civil action for damages, including but not limited to, damages under Section 52, injunctive relief, and other appropriate equitable relief to protect the peaceable exercise or enjoyment of the rights secured, including appropriate equitable and declaratory relief to eliminate a pattern or practice of conduct as described in subdivision (a).

103.    The California Civil Code, Section 52.1(b) authorizes a private right of action for damages to any person whose constitutional rights are violated. Also, "a successful claim for excessive force under the Fourth Amendment provides the basis for a successful claim under § 52.1." *Chaudhry v. City of Long Beach.*, 751 F.3d 1096, 1105-06 (9th Cir. 2014); citing *Cameron v. Craig*, 713 F.3d 1012, 1022 (9th Cir. 2013) ("[T]he elements of the excessive force claim under § 52.1 are the same as under § 1983."); *Bender v. CITY of L.A.*, 217 Cal.App. 4th 968, 976 (2013) ("an unlawful [seizure]…when accompanied by unnecessary, deliberate and excessive force…is within the protection of the Bane Act").

104.    Defendant Officer Silva and DOE DEFENDANTS 1-10 violated DECEDENT's Fourth Amendment right to be free from excessive force when they used deadly force against DECEDENT without any warning, and by firing multiple rounds at him and killing DECEDENT. There had been no prior confirmation that DECEDENT had committed any crime and Officer Silva and DEFENDANTS DOES 1-10 had no information that DECEDENT committed any crime that warranted their use of deadly force inflicting injuries that caused Decedent's death.

105.     Also as alleged above, Officer Silva and DOE DEFENDANTS 1-10 unjustly shot DECEDENT at a time when DECEDENT posed no immediate threat of death or serious bodily injury to any person. On information and belief, Officer Silva and DOE DEFENDANTS 1-10, while working for the CITY and acting within the course and scope of their duties, intentionally committed and attempted to commit acts of violence against DECEDENT, including by shooting him without justification or excuse, by integrally participating and failing to intervene in the above violence, and by denying necessary medical care.

106.     DEFENDANTS Silva and DOES 1-10 violated PLAINTIFFS' rights under the Fourth and Fourteenth Amendment to substantive and procedural due process when they put DECEDENT in a position of danger by their actions, including by impeding access to medical care.

107.     When Defendants Silva and DOES 1 through 10 unnecessarily shot the DECEDENT, this caused the DECEDENT to suffer the ill effects of being shot. This act perpetrated against an unarmed and a mentally ill individual by the Defendants Silva and DOES 1 through 10 interfered with DECEDENTS' civil rights to be free from unreasonable searches and seizures, to due process, to equal protection of the laws, to medical care, to be free from state actions that shock the conscience, and to life, liberty, and property.

108.     On information and belief, DEFENDANTS intentionally violated the Constitutional right to be free from excessive force.

109.     On information and belief, DECEDENT reasonably believed and understood that the violent acts committed by DEFENDANTS were intended to discourage him from exercising the above civil rights, to retaliate against him for invoking such rights, or to prevent him from exercising such rights because of DECEDENT's Latino ancestry.

110.     The conduct of Defendants Silva and DOES 1 through 10 was a substantial factor in causing the harm, losses, injuries, and damages of DECEDENT and PLAINTIFFS.

111.     The CITY is vicariously liable for the wrongful acts of all the DEFENDANTS, including DOES 1 through 10, pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's acts would subject him or her to liability.

112.     DEFENDANTS intentionally interfered with the above civil rights of DECEDENT by demonstrating a reckless disregard for the DECEDENT'S right to be free from excessive force.

113.     The conduct of DEFENDANTS was a substantial factor in causing PLAINTIFFS' harms, losses, injuries, and damages.

114.     The CITY is vicariously liable, under California law and the doctrine of respondeat superior, for the acts and omissions of Officer Silva and DOES 1-10

115.     The conduct of DEFENDANTS was a substantial factor in causing the harm, losses, injuries, and damages of PLAINTIFFS. PLAINTIFFS seek survival damages under this claim in their individual capacity and as a successors-in-interest to DECEDENT. PLAINTIFFS also seek costs and attorney fees under this claim pursuant to Civ. Code, § 52.1(h).

## **PRAYER FOR RELIEF**

WHEREFORE, PLAINTIFFS request entry of judgment in their favor and against All DEFENDANTS, inclusive, as follows:

A.     For compensatory damages, including survival damages and wrongful death damages under federal and state law, in the amount to be proven at trial;

B.     For interest;

C.     For other general damages in an amount according the proof at trial;

D.     For other non-economic damages in an amount according the proof at trial;

E.     For other special damages in an amount according to proof at trial;

F.     For reasonable costs of this suit;

G.     Attorney's fees pursuant to 42 U.S.C. § 1988;

H.     Attorney's fees and costs pursuant to California Civil Code, Section 52.1(h). (The Bane Act).

I.     For such further other relief as the Court may deem just, proper, and appropriate.


Dated: January 25, 2022                    CARRILLO LAW FIRM, LLP



                                           Luis A. Carrillo
                                           Michael S. Carrillo
                                           Attorneys for PLAINTIFFS


## DEMAND FOR JURY TRIAL

The PLAINTIFFS named herein hereby demand a trial by jury.


Dated: January 25, 2022                    CARRILLO LAW FIRM, LLP



                                           Luis A. Carrillo
                                           Michael S. Carrillo
                                           Attorneys for PLAINTIFFS

COMPLAINT FOR DAMAGES