Bruce D. Praet SBN 119430
FERGUSON, PRAET & SHERMAN
A Professional Corporation
1631 East 18th Street
Santa Ana, California  92705
(714) 953-5300 telephone
(714) 953-1143 facsimile
Bpraet@aol.com

Attorneys for Defendants

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMILY GARCIA, et al.<br><br>    Plaintiffs,<br><br>    v.<br><br>CITY OF TUSTIN, ESTELLA SILVA, et al.<br><br>    Defendants.<br><br>Consolidated with WENDY LORENA GALACIA RAMIREZ, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>CITY OF TUSTIN, et al.<br><br>    Defendants. | NO. 8:22-cv-00131 SPG KES<br><br>**DEFENDANTS' REPLY MEMORANDUM RE: JOINT MOTION FOR SUMMARY JUDGMENT**<br><br>DATE:  December 20, 2023<br>TIME:   1:30 p.m.<br>CTRM: 5C |

**1.     PREFATORY STATEMENT.**

The one thing all parties can agree on is that this was a tragic situation for everyone involved.  However, despite Plaintiffs' best efforts to distract the Court with misleading, immaterial and speculative representations of what occurred in this case, they have not and never will be able to avoid the undisputed facts that:

1

- The application of a less-than-lethal Taser did not stop Luis Garcia from advancing on Officer Silva with a solid 5 ft. wooden pole raised over his head.
- Officer Silva retreated and made the split second decision to fire only two rapid shots when Luis Garcia was less than 3 ft. from her with the solid 5 ft. wooden pole raised in a striking motion over his head.



It is simply inconceivable that any reasonable officer in this same rapidly unfolding, tense and uncertain situation would have perceived such an advance as anything other than an imminent threat of serious bodily injury. While Plaintiffs have predictably provided myriad speculative tactics officers "could have" taken, both federal and state law make it very clear that "requiring officers to find and choose the least intrusive alternative would require them to exercise superhuman judgment." *Scott v. Henrich*, 39 F3d 912, 915 (9th Cir. 1994) and that officers are not required to "choose the most reasonable action or the conduct that is the least likely to cause harm". *Hayes v. Cty. of San Diego*, 57 Cal.4th 622, 632 (2013).

Here, any notion of disputed material fact has been effectively eliminated by the BWC video which inescapably shows that the actions of Officer Silva, while certainly tragic, were undeniably reasonable under these circumstances.

Moreover, the Supreme Court has made it exceedingly clear to all courts that Officer Silva is equally entitled to qualified immunity at this earliest possible stage of the proceedings now that Plaintiffs have completely failed to locate any non-existent case which would have made it "beyond debate" to Officer Silva that her split-second decision to defend herself was somehow in violation of some "clearly established" law.

## 2. THE MATERIAL FACTS REMAIN UNDISPUTED.

Without repeating the Joint Appendix of Facts (JAF), it is initially worth noting that Plaintiffs never really dispute any of Defendants' undisputed facts, but instead offer only cursory objections or their own irrelevant opinion of what is otherwise indisputably depicted in the BWC video. For example:

- Plaintiffs suggest that the Court should somehow ignore the undisputed fact that Officer Silva had had prior contacts with Garcia regarding his commission of a robbery during which he knocked a street vendor unconscious [JAF 6] and that she had arrested him for assault with a deadly weapon and possession of methamphetamine [JAF 7]. Yet, this is precisely the type of knowledge the Supreme Court has dictated must be considered to determine the perspective of the involved officer. *Graham v. Connor, 480 U.S. 386, 395 (1989)*
- Plaintiffs ask this Court to conclude that the application of the Taser was somehow effective in disabling Garcia [See: Objection to JAF14] despite the fact that this is blatantly contradicted by the video evidence. *Scott v. Harris, 550 U.S. 372, 378-79 (2007).*
- Perhaps most incredibly, Plaintiffs make the inexplicable claim that Garcia never raised the solid 5ft. wooden pole over his head as he advanced to within 2-3 ft. of Officer Silva. [See: Objection to JAF15]. Again, however, this claim is blatantly contradicted by the video. *Id*.

///

With regard to Plaintiffs' additional facts, most are frankly immaterial to the determination of the issues on summary judgment. For example, the fact that Officer Silva was wearing a bullet resistant vest [JAF21] is immaterial to the threat of having her head crushed by a solid wooden pole. Ultimately, it is fortunate, but immaterial that Officer Silva managed to defend herself before Garcia was able to complete his "swing" of the pole [JAF 45 and 47]. Similarly, while it may be mildly interesting that Plaintiffs' self-proclaimed expert Scott DeFoe offers a number of retrospective opinions as to how he believes that these officers could or even should have handled this situation [JAF 60-74], the Supreme Court has made it clear that such expert opinions cannot create issues of fact on summary judgment. *Sheehan v. San Francisco*, 575 U.S. 600, 616 (2015). Whether Plaintiffs have raised any potentially disputed facts, the material facts remain undisputed and continue to support summary judgment. *Scott, 550 U.S. at 380*

### 3. THE USE OF FORCE REMAINS REASONABLE.

While all parties agree that the test for the use of force remains an objectively reasonable standard from the perspective of the officer under the totality of the circumstances without the benefit of 20/20 hindsight [i.e. *Graham*], the parties seem to disagree on the analysis of the three *Graham* factors. Once again avoiding a regurgitation of Defendants' opening arguments, the critical flaw in Plaintiffs' position is that they ask the Court to evaluate the reasonableness of the force in a vacuum rather than at the precise moment that Officer Silva was forced to make the split second decision to defend herself from the imminent threat posed by Garcia. For example:

- With respect to the first factor of the "severity of the crime" Plaintiffs cite to the fact that officers were initially responding to a report that an individual who had been waving a knife the day before was now sleeping in the bushes. However, the Supreme Court has made it clear that it is "the facts and circumstances confronting" the officer at

the moment the force is applied which must be evaluated. *Graham, 490 U.S. at 397*. Here, the facts and circumstances confronting Officer Silva at the moment she was forced to make the split-second decision to defend herself clearly reflect Garcia advancing to close the distance with a solid 5 ft. wooden pole raised above his head. In fact, Silva knew that Garcia had previously been willing to knock his robbery victim unconscious. To the extent that Plaintiffs suggest that Garcia may (or may not) be mentally ill, there is no requirement that officers treat such individuals differently when facing an imminent threat. *Blanford v. Sacramento, 406 F3d 1110, 1117 (9th Cir. 2005)*. Moreover, officers had received no report that Garcia might be mentally ill and, on the contrary, were only aware of his behavior previously being influenced by methamphetamine.

- As to the second "most important" factor of whether Garcia posed an imminent threat, Plaintiffs seek to mask the undeniable posture of Garcia raising a solid wooden pole over his head as he advanced on Officer Silva (in spite of an ineffective Taser application). Instead, Plaintiffs merely distract the Court with undisputed, but immaterial, facts that Garcia thankfully never injured anyone or managed to complete his attack on the officers. To the extent that Plaintiffs suggest that Officer Silva could somehow not justify her second shot in defense of nearby Officer Frias literally fired within a second of her first shot in self-defense:
  - The Supreme Court has noted that an officer need not stop shooting until the threat has ended. *Plumhoff v. Rickard, 575 U.S. 765, 777 (2014)*.
  - To the extent that Plaintiffs' expert suggests that Silva would not have been justified in shooting Garcia as a "fleeing felon"

5

|   |   |
|---|---|
| 1 | under *Tennessee v. Garner,* this is a classic red herring since |
| 2 | Silva never made such a claim. |

- As to the third factor of whether Garcia was resisting, Plaintiffs simply speculate that Garcia's reluctance to cooperate was due to some benign intention on his part. However, officers are not required to be omniscient with respect to a subject's state of mind [*Wilkinson v. Torres, 610 F3d 546, 553 (9th Cir. 2010)*] and his continuous failure to obey orders only serves to increase the officers' legitimate concern that he was in fact resisting. *Marquez v Phoenix, 693 F3d 1167, 1175 (9th Cir. 2012).*

- Finally, with respect to Plaintiffs' suggestion that officers were somehow required to utilize alternative options, it must initially be recognized that Officer Yuhas did in fact deploy the Taser which was unfortunately not effective in curtailing the attack. As further noted above, the Ninth Circuit has made it clear that officers need not choose the best or even least intrusive level of force when deciding how to defend themselves. *Scott v. Henrich, 39 F3d at 915.*

Necessarily viewing the undisputed, material facts from the perspective of Officer Silva without the benefit of 20/20 hindsight at the split-second she was forced to defend herself from an imminent attack, it is clear that her use of force was objectively reasonable.

**4.     OFFICER SILVA IS ENTITLED TO QUALIFIED IMMUNITY.**

The Supreme Court's recurring mandate that qualified immunity be determined at the earliest possible stage cannot be overemphasized. *White v. Pauly, 580 U.S. 73, 79 (2017).* Unwilling to concede the obvious reasonableness of the force used, the burden next shifts to Plaintiffs to direct the Court to a factually specific case which would have made it "beyond debate" to Officer Silva that her split-second decision violated some "clearly established" law. *Vos v.*

1  *Newport Beach, 892 F3d 1024, 1035 (9th Cir. 2018).* In order to satisfy this
2  burden, it is incumbent upon Plaintiffs to produce a case which informed all but
3  the most incompetent officer that their actions under the specific facts they were
4  facing violated a "clearly established" law. *Mullenix v. Luna, 577 U.S. 7, 12*
5  *(2015).* Contrary to the claim of the Galicia Plaintiffs that *Graham* was
6  sufficiently specific, the Supreme Court has cautioned that clearly established
7  rights are not to be interpreted at a high level. *Id.* This qualified immunity
8  analysis must be made and applied regardless of whether disputed issues of fact
9  might exist. *Isayeva v. Sacramento SO, 872 F3d 938, 945 (9th Cir. 2017)*

10  In their initial attempt to cite clearly established law, Plaintiffs cite to *S.B. v.*
11  *San Diego, 864 F3d 1010 (9th Cir. 2017)* Not only did the Ninth Circuit reverse the
12  lower court's denial of qualified immunity due to a lack of clearly established law,
13  but as the Ninth Circuit most recently pointed out in *Andrich v. Kostas, 2023 U.S.*
14  *App. LEXIS 25002, \*4 (9th Cir. 2023),* the fact that the suspect in *S.B.* was on his
15  knees at the time of the shooting was sufficient to make it factually dissimilar to
16  establish clearly established law for qualified immunity. Although Plaintiffs
17  erroneously suggest that the knife in *S.B.* was somehow more dangerous than the
18  solid wooden pole wielded by Garcia, the Ninth Circuit has recognized that even a
19  pen can be mightier than the sword. *Gregory v. Maui, 523 F3d 1103, 1106-07 (9th*
20  *Cir. 2008).* The bottom line is that *S.B.* is clearly insufficient to meet the Supreme
21  Court's demanding standard for qualified immunity. *Mullenix, supra.*

22  Plaintiffs' reliance on *Vos* is a bit confusing since it is not only factually
23  distinguishable, but the Ninth Circuit in *Vos* actually granted qualified immunity
24  in spite of issues of disputed facts. *892 F3d at 1035-36.*

25  Similarly, their reliance on *AKH v. Tustin, 837 F3d 1005 (9th Cir. 2016)* is
26  equally distinguishable wherein the suspect raised an empty hand and the case has
27  been consistently rejected as clearly established law. *Vasquez-Brenes v Las Vegas*
28  *Metro, 670 Fed. Appx 617, fn.1 (9th Cir. 2016); MJLH v. Pasadena, 2019 U.S.*

7

1  *Dist. LEXIS 88077, \*27 (C.D. Cal. 2019)* It is also ironic that Plaintiffs would
2  reference *Hughes v. Kisela, 862 F3d 775 (9th Cir. 2016)* since that was the very
3  case which the Supreme Court resoundingly reversed for a lack of clearly
4  established law. *Kisela v. Hughes, 138 S.Ct. 1148 (2018).*

5       Finally, Plaintiffs cite to *Estate of Aguirre v. Riverside, 29 F4th 624 (9th Cir.*
6  *2022)* as seemingly clearly established law. However, as this Court recently
7  pointed out, *Aguirre* was not published until after this 2021 incident and cannot
8  therefore be relied upon as clearly established law. *Lopez v. Riverside, 2022 U.S.*
9  *Dist. LEXIS 121026, fn.1 (C.D. Cal. 2022).* Moreover, the absence of BWC video
10 in *Aguirre* left only conflicting witness accounts as to whether the suspect was
11 actually in a position to threaten the deputy with the stick at the time of the
12 shooting. Here, however, the BWC video eliminates any such doubt.

13      Despite Plaintiffs' attempt to find a factually specific case meeting the
14 Supreme Court's demanding requirement for clearly established law, it is clear that
15 they have not and cannot do so. As such, Officer Silva is entitled to qualified
16 immunity.

17      **5.    ADEQUATE MEDICAL ASSISTANCE WAS PROVIDED.**

18      Undoubtedly recognizing that their lack of medical care claim is tenuous at
19 best, Plaintiffs have not and cannot deny that Officer Silva and others not only
20 promptly called for medics as the only requirement of *Tatum v. SF, 441 F3d 1090*
21 *(9th Cir. 2006),* but simply choose to ignore the undisputed BWC video depicting
22 officers in fact providing extensive first aid until medics arrived seven minutes
23 later to take over all treatment of Garcia. This claim simply cannot survive.

24      **6.    MONELL CLAIMS CANNOT SURVIVE.**

25     Like their claim of inadequate medical care, it is apparent that Plaintiffs
26 recognize the tenuous nature of their remaining *Monell* claims. Once again, it is
27 ironic that Plaintiffs cite *Benavidez v. San Diego, 993 F3d 1134 (9th Cir. 2021)* in
28 support of their *Monell* claim of heightened deliberate indifference in training

since the Ninth Circuit therein dismissed all such claims, noting that "municipal culpability. . . is at its most tenuous where a claim turns on failure to train." *Id., p. 1154.* Here, the undisputed evidence establishes that the City of Tustin provided Officer Silva with more than the required training for any officer [JAF19] Moreover, even if the Court was to somehow accept the non-mandated training suggestions of Plaintiffs' expert, a single officer's deviation from such training is insufficient to establish liability against the City. *Canton v. Harris, 489 U.S. 378, 387 (1989)*

### 7. PLAINTIFFS' 14TH AMENDMENT CLAIMS STILL FAIL.

Citing solely to the inapposite case of *Tennison v. San Francisco, 570 F3d 1078 (9th Cir. 2009),* Plaintiffs erroneously seek to compare the application of the "deliberate indifference" standard applied to decisions of prison officials to withhold Brady material to the dramatically different facts of this rapidly evolving street encounter in which Garcia suddenly attacked Officer Silva. However, as noted in Defendants' moving papers, even five minute encounters and prolonged pursuits must be analyzed under the heightened 14th Amendment "purpose to harm unrelated dto any legitimate law enforcement objective." standard. Cf. *Porter v. Osborn, 546 F3d 1131, 1137-39 (9th Cir. 2008).* Here, it is undisputed that Officer Silva's purpose was to apprehend Garcia and ultimately defend herself.

### 8. PLAINTIFFS' BANE ACT CLAIMS CONTINUE TO FAIL.

Ironically, all parties agree that *Reese v. Cty. of Sacramento, 888 F3d 1030 (9th Cir. 2018)* controls the analysis of Plaintiffs' so-called Bane Act claims. In this regard, the Ninth Circuit expressly stated that Plaintiffs must establish that Officer Silva not only intended to use force (even force which a jury might later find unreasonable), but instead must establish that the officer "intended not only the force, but its unreasonableness". *Id, p. 1045.* Here, while Officer Silva clearly intended to defend herself with force, there is zero evidence that she harbored the requisite specific intent that it be unreasonable. As such, all Bane Act claims fail.

9

### 9. **PLAINTIFFS' NEGLIGENCE CLAIMS FAIL.**

Having already provided an exhaustive analysis of Plaintiffs' negligence claims, Defendants simply add that it is agreed that *Hayes v. San Diego, 57 Cal.4th 622 (2013)* permits additional consideration of an officer's pre-shooting tactics with respect to any negligence claim.  However, as noted, the California Supreme Court and all subsequent cases have made it clear that Officer Silva need only have acted "within a range of conduct reasonable under the circumstances. . . and need not have chosen the 'most reasonable' action". *Id., p. 632.* While Plaintiffs' expert has conveniently suggested a number of non-mandated alternative tactics Officer Silva might have chosen, none of these tactics are sufficient to support Plaintiffs' negligence claims.  *Villalobos v. Santa Maria, 85 Cal.App.5th 383, 391 (2022).*

### 10. **CONCLUSION.**

By this Joint motion, all parties have had the opportunity to present their best facts and authorities.  Upon a thorough review of all respective positions, it is respectfully submitted that the only appropriate disposition of this admittedly tragic case is to end it by way of summary judgment.

Dated: November 6, 2023

FERGUSON, PRAET & SHERMAN
A Professional Corporation

By:    /s/   Bruce D. Praet
Bruce D. Praet, Attorneys for Defendants