UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMILY GARCIA; and C.G.,<br><br>　　　　　　Plaintiffs,<br><br>　v.<br><br>CITY OF TUSTIN; ESTELLA SILVA; and DOES 1 through 10,<br><br>　　　　　　Defendants.<br><br>Consolidated with WENDY LORENA GALICIA RAMIREZ; and KEVIN JOSUE GALICIA RAMIREZ,<br><br>　　　　　　Plaintiffs,<br><br>　v.<br><br>CITY OF TUSTIN; ESTELLA SILVA; and DOES 1 through 10,<br><br>　　　　　　Defendants. | Case No. 8:22-cv-00131-SPG-KES<br><br>**ORDER GRANTING, IN PART, AND DENYING, IN PART, RENEWED MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFFS' STATE LAW CLAIMS**<br>**[ECF NO. 38]** |

　　This matter is before the Court following the Ninth Circuit's Order, (ECF No. 89 ("Ninth Circuit Order")), reversing, in part, the Court's Order on Defendants' motion for summary judgment, (ECF No. 77 ("MSJ Order")). In the Court's MSJ Order, the Court granted summary judgment for Defendants on all of Plaintiffs' federal law claims and

declined to exercise supplemental jurisdiction over the remaining state law claims. (MSJ Order at 42). On appeal, the Ninth Circuit reversed the dismissal of Plaintiffs' Fourth Amendment excessive force claim and the Court's decision to decline supplemental jurisdiction. (Ninth Circuit Order at 6). Following remand, the Court must now address the parties' outstanding arguments as to Plaintiffs' state law claims. *See* (ECF No. 38 ("Motion") at 53-59). Having considered the parties' submissions, the relevant law, and the record in this case, the Court GRANTS, in part, and DENIES, in part, the Motion.

## I. BACKGROUND[1]

### A. Factual Background

This case arises from the August 9, 2021, fatal shooting of Luis Garcia ("Garcia") by Officer Estella Silva ("Officer Silva") of the Tustin Police Department. Garcia's two daughters (the "Garcia Plaintiffs") and his wife and son from another relationship (the "Galicia Plaintiffs," or, together with the Garcia Plaintiffs, "Plaintiffs") sued Officer Silva and the City of Tustin ("Defendants"), alleging constitutional and state law violations.

The Court previously summarized the factual background of this case in detail in its MSJ Order. *See* (MSJ Order at 3-8). In brief, on August 9, 2021, the Tustin Police Department received a 911 call reporting that a homeless man had been seen "living in the bushes" in front of the Saddleback Mobile Lodge. (JAF 1; ECF No. 38-2 ("JAE") at 6 ("Critical Incident Release ("CIR") Recording")). The caller reported that she had seen

---

[1] The following summarized facts are uncontroverted unless otherwise stated. *See* (ECF No. 38-1 (Joint Appendix of Facts ("JAF"))). When determining a motion for summary judgment, the Court considers only evidence admissible at trial, though the form may differ at the summary judgment stage. *Godinez v. Alta-Dena Certified Dairy LLC*, No. CV 15-01652 RSWL (SSx), 2016 WL 6915509, at *3 (C.D. Cal. Jan. 29, 2016). The Court has reviewed the entire record, including the parties' JAF, objections, and evidence. The Court discusses only the facts that are relevant to its decision. To the extent the Court relies on evidence that is subject to an objection, the Court overrules the objection for purposes of this Motion. To the extent the Court does not rely on evidence objected to by the parties, the objections are overruled as moot for purposes of this Motion.

the man the day before carrying a knife but indicated that she had not personally seen him that day. (CIR Recording at 1:33-54).

Officer Silva responded to the call along with Officers Yuhas and Frias. (JAF 2). The subsequent encounter between Garcia and the officers was recorded by Officer Yuhas's body-worn camera. *See* (JAE at 188 ("Yuhas Footage")). In the video, Officer Silva approaches the hedge where Garcia was located, observes Garcia asleep on the ground, and tells Garcia to wake up and come out with his hands up. (Yuhas Footage at 0:19-0:26). Officer Silva recognizes Garcia, stating, "I know you, come on." (*Id.* at 0:28-0:29). In her deposition, Officer Silva stated that she had previously interacted with Garcia on three occasions: (1) in 2020, after Garcia had been reported brandishing a knife; (2) in 2020, when she detained Garcia in connection with an alleged robbery and assault with a deadly weapon; and (3) in 2021, when she arrested Garcia on a felony warrant for assault with a deadly weapon and for possession of methamphetamine. (JAF 5-7; JAE at 60-63).

After Officer Silva tells Garcia that she recognizes him, Officer Silva and Garcia communicate for nearly a minute, with Garcia asking why he is being targeted and stating that he is just collecting recyclables, and Officer Silva repeatedly instructing Garcia to come out from the hedge with his hands up. (Yuhas Footage at 0:29-1:16). At one point, Officer Silva says, "Dude, I'm going in," and moves towards the opening in the hedge but stops after Officer Yuhas tells her to wait. (*Id.* at 1:17-1:21). Shortly afterwards, Garcia begins to come out of the opening in the hedge but quickly retreats when Officers Silva and Yuhas reach out towards him. (*Id.* at 1:28-1:30). Officer Silva then moves towards the hedge opening but retreats upon seeing Garcia carrying a large wooden pole. (*Id.* at 1:33-1:36). Officer Silva then draws her firearm and points it towards the opening of the hedge, yelling, "Get your hands up." (*Id.* at 1:36-1:38). At the same time, Officer Yuhas draws his Taser and points it towards the hedge opening. (*Id.*). Garcia then emerges from the hedge holding a long wooden pole, which appears to extend from approximately his knee to above his head. (*Id.* at 1:38-39). As Garcia emerges, Officer Yuhas fires his Taser, striking Garcia. (*Id.* at 1:39). Shortly thereafter, with Garcia still holding the wooden pole

and positioned approximately 2-3 feet away from Officer Silva, Officer Silva fires her firearm twice in quick succession. (*Id.* at 1:41-42). Garcia runs a few feet southbound, drops the pole, and collapses into a shrub next the sidewalk after being pushed by Officer Frias. (*Id.* at 1:41-43). The officers then converge on Garcia and cuff him. (*Id.* at 1:43-2:18). The officers contacted paramedics, who arrived seven minutes later, but Garcia tragically died. (*Id.* at 1:43-8:44).

### B. Procedural History

The Garcia Plaintiffs initiated this suit on January 25, 2022, alleging federal constitutional claims for use of excessive force, denial of medical care, loss of familial relations, and municipal liability, as well as state law claims for negligence, battery, and violations of California's Tom Bane Civil Rights Act ("Bane Act"), Cal. Civ. Code § 52.1. (ECF No. 1 ("Garcia Complaint")). The Galicia Plaintiffs filed a separate complaint on August 31, 2022, asserting similar claims against Defendants. *See Galicia Ramirez v. City of Tustin*, No. 8:22-cv-01619-SPG-KES (C.D. Cal. Aug. 31, 2022), ECF No. 1 ("Galicia Complaint"). The Court granted the parties' stipulation to consolidate the two cases on December 16, 2022. (ECF No. 27).

On October 30, 2023, Defendants moved for summary judgment. (Mot.). On March 18, 2024, the Court issued its MSJ Order, granting summary judgment as to all of Plaintiffs' federal law claims. (MSJ Order). First, on Plaintiffs' excessive force claims, the Court concluded that, while there was a triable issue of fact whether Officer Silva's use of force was excessive, Officer Silva was entitled to invoke qualified immunity because Plaintiffs failed to show that Officer Silva's conduct violated a clearly established constitutional right. (*Id.* at 11-36). Second, the Court granted summary judgment as to Plaintiffs' denial of medical care claims because the uncontroverted evidence showed that the officers promptly summoned medical assistance and attempted to provide preliminary medical care themselves. (*Id.* at 37-38). Third, the Court dismissed the *Monell* claims against the City of Tustin because Plaintiffs failed to establish a pattern of similar constitutional violations by untrained employees. (*Id.* at 39). Fourth, the Court granted summary judgment as to

the loss of familial relations claims because there was no evidence that Officer Silva acted with intent to harm Garcia unrelated to legitimate law enforcement objectives. (*Id.* at 40). Finally, because no federal claims remained, the Court declined to exercise supplemental jurisdiction and dismissed the remaining state law claims. (*Id.* at 40-42).

Plaintiffs appealed the MSJ Order as to the excessive force and familial association claims,[2] and, on August 8, 2025, the Ninth Circuit issued its Order, reversing, in part, and affirming, in part, the MSJ Order. (Ninth Circuit Order). The Ninth Circuit found that the Court erred in granting summary judgment on the excessive force claim because the application of qualified immunity depends on how the jury resolves contested issues of material fact. (*Id.* at 3). As to the familial association claim, the Ninth Circuit affirmed summary judgment, concluding that "nothing in the record support[ed] the claim that Officer Silva acted with any purpose besides her subjective belief that she was defending herself and other officers." (*Id.* at 5). The Ninth Circuit remanded "for a trial to resolve the material disputed facts." (*Id.* at 6). Because the Ninth Circuit reversed the excessive force claim, it also reversed the Court's decision to decline supplemental jurisdiction over the state law claims. (*Id.*).

Following remand, the Court held a status conference on September 24, 2025, at which the parties agreed to a trial date of April 14, 2026. (ECF No. 94). During the status conference, the Court issued tentative oral rulings regarding the parties' summary judgment arguments on the remaining state law claims. The Court now issues this Order to clarify and memorialize those rulings.

## II.    LEGAL STANDARD

Summary judgment is appropriate where the pleadings, discovery, and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may

---

[2] Plaintiffs did not appeal the grant of summary judgment as to the denial of medical care or *Monell* claims. (Ninth Circuit Order at 2).

affect the outcome of the case. *See Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of establishing the absence of any genuine issues of material fact, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), and the court must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party, *Scott v. Harris*, 550 U.S. 372, 378 (2007).

To meet its burden, "[t]he moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000). Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that generic disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587 (quoting Fed. R. Civ. P. 56(e)) (emphasis omitted). No genuine issue for trial exists "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Id*.

III. DISCUSSION

    A. **Negligence Claims**

Plaintiffs' first state law claim is for negligence. In their Complaints, Plaintiffs assert several theories of liability, including negligent training, negligent medical care, and negligent use of deadly force. *See* (Garcia Compl. ¶ 86; Galicia Compl. ¶ 106). Under any of these theories, the elements of a negligence claim are the same: "(1) the existence of a duty, (2) a breach of that duty, (3) injury to the plaintiff caused by the defendant's breach, and (4) actual damages." *Romero v. Los Angeles Rams*, 91 Cal. App. 5th 562, 567 (2023).

Consistent with its MSJ Order and the Ninth Circuit's Order, the Court rejects the theories of liability premised on negligent training and negligent medical care. In rejecting Plaintiffs' Fourth Amendment denial of medical care claim, the Court concluded based on the body-worn video that Officer Silva and her colleagues had provided objectively reasonable care to Garcia by promptly summoning medical assistance and attempting to provide preliminary medical care themselves. (MSJ Order at 37-38). Plaintiffs did not appeal this aspect of the MSJ Order. *See* (Ninth Circuit Order at 2). Because Defendants acted reasonably in providing medical care, they did not breach any duty potentially owed to Garcia.

As to the negligent training theory, Plaintiffs have not identified any basis to overcome the City's statutory immunity. Under California law, "[e]xcept as otherwise provided by statute . . . [a] public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." Cal. Gov't Code § 815(a). California courts have explained that in suits against public entities, "as a condition to the injured party's recovery on a *direct* liability theory," the injured party must "identify 'a specific statute declaring [the entity] to be liable, or at least creating some specific duty of care' by the agency in favor of the injured party." *De Villers v. Cnty. of San Diego*, 156 Cal. App. 4th 238, 247 (2007) (quoting *Eastburn v. Reg. Fire Prot. Auth.*, 31 Cal. 4th 1175, 1183 (2003)). Plaintiffs' theory that the City failed to adequately train its officers is a theory of direct liability against the City. *See Koussaya v. City of Stockton*, 54 Cal. App. 5th 909, 943 (2020). Because Plaintiffs have not identified any statute imposing a legal duty on the City sufficient to overcome the general grant of immunity, this negligence theory fails as well. *See Munoz v. City of Union City*, 120 Cal. App. 4th 1077, 1112-13 (2004) (concluding that city was immune from tort claims premised on theory of direct liability for failure to adequately train police officers), *overruled on other grounds by Hayes v. Cnty. of San Diego*, 57 Cal. 4th 622, 639 n.1 (2013).

However, as to the negligent use of deadly force claim, the Court finds that there is a triable issue of fact as to Defendants' liability. In its MSJ Order, the Court found that a "reasonable jury *could* find in Plaintiffs' favor" on Plaintiffs' Fourth Amendment excessive force claims, (MSJ Order at 22), and the Ninth Circuit affirmed this holding on appeal, (Ninth Circuit Order at 3). The same is true as to the negligence claim. California courts have recognized that "peace officers have a duty to act reasonably when using deadly force." *Hayes*, 57 Cal. 4th at 629. This determination is made "in light of the totality of circumstances," including any "preshooting conduct" relevant to the determination of whether the shooting itself was negligent. *Id.* at 631. This standard is essentially equivalent to the "objectively reasonable" standard applied to Fourth Amendment excessive force claims. *See Rice v. Morehouse*, 989 F.3d 1112, 1121 (9th Cir. 2021); *see, e.g.*, *Quinto-Collins v. City of Antioch*, 718 F. Supp. 3d 1033, 1058 (N.D. Cal. 2024) ("Courts generally analyze [negligent use of deadly force claims] under the same rubric as § 1983 claims based on the Fourth Amendment."). Because the Court previously found a triable issue of fact on the Fourth Amendment excessive force claim, the Court reaches the same conclusion as to the negligent use of deadly force claim.

### B.     Battery Claims

Plaintiffs next raise a claim for battery based on the shooting of Garcia. (Garcia Compl. at 21-22; Galicia Compl. at 25). The elements of a civil battery claim are "(1) defendant[s] intentionally performed an act that resulted in a harmful or offensive contact with the plaintiff's person; (2) plaintiff did not consent to the contact; and (3) the harmful or offensive contact caused injury, damage, loss or harm to plaintiff." *Brown v. Ransweiler*, 171 Cal. App. 4th 516, 526-27 (2009). To state a claim for battery against a police officer, Plaintiffs must also "prove unreasonable force as an element of the tort." *Edson v. City of Anaheim*, 63 Cal. App. 4th 1269, 1272 (1998).

As the parties agree, this claim should be analyzed under the same framework as the Fourth Amendment excessive force claim. *See* (Mot. at 54-55). As the Court concluded with respect to the excessive force claim, there is a triable issue of fact as to whether Officer

Silva's use of force was reasonable. The Motion is therefore DENIED as to the battery claim.

### C. Bane Act Claims

Finally, Plaintiffs raise a claim under the Bane Act, alleging deprivations of Garcia's Fourth Amendment right to be free from excessive force and Fourteenth Amendment right to due process. (Garcia Compl. ¶¶ 104, 106; Galicia Compl. ¶ 115). The Bane Act creates a private cause of action against a person who "interferes by threat, intimidation, or coercion . . . with the exercise or enjoyment by any individual . . . of rights secured by the Constitution or laws of the United States." Cal. Civ. Code § 52.1. "The elements of a Bane Act claim are essentially identical to the elements of a § 1983 claim, with the added requirement that the government official had a specific intent to violate a constitutional right." *Hughes v. Rodriguez*, 31 F.4th 1211, 1224 (9th Cir. 2022).

Because the Court has found that there is a triable issue of fact as to whether Defendants committed a constitutional violation, the only remaining issue here is whether Plaintiffs can demonstrate that Officer Silva acted with specific intent. The test for specific intent requires two determinations: (1) whether the "right at issue [was] clearly delineated and plainly applicable under the circumstances of the case"; and (2) whether "the defendant commit[ted] the act in question with the particular purpose of depriving the citizen victim of his enjoyment of the interests protected by that right." *Cornell v. City & Cnty. of San Francisco*, 17 Cal. App. 5th 766, 803 (2017) (citation and alterations omitted). To meet the latter requirement for an excessive force claim, "the jury must find that the defendants intended not only the force, but its unreasonableness, its character as more than necessary under the circumstances." *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1045 (9th Cir. 2018) (internal quotation marks and citation omitted). However, "it is not necessary for the defendants to have been thinking in constitutional *or legal terms* at the time of the incidents, because a reckless disregard for a person's constitutional rights is evidence of a specific intent to deprive that person of those rights." *Id.* (internal quotation marks and citation omitted); *see also S.R. Nehad v. Browder*, 929 F.3d 1125, 1142 n.15 (9th Cir. 2019)

("Although Bane Act claims do require the specific intent to deprive a person of constitutional rights, such intent can be proven by evidence of recklessness.").

Notwithstanding the Court's tentative, oral ruling on the Bane Act claim, upon further consideration of the relevant case law, the Court finds that there is a triable issue of fact as to whether Officer Silva possessed the requisite specific intent. On the first element, Plaintiffs' claim is premised on a right to be free from objectively unreasonable lethal force. *See* (Garcia Compl. ¶ 104; Galicia Compl. ¶ 114). Both California and federal courts have "long recognized that peace officers have a duty to act reasonably when using deadly force." *Hayes*, 57 Cal. 4th at 629; *see also Tennessee v. Garner*, 471 U.S. 1, 11 (1985). The Court therefore finds that this right was "clearly delineated and plainly applicable" at the time of Garcia's death. *Cornell*, 17 Cal. App. 5th at 803 (citation omitted); *see Hulet v. Cnty. of Tuolumne*, No. 1:23-cv-01217-KES-HBK, 2024 WL 3758360, at *13 (E.D. Cal. Aug. 12, 2024) ("[T]he right at issue—the right to be free from excessive force under the Fourth Amendment to the United States Constitution—is clearly delineated and plainly applicable.").

The second element poses a "question of fact" that should ordinarily be left for the jury to determine. *Cornell*, 17 Cal. App. 5th at 804; *see also Chinaryan v. City of Los Angeles*, 113 F.4th 888, 907 (9th Cir. 2024) ("In most cases, . . . the existence of specific intent for a Bane Act claim is a question that is properly reserved for the trier of fact." (internal quotation marks and citation omitted)). For the same reasons that the Court found triable issues of fact as to the reasonableness of Officer Silva's use of force, the Court finds that there is a material dispute as to whether Officer Silva acted intentionally or recklessly in using excessive force. A reasonable jury could conceivably find that Garcia was attempting to cooperate with the officers just before the shooting by emerging from the hedge with his belongings. Further, as discussed in the Court's previous MSJ Order, at the time of the shooting, Garcia had already been Tased by another officer; without waiting for the Taser to take effect or attempting to reposition herself further from Garcia, Officer Silva then fired multiple shots at Garcia from a close distance. While Garcia possessed a

large wooden pole that might potentially have been used as a weapon, the Court previously found that there were triable issues of fact as to whether the pole was in fact being used in such a manner. (MSJ Order at 16-17). Under these circumstances and taking the facts in the light most favorable to Plaintiffs, the Court concludes that a reasonable jury could find that Officer Silva acted at least recklessly in resorting to the use of deadly force against Garcia. *See Gonzalez v. City of Alameda*, No. 21-cv-09733-DMR, 2023 WL 6232239, at *21 (N.D. Cal. Sept. 22, 2023) ("If a reasonable jury concludes that [the decedent] did not pose an immediate threat and was not actively resisting the officers, it could infer that the officers acted with reckless disregard sufficient for [the plaintiff] to prevail on his Bane Act claim."); *S.T. by & through Niblett v. City of Ceres*, 327 F. Supp. 3d 1261, 1283 (E.D. Cal. 2018) ("[A] reasonable jury could conclude that officer Defendants acted unreasonably *and* with reckless disregard for [the decedent's] rights under the Fourth Amendment when they shot him twice in the back while he was fleeing."); *Est. of Chivrell v. City of Arcata*, No. 22-cv-00019-HSG, 2025 WL 2210020, at *16 (N.D. Cal. Aug. 4, 2025) (finding that "the same factual questions that preclude summary judgment on the excessive force claim also preclude summary judgment on" Bane Act claim). Accordingly, the Court DENIES summary judgment on the Bane Act claim.

//
//
//
//
//
//
//
//
//
//
//

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS, in part, and DENIES, in part, the Motion as to Plaintiffs' state law claims. The Court GRANTS the Motion as to Plaintiffs' theories of negligent training and negligent medical care. The Court otherwise DENIES the Motion as to the negligent use of deadly force, battery, and Bane Act claims.

**IT IS SO ORDERED.**

DATED: November 3, 2025

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE