Bruce D. Praet, SBN 119430
**JONES MAYER**
3777 North Harbor Boulevard
Fullerton, CA 92835
Telephone: (714) 446-1400
Facsimile: (714) 446-1448
bpraet@aol.com

Attorney for Defendants

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMILY GARCIA and C.G., by and through her guardian ad litem, Rosala Becerra, individually and as successors-in-interest; WENDY LOREN GALICIA RAMIREZ, Individually and as Successor in Interest (Decedent's Wife) and KEVIN JOSUE GALICIA RAMIREZ, Individually and as Successor in Interest (Decedent's Son),<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF TUSTIN, ESTELLA SILVA and Does 1 through 10, Inclusive,<br><br>Defendants. | Case No: 8:22-cv-00131- SPG- KES<br><br>**DEFENDANTS' TRIAL BRIEF [MEMORANDUM OF CONTENTIONS OF LAW AND FACT]**<br><br><br><br><br><br>**Pretrial Conference: April 1, 2026<br>Trial:  April 14, 2026** |

-1-

**DEFENDANTS' TRIAL BRIEF**

## 1. PREFATORY STATEMENT.

Following this Court's ruling(s) on summary judgment and with guidance from the Ninth Circuit, the scope of this case has been substantially narrowed to essentially three theories:

- "Excessive/unreasonable force" via the Fourth Amendment and "battery"
- "Negligence" (limited to pre-shooting tactics) as well as comparative negligence by decedent.
- "Bane Act" – intentional/reckless constitutional violation under state law.

Correspondingly, all direct claims against the City of Tustin (e.g. *Monell* and "failure to train"), all Fourteenth Amendment claims (loss of familial relations), and all claims of negligent or inadequate medical care have been dismissed by this Court's summary judgment orders [Dkt. 77 and 98]. reinforced by the Ninth Circuit. Critically, however, while the Ninth Circuit's split decision preliminarily withheld qualified immunity for Officer Silva, it also made it very clear that qualified immunity remains a valid defense pending certain factual determinations by the trier of fact.

With experienced and cooperative trial counsel for all parties, Defendants will attempt to provide the Court with a brief overview of the remaining issues pending trial.

## 2. BIRFUCATION WILL MAXIMIZE EFFICIENCY AND MINIMIZE PREJUDICE.

By separate motion, Defendants respectfully urge the Court to bifurcate the liability phase of trial from any potential damage phase. With the underlying officer-involved shooting (OIS) captured on body worn camera (BWC), the presentation of evidence relevant to any issues of possible liability will be relatively straightforward and will likely involve the testimony of only three percipient police officers and three designated police practices experts. Having tried several OIS cases with Plaintiffs' counsel, Mr. Galipo, in federal court, it is anticipated that a liability phase of trial could be completed in four days.

However, as the Court is aware, there are four separate Plaintiffs, none of whom have any evidence relevant to issues of liability. Moreover, they are separately represented by two

different attorneys and two of them will require Spanish-English interpreters. Although Plaintiffs' counsel suggest that the testimony of these individuals might be "brief", it is easily predictable that translated testimony from emotional relatives will easily extend this trial into a second week. Moreover, such emotional testimony will inevitably distract the jury from factual issues relevant to liability and unduly prejudice Officer Silva who is entitled to a verdict based on the facts rather than sympathy.

As more fully set forth in Defendants' motion, it is respectfully urged that this Court fulfill the purpose of *F.R.Civ.P., Rule 42(b)* to "avoid prejudice and expedite or economize" trial by bifurcating liability from damages, if any.

### 3. QUALIFIED IMMUNITY MUST BE PRESERVED.

In its ruling denying qualified immunity at the summary judgment stage, the Ninth Circuit made it unavoidably clear that even if the jury finds that Officer Silva used unreasonable force, qualified immunity remains a defense at trial depending on how the jury might resolve disputed factual questions posed as special interrogatories in a special verdict form. *Slip Op., p.5, fn.6.* The Ninth Circuit even provided guidance on the factual issues to be resolved.

Unfortunately, because Plaintiffs will not concede this guidance from the Ninth Circuit, Defendants have necessarily provided a separate proposed special verdict form incorporating these outstanding factual questions to be resolved in the unlikely event that the jury somehow concludes that Officer Silva used unreasonable force.

### 4. COMPARATIVE NEGLIGENCE PRESENTS UNIQUE ISSUES.

Because Plaintiffs continue to maintain their "negligence" claims under state law, this presents several issues:

Ever since the California Supreme Court decided *B.B. v. Cnty. of Los Angeles*, 10 Cal. 5th 1 (2020), trial counsel and courts have wrestled with how to apply it in matters of alleged excessive force. Decided solely on the basis of Prop. 51 [*Calif. Civil Code § 1431, et seq.*], the California Supreme Court held that an intentional tortfeasor could not reduce their liability on a theory of comparative fault.



However, in the instant case, the jury will be asked to determine the reasonableness of force under both the Fourth Amendment and state battery claims. In *Edson v. Anaheim, 63 Cal.App. 4th 1269 (1998)*, the Court recognized that police officers (unlike private persons who must engage in an "intentional" or "offensive" touching in order to commit a battery) are charged with an affirmative duty to apply force in certain circumstances in order to protect the public. Ever since *Edson*, the California courts have therefore mirrored the Fourth Amendment standard of "objective reasonableness" in order to determine whether a police officer committed a "battery". *Id., p. 1275.* In other words, a jury's finding of "unreasonable force" is not the same as a finding that the officer "intentionally" applied excessive force or committed an "intentional" tort as contemplated in *B.B.*. On the contrary, it is merely a finding that the use of force was "unreasonable".

Even the U.S. Supreme Court has made it clear that an officer's intent (good or evil) is not relevant to determining whether an application of force is objectively reasonable. *Graham v. Connor, 490 U.S. 386, 397 (1989).*

Moreover, in virtually every case of alleged excessive force by law enforcement (including the instant case), there is substantial evidence that the suspect partially contributed to his/her situation which ultimately led to the application of force. Whether the suspect acted negligently, intentionally or even criminally to precipitate an officer's use of force, the over-extension of the *B.B.* case erroneously precludes a jury from even partially offsetting an officer's use of "unreasonable" force in the face of undeniable evidence that the plaintiff contributed to the reason for the force.

More importantly, it would unjustly reward a suspect whose own conduct precipitates an officer's responsive force. For example, if a subject with undisclosed suicidal ideation points a replica firearm at a police officer to provoke the officer into responding with deadly force, a jury might subsequently find that the use of deadly force was "unreasonable". Yet, under the suggested application of *B.B.*, the jury would seemingly be precluded from assessing any comparative fault to the individual whose undeniably wrongful conduct provoked the shooting. The absurd result would be to unjustly reward the individual whose own conduct

caused his injuries simply because the officer was later found to have used "unreasonable" force.

Moreover, under CACI 407 (Comparative Fault of Decedent), the Court expressly instructs the jury to determine a percentage of decedent's own negligence, if any, which might have been a substantial factor in causing his death. The Court then assures the jury that the Court will then calculate a reduction in damages according to any percentage assigned by the jury. Properly relying on this instruction, the jury would clearly expect any damage award to be reduced by its assigned percentage. Yet, if *B.B.* is applied because the jury may have found "unreasonable" (rather than intentional) force, the jury's assessment of comparative fault becomes meaningless and results in an inconsistent verdict.

As if the aforementioned problems with the application of *B.B.* were not enough, Plaintiffs' "negligence" claim is the sole basis for their wrongful death damages under *Calif. Code of Civil Procedure § 377.34 and 377.61*. Yet, while damages for a Fourth Amendment may include decedent's pain and suffering (if any), such damages are expressly precluded under a wrongful death claim. Thus, if the jury finds "unreasonable force" as well as "negligence" on the part of Officer Silva, an application of *B.B.* would permit an award of wrongful death damages to Plaintiffs on a negligence claim while inexplicably barring a reduction in those negligence damages based on decedent's own negligence. It simply makes no sense!

5. **MINIMAL LIMINE ISSUES REMAIN.**

In anticipation of trial originally set for March 12, 2024, Plaintiffs filed three limine motions [Dkt. 45, 49 and 51], two of which are essentially unopposed by Defendants. At this point, it would appear that Plaintiffs will be re-filing those motions and Defendants will update any opposition/stipulations. Following the narrowing of the issues in this case, Defendants will now separately file a single limine motion necessarily seeking to limit the scope of the testimony anticipated from Plaintiffs' designated police practices expert, Roger Clark.

6. **BWC VIDEO SHOULD BE LIMITED TO REAL TIME.**

Based upon Plaintiffs' listed exhibits, it would appear that Plaintiffs intend to play



**DEFENDANTS' TRIAL BRIEF**

BWC video in slow motion. While it may (or may not) be appropriate to display one or more aspects of this incident in one or more single screen shots, it would violate the Supreme Court's prohibition against the use of 20/20 hindsight to permit the jury to view this rapidly evolving situation in anything other than the real time sequence experienced by Officer Silva and the other officers on scene at the time. *Graham v. Connor*, 490 U.S. 386, 396-97 (1989)

Although not yet specifically addressed by the Ninth Circuit, several circuits have held it to constitute reversible error to permit BWC video to be viewed in any manner other than the real time experienced by the officers. *Cunningham v. Shelby Cnty.*, 994 F3d 761, 766 (10th Cir. 2021) cert denied 142 S.Ct. 711 (2021); *Tucker v. Shreveport*, 998 F3d 165, 176 (5th Cir. 2021); *Lopez v. Sheriff of Cook Cnty.*, 993 F3d 981, 992 (7th Cir. 2021); Cf. *Estate of Richards v. City of New York*, 2024 U.S. Dist. LEXIS 136610, *30.

Here, absent a stipulation between the parties to display individual screen shots for any limited purpose, Defendants would object to the display of any BWC video in other than real time.

### 7.  CONCLUSION.

With relatively few, but important, issues for the Court to resolve, Defendants look forward to a fair and efficient trial.

DATED: March 4, 2026                              JONES MAYER

By: /s/ *Bruce D. Praet*
    Bruce D. Praet, Attorneys for Defendants

