# EXHIBIT B

**EMILY GARCIA, ET AL. vs CITY OF TUSTIN, ET AL.**
Estela Silva on 03/22/2023

```
 1                    UNITED STATES DISTRICT COURT

 2                   CENTRAL DISTRICT OF CALIFORNIA

 3

 4   EMILY GARCIA, et al.                   )
                                            )
 5                  Plaintiffs,             )
                                            )
 6                  vs.                     )Case No.
                                            )8:22-CV-00131-DOC-KES
 7   CITY OF TUSTIN, et al.,                )
                                            )
 8                  Defendants.             )
     _____)
 9   WENDY LORENA GALICIA RAMIREZ, et al., )
                                            )
10                  Plaintiffs,             )
                                            )
11   CITY OF TUSTIN, et al.,                )
                                            )
12                  Defendants,             )
     _____)
13

14

15

16          REMOTE VIDEOCONFERENCE DEPOSITION OF

17                      ESTELA SILVA

18              WEDNESDAY, MARCH 22, 2023

19

20

21

22

23   Reported Stenographically By:

24   Jinna Grace Kim, CSR No. 14151

25   Job No.:  446100
```

**EMILY GARCIA, ET AL. vs CITY OF TUSTIN, ET AL.**
Estela Silva on 03/22/2023                                    Page 2

```
 1                    UNITED STATES DISTRICT COURT

 2                   CENTRAL DISTRICT OF CALIFORNIA

 3

 4   EMILY GARCIA, et al.                    )
                                             )
 5                  Plaintiffs,              )
                                             )
 6                  vs.                      )Case No.
                                             )8:22-CV-00131-DOC-KES
 7   CITY OF TUSTIN, et al.,                 )
                                             )
 8                  Defendants.              )
     _____)
 9   WENDY LORENA GALICIA RAMIREZ, et al., )
                                             )
10                  Plaintiffs,              )
                                             )
11   CITY OF TUSTIN, et al.,                 )
                                             )
12                  Defendants,              )
     _____)
13

14

15

16          The remote videoconference deposition of ESTELA

17   SILVA, taken on behalf of the Plaintiffs, beginning at 10:04

18   a.m., and ending at 1:40 p.m., on Wednesday, March 22, 2023,

19   before Jinna Grace Kim, Certified Stenographic Shorthand

20   Reporter No. 14151.

21

22

23

24

25
```

**EMILY GARCIA, ET AL. vs CITY OF TUSTIN, ET AL.**
Estela Silva on 03/22/2023                                      Page 3

```
 1    APPEARANCES OF COUNSEL:

 2
      For the Plaintiffs:
 3
                  LAW OFFICES OF DALE K. GALIPO
 4                BY:  DALE K. GALIPO, ESQ.
                  BY:  RENEE V. MASONGSONG, ESQ.
 5                21800 Burbank Boulevard, Suite 310
                  Woodland Hills, California 91367
 6                Tel:  818-347-3333
                  Fax:  818-347-4118
 7                E-mail:  dalekgalipo@yahoo.com
                  E-mail:  rvalentine@galipolaw.com
 8

 9                CARILLO LAW FIRM, LLP
                  BY:  LUIS A. CARRILLO, ESQ.
10                BY:  MICHAEL S. CARRILLO, ESQ.
                  1499 Huntington Drive, Suite 402
11                South Pasadena, California 91030
                  Tel:  626-799-9375
12                Fax:  626-799-9380
                  E-mail:  lac4justice@gmail.com
13                E-mail:  mc@carrillofirm.com

14
                  JESUS EDUARDO ARIAS, ESQ.
15                BY:  JESUS EDUARDO ARIAS, ESQ.
                  18000 Studebaker Road, Suite 700
16                Cerritos, California 90703
                  Tel:  323-815-9450
17                Fax:  323-375-1196
                  E-mail:  jearias@jesuseduardoarias.com
18

19    For the Defendants:

20                FERGUSON, PRAET & SHERMAN
                  BY:  BRUCE D. PRAET, ESQ.
21                1361 East 18th Street
                  Santa Ana, California 92705
22                Tel:  714-953-5300
                  Fax:  714-953-1143
23                E-mail:  bpraet@aol.com

24

25
```

**EMILY GARCIA, ET AL. vs CITY OF TUSTIN, ET AL.**
Estela Silva on 03/22/2023                                Page 4

```
 1                          INDEX

 2   WITNESS:                                      PAGE

 3   ESTELA SILVA

 4      BY: MR. GALIPO                             5

 5      BY: MR. ARIAS                             96

 6      BY: MR. GALIPO                            122

 7

 8                        EXHIBITS

 9   MARKED FOR IDENTIFICATION                    PAGE

10   Exhibit 1              Transcription          92

11   Exhibit 2              Officer Yuhas Body-Worn 92
                            Video
12
     Exhibit 3              Officer Frias Body-Worn 94
13                          Video

14   Exhibit 4              Still Image             97

15   Exhibit 5              Video                  107

16   Exhibit 6              Video                  116

17   Exhibit 7              Still Image            122

18   Exhibit 8              Still Image            123

19

20

21

22

23

24

25
```

**EMILY GARCIA, ET AL. vs CITY OF TUSTIN, ET AL.**
Estela Silva on 03/22/2023                                   Page 20

```
 1      Q.   Did you ever see a knife in the decedent's hands?

 2      A.   No, sir.

 3      Q.   Did you see what you believed to be a knife on his

 4   person?

 5      A.   Not that I can see, no, sir.

 6      Q.   Did the decedent ever verbally threaten to harm you,

 7   verbally threaten to harm you before you fired?

 8      A.   At the time I remembered him saying the word

 9   (foreign word) which I interpreted as come at, like, meaning

10   to come at me or let's go.

11      Q.   You interpreted that as a verbal threat to harm

12   you?

13      A.   Yes, sir.

14      Q.   Anything else that you heard that you believed was a

15   verbal threat to harm you?

16      A.   No, sir.

17      Q.   And when did you hear him say that in relation to

18   you firing your first shot?

19      A.   It was right before -- it was as he came out and was

20   holding his weapon up his head right before he was willing to

21   swing it.

22      Q.   Okay.  You already told me you didn't see a gun or a

23   knife; is that correct?

24      A.   Yes, sir.

25      Q.   Okay.  And when you say his weapon, are you talking
```

**EMILY GARCIA, ET AL. vs CITY OF TUSTIN, ET AL.**
Estela Silva on 03/22/2023                                    Page 43

```
 1        Q.    Had you seen this person before?

 2        A.    Yes, sir.

 3        Q.    Okay.  Would it be fair to say you at least

 4   recognized that the person was not a male, white?

 5        A.    Yes, sir.

 6        Q.    And would it be fair to say you knew the person did

 7   not have blond hair?

 8        A.    Yes, sir.

 9        Q.    And how did you know the person from before?

10        A.    From prior contacts with him.

11        Q.    Okay.  And did you say something to the effect, I

12   know who you are?

13        A.    Yes, sir.

14        Q.    And how many prior contacts did you have with this

15   person?

16        A.    Three, sir.

17        Q.    And can you tell me the nature of those contacts,

18   please.

19        A.    Yes, sir.  The first contact was a male seen waving

20   a knife in the air.  The second contact was the victim called

21   that they were robbed in the city of Santa Ana, knocked

22   unconscious by the subject, and they saw the suspect in the

23   city of Tustin, and I located him.  And the third was a call

24   for service referenced to transients disassembling a child

25   bicycle in the back of a gas station which resulted in arrest
```

**EMILY GARCIA, ET AL. vs CITY OF TUSTIN, ET AL.**
Estela Silva on 03/22/2023                                    Page 44

1    for a assault with a deadly weapon warrant and possession of

2    methamphetamine.

3         Q.   Okay.  The first contact, do you know what year that

4    was in if the --

5         A.   I believe --

6         Q.   -- go ahead.

7         A.   I believe it was 2020.

8         Q.   Okay.  Did that first contact result in an arrest?

9         A.   No, sir.

10        Q.   Was there any conviction that you're aware of

11   related to that first contact?

12        A.   No, sir.

13        Q.   Did you actually speak to this individual in that

14   first contact?

15        A.   Yes, sir.

16        Q.   And to your knowledge, he was not arrested; is that

17   correct?

18        A.   Yes, sir.

19        Q.   Was there any attempt, if you know, to see if the

20   individual was actually involved in a crime?

21        A.   Yes, sir.

22        Q.   And after that investigation, to your knowledge,

23   there was no arrest?

24        A.   Yes, sir.

25        Q.   And then the second contact, did that end up in an

**EMILY GARCIA, ET AL. vs CITY OF TUSTIN, ET AL.**
Estela Silva on 03/22/2023                                            Page 45

```
 1   arrest?

 2       A.   Yes, sir.

 3       Q.   And what was the arrest for, if you know?

 4       A.   It was for robbery and assault with a deadly

 5   weapon.

 6       Q.   That was related to the second contact?

 7       A.   Yes, sir.

 8       Q.   And was there any conviction in relation to that, if

 9   you know?

10       A.   I don't know.

11       Q.   Do you know if charges were ever brought by the

12   DA?

13       A.   I don't know.

14       Q.   Did you ever go to court for that case in any way?

15       A.   No, sir.

16       Q.   And did you arrest him on that day or someone

17   else?

18       A.   I located him and detained him, but Santa Ana

19   arrived to our location and arrested him.

20       Q.   So you would have handcuffed him and then waited for

21   the arrival of Santa Ana?

22       A.   (Inaudible response.)

23       Q.   Is that yes?

24       A.   Well, so on that contact I did not place handcuffs

25   on him.  I just had him detained and waited for Santa Ana to
```

**EMILY GARCIA, ET AL. vs CITY OF TUSTIN, ET AL.**
Estela Silva on 03/22/2023                                    Page 48

```
 1   him was that assault with a deadly weapon warrant, sir.

 2        Q.   Maybe just so I have the right order, that was the

 3   one where you detained him; is that right?

 4        A.   No, sir.  There was -- so in 2021 I arrested him for

 5   that assault with a deadly weapon warrant, and in 2020 I had

 6   two contacts with him.  One of them being the waving of the

 7   knife and then later on that year, it was when I detained him

 8   for Santa Ana Police Department.

 9        Q.   I see.  Thank you.

10             So let's just talk about the two in 2020 first.

11        A.   Yes, sir.

12        Q.   The waving the knife, did you ever see him waving a

13   knife in that incident?

14        A.   I did not, no.

15        Q.   Did he have any knife on him when you made contact

16   with him in that incident?

17        A.   There was a knife in the area, and it was taken from

18   him.

19        Q.   But did you ever see a knife in his hand or on his

20   person?

21        A.   No.

22        Q.   Did you have any information that he had injured

23   anyone in that incident?

24        A.   No, sir.

25        Q.   And I think you told me earlier he was not
```

**EMILY GARCIA, ET AL. vs CITY OF TUSTIN, ET AL.**
Estela Silva on 03/22/2023                                    Page 49

```
 1   arrested?

 2        A.   Correct.

 3        Q.   Okay.  And then the second incident in 2020, was

 4   that the one when he -- with the bicycle parts?

 5        A.   No.  That was the one where he was -- the reporting

 6   party stated he saw the suspect that stole his money and

 7   knocked him unconscious.

 8        Q.   I see.  And then did you find any weapons on the

 9   decedent at that time?

10        A.   Not at that time.

11        Q.   In either of the 2020 incidents, did you ever see

12   the decedent trying to fight with law enforcement?

13        A.   No, sir.

14        Q.   And then in the 2021 incident, did the decedent have

15   any weapon on him at that time?

16        A.   No, sir.

17        Q.   Did he try to physically fight with law enforcement

18   at that time?

19        A.   No, sir.

20        Q.   So would it be correct to say that before the date

21   of the shooting incident, you yourself had never seen the

22   decedent fighting with anyone?

23        A.   Not physically fighting, no.

24        Q.   And you never saw the decedent before the day of the

25   incident with a weapon in his hands or on his person; is that
```

**EMILY GARCIA, ET AL. vs CITY OF TUSTIN, ET AL.**
Estela Silva on 03/22/2023                                        Page 50

1   correct?

2        A.   That's correct.

3        Q.   So going back now to when you approached him in the

4   bushes, and you initially saw him sleeping on his back, do

5   you have an estimate as to how long, how much time passed

6   from the time you first saw him sleeping to the time he

7   started to wake up?

8        A.   Seconds, sir.  I can't give an estimate.

9        Q.   Was it a relatively short period of time?

10       A.   Yes, sir.

11       Q.   Have you been trained on the concept of

12   de-escalation?

13       A.   Yes, sir.

14       Q.   And what does that mean to you based on the

15   training; to try to de-escalate a situation?

16       A.   Just tactics that we can use non-verbal or verbal to

17   either calm down a situation or a person.

18       Q.   And what type of tactics?

19            Like, for example, speaking in a calm voice?

20       A.   Yes, sir.

21       Q.   What other tactics were you trained to try to

22   de-escalate a situation or calm the situation down?

23       A.   Even our mere presence in uniform can be used as a

24   de-escalation.  Our verbal, the way we talk to someone,

25   whether it's a calm voice or raising it when it needs to, the

**EMILY GARCIA, ET AL. vs CITY OF TUSTIN, ET AL.**
Estela Silva on 03/22/2023                                    Page 104

```
 1      Q.   Okay.  Is part of your training to keep the
 2  handcuffs in a person like hand for this similar
 3  circumstances when he has been shot?
 4           Was it -- was it part of your training to keep him
 5  in handcuffs?
 6      A.   Keep him in handcuffs?
 7      Q.   Yes.
 8      A.   It can be, yes, sir.
 9      Q.   Okay.  Now, let me ask you regarding a your prior
10  encounters with --
11           MR. ARIAS:  And thank you very much, Mr. Galipo, for
12  showing the video.
13  BY MR. ARIAS:
14      Q.   Regarding the prior encounters, just to briefly, I'm
15  not going to extend the time on this, but briefly, I would
16  like to confirm there were three different incidents that you
17  came to be in contact with Mr. Garcia.
18           The first incident that I have in my notes would it
19  be in 2020 when you investigated a case for a report that
20  someone had a knife and you detained Mr. Garcia as part of
21  your investigation; correct?
22      A.   Was not my investigation.  I was a following officer
23  for that case, sir.
24      Q.   But you worked on that case and you came to detain
25  Mr. Garcia as part of -- as part of that case; correct?
```

**EMILY GARCIA, ET AL. vs CITY OF TUSTIN, ET AL.**
Estela Silva on 03/22/2023                                    Page 105

```
 1      A.   We contacted him, yes, sir.

 2      Q.   Okay.  And you also testified that he was not

 3   arrested; correct?

 4      A.   That's correct.

 5      Q.   Would it be fair to say that in that occasion it was

 6   the first time that you encountered Mr. Garcia?

 7      A.   Yes, sir.

 8      Q.   Okay.  Do you have an estimate as to how long was

 9   your encounter with Mr. Garcia?

10      A.   I do not.

11      Q.   Were you alone or with someone else or some other

12   officers?

13      A.   With another officer, sir.

14      Q.   Did you activate your camera on that occasion?

15      A.   I did not have my camera for that occasion.

16      Q.   What about your other officer, did he have a

17   camera?

18      A.   I don't remember.

19      Q.   But there was a report and no charges were filed;

20   correct?

21      A.   Correct.

22      Q.   So isn't it true that in that occasion it was

23   determined that Mr -- you determined that Mr. Garcia was not

24   in possession of any weapons in his person; correct?

25      A.   I was not an investigating officer.
```

**EMILY GARCIA, ET AL. vs CITY OF TUSTIN, ET AL.**
Estela Silva on 03/22/2023                                    Page 106

```
 1            So it was not my determination, sir.

 2      Q.   You didn't see him with any weapons on his person;

 3   isn't that true?

 4      A.   That's correct.

 5      Q.   You didn't see him in a violent behavior; isn't that

 6   true?

 7      A.   Not at the time, no, sir.

 8      Q.   He wasn't violent to you; correct?

 9      A.   Not at that time.

10      Q.   He wasn't violent towards you or your partner;

11   correct?

12      A.   Correct.

13      Q.   He was not physically fighting against any of the

14   officers; correct?

15      A.   Correct.

16      Q.   He wasn't physically violent against any other

17   person; correct?

18      A.   Not that I recall saw.

19      Q.   Okay.  And he -- all right.

20           So he was not arrested, that was the first time.

21           And you became aware that he based on his

22   statements, he was -- could be a homeless person who was

23   staying on the street; isn't that true?

24      A.   Yes, sir.

25      Q.   On the second occasion that you encountered
```

**EMILY GARCIA, ET AL. vs CITY OF TUSTIN, ET AL.**
Estela Silva on 03/22/2023                                    Page 107

```
 1    Mr. Garcia was this report about the street vendor who had

 2    been subject of a somebody stole $32 from him.

 3            That's the second time that you met with Mr. Garcia,

 4    isn't that true?

 5       A.    Robbed and knocked unconscious, that was the notes I

 6    was given, sir.

 7       Q.    Yeah.  And the robbery was $32 as reported by the

 8    victim; is that -- does that sound right?

 9       A.    Not the notes that I was given, sir.

10            There was no money value that I was told.

11       Q.    But as part of that crime investigation, you -- you

12    participated in the investigation and you came to encounter

13    Mr. Garcia for the second time; isn't that true?

14       A.    That's correct.

15       Q.    Okay.  I'm going to show you a video, and I would

16    like to mark the next in order.

17            Will be 5?

18            (Exhibit 5 was marked for identification.)

19            MR. GALIPO:  Yes.

20            MR. ARIAS:  Thank you.

21    BY MR. ARIAS:

22       Q.    Let's see.

23            Please tell me when you see the screen.

24       A.    I can see the screen.

25       Q.    Okay.  I'm going to play it for the record a little
```

**EMILY GARCIA, ET AL. vs CITY OF TUSTIN, ET AL.**
Estela Silva on 03/22/2023                                    Page 110

1          Q.   Would it be fair to say that over the course of the

2    42 or 36 I believe 36 minutes of this recording, the behavior

3    of Mr. Garcia was always calm.

4               Would you agree?

5          A.   Yes, sir.

6          Q.   He was not violent; correct?

7          A.   Towards me, no.

8          Q.   Was he violent against anybody else other than

9    you?

10         A.   Other than the victim that called and reported him;

11   is that your question?

12         Q.   Officer, the victim is not in this video; right?

13         A.   That's correct.

14         Q.   I'm asking you questions about this encounter with

15   Mr. Garcia.

16              Was only Mr. Garcia you and your fellow partners

17   officers; correct?

18         A.   But I believe my question to you is, the

19   circumstances to the call for service for that incident was a

20   violent crime.

21         Q.   Yeah --

22         A.   That's why I'm asking.

23         Q.   But at this point you're investigated -- you have no

24   at this point -- number one, you knew Mr. Garcia already from

25   the prior occasion; correct?

**EMILY GARCIA, ET AL. vs CITY OF TUSTIN, ET AL.**
Estela Silva on 03/22/2023                                   Page 111

```
 1      A.   Correct.

 2      Q.   Number two, Mr. Garcia was detained and he was in

 3  handcuffs; correct?

 4      A.   Was not in handcuffs, no.  His hands are behind his

 5  back.

 6      Q.   Oh, voluntarily he is putting his hands just behind

 7  his back?

 8      A.   I don't remember if he voluntarily did that, or I

 9  told him to do that.

10      Q.   But he was -- okay.  So based on that is he -- is he

11  responding to your questions?

12      A.   Yes, he was.

13      Q.   Was he cooperative, you would say?

14      A.   Yes, sir.

15      Q.   Okay.  Did he act physically violent at that moment

16  at that encounter against you?

17      A.   No, sir.

18      Q.   Against any other officer?

19      A.   No.

20      Q.   Did he make any threats against you?

21      A.   No, sir.

22      Q.   Against any of the officers?

23      A.   No, sir.

24      Q.   Were you able to form an opinion and confirm that

25  this was the same homeless person that you had encountered
```

**EMILY GARCIA, ET AL. vs CITY OF TUSTIN, ET AL.**
Estela Silva on 03/22/2023                              Page 112

```
 1  before?
 2      A.   Yes, sir.
 3      Q.   And he was not violent?
 4      A.   At that time towards me, no, sir.
 5      Q.   And he was not armed?
 6      A.   Not at that time.
 7      Q.   He was not resisting to in any way.
 8           By the way, you know the difference of levels of
 9  behavior, for example, from active resistance, passive
10  resistance.
11           Do you know what I'm talking about?
12      A.   Yes, sir.
13      Q.   And how would you label the behavior of Mr. Garcia
14  at this moment in this encounter?
15      A.   He was not resisting.
16      Q.   Okay.  He was cooperative; correct?
17      A.   Yes, sir.
18      Q.   Okay.  At this moment at the end of this encounter
19  it appears that Santa Ana Police Department officer showed
20  up; correct?
21      A.   Correct.
22      Q.   And are you trained in effective communication?
23      A.   What do you mean by like --
24      Q.   For example, to have communications with other
25  officers even from other law enforcement agencies to have an
```

**EMILY GARCIA, ET AL. vs CITY OF TUSTIN, ET AL.**
Estela Silva on 03/22/2023                                     Page 125

```
1            MR. PRAET:  Absolutely.

2            MR. ARIAS:  And so stipulated on behalf of my

3   clients.

4            Thank you.

5            MR. PRAET:  And we'll get a copy for the court

6   reporter.

7            COURT REPORTER:  And Mr. Arias, are you getting a

8   copy as well or no?

9            MR. ARIAS:  No.  I'm fine.  Thank you.

10           MR. GALIPO:  Okay.  Thank you, all.

11           (Deposition proceeding concluded at 1:40 p.m.)

12                        *   *   *

13

14

15

16

17

18

19

20

21

22

23

24

25
```

**EMILY GARCIA, ET AL. vs CITY OF TUSTIN, ET AL.**
Estela Silva on 03/22/2023                                    Page 126

```
 1              DECLARATION UNDER PENALTY OF PERJURY

 2

 3   Case Name:  Emily Garcia, et al. vs. City of Tustin, et al,

 4   and all related matters

 5   Date of Deposition:  March 22, 2023

 6   Job No.:  446100

 7

 8           I, _____, hereby certify

 9   under penalty of perjury under the laws of the State of

10   California that the foregoing is true and correct.

11           Executed this _____ day of _____,

12   20____, at _____, California.

13

14

15

16

17

18           _____

19                        ESTELA SILVA

20

21

22

23

24

25
```

**EMILY GARCIA, ET AL. vs CITY OF TUSTIN, ET AL.**
Estela Silva on 03/22/2023                                    Page 127

```
 1                        CERTIFICATE

 2                            OF

 3           CERTIFIED STENOGRAPHIC SHORTHAND REPORTER

 4

 5           I, JINNA GRACE KIM, CSR No. 14151, a Certified

 6    Stenographic Shorthand Reporter of the State of California,

 7    do hereby certify:

 8           That the foregoing proceedings were taken before me

 9    at the time and place herein set forth;

10           That any witnesses in the foregoing proceedings,

11    prior to testifying, were placed under oath;

12           That a verbatim record of the proceedings was made

13    by me, using machine shorthand, which was thereafter

14    transcribed under my direction;

15           Further, that the foregoing is an accurate

16    transcription thereof.

17           I further certify that I am neither financially

18    interested in the action, nor a relative or employee of any

19    attorney of any of the parties.

20

21           IN WITNESS WHEREOF, I have subscribed my name, this

22    date:  March 22, 2023.

23

24           _____
             Jinna Grace Kim, CSR No. 14151

25
```