AW OFFICES OF DALE K. GALIPO
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Renee V. Masongsong, Esq. (SBN 281819)
rvalentine@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA  91367
Telephone:  (818) 347-3333
Facsimile:   (818) 347-4118

*Attorneys for Plaintiffs EMILY GARCIA and C.G.*

Jesus Eduardo Arias, Esq. LL.M. | SBN 293983
LAW OFFICES OF JESUS EDUARDO ARIAS
18000 Studebaker Rd. Suite 700
Cerritos California 90703
E| jearias@jesuseduardoarias.com
Tel| 323) 815 9450 Fax| 323) 375 1196
*Attorney for Plaintiffs* Wendy Lorena Galicia Ramirez, and
Kevin Josue Galicia Ramirez

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMILY GARCIA and C.G., by and through her guardian ad litem, Rosala Becerra, individually and as successors-in-interest,<br><br>Plaintiff(s),<br><br>vs.<br><br>CITY OF TUSTIN, ESTELLA SILVA and DOES 1 through 10, Inclusive,<br>Defendant(s)<br><br>Consolidated with WENDY LORENA GALICIA RAMIREZ, et al v. City of Tustin, et al. | Case No: 8:22-cv-00131 SPG KES<br><br>Assigned to:<br>*District Judge Sherilyn Peace Garnett*<br>*Magistrate Judge Karen E. Scott*<br><br>**PLAINTIFFS' JOINT SUPPLMENTAL BRIEF RE MOTION IN LIMINE NO. 2 RE: PRIOR CONTACT WITH OFFICER SILVA**<br><br>Final Pre-Trial Conference: April 1, 2026<br><br>Trial Date: April 14, 2026 |

1

PLAINTIFFS' FURTHER BRIEF RE MOTION IN LIMINE NO 2 RE PRIOR CONTACT WITH OFFICER SILVA

## MEMORANDUM OF POINTS AND AUTHORITIES

I.    INTRODUCTION.

On April 1, 2026, the Court held the Final Pre-Trial Conference on this matter and made certain rulings on Plaintiffs' and Defendants' Motions in Limine.  The Court requested further briefing on Plaintiffs' Motion in Limine No. 2 regarding Decedent Luis Garcia's prior criminal history, particularly a prior incident on November 1, 2020, in Santa Ana, where Officer Estela Silva detained Decedent Garcia twelve days later on November 13, 2020.  During her March 22, 2023, deposition, Officer Silva stated that prior to the incident on August 9, 2021, in which she fatally shot Decedent Garcia, she had three prior contacts with Decedent Garcia.  (Flores Decl., Exh. 1.)  On November 13, 2020, Officer Silva detained Decedent Garcia after he was identified as a suspect in a robbery of an ice cream vendor in Santa Ana on November 1, 2020.

During her deposition, Officer claimed that "The victim called that they were robbed in the city of Santa Ana, knocked unconscious by the subject, and they saw the suspect in the city of Tustin, and I located him." (Flores Decl., Exh. 1, Silva Depo. p. 43:20-23.)  She also testified that she did not arrest Decedent Garcia, but merely detained him for the Santa Ana Police Department.  During the detention, Decedent Garcia was calm, cooperative, and non-violent during his 42-minute detention with Officer Silva, as shown on her Body Worn Camera.  (Flores Decl. ¶ 5.)  Decedent Garcia had no weapons on him when he was detained by Officer Silva, did not require handcuffing, and was ultimately turned over to Santa Ana Police Department for arrest.  Officer Silva had no knowledge of whether the case resulted in charges or conviction.  During this interaction with Decedent Garcia, Officer Silva casually questioned him about various topics, including where he lived, what he did for work, and about his family, but she never asserted that he had allegedly knocked unconscious an ice cream vendor with a stick. (Flores Decl. ¶ 5.)  Nor does Silva's BWC video show any conversations with other officers in which there was mentioned that an ice cream

2

vendor was struck by or knocked unconscious with a stick.  (Flores Decl. ¶ 5.)  Officer Silva stated during her deposition that her knowledge of the victim being knocked unconscious came from unspecified notes, which were not produced during discovery. (Flores Decl., Exh. 1, Silva Depo p. 107:3-6 ["Robbed and knocked unconscious, that was the notes I was given, sir."])

In his November 1, 2020, report Santa Ana Police Department Officer Ramiro Vergara wrote a report regarding the above incident, wherein an ice cream vendor that was robbed by a suspect threatening with a stick.  (Flores Decl. Exh. 2.)  The report does not mention that the ice cream vendor was struck by the stick, let alone knocked unconscious with the stick, and the stick is described as significantly smaller than the stick Decedent Garcia had during the incident giving rise to this lawsuit.  *Id.* The Santa Ana Police Department, Detective Ernesto Solorio of the Robbery Unit wrote a report which, and this report also does not mention that the victim was knocked unconscious or that the victim was beaten with a stick.   (Flores Decl. Exh. 3.)

By way of this supplemental brief and Plaintiffs' previously filed motion in limine, Plaintiffs seek to exclude the foregoing evidence on the grounds that  it is irrelevant, lacks foundation, and extremely prejudicial, pursuant to FRE 401, 402, and 403.  Additionally, Defendants' allegations are based on hearsay statements not included in the police reports, as described above, and on notes that were not produced during discovery.

## II.    ARGUMENT

### A.    Evidence of the November 1, 2020, incident involving an ice cream vendor is irrelevant

As explained in Plaintiffs' motion in limine No. 2, "evidence of other crimes or wrong acts is not looked upon with favor and must be carefully scrutinized to determine probative value." *United State v. Aims Back*, 588 F.2d 1283, 1287 (9th Cir. 1986). FRE 401 states that evidence is only relevant if "(a) it has any tendency to make a fact

more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FRE 401(a), (b); *Huddleston v. United States*, 485 U.S. 681, 682-692 (1988).

Here, the primary issue is whether Officer Silva's use of deadly force against Mr. Garcia was "'objectively reasonable' in light of the facts and circumstances confronting [him]." *See Graham v. Connor*, 490 U.S. 386, 397 (1989). In other words, the relevant inquiry is limited to information known to Officer Silva at the time of the use of force. *Id.* at 396; *see Hayes v. Cnty. of San Diego*, 736 F.3d 1223, 1232-33 (9th Cir. 2013) ("[W]e can only consider the circumstances of which [the officers] were aware when they employed deadly force.").

"[W]hen considering a charge of excessive force under the Fourth Amendment, evidence outside the time frame of the shooting is irrelevant and prejudicial." *Palmquist v. Selvik*, 111 F.3d 1332, 1339 (7th Cir. 1997)

Officer Silva had no independent knowledge regarding the November 1, 2020, incident involving the ice cream vendor, and the details of what transpired during that incident. Officer Silva cannot be allowed to embellish details that are not collaborated by other evidence, including the reports of the investigative officers. Officer Silva's contact with Decedent Garcia occurred eleven days after the actual incident with the vendor on November 1, 2020. Officer Silva cannot be allowed to testify on what transpired because she was not there when the alleged robbery occurred. Officer Silva's knowledge of this incident is based on inadmissible hearsay. Additionally, whereas Defendants have attempted to argue that this incident is relevant because it involves a stick, similar to the incident giving rise to this lawsuit, a careful read of the police report regarding the ice cream vendor shows that it was not the same stick.

Thus, in this case, evidence of this prior incident cannot be used to support a contention that it would make a person more or less likely to have violently resisted arrest. See *Cotton v. City of Eureka*, 2010 WL 5154945, at *6 (N.D. Cal. Dec.14, 2010)

4

(finding that "the suggestion that the Decedent was more likely to resist arrest because of his recent release [from jail] is nothing more than unsupported conjecture," and excluding decedent's criminal history from liability and damages); see also *Witt v. West Virginia State Police, Troop 2*, 633 F.3d 272, 275 n.* (4th Cir. 2011) (noting that the plaintiff's "criminal history and possession of illegal narcotics . . . are irrelevant to the excessive force analysis because, as the troopers themselves acknowledge, they 'did not know' these facts 'at the time' they allegedly beat [the plaintiff]"--even though the facts of the incident were profoundly disputed).

Specifically, such evidence does not make a fact that is of consequence in determining this action more or less probable. *See* FRE 401(a). Therefore, this evidence and any related arguments should be excluded (or at the very least, limited) as irrelevant under FRE 401, 402.

**B.      This Evidence or the prior contact should be excluded under FRE 403 as unfairly prejudicial and a waste of time.**

"Unfair prejudice" means "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000); *Larez v. City of Los Angeles*, 946 F.2d 630, 642 n.5 (9th Cir. 1991) (noting that evidence is likely to inflame the jury if it tends to evoke a juror's anger or punitive impulses).

Admission of such evidence also poses a substantial risk of leading to "litigation of collateral issues, thereby creating a side issue which might distract the jury from the main issues." *Blancha v. Raymark Industries*, 972 F.2d 507, 516 (3d Cir. 1992*); Rockwell v. Yukins*, 341 F.3d 507, 513 (6th Cir. 2003) (en banc).

The central factual dispute in this case is whether Decedent Garcia posed an imminent threat of death or serious bodily injury to Officer Silva when he was shot. Refuting the inferences that Defendants may attempt to raise regarding Decedent Garcia's alleged prior contacts with law enforcement, including the November 13,

5

2020, contact with Officer Silva will necessitate a mini-trial on collateral issues that have nothing to do with the central factual dispute, which will unduly consume this Court's and the jury's time, as well as the calling of several third-party witnesses.

In sum, evidence of Decedent Garcia's prior contacts with law enforcement, including those with Officer Silva, does not make a material disputed fact more likely. It would only serve to promote a decision on an improper basis, and to distract the jury from the real factual dispute of what precise circumstances Officer Silva confronted during the incident. Accordingly, the Court should exclude such evidence from trial.

### C.    Evidence related to the November 1, 2020, incident involving the ice cream vendor is improper character evidence.

"The federal rules bar the use of any circumstantial evidence that requires an inference of a person's character to make it relevant . . . ." *Palmerin v. Riverside*, 794 F.2d 1409, 1414 (9th Cir. 1985). Thus, Decedent Garcia's alleged criminal history, including his alleged involvement in robbing an ice cream vendor on November 1, 2020, must also be excluded under Rule 404, to the extent that its relevance would require a speculative inference that he acted in conformity with some criminal character trait. See, e.g*., Rogers v. Harrell*, 2010 WL 2011145, at *2 (E.D. Mich. May 19, 2010) (excluding excessive force plaintiff's prior criminal history under Rules 401, 402, and 404(b), noting, "the only reason that Defendant would seek to introduce evidence of Plaintiff's prior convictions is to cast doubt on his character). The Ninth Circuit case law is clear that "[c]haracter evidence is normally not admissible in a civil rights case." *Gates v. Rivera*, 993 F.2d 697, 700 (9th Cir. 1993).

Moreover, the incident involving the ice cream vendor involved a stick that was described as wooden stick that was 10 inches by 4 niches (Flores Decl. Exh. 2), which is much different from the stick/pole involved in the August 9, 2020, incident where Decedent was fatally shot.

PLAINTIFFS' FURTHER BRIEF RE MOTION IN LIMINE NO 2 RE PRIOR CONTACT WITH OFFICER SILVA

**D.    Officer Silva cannot testify regarding the statements and reports of others.**

Further, any evidence relating to Decedent Garcia's prior contacts with law enforcement would constitute inadmissible hearsay in violation of Federal Rule of Evidence 802. "Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted..." FRE 801(c). Hearsay is not admissible except as provided by the FRE, other rules prescribed by the Supreme Court pursuant to statutory authority, or by Act of Congress. FRE 802.

Plaintiffs assert that this incident involving the ice cream vendor should be excluded entirely.  At minimum, Officer Silva should be permitted to testify only as to what she observed during her encounter with Decedent Garcia on November 13, 2020, but not as to the accounts of others of what happened during the alleged robbery on November 1, 2020, contained in reports or as related by others.  *Colvin v. United States*, 479 F.2d 998, 1003 (9th Cir. 1973) ("Entries in a police report based on an officer's observation and knowledge may be admitted, but statements attributed to other persons are clearly hearsay.") Moreover, investigative reports which are compilations of information from several sources, then paraphrased and summarized, are properly excluded as hearsay and multiple hearsay. *United States v. Pena-Gutierrez*, 222 F.3d 1080, 1086–89 (9th Cir. 1999) (report of INS investigator was inadmissible hearsay). Summaries offered as evidence to prove the existence or nonexistence of a disputed fact may include "statements" subject to the hearsay rule. *Peat, Inc. V. Vanguard Research, Inc.* (11th Cir. 2004) 378 F. 3d 1154, 1160.

The focal point of this case is whether or not Officer Silva used excessive force on the Decedent Garcia the day he was detained on August 9, 2021. This is a narrowly defined issue.

Officer Silva's allegations made during her deposition that Decedent Garcia

knocked someone unconscious with a stick are based on hearsay statements contained in unspecified "notes" that are not even referred to in the police reports about that incident on November 1, 2020. (Flores Decl., Exh. 1, 2, 3.)  Consequently, Officer Silva should not be permitted to testify regarding the details of what transpired during the alleged robbery of the ice cream vendor on November 1, 2020.

**E.    The Defense cannot rely on documents that were not produced in discovery.**

Fed. R. Civ. P. 37(c)(1) establishes a self-executing sanction for discovery violations. *See Zhang v. Am. Gem Seafoods. Inc.*, 339 F.3d 1020, 1028 (9th Cir. 2003) (strictly following Rule 37 to exclude document when it was produced after discovery cut-off date; and after deposition for which document was to be used; and no "substantial justification" given for failure to produce). As Plaintiffs were finalizing the instant brief for filing, Plaintiffs received Defendants' exhibits to their supplemental brief on this issue. Now, on the eve of trial, Defendants have offered a CAD call log or Call History referencing that the ice cream vendor was "knocked out with as stick" during the November 1, 2020, incident.   The Defense never produced these documents during discovery, and Plaintiffs had no opportunity to cross examine Officer Silva regarding these documents at her deposition, and no opportunity to subpoena the reporting officer for deposition to discuss these documents. Further, these documents indicate that Decedent knocked the person unconscious with a bag of unknown contents, not with a stick. This only emphasizes the overall unreliability of Officer Silva's testimony regarding this incident and emphasizes the confusion that this report will cause to the jury. Accordingly, the Court should exclude these  CAD logs and/or Call History and references thereto that were not produced in discovery for this additional reason.

///

///

PLAINTIFFS' FURTHER BRIEF RE MOTION IN LIMINE NO 2 RE PRIOR CONTACT WITH OFFICER SILVA

## III.   CONCLUSION.

For the reasons stated above, this Court should grant Plaintiffs' Motion in Limine No. 2, including information related to alleged robbery of an ice cream vendor on November 1, 2020.

DATED: April 6, 2026

**LAW OFFICES OF DALE K. GALIPO**
**CARRILLO LAW FIRM, LLP**
By:  /s/ J. Miguel Flores
Dale K. Galipo
Renee V. Masongsong
Michael S. Carrillo
J. Miguel Flores
*Attorneys for Plaintiffs* Emily Garcia and C.G.

Date: April 6, 2026

**LAW OFFICES OF JESUS EDUARDO**
**ARIAS**
/S/ Jesus E. Arias
Jesus Eduardo Arias LL.M. Esq.
Attorney for Galicia Plaintiffs

PLAINTIFFS' FURTHER BRIEF RE MOTION IN LIMINE NO 2 RE PRIOR CONTACT WITH OFFICER SILVA

## DECLARATION OF J. MIGUEL FLORES

1.      I am an attorney licensed to practice law in the State of California and an Attorney with the Carrillo Law Firm, attorneys of record for Plaintiffs, ("Plaintiffs") in this action.  The matters stated herein are based on my personal knowledge except as to those matters stated on information and belief and as to those matters I believe them to be true.

2.      Attached hereto at **Exhibit 1** are true and correct copies of the relevant pages of the Deposition Reporter's Transcript of Estela Silva taken on March 22, 2023.

3.      Attached hereto at **Exhibit 2** is a true and correct copy of a Santa Ana Police Report written by Officer Ramiro Vergara, dated November 1, 2020, Bates No. D-000364-366

4.      Attached hereto at **Exhibit 3** is a true and correct copy of a Santa Ana Police Report written by Officer Detective Edwin Solorio, dated November 13, 2020, Bates No. D-000367-369.

5.      I have reviewed the Body Cam Footage of Officer Estela Silva from her contact with Luis Garcia on November 13, 2020, previously produced in discovery as D-000470 - EstelaSilva 11-13-20 SAPD 211 ARREST.  The Body Cam video is approximately 42 minutes long and shows Officer Silva interacting with Luis Garcia who is detained but not handcuffed for most of the video.  The BWC video contains audio that includes dialogue between Officer Silva and Mr. Garcia both in English and Spanish.  I reviewed the 42 minutes of BWC video and listened to the dialogue between Officer Silva and Mr. Garcia, and Officer Silva's interactions with the other officers.  I am a native Spanish speaker and understood those portions of the video where Spanish was spoken.   During the interaction with Mr. Garcia shown in the BWC video, Officer Silva casually questioned Mr. Garcia about various topics, including where he lived,

10

PLAINTIFFS' FURTHER BRIEF RE MOTION IN LIMINE NO 2 RE PRIOR CONTACT WITH OFFICER SILVA

what he did for work, and about his family, but she did not bring up that he had allegedly knocked unconscious an ice cream vendor with a stick.  The BWC also did not capture any conversations with other officers in which there it was mentioned that an ice cream vendor was knocked unconscious with a stick.  In the BWC video of Officer Silva, Luis Garcia remained calm, cooperative, and non-violent during his 36-minute detention shown in the video.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed on April 6, 2026, in South Pasadena, California.

_J. Miguel Flores_
J. MIGUEL FLORES

PLAINTIFFS' FURTHER BRIEF RE MOTION IN LIMINE NO 2 RE PRIOR CONTACT WITH OFFICER SILVA

# EXHIBIT #1

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EMILY GARCIA, et al.                    )
                                        )
            Plaintiffs,                 )
                                        )
            vs.                         )Case No.
                                        )8:22-CV-00131-DOC-KES
CITY OF TUSTIN, et al.,                 )
                                        )
            Defendants.                 )
                                        )
WENDY LORENA GALICIA RAMIREZ, et al.,   )
                                        )
            Plaintiffs,                 )
                                        )
CITY OF TUSTIN, et al.,                 )
                                        )
            Defendants,                 )
                                        )

REMOTE VIDEOCONFERENCE DEPOSITION OF

ESTELA SILVA

WEDNESDAY, MARCH 22, 2023

Reported Stenographically By:

Jinna Grace Kim, CSR No. 14151

Job No.:  446100

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EMILY GARCIA, et al.                          )
                                              )
                   Plaintiffs,                )
                                              )
          vs.                                 ) Case No.
                                              ) 8:22-CV-00131-DOC-KES
CITY OF TUSTIN, et al.,                        )
                                              )
                   Defendants.                )
_____              )
WENDY LORENA GALICIA RAMIREZ, et al.,          )
                                              )
                   Plaintiffs,                )
                                              )
CITY OF TUSTIN, et al.,                        )
                                              )
                   Defendants,                )
_____              )

          The remote videoconference deposition of ESTELA SILVA, taken on behalf of the Plaintiffs, beginning at 10:04 a.m., and ending at 1:40 p.m., on Wednesday, March 22, 2023, before Jinna Grace Kim, Certified Stenographic Shorthand Reporter No. 14151.

APPEARANCES OF COUNSEL:


For the Plaintiffs:


          LAW OFFICES OF DALE K. GALIPO
          BY:  DALE K. GALIPO, ESQ.
          BY:  RENEE V. MASONGSONG, ESQ.
          21800 Burbank Boulevard, Suite 310
          Woodland Hills, California 91367
          Tel:  818-347-3333
          Fax:  818-347-4118
          E-mail:  dalekgalipo@yahoo.com
          E-mail:  rvalentine@galipolaw.com


          CARILLO LAW FIRM, LLP
          BY:  LUIS A. CARRILLO, ESQ.
          BY:  MICHAEL S. CARRILLO, ESQ.
          1499 Huntington Drive, Suite 402
          South Pasadena, California 91030
          Tel:  626-799-9375
          Fax:  626-799-9380
          E-mail:  lac4justice@gmail.com
          E-mail:  mc@carrillofirm.com


          JESUS EDUARDO ARIAS, ESQ.
          BY:  JESUS EDUARDO ARIAS, ESQ.
          18000 Studebaker Road, Suite 700
          Cerritos, California 90703
          Tel:  323-815-9450
          Fax:  323-375-1196
          E-mail:  jearias@jesuseduardoarias.com


For the Defendants:

          FERGUSON, PRAET & SHERMAN
          BY:  BRUCE D. PRAET, ESQ.
          1361 East 18th Street
          Santa Ana, California 92705
          Tel:  714-953-5300
          Fax:  714-953-1143
          E-mail:  bpraet@aol.com

                              INDEX

WITNESS:                                                  PAGE

ESTELA SILVA

     BY: MR. GALIPO                                       5

     BY: MR. ARIAS                                        96

     BY: MR. GALIPO                                       122


                           EXHIBITS

MARKED FOR IDENTIFICATION                                 PAGE

Exhibit 1                 Transcription                   92

Exhibit 2                 Officer Yuhas Body-Worn         92
                          Video

Exhibit 3                 Officer Frias Body-Worn         94
                          Video

Exhibit 4                 Still Image                     97

Exhibit 5                 Video                           107

Exhibit 6                 Video                           116

Exhibit 7                 Still Image                     122

Exhibit 8                 Still Image                     123

                         CALIFORNIA

                WEDNESDAY, MARCH 22, 2023

                      10:04 A.M.

                     ESTELA SILVA,

called as a witness on behalf of the Plaintiffs, having been

first duly sworn remotely via videoconference, was examined

and testified as follows:

                      EXAMINATION

BY MR. GALIPO:

    Q.    Can you please state your name.

    A.    Estela Silva.

          (Audio glitch.)

    Q.    There was a slight pause.

          Can you spell your first and last name, please.

    A.    E-s-t-e-l-a, last name, S-i-l-v-a.

    Q.    Have you ever had your deposition taken before?

          (Audio glitch.)

    A.    No, sir.

          MR. GALIPO:  Jinna, are you hearing a slight pause
in her responses?

          COURT REPORTER:  There's a slight pause in the
beginnings, but --

          MR. GALIPO:  Okay.  All right.  We'll just keep
going, and as long as you can make out her words, but if you
have any problem -- off the record for a moment.

Q.   Had you seen this person before?

A.   Yes, sir.

Q.   Okay.  Would it be fair to say you at least recognized that the person was not a male, white?

A.   Yes, sir.

Q.   And would it be fair to say you knew the person did not have blond hair?

A.   Yes, sir.

Q.   And how did you know the person from before?

A.   From prior contacts with him.

Q.   Okay.  And did you say something to the effect, I know who you are?

A.   Yes, sir.

Q.   And how many prior contacts did you have with this person?

A.   Three, sir.

Q.   And can you tell me the nature of those contacts, please.

A.   Yes, sir.  The first contact was a male seen waving a knife in the air.  The second contact was the victim called that they were robbed in the city of Santa Ana, knocked unconscious by the subject, and they saw the suspect in the city of Tustin, and I located him.  And the third was a call for service referenced to transients disassembling a child bicycle in the back of a gas station which resulted in arrest

for a assault with a deadly weapon warrant and possession of methamphetamine.

Q.   Okay.  The first contact, do you know what year that was in if the --

A.   I believe --

Q.   -- go ahead.

A.   I believe it was 2020.

Q.   Okay.  Did that first contact result in an arrest?

A.   No, sir.

Q.   Was there any conviction that you're aware of related to that first contact?

A.   No, sir.

Q.   Did you actually speak to this individual in that first contact?

A.   Yes, sir.

Q.   And to your knowledge, he was not arrested; is that correct?

A.   Yes, sir.

Q.   Was there any attempt, if you know, to see if the individual was actually involved in a crime?

A.   Yes, sir.

Q.   And after that investigation, to your knowledge, there was no arrest?

A.   Yes, sir.

Q.   And then the second contact, did that end up in an

Mr. Garcia was this report about the street vendor who had been subject of a somebody stole $32 from him.

That's the second time that you met with Mr. Garcia, isn't that true?

A.    Robbed and knocked unconscious, that was the notes I was given, sir.

Q.    Yeah.  And the robbery was $32 as reported by the victim; is that -- does that sound right?

A.    Not the notes that I was given, sir.

There was no money value that I was told.

Q.    But as part of that crime investigation, you -- you participated in the investigation and you came to encounter Mr. Garcia for the second time; isn't that true?

A.    That's correct.

Q.    Okay.  I'm going to show you a video, and I would like to mark the next in order.

Will be 5?

(Exhibit 5 was marked for identification.)

MR. GALIPO:  Yes.

MR. ARIAS:  Thank you.

BY MR. ARIAS:

Q.    Let's see.

Please tell me when you see the screen.

A.    I can see the screen.

Q.    Okay.  I'm going to play it for the record a little

MR. PRAET:  Absolutely.

MR. ARIAS:  And so stipulated on behalf of my clients.

Thank you.

MR. PRAET:  And we'll get a copy for the court reporter.

COURT REPORTER:  And Mr. Arias, are you getting a copy as well or no?

MR. ARIAS:  No.  I'm fine.  Thank you.

MR. GALIPO:  Okay.  Thank you, all.

(Deposition proceeding concluded at 1:40 p.m.)

*  *  *

CERTIFICATE

OF

CERTIFIED STENOGRAPHIC SHORTHAND REPORTER

I, JINNA GRACE KIM, CSR No. 14151, a Certified Stenographic Shorthand Reporter of the State of California, do hereby certify:

That the foregoing proceedings were taken before me at the time and place herein set forth;

That any witnesses in the foregoing proceedings, prior to testifying, were placed under oath;

That a verbatim record of the proceedings was made by me, using machine shorthand, which was thereafter transcribed under my direction;

Further, that the foregoing is an accurate transcription thereof.

I further certify that I am neither financially interested in the action, nor a relative or employee of any attorney of any of the parties.

IN WITNESS WHEREOF, I have subscribed my name, this date:  March 22, 2023.

_____
Jinna Grace Kim, CSR No. 14151

# EXHIBIT #2

Santa Ana PD 2020-23030                                                                                    1 of 3



| | **SANTA ANA**<br>**Police Department**<br>60 Civic Center Plaza<br>Santa Ana CA, 92701<br>**Crime Report** | **Case No.**<br>**2020-23030** |
|---|---|---|

| Case Type: | ROBBERY - PERSON |
|---|---|

## Incident Activity Summary:

| Offenses: | **211 PC - ROBBERY- USING OTHER DANGEROUS WEAPON(S)** |
|---|---|
| Offenses: | **422 PC - THREATEN CRIME WITH INTENT TO TERRORIZE** |
| Incident Date/Time: | Occurred: 11/01/2020 16:43:00 to 11/01/2020 16:43:00 |
| | Reported: 11/01/2020 16:43 |
| **Location Occurred:** | 1331 S LYON ST, Santa Ana, CA  92705 |
| Grid: Dist.: Southeast | Sidewalk |

## Factual Synopsis:

Unknown suspect robbed victim (push cart ice cream person), weapon was a piece of wood.  Loss was 32 dollars. No injuries.

| **Stolen/Recovered:** (Report-wide) | $32.00  /  **$0.00** |
|---|---|
| Video of Incident Available? | NO |

| **Person:** | **Tomas Najera** |
|---|---|
| Involvement: | **VICTIM** |
| | *211 PC - ROBBERY- USING OTHER DANGEROUS WEAPON(S)*<br>*422 PC - THREATEN CRIME WITH INTENT TO TERRORIZE* |
| Person Note: | *Ice Cream push cart worker* |
| Description: | Male, Hispanic |
| DOB: | 12/21/1960 |
| Address/Resides: | 1500 E WARREN ST Apt.# 74, Santa Ana, CA  92705 |
| Scars, Marks, Tattoos, Oddities: | |

| **Person:** | **Chanelle Torres** |
|---|---|
| Involvement: | **WITNESS** |
| Person Note: | *Driver of 2004 Toyota Corolla* |
| Description: | Female, Hispanic |
| DOB: | 10/21/2000 |
| Identification: | Driver License: |
| Address/Resides: | 614 N EASTSIDE Ave., Santa Ana, CA  92701 |
| Address/Associated: | |
| Contact Info: | Cell: (714) 724-0287 |
| Scars, Marks, Tattoos, Oddities: | |

| **Person:** | **unknown unknown** |
|---|---|
| Involvement: | **SUSPECT** |

D-000364

*Santa Ana PD 2020-23030*                                                                    2 of 3

*211 PC - ROBBERY- USING OTHER DANGEROUS WEAPON(S)*
*422 PC - THREATEN CRIME WITH INTENT TO TERRORIZE*

| | |
|---|---|
| Person Note: | *Possible transient* |
| Description: | Male, Hispanic, 5'10" tall, 160 lbs, thin build short black hair, light brown complexion |
| Clothing: | Straw tan Mexican cowboy hat, unknown type shirt or unknown color, black jeans |
| Age: | Between 30 and 32 years old |
| Address/Resides: | Unknown |
| Scars, Marks, Tattoos, Oddities: | |

| | |
|---|---|
| **SAPD Personnel:** | **Lima, David 2373** |
| Involvement: | **Assisting** |
| **SAPD Personnel:** | **McCarthy, Michael 2722** |
| Involvement: | **Report Approver** |
| **SAPD Personnel:** | **Vergara, Ramiro 2999** |
| Involvement: | **Reporting** |

**Item 1)**     Involvement (STOLEN)

Qty. 32: MONEY / CASH, 32 U.S. dollars (1 twenty dollar bill and single 1 dollar bills) , $32,

**Narrative:** *Narrative*

D-000365

Santa Ana PD 2020-23030                                                                        3 of 3

On 11/1/20 at 1643 hours I was working uniform patrol in a marked black and white police car.  I was dispatched to the area of Wilshire and Lyon St. in reference a robbery investigation.  Dispatch advised that the victim was a push cart ice cream man.  The suspect took money by means of threats and fled on food.

The robbery took place within the last couple of minutes and the suspect was described as being in his 40's wearing a cowboy hat, blue windbreaker jacket, blue jeans.

Upon arrival I spoke with the victim (Najera) who told me the following:  He works for La Michoacán Ice Cream Company.  He was pushing his ice cream push cart northbound Lyon St. at Wilshire when the suspect walked north to south on the east sidewalk.

The suspect told him (Najera), "Give me everything you have if not I'll kill you!"  Najera feared for his safety because now the suspect was holding a large piece of wood in his right hand.  The piece of wood was about ten inches by 4 inches in size.  The suspect held the wood up above his head as if preparing to strike him (Najera) over the head.  Najera feared for his life and so he reached into his left front pants pocket.  The suspect then stated, "Give me everything you got or I'll toss the cart."

Najera said he feared for his life so he handed the suspect the day's earnings, $32 dollars, and the suspect took the money with his right hand. The suspect walked south for a few feet before he jumped the front gate of 1331 S. Lyon St., and fled on foot.

Najera said he has interacted with the suspect on at least three other instances in the past few months.  The suspect has harassed him (Najera) and typically takes product from the cart and refuses to pay for the merchandise.  The las time he saw the suspect was about one month ago and the suspect took some chips from the cart and refused to pay.

Najera said he will be able to recognize the suspect if seen again but he could not remember what he was wearing during the robbery.

I spoke with the witness (Torres) who told me the following.  She was driving northbound Lyon St. when she saw Najera being confronted by the suspect.  The suspect was holding a piece of wood in his right hand and held it over his head in a physically threatening manner.  She initially drove past the robbery but made an immediate u-turn at Wilshire and Lyon St.

She made another U-turn to the front of where Najera and the suspect.  She pulled to the east side of the street. Torres grabbed her cell phone and was about to start recording when the suspect yelled at her in Spanish.  However she could not understand what he was yelling because she does not speak Spanish.  She was able to see the suspect was holding a wad of cash in his right hand as he ran off southbound Lyon St. along the east sidewalk. Torres said she will be able to recognize the suspect if seen again.

Torres described the suspect as male Hispanic about 40 years old, medium skin tone, and thin build.  The suspect wore a straw Mexican cowboy hat, dark color wind breaker, and dark jeans.

I along with SGT. Lima conducted a thorough area check but we were met with negative results.  There were no cameras in the immediate area.

I request this report be forwarded to investigations for any further follow up.

Officer R. Vergara #2999

Author: Vergara, Ramiro 2999  **BWC Activated**

D-000366

# EXHIBIT #3

AUG/11/2021/WED 11:57 AM                          FAX No.                        P. 005/007

Santa Ana PD 2020-23030                                                          1 of 3



## SANTA ANA
## Police Department
60 Civic Center Plaza
Santa Ana CA, 92701
**Supplemental Report**

**Case No.**
**2020-23030**

## Incident Activity Summary:

| | |
|---|---|
| **Offenses:** | **211 PC - ROBBERY- USING OTHER DANGEROUS WEAPON(S)** |

| | |
|---|---|
| Incident Date/Time: | Occurred: 11/13/2020 20:00 |
| **Location Occurred:** | 62 Civic Center |

## Factual Synopsis:

Suspect from a robbery was identified by the victim and subsequently arrested.

---

| | | |
|---|---|---|
| **Stolen/Recovered:** | (Report-wide) | $0.00 / **$0.00** |

| | |
|---|---|
| **Person:** | **Tomas Najera** |
| Involvement: | **VICTIM** |
| | *211 PC - ROBBERY- USING OTHER DANGEROUS WEAPON(S)*<br>*422 PC - THREATEN CRIME WITH INTENT TO TERRORIZE* |
| Description: | Male, Hispanic |
| DOB: | 12/21/1960 |
| Address/Resides: | 1500 E WARREN ST Apt.# 74, Santa Ana, CA  92705 |
| Contact Info: | Cell: (714) 585-2922 |
| Scars, Marks, Tattoos, Oddities: | |

---

| | |
|---|---|
| **Person:** | **Officer Kylane Peterson, ID# 1374** |
| Agency: | **Tustin Police Department** |
| Involvement: | **CONTACT** |
| Description: | |
| Identification: | Driver License: |
| Address/Resides: | 300 Centennial Way, Tustin, CA  92780 |
| Address/Associated: | |
| Contact Info: | Work: (714) 573-3200 |
| Scars, Marks, Tattoos, Oddities: | |

---

| | |
|---|---|
| **Person:** | **Luis Manuel Garcia-Areas** |
| Involvement: | **ARRESTEE** |
| | *211 PC - ROBBERY- USING OTHER DANGEROUS WEAPON(S)*<br>*422 PC - THREATEN CRIME WITH INTENT TO TERRORIZE* |
| AKA/Alias/Nickname: | AKA: Luis Manuel Garcia-Arias |
| Description: | Male, Hispanic, 5'10" tall, 170 lbs brown hair, brown eyes |
| DOB: | 9/30/1981 |
| Identification: | Driver License:          X5886132  (CA) |
| Address/Resides: | 1500 E WARREN ST Apt.# 148, Santa Ana, CA  92705 |

D-000367

AUG/11/2021/WED 11:57 AM                    FAX No.                          P. 006/007

Santa Ana PD 2020-23030                                                          2 of 3

Scars, Marks, Tattoos, Oddities:

| SAPD Personnel: | Mikles, Dana 3491 |
| Involvement: | Assisting |
| SAPD Personnel: | Choi, John 3631 |
| Involvement: | Assisting |
| SAPD Personnel: | Solorio, Ernesto 3249 |
| Involvement: | Reporting |
| SAPD Personnel: | Prewett, David 3022 |
| Involvement: | Assisting |
| SAPD Personnel: | Lopez, Mario 3266 |
| Involvement: | Assisting |
| SAPD Personnel: | Angel, David 2962 |
| Involvement: | Report Approver |

**Item 1)**   Involvement (Evidence) Located by: Solorio, Ernesto 3249 On: 11/16/2020 15:55:00

Document, Photo line-up.,

**Narrative:** *Narrative*

On November 1, 2020, at approximately 1643 hours, Tomas Najera was a victim of an armed robbery. Officer R. Vergara #2999 responded to the area of Wilshire Av. and Lyon St. where he interviewed Najera. Officer Vergara documented the incident under SAPD case number 2020-23030. Refer to his Crime Report for details of the preliminary investigation.

On November 13, 2020, at approximately 1900 hours, Officer D. Mikles #3491 contacted me and advised the Suspect, Arrestee-Luis Garcia-Areas, in this investigation was in custody. Per Officer Mikles, Najera had seen Garcia-Areas while in the City of Tustin. Najera contacted the Tustin Police Department who responded and detained Garcia-Areas. Najera positively identified Garcia-Areas as the same subject who had robbed him on November 1st in our city. The Tustin Police Department documented the identification process under CI #20-6666.

Officer Mikles and his partner Officer J. Choi #3631 responded to the City of Tustin where they took custody of Garcia-Areas and transported him to the Santa Ana Detention Facility for further processing. Officer Mikles informed me neither he nor his partner had spoken to Garcia-Areas about the robbery as he was a Spanish speaker.

At approximately 2132 hours, Detective D. Prewett #3022 and I responded to Najera's residence where I spoke to him about the robbery. My interview with Najera was in Spanish. Per the City of Santa Ana, I am a certified Spanish speaker.

In speaking with Najera, I learned he has seen Garcia-Areas over 100 times. Najera told me he had seen Garcia-Areas on a regular basis for approximately two years. Although he did not know him by name, he knew what Garcia-Areas looked like and was able to tell me he frequented Lyon St. and commonly hung out at the Home Depot located at Edinger Av. and Lyon St. in our city. Additionally, Najera informed me he knew Garcia-Areas nickname to be, "La Barredora" / "Street Sweeper".

Najera told me that in the past, Garcia-Areas had robbed him however, Najera had not reported the incident to Police as there were no independent witnesses or surveillance footage which showed the incident take place. Najera confirmed Garcia-Areas had been detained by the Tustin Police Department earlier in the day. On the day of the robbery, Garcia-Areas was armed with a stick and threatened to strike him.

D-000368

*Santa Ana PD 2020-23030*                                                          3 of 3

Najera was desirous of prosecution against Garcia-Areas. This concluded my interview with Najera.

*My interview with Najera was recorded with my department issued body worn camera (BWC). For additional information please refer to my body worn camera footage, These recordings were later uploaded into the Santa Ana Police Department evidence system.*

At approximately 2225 hours, Detective Prewett and I responded to the Santa Ana Detention Facility where I spoke to Garcia-Areas. My interview with Garcia-Areas was in Spanish. I advised Garcia-Areas of his Miranda Rights by reading them off the Santa Ana Police Department Advisement of Rights form.

Under Miranda, Garcia-Areas denied being involved in the robbery. Garcia-Areas acknowledged people call him, "La Barredora" / "Street Sweeper". Per Garcia-Areas, those around him called him "Street Sweeper" after they found out he had done a job where he had to sweep up the street. Garcia-Areas told me he had not robbed Najera, when informed his name had been mentioned as the Suspect in this investigation, Garcia-Areas told me he believed it was another person who had been using his identity. I told Garcia-Areas they had physically seen him committing the robbery to which he replied by telling me it was someone else. This concluded my interview with Garcia-Areas.

*My interview with Garcia-Areas was recorded with my department issued body worn camera (BWC). For additional information please refer to my body worn camera footage. These recordings were later uploaded into the Santa Ana Police Department evidence system.*

On November 16, 2020, I created a photo line-up containing Garcia-Areas. The witness, Chanelle Torres, responded to the Santa Ana Police Department where Detective J. Garcia #3232 administered the photo line-up. Detective Garcia read Torres the Santa Ana Police Admonishment for Photo Lineup form verbatim. Torres stated she understood and signed a copy of the form. Detective Garcia provided Torres with the photo line-up. Torres was unable to identify anyone. The photo line-up process was recorded using my body worn camera.

I booked the signed admonishment form and photo line-up as evidence at the Santa Ana Police Department.

Based on the totality of the circumstances, Garcia-Areas robbed the victim. I recommend the District Attorney's Office review this report and charge Garcia-Areas with PC 211/212.5(c)-Robbery.

Detective E. Solorio #3249

CID/Robbery Unit

Author: Solorio, Ernesto 3249   **BWC Activated**

D-000369