Bruce D. Praet, SBN 119430
**JONES MAYER**
3777 North Harbor Boulevard
Fullerton, CA  92835
Telephone: (714) 446-1400
Facsimile: (714) 446-1448
bpraet@aol.com

Attorney for Defendants

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMILY GARCIA and C.G., by and through her guardian ad litem, Rosala Becerra, individually and as successors-in-interest; WENDY LOREN GALICIA RAMIREZ, Individually and as Successor in Interest (Decedent's Wife) and KEVIN JOSUE GALICIA RAMIREZ, Individually and as Successor in Interest (Decedent's Son), <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF TUSTIN, ESTELLA SILVA and Does 1 through 10, Inclusive, <br><br> Defendants. | Case No: 8:22-cv-00131- SPG-KES <br><br> **DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW AND NEW TRIAL** <br><br><br> **DATE: July 29, 2026** <br> **TIME: 1:30 p.m.** <br> **COURTROOM: 5C** |

PLEASE TAKE NOTICE that on July 29, 2026, Defendant will and does hereby move the Court for an order granting Judgment as a Matter of Law pursuant to *F.R.Civ.P., Rule 50(b)* and/or, in the alternative, granting a new trial pursuant to *F.R.Civ.P., Rule 59.* This motion is based on the record and trial in this case including, but not limited to the grounds set forth in this motion, the attached exhibits and the transcript of the trial.

///

-1-
**DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW AND NEW TRIAL**

## TABLE OF CONTENTS

**Page(s)**

1.  PREFATORY STATEMENT.................................................................................. 6

2.  OFFICER SILVA IS NOW ENTITLED TO QUALIFIED IMMUNITY ................ 7

3.  DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW .. 12

4.  NO REASONABLE JURY COULD FIND EXCESSIVE FORCE......................... 13

5.  ALL EVIDENCE IS CONTRARY TO SUSTAINING A BANE ACT VIOLATION ................................................................................................. 14

6.  THE JURY FINDING OF BATTERY IS EQUALLY UNSUPPORTED BY THE EVIDENCE ................................................................................................. 15

7.  THE JURY'S FINDING OF ZERO COMPARATIVE FAULT ON THE PART OF GARCIA IS TOTALLY INCONSISTENT ........................................... 16

8.  DEFENDANTS ARE ENTITLED TO A NEW TRIAL ....................................... 18

9.  THE JURY SELECTION PROCESS WAS PREJUDICIALLY FLAWED ........... 19

10. THE NON-BIFURCATION OF LIABILITY FROM DAMAGES FURTHER PREJUDICED THE DEFENSE .......................................................................... 21

11. THE VICARIOUS LIABILITY INSTRUCTION RESULTED IN AN EXCESSIVE DAMAGE AWARD ...................................................................... 22

12. CONCLUSION .................................................................................................... 25



**DEFENDANT'S MOTION FOR JUDGMENT
AS A MATTER OF LAW AND NEW TRIAL**

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Batson v. Kentucky,*
476 U.S. 79 (1986)............................................................................................20

*Bell v. Williams,*
108 F.4th 809 (9th Cir. 2024) ........................................................................23

*Escondido v. Emmons,*
586 U.S. 38 (2019)..............................................................................................8

*Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd,*
762 F.3d 829 (9th Cir. 2014) ..........................................................................18

*Ford v. Peery,*
999 F.3d 1214 (9th Cir. 2021) ........................................................................15

*George v. Long Beach,*
973 F.2d 706 (9th Cir. 1992) ..........................................................................12

*Goldstein v. Kelleher,*
728 F.2d 32 (1st Cir. 1984)..............................................................................20

*Gonzalez v. Anaheim,*
747 F.3d 789 (9th Cir. 2014) ..........................................................................15

*Graham v. Connor,*
490 U.S. 386 (1989)................................................................................... 10, 13

*Hesselbein v. Beckham,*
168 F. Supp. 3d 1252 (E.D. Cal. 2016) ..........................................................18

*Hogan v. Carter,*
85 F3d 1113 (11th Cir. 1996) ..........................................................................11

*Isayeva v. Sacramento Sheriff's Dept.,*
872 F.3d 938 (9th Cir. 2017) ............................................................................8

*Kehr v. Smith Barney,*
736 F.2d 1283 (9th Cir. 1984) ........................................................................23

**DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW AND NEW TRIAL**



*K.J.P. v. Cnty of San Diego,*
21 F.Supp. 3d 1097 (S.D. Cal. 2022)................................................................23

*Molski v. M.J. Cable, Inc.,*
481 F.3d 724 (9th Cir. 2007) ...........................................................................19

*Monzon v. Murrieta*
978 F.3d 1150 (9th Cir. 2020) .............................................................................7

*Mullenix v. Luna,*
136 S.Ct. 305 (2015)...........................................................................................8

*Reese v. Cty. of Sacramento,*
888 F.3d 1030 (9th Cir. 2018) ..........................................................................14

*Reeves v. Sanderson Plumbing Prod.,*
530 U.S. 133 (2000)...........................................................................................12

*Saucier v. Katz,*
533 U.S. 194 (2001)............................................................................................8

*Scott v. Harris,*
550 U.S. 372 (2007)...........................................................................................13

*Scott v. Henrich,*
39 F.3d 912 (9th Cir. 1994) ..............................................................................17

*Sheehan v. San Francisco,*
85 U.S. 600 (2015).............................................................................................13

*Silver Sage Partners, Ltd. v. City of Desert Hot Springs,*
251 F.3d 814 (9th Cir. 2001) ............................................................................18

*Swain v. Alabama,*
380 U.S. 202 (1965)...........................................................................................20

*U.S. v. Reese,*
2 F.3d 870 (9th Cir. 1993) ................................................................................14

*Wilkinson v. Torres,*
610 F.3d 546 (9th Cir. 2010) ............................................................................15

*Wilson v. Layne,*
526 U.S. 603 (1999)...........................................................................................11

- 4 -

**DEFENDANT'S MOTION FOR JUDGMENT**
**AS A MATTER OF LAW AND NEW TRIAL**



*Zorn v. Linton,*

    2026 U.S. LEXIS 1471, 146 S.Ct. 926 (2026) ........................................................................ 7, 8

**STATE CASES**

*Chanda v. Federal Home Loans Corp.,*

    215 Cal.App.4th 746 (2013) ........................................................................ 22

*Hayes v. County of San Diego,*

    57 Cal.4th 622 (2013) ........................................................................ 16

*Lopez v. Los Angeles,*

    196 Cal.App.4th 675 (2011) ........................................................................ 17

*Sullivan v. Buena Park,*

    2026 Cal.App. Unpub. LEXIS 1046 ........................................................................ 20

*Villalobos v. Santa Maria,*

    85 Cal.App.5th 383 (2022) ........................................................................ 16

**FEDERAL STATUTES**

28 U.S.C. section 1870 ........................................................................ 19

*Federal Rules of Civil Procedure,* Rule 42(b) ........................................................................ 21

*Federal Rules of Civil Procedure,* Rule 50(a) ........................................................................ 12

*Federal Rules of Civil Procedure,* Rule 50(b) ........................................................................ 1

*Federal Rules of Civil Procedure,* Rule 50(b)(1) ........................................................................ 12

*Federal Rules of Civil Procedure,* Rule 59 ........................................................................ 1

**OTHER**

CACI 3703 ........................................................................ 22



**DEFENDANT'S MOTION FOR JUDGMENT
AS A MATTER OF LAW AND NEW TRIAL**

## 1.    PREFATORY STATEMENT.

If there were ever a case in which a jury verdict warranted reversal, this is it. While this verdict was wrong on so many levels, any one of which would be singularly sufficient, the cumulative effect of the issues set forth herein virtually mandates the Court's intervention to avoid a miscarriage of justice. As tragic as any officer-involved shooting is for all involved or, perhaps because such cases are so emotionally charged, this nuclear verdict is minimally flawed in the following ways:

- With the Ninth Circuit having expressly preserved Officer Silva's right to qualified immunity [Doc. 89, p. 5, fn.6], this defense is now even more critical in light of the Supreme Court's most recent ruling and notwithstanding the jury's unsupported finding of unreasonable seizure/excessive force.

- Notwithstanding the jury's misguided finding of a constitutional violation, the undisputed evidence establishes that Officer Silva did not and could not have formulated the requisite "intent" or "reckless disregard" to have violated decedent's constitutional rights under California's Bane Act.

- Having erroneously concluded that Officer Silva was somehow negligent by way of some ill-defined and unmandated tactics, it is impossible for the jury to have assigned zero comparative negligence to decedent.

- Unfortunately, the Court's unequal allocation of peremptory challenges prevented Defendants from selecting a fair and impartial jury while permitting Plaintiffs to jointly remove prospective jurors more neutral to the defense.

- As predicted, the non-bifurcation of liability from damages unduly prejudiced Defendants by permitting Plaintiffs to overemphasize highly emotional evidence of damages so as to improperly appeal to sympathy and divert the jury's attention away from evidence relevant to the threshold issues of liability.

- Despite the fact that the City of Tustin was no longer a direct defendant, providing the jury with an instruction on vicarious liability combined with counsel's improper closing argument to encourage the jury to award excessive damages completely

-6-



**DEFENDANT'S MOTION FOR JUDGMENT
AS A MATTER OF LAW AND NEW TRIAL**

unrelated to any evidence, but instead tied to a "deep pocket".

Whether the extraordinarily brief deliberations of just over three hours is indicative of jury misconduct, it is inconceivable that eight jurors who had remained noticeably independent throughout trial could mysteriously coalesce into a unanimous group on the final day capable of agreeing on no less than ten separate liability questions and somehow calculating six separate damage awards.  While jurors were certainly free to leave upon rendering a verdict, it is virtually unprecedented that an entire jury would not only avoid counsel, but completely reject the Court's invitation for a brief post-trial meeting.  Such highly unusual behavior is simply further evidence of a rogue jury whose verdict was based upon other than the evidence.

For these reasons and those more fully set forth below, Defendants respectfully urge the Court to remedy this miscarriage of justice through judgment as a matter of law and/or by way of granting a new trial.

### 2. <u>OFFICER SILVA IS NOW ENTITLED TO QUALIFIED IMMUNITY.</u>

As noted above, the Ninth Circuit expressly left open Officer Silva's entitlement to qualified immunity by way of a post-verdict Rule 50(b) motion.  Notwithstanding the jury's inexplicable conclusion that Officer Silva somehow made an unreasonable seizure of decedent, the Ninth Circuit has made it clear that "**even if the officer's use of deadly force was not reasonable, the second prong of the qualified immunity analysis would still compel affirmance because the officer did not violate a clearly established right.**" *Monzon v. Murrieta, 978 F3d 1150, 1161-62 (9th Cir. 2020).*

This becomes even more critical in light of the Supreme Court's most recent reinforcement and emphasis on qualified immunity for officers in all but the most egregious cases.  *Zorn v. Linton, 2026 U.S. LEXIS 1471, 146 S.Ct. 926 (2026).*  Citing its own longstanding history of precedent, the Supreme Court has once again stressed that qualified immunity must be granted unless it would be "beyond debate" to every reasonable officer that what she was doing at the time violated a clearly established right under the specific circumstances she was facing. *Id., *4.*  Put simply, qualified immunity protects "all but the



plainly incompetent or those who knowingly violate the law." *Mullenix v. Luna, 136 S.Ct. 305, 308 (2015)*

In order to satisfy the "clearly established" prong, it is Plaintiff's burden to "identify a case where an officer acting under similar circumstances. . . was held to have violated the Constitution." *Zorn,* citing *Escondido v. Emmons, 586 U.S. 38, 43 (2019) (*per curiam); *Isayeva v. Sacramento Sheriff's Dept. (872 F3d 938, 945 (9th Cir. 2017)* Relevant precedent cannot establish the right at a "high degree of generality", but must instead define the right with a "high degree of specificity" in order to protect officers' actions in the "hazy border between excessive and acceptable force". *Mullenix, p. 312.* In cases such as the instant case, the Court has recognized that:

> "Such specificity is especially important in the Fourth Amendment context, where the Court has recognized that 'it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts. The correct inquiry is whether it was clearly established that the Fourth Amendment prohibited the officers' conduct in the 'situation (s)he confronted'." *Ibid.*

Even if Officer Silva was mistaken as to the facts or law, qualified immunity must still be granted as long as such mistake was reasonable. *Saucier v. Katz, 533 U.S. 194, 205 (2001)* Whatever factual issues the Ninth Circuit had considered disputed in preliminarily denying qualified immunity in the instant case, the specific facts comprising the "totality of the circumstances" facing Officer Silva at the time of this incident now remain undisputed:

- When Officer Silva told decedent ("Garcia"), "I know you, come on", her knowledge included having detained him in November, 2020 (just nine months prior to this incident) for a robbery in Santa Ana in which Officer Silva had been informed that the victim had been "knocked unconscious" by

**DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW AND NEW TRIAL**

Garcia who had been armed with a large piece of wood. [1:RT:220-221][1]

- Officer Silva had also arrested Garcia for a felony Assault with a Deadly Weapon warrant as well as possession of methamphetamine just three months prior to this August 9, 2021, incident. [2:RT:68-69]
- Officer Silva's suspicion that Garcia's lack of compliance and evasiveness at the time of this incident was the result of methamphetamine [2:RT:71-72] was corroborated by toxicology results revealing 2210 ng/ml of methamphetamine in Garcia's system causing violent behavior.[2]
- After initially starting to exit the bushes with just a bag of cans, Garcia went back and retrieved a five foot wooden pole before exiting, prompting Officer Yuhas to yell "he's got a stick" before deploying his Taser. [3:RT:113][3]
- When the Taser did not instantly achieve the intended "NMI" (neuro-muscular incapacitation), Garcia raised the five foot pole over his head while facing Officer Silva who had attempted to retreat to a position placing her just 2-3 feet from Garcia. [2:RT:86-87] Although introduced on BWC video, Garcia's position was also displayed at trial by exhibit 205B (attached hereto as exhibit "2").
- As Garcia exited the bushes with the five foot pole raised above his head, he yelled "Dale, dale" in Spanish which Officer Silva recognized from her Hispanic childhood as the utterance made just before striking a pinata with a pole. [2:RT:97-98]
- It was agreed by all experts that Officer Silva would not be required to wait to be struck by the pole before deploying deadly force as the pole could

---

[1] Relevant trial transcript pages are cited by day of trial volume and Reporter's Transcript page, lodged with the Court as exhibit "1".

[2] Despite requests and payment by all counsel to obtain expedited trial transcripts, counsel were notified that the afternoon proceedings of two days were not transcribed, thus excluding portions of testimony. This stipulated fact, however, is referenced in closing argument. [6:RT:65]

[3] Attached hereto as exhibit "3" is also a copy of the BWC video introduced at trial.



cause serious bodily injury or death.  [5:RT:55]

- Officer Silva fired two rapid shots, striking Garcia in the center of his chest and on his left side as he turned toward Officer Frias while still holding the pole.  [2:RT:105-108]

Although other evidence was introduced at trial, these are the specific facts constituting the "totality of the circumstances" facing Officer Silva at the time she made the split-second decision to defend herself from what she reasonably perceived as an immediate threat of serious bodily injury or death.  *Graham v. Connor, 490 U.S. 386 (1989)*  Thus, notwithstanding the jury's finding of an unreasonable seizure, the question becomes whether it would have been "beyond debate" to all but the most incompetent officer under these specific facts, mistaken or not, that rapidly defending oneself from a perceived (even if mistaken) threat of serious bodily injury or death would violate a "clearly established" right.

Since the rationale of the jury's finding may forever remain a mystery, the Court must consider other references to determine whether it would have been "beyond debate" to any reasonable officer in Officer Silva's position that they would have violated a clearly established right.  Putting aside Officer Silva's perspective:

- Three other officers actually on scene at the time viewed the exact same circumstances and each independently perceived Garcia as posing an immediate threat of serious bodily injury or death to Officer Silva.  [Yuhas, 3:RT:118; Frias, 3:RT:181, Babb, 3:RT:230-231].
- The highly respected and qualified Chief Robert Handy concluded that Garcia posed an immediate threat of serious bodily injury or death to Officer Silva at the moment she defended herself with deadly force.   [5:RT:216].
- The California Department of Justice and Attorney General independently investigated this case, reviewing all of the evidence presented to the jury, and concluded "Given the totality of the evidence, Officer Silva could reasonably have believed that Mr. Garcia Arias was going to strike her, or her fellow officers with the wooden rod. Further, it is reasonable for Officer Silva to

**DEFENDANT'S MOTION FOR JUDGMENT
AS A MATTER OF LAW AND NEW TRIAL**



believe that a strike from the wooden rod posed an imminent threat of great bodily injury or death to her or her fellow officers." [See: DOJ report, p. 28, attached hereto as exhibit "4"]

- Even this Court originally concluded that "a reasonable officer in Officer Silva's position could conclude at the time of the shooting that Garcia was attempting to commit a severe crime – namely assault on a police officer – and that he posed an immediate threat to that officer and to others." [Doc. 77, p.19]

- Ninth Circuit Judge Bennett went so far as to find "Because I do not believe Officer Silva's split-second resort to deadly force under the circumstances captured by the uncontroverted video evidence can be described as "plainly incompetent" or "knowingly violat[ing] the law," I would affirm the district court's grant of qualified immunity. [Doc. 89, p.6]

As the U.S. Supreme Court has recognized in qualified immunity cases, "**If judges thus disagree on a constitutional question, it is unfair to subject police to money damages for picking the losing side of a controversy**." *Wilson v. Layne, 526 U.S. 603, 618 (1999)*; Cf. *Hogan v. Carter, 85 F3d 1113, 1116, fn.3 (11th Cir. 1996)* – "**if a reasonable jurist would not have viewed the defendant's action as violative of clearly established law, then it necessarily follows that the reasonable officer likewise would not have viewed that conduct as violative of clearly established law**."

Here, three other officers actually on scene, a highly respected police chief, the California Department of Justice/Attorney General, this Court and even a Ninth Circuit judge all viewed the same evidence and independently came to the same inescapable conclusion that Officer Silva did not and could not have violated a clearly established right. When judges and other highly respected individuals conclude that Officer Silva did not violate any clearly established right, her entitlement to qualified immunity simply cannot be denied. This is precisely why the Ninth Circuit and the Supreme Court continue to stress the need for granting qualified immunity even if a jury somehow concludes that the officer used unreasonable force.



**DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW AND NEW TRIAL**

Similarly, as this Court recognized in its original grant of summary judgment [Doc. 77, p. 36] and the Ninth Circuit did not dispute, Plaintiffs fell far short of ever meeting their burden of citing a case even remotely identifying a "clearly established" right under the requisite "specific facts" of this case viewed most favorably to Plaintiffs. Without revisiting each and every case cited by Plaintiffs as purportedly "clearly established" law, this Court conducted a thorough analysis of each such case and easily failing to meet Plaintiffs' burden. [Doc. 77, p. 25-36]. Thus, given that this incident occurred in 2021, no pre-existing case law existed as of this Court's 2025 summary judgment ruling and even the Ninth Circuit raised no such case.

Notwithstanding the jury's inexplicable finding of a constitutional violation, the controlling law from the Supreme Court dictates that Officer Silva must be granted qualified immunity in the undeniable absence of "clearly established" law to the contrary.

### 3. DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW.

Following the Court's denial of Defendants' Rule 50(a) motion at the close of Plaintiffs' case, Rule 50(b) requires the Court to render judgment as a matter of law (JMOL) where, as here, there is no legally sufficient evidentiary basis for a reasonable jury to find for Plaintiffs. *Reeves v. Sanderson Plumbing Prod., 530 U.S. 133, 135 (2000).* Although the Court on a motion for JMOL must view the evidence in a manner most favorable to the non-moving party, there still must be substantial evidence sufficient for reasonable minds to accept the jury's conclusion. *George v. Long Beach, 973 F2d 706, 709 (9th Cir. 1992)*

As set forth below, there is simply no evidence, much less sufficient evidence, to support any of the jury's findings on each of the separate and distinct liability questions supposedly unanimously determined by examining five days of testimony with lightning speed before moving on to six equally hasty damage awards. Under the circumstances outlined herein, Defendants are entitled to JMOL on each question of liability. Rule 50(b)(1) In the alternative, a new trial is required to present the evidence to a reasonable jury. Rule 50(b)(2).

**DEFENDANT'S MOTION FOR JUDGMENT
AS A MATTER OF LAW AND NEW TRIAL**

## 4.    NO REASONABLE JURY COULD FIND EXCESSIVE FORCE.

Without repeating the undisputed "totality of circumstances" outlined above with respect to Officer Silva's entitlement to qualified immunity, it defies logic how this jury could view the same evidence  and reach a different conclusion than this Court on summary judgment, Ninth Circuit Judge Bennett, Chief Robert Handy, the California DOJ and Attorney General and three other officers actually on scene – i.e. Any reasonable officer in the same position as Officer Silva under the same totality of the circumstances would have perceived Garcia as an imminent threat of serious bodily injury or death. *Supra.*

This is particularly difficult to comprehend given that the jury was expressly instructed that they "must judge the reasonableness of a particular use of force from the perspective of a reasonable officer on the scene and not with the 20/20 vision of hindsight." [Doc. 155, Instruction No. 24]  Here, other than Plaintiffs' $1.5 million/year "expert" Scott DeFoe conveniently lumping Officer Silva into the 98% of all officers he has been paid to find at fault in 470 officer-involved shootings, there was no evidence offered to even remotely suggest that Officer Silva's belief of an imminent threat was objectively unreasonable.[4]  On the contrary, the real time BWC was the best evidence to show the rapidly evolving, tense and uncertain circumstances facing Officer Silva, as reinforced by the Supreme Court's direction that the real time BWC video is the best evidence. *Scott v. Harris, 550 U.S. 372, 380-381 (2007)*

It was only after this Court overruled Defendants' objections to the presentation of BWC in frozen frames or slow motion [Doc. 99] that Defendants were forced to counter Plaintiffs' presentation of evidence with similar screen shots.  However, by not limiting the jury's perspective of the evidence to real time viewing of BWC video, the jury was improperly permitted to view Officer Silva's conduct with the impermissible "vision of 20/20 hindsight". *Graham v. Connor, 490 U.S. 386, 396-97 (1989)*  [See: Citations set forth

---

[4] As the Supreme Court noted in *Sheehan v. San Francisco, 585 U.S. 600, 617 (2015)*, "In close cases, a jury does not automatically get to second-guess (an officer's) life and death decisions, even though plaintiff has an expert and a plausible claim that the situation could better have been handled differently."

**DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW AND NEW TRIAL**



in Defendants' Trial Brief [Doc. 99].

Moreover, by constantly suggesting that officers "escalated" this situation, Plaintiffs improperly incorporated the actions of other non-defendant officers, in particular Officer Yuhas' deployment of the Taser [Defoe, 5:RT:105], to reflect on the actions of Officer Silva. Whether any use of force by Office Yuhas or his failure to deploy a second set of Taser darts was reasonable was not an issue for the jury to decide. Yet, this conduct was nonetheless highlighted in the overall consideration of whether the use of force was reasonable.

Properly viewed from the perspective of a reasonable officer on scene under the totality of the circumstances known to Officer Silva at the time, there is simply insufficient evidence to support the jury's finding of unreasonable force by her alone.

### 5.  ALL EVIDENCE IS CONTRARY TO SUSTAINING A BANE ACT VIOLATION.

Over the objections of Defendants [Doc. 152] and, at the urging of Plaintiffs, the Court edited the model CACI 3066 Bane Act instruction to add the otherwise not included "reckless disregard" as sufficient to sustain a violation. [Doc. 155, Instruction No. 26] Notwithstanding the Court's attempt to define "reckless disregard", the Ninth Circuit more clearly defined it as requiring that the officer "acted with the specific purpose of depriving plaintiff of his constitutional right." *U.S. v. Reese, 2 F3d 870, 882 (9th Cir. 1993)* Nonetheless, whether requiring proof of an "intent" to violate or "reckless disregard" for decedent's constitution rights, a violation of the Bane Act requires more than a finding of unreasonable or excessive force. *Reese v. Cty. of Sacramento, 888 F3d 1030, 1041-1044 (9th Cir. 2018)*. In other words, Plaintiff had the burden of proving that Officer Silva not only used unreasonable force under the Fourth Amendment, but that she did so with the additional intent or purpose of violating Garcia's constitutional rights. *Id., p. 1045*

Since, as noted above, no constitutional right has been "clearly established", it would have been impossible for Officer Silva to have formed the requisite intent or reckless disregard to have violated such an ill-defined constitutional right pursuant to the Bane Act.

In the analogous Fourteenth Amendment context, the Ninth Circuit has held that



**DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW AND NEW TRIAL**

because the heightened purpose to harm standard is substantially greater than the reasonableness standard applied under the Fourth Amendment, even an allegedly unreasonable use of force will be insufficient to establish that an officer acted with the requisite ulterior motive or purpose. *Gonzalez v. Anaheim, 747 F3d 789, 798 (9th Cir. 2014)* This heightened burden of proof must be applied where, as here, Officer Silva's decision was the result of "a snap judgment because of an escalating situation" rather than prolonged deliberation. *Wilkinson v. Torres, 610 F3d 546, 554 (9th Cir. 2010)*

Ironically, in the instant case, Plaintiffs continuously argued how hastily Officer Silva acted by not waiting for the full five second Taser cycle [6:RT:19] or firing her gun without waiting to see if Garcia would actually attempt to strike her [6:RT:89] or firing her two shots within less than one second of each other [6:RT:19]. As such, it is Plaintiffs' own evidence which establishes that Officer Silva could not have had the requisite state of mind, to form an intent or purpose to violate Garcia's rights.

Thus, separate and apart from the jury's unsupported conclusion that Officer Silva's use of force was unreasonable, there was absolutely no evidence presented upon which the jury could have possibly found that Officer Silva had the requisite "intent" or even "reckless disregard" necessary to support a Bane Act violation.

## 6.    THE JURY FINDING OF BATTERY IS EQUALLY UNSUPPORTED BY THE EVIDENCE.

During Plaintiffs' rebuttal closing, counsel repeatedly misled the jury by arguing that Officer Silva's use of deadly force constituted a "battery" if it wasn't "necessary", going so far as to circle the word "necessary" four times in Jury Instruction No. 27. [6:RT:88]  While the jury was also instructed that closing argument is not evidence, this misstatement of the law occurred after defense counsel had no further opportunity to correct it by directing the jury's attention to the fact that "necessary" is instead defined by the objective reasonableness standard.   Where, as here, a jury's verdict is logically inconsistent with the evidence, an attorney's misstatement of the law during closing argument can be presumed prejudicial. *Ford v. Peery, 999 F3d 1214, 1226 (9th Cir. 2021)*

- 15 -

**DEFENDANT'S MOTION FOR JUDGMENT
AS A MATTER OF LAW AND NEW TRIAL**

Under the correct statement of the law on battery, "necessary" is defined by "a reasonable officer in the same situation believing, based on the totality of the circumstances known to or perceived by Officer Silva at the time, that deadly force was necessary to defend against an imminent threat of death or serious bodily injury to Officer Silva or others." [Doc. 155, Instruction No. 27]  While the mystery of the jury's verdict may forever remain unsolved, it is inconceivable that three other officers actually on scene with Officer Silva, Chief Robert Handy, the California DOJ and Attorney General, as well as this Court and a Ninth Circuit judge could all view the same evidence to independently, but consistently, conclude that Officer Silva's use of deadly force was "necessary" when considered in the proper context of the law rather than the isolated and misleading emphasis advanced by Plaintiffs' counsel.  *Supra.*

**7.      THE JURY'S FINDING OF ZERO COMPARATIVE FAULT ON THE PART OF GARCIA IS TOTALLY INCONSISTENT.**

In 2013, the California Supreme Court added pre-shooting tactics as a consideration in determining whether an officer was somehow negligent in the use of deadly force.  *Hayes v. County of San Diego, 57 Cal.4th 622, 632 (2013).*  Since that time, courts and even California POST have clarified the standard necessary to sustain a finding of negligent use of deadly force.  Citing *Hayes,* the Court in *Villalobos v. Santa Maria, 85 Cal.App.5th 383, 390-391 (2022),* the Court held and both experts in the instant case agreed that:

> "Officers need not choose the most reasonable action or even conduct which is least likely to cause harm, there is no particular pre-shooting protocol as long as the officer acts within a broad range of reasonableness."  [5:RT:55 and 5:RT:148]

Here, while Plaintiffs' police practices expert Scott DeFoe lumped Officer Silva into the 98% of the 470 officers he has opined were at fault in shootings, even he was forced to admit that Officer Silva did not violate any established tactics or protocol.  Not one shred of evidence was ever offered to establish that Officer Silva's pre-shooting tactics were contrary to any established standard.  Although jury instructions are woefully inadequate in stating the

- 16 -

JM
JONES MAYER
LAW

law, the jury lost complete sight of the law as it relates to an allegation of negligence by an officer in a shooting.  However, the law nonetheless makes it clear that:

> "Peace officers are often forced to make split-second judgments, in tense circumstances, concerning the amount of force required. We must never allow the theoretical, sanitized world of our imagination to replace the dangerous and complex world that policemen face every day.  What constitutes 'reasonable' action may seem quite different to someone facing a possible assailant than to someone analyzing the question at leisure.  [This] gives the police appropriate maneuvering room in which to make such judgments free from the need to justify every action in a court of law." *Lopez v. Los Angeles, 196 Cal.App.4th 675, 686 (2011).*

On the federal level, the Ninth Circuit has similarly long recognized that it is both unrealistic and unfair to even suggest that an officer should be required to choose the least intrusive alternatives in the real world.  In *Scott v. Henrich, 39 F3d 912, 915 (9th Cir. 1994),* the Court made the implausibility of such a standard clear:

> "Imposing such a requirement would inevitably induce tentativeness by officers, and thus deter police from protecting the public and themselves.  It would also entangle the courts in endless second-guessing of police decisions made under stress and subject to the exigencies of the moment."

Thus, in light of the evidence presented (or lack thereof), it is once again inconceivable how the jury could have concluded that Officer Silva breached some non-existent duty in order to sustain Plaintiffs' negligence claim.

Even more unbelievable, however, is how the jury could then conclude that Garcia did not in any way contribute to his own situation when Jury Instruction No. 29 expressly defined comparative fault to include "doing something that a reasonably careful person would not do in the same situation."  In addition to the undisputed fact that Garcia had self-

**DEFENDANT'S MOTION FOR JUDGMENT
AS A MATTER OF LAW AND NEW TRIAL**

JM
JONES MAYER
LAW

ingested 2210 ng/ml of methamphetamine and failed to comply with lawful orders of a police officer, he ultimately retrieved and raised a five pole just two to three feet from a retreating uniformed police officer.  Whether that's 90%, 70% or even 50% comparative fault, there is simply no world in which such conduct can be construed as that of a reasonable person.

While Defendants disagree with the jury's obviously hasty conclusion that Officer Silva was somehow negligent under some non-existent standard, no reasonable juror could thereafter fail to assess at least some percentage of comparative fault to Garcia under the evidence and law of this case.[5]

## 8.    DEFENDANTS ARE ENTITLED TO A NEW TRIAL.

In addition to Officer Silva's entitlement to qualified immunity and the bases for Defendants' JMOL, Rule 59(a)(1)(A) provides that a "court may, on motion, grant a new trial . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court."  Even "if substantial evidence supports the jury's verdict, a trial court may grant a new trial if the verdict is contrary to the clear weight of the evidence or to prevent, in the sound discretion of the trial court, a miscarriage of justice." *Hesselbein v. Beckham, 168 F. Supp. 3d 1252, 1262 (E.D. Cal. 2016) (quoting Silver Sage Partners, Ltd. v. City of Desert Hot Springs, 251 F.3d 814, 819 (9th Cir. 2001).*

In contrast to a Rule 50 motion for judgment as a matter of law, "the district court, in considering a Rule 59 motion for new trial, is not required to view the trial evidence in the light most favorable to the verdict. Instead, the district court can weigh the evidence and assess the credibility of the witnesses." *Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd, 762 F.3d 829, 842 (9th Cir. 2014).*  Indeed, the Ninth Circuit has emphasized that, under Rule 59, the district court has "the duty to weigh the evidence as the court saw it, and to set aside the verdict of the jury, even though supported by substantial evidence, where, in the

---

[5] As extensively briefed in Defendants' pretrial motions [Doc. 99], Defendants continued to object to consideration of battery by a peace officer as an intentional tort so as to preclude comparative fault since an officer's use of even excessive force is based on an objective reasonableness standard rather than intent.  [5:RT42]



**DEFENDANT'S MOTION FOR JUDGMENT
AS A MATTER OF LAW AND NEW TRIAL**

court's conscientious opinion, the verdict is contrary to the clear weight of the evidence." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007).

The individual and cumulative effect of the issues raised herein reinforce the undeniable miscarriage of justice resulting from this jury's verdict and nuclear damage award. Whether this Court chooses just one or multiple reasons, Defendants respectfully submit that a new trial is the only remedy to avoid this unwarranted result.

## 9.    THE JURY SELECTION PROCESS WAS PREJUDICIALLY FLAWED.

While 28 U.S.C. § 1870 provides for three peremptory challenges per party, the Court granted Plaintiffs a total of six peremptory challenges while limiting Defendants to only three in spite of objections. [1:RT:126-127] This was apparently determined by the fact that there were two sets of Plaintiffs represented by a total of five attorneys while Officer Silva and the City of Tustin (introduced as two separate Defendants) were jointly represented by a single attorney. Yet, just as the interests of Officer Silva and the City were aligned so were the claims and interests of both sets of Plaintiffs. Under the Court's rationale, ten separate plaintiffs bringing identical claims would have been entitled to thirty peremptory challenges while leaving Defendants with only three.[6]

The undue prejudice of this allocation of challenges manifested after Plaintiffs (jointly consulting among five attorneys) exercised their fourth peremptory challenge to eliminate a prospective juror with a profile more neutral to the defense. Recognizing that the next several prospective jurors were clearly more favorable to Plaintiffs and that Plaintiffs still had two remaining peremptory challenges to get to those jurors, Defendants were forced to waive their one remaining challenge to avoid an even less impartial jury panel.

Where, as here, the interests of the parties are virtually indistinguishable, it may constitute reversible error to allocate unequal peremptory challenges between plaintiffs and

---

[6] Even California Code of Civil Procedure § 231(c) requires the court to, for the purpose of allotting peremptory challenges, divide the parties into two or more sides according to their respective interests in the issues. If there are several parties on a side, the court shall divide the challenges among them as nearly equally as possible.



**DEFENDANT'S MOTION FOR JUDGMENT
AS A MATTER OF LAW AND NEW TRIAL**

defendants.  *Goldstein v. Kelleher, 728 F 2d 32, 36 (1st Cir. 1984).*  The U.S. Supreme Court has identified the importance of peremptory challenges:

> "The peremptory challenge is 'one of the most important rights . . .
>
> the denial or impairment of the right is reversible error without
>
> a showing of prejudice.  The function of the challenge is not
>
> only to eliminate extremes or partiality on both sides but to assure
>
> the parties that the jurors before whom they try the case will
>
> decide on the basis of the evidence placed before them, and
>
> not otherwise.  *Swain v. Alabama, 380 U.S. 202, 219-220 (1965)*
>
> [Overruled on other grounds, *Batson v. Kentucky, 476 U.S. 79 (1986)*]

Once again, while it may remain a mystery how eight seemingly independent jurors somehow managed to fly through no less than ten liability questions and also unanimously agree on six separate damage awards in just over three hours, it is now abundantly clear that the empaneled jury decided this case based on some undisclosed agenda rather than the evidence.

Under the Sixth and Seventh Amendments, each party is entitled to a trial by a jury of his/her peers.  Although the Central District theoretically draws jurors from a wide area, not one juror was from anywhere close to Orange County, much less the City of Tustin.  As such, the question is whether Officer Silva was truly judged by a jury of her peers.  While the law may not differ from one region to the next, the perception of "reasonableness" on the part of local officers will clearly differ between jurors residing in the Los Angeles County region as opposed to the undeniably more conservative and tolerant Orange County region where Officer Silva works and this incident occurred.[7]

Since none of the eventually seated jurors qualified to be excused for cause, Officer

---

[7] Albeit different facts, this disparity is illustrated by the verdict in a recent officer-involved shooting of an admittedly unarmed 23 year old male in which an Orange County jury awarded surviving family members, not $17 million, but a more realistic $3.5 million, reduced to $1.47 million by 58% comparative fault on the part of the decedent.  *Sullivan v. Buena Park, 2026 Cal.App. Unpub. LEXIS 1046*

- 20 -

**DEFENDANT'S MOTION FOR JUDGMENT
AS A MATTER OF LAW AND NEW TRIAL**



Silva was unfortunately forced to accept a less than desirable jury comprised of individuals who were incapable or unwilling to afford her a fair trial.  Although it may be impossible to predict how a more neutral jury might have decided this case, it is respectfully submitted that the disparity of peremptory challenges deprived Officer Silva of an equal opportunity to select a fair and impartial jury.

### 10.    THE NON-BIFURCATION OF LIABILITY FROM DAMAGES FURTHER PREJUDICED THE DEFENSE.

Unfortunately, as predicted in Defendants' motion to bifurcate [Doc. 111], the presentation of highly emotional evidence of damages during the liability phase clearly overwhelmed the jury's ability to independently evaluate the evidence relevant to liability issues.  Prior to trial, the parties had agreed to present the subtitled BWC video ending at 1:50, including Garcia yelling in pain and uttering "it hurts".  [Exhibit 212]  However, during the presentation of Plaintiffs' case, they suddenly announced an intention to introduce another eleven minutes of a bloodied Garcia continuously moaning in pain.  [Exhibit 57].  Following F.R.E., Rule 403 objections from the defense, the Court eventually permitted Plaintiffs to show this entire video as well as video of Garcia in the ambulance.  Although obviously not reflected on the record, at least two jurors were observed openly crying during this presentation.

While Plaintiffs were certainly entitled to introduce evidence of Garcia's "pain and suffering", it had absolutely nothing to do with the threshold issues of liability.  On the contrary, its only purpose was to improperly and prejudicially appeal to the sympathy of the jury over the evidence relevant to liability issues.  Moreover, this fact was not only stipulated, but further established by the testimony of a treating paramedic.  The sole purpose of introducing the bloody post-shooting videos during trial and again during closing argument was to improperly appeal to the sympathy of the jury and divert their attention to the evidence relevant to the threshold issue of liability.  *F.R.Civ.P., Rule 42(b).*  Despite the Court's brief instruction that the jury must not be influenced by sympathy [Doc. 155, Instruction No. 32], it is abundantly clear that this is precisely how they reached such a quick

**DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW AND NEW TRIAL**

verdict with damage awards completely unrelated to any evidence.

But for the jury's exposure to highly emotional and graphic evidence of Garcia's pain and suffering, it is highly predictable that the jury would/should have decided the threshold liability issues in favor of Officer Silva in accordance with the evidence presented.

## 11. THE VICARIOUS LIABILITY INSTRUCTION RESULTED IN AN EXCESSIVE DAMAGE AWARD.

Once this Court's decision to dismiss all direct claims against the City of Tustin on summary judgment [Doc. 77, p. 43] was upheld by the Ninth Circuit, this Court agreed that the City of Tustin was no longer a direct defendant in this case.  In an effort to avoid the extreme risk of the jury awarding excessive damages by harboring a belief that there was a "deep pocket" available, Defendants stipulated outside the presence of the jury that the City would be financially responsible for any damage award as provided by statute.  Yet, despite Defendants' objections to CACI 3703 (vicarious liability) [Doc. 152] and to referencing the City of Tustin as a "Defendant" [1:RT:11], the Court continuously informed the jury that this case jointly included the City of Tustin and gave Jury Instruction No. 25 which expressly alerted the jury to the fact that "the City of Tustin is responsible for any harm caused by Officer Silva's wrongful conduct."

Ironically, the so-called "collateral source rule" has historically prohibited the defense from attempting to introduce evidence that a plaintiff's damages/injuries may be covered by insurance in order to insure that the jury determines damages based on the evidence rather than who might cover them. *Chanda v. Federal Home Loans Corp., 215 Cal.App.4th 746, 752 (2013).*  In a reversal of that rule in the instant case, however, this jury was expressly told that Plaintiffs' damages would be covered by the City of Tustin, a non-defendant in the case.  Because the jury is required to determine damages based on the evidence rather than who might pay them, the rule must cut both ways.  If the defense is prohibited by the "collateral source rule" from introducing evidence that damages have been or will be covered by a third party (i.e. insurance), it is equally prejudicial and improper for Plaintiffs to inform the jury that any damage award would be covered by the non-direct party, City of



**DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW AND NEW TRIAL**

Tustin.  This simply invites error and virtually guarantees that the jury will assess damages based on who might be covering them rather than the evidence presented at trial.

Compounding the risk of extreme prejudice, Plaintiffs' counsel Arias twice during closing argument improperly urged the jury to "send a message" despite the fact that punitive damages were not a part of this case.  [6:RT:50]  Although the Court twice sustained objections, it did not instruct the jury to disregard such comments.  Unfortunately, such attorney misconduct combined with all other factors to permeate the entire proceeding to the point where the jury was clearly influenced by passion and prejudice.  *Kehr v. Smith Barney, 736 F2d 1283, 1286 (9th Cir. 1984)*

Here, after Plaintiffs improperly appealed to the jury's sympathy with eleven minutes of bloody and graphic video regarding a stipulated fact, then improperly urging the jury to send a message, the jury was expressly instructed that the non-defendant City of Tustin would be responsible for any damage award.  While non-economic damages awards in a wrongful death action may be subjective, they become excessive when, as here, they are based on passion, prejudice or to punish which affects the liability finding.  *K.J.P. v. Cnty of San Diego, 621 F.Supp. 3d 1097, 1153 (S.D. Cal. 2022).*  Such damage awards may also be considered excessive when compared to other verdicts.  *Bell v. Williams, 108 F4th 809, 832 (9th Cir. 2024).*  As footnoted above, Plaintiffs in a recent fatal officer-involved shooting case in Orange County were awarded $3.5 million, reduced to $1.47 million by 58% comparative fault by the unarmed decedent.  The disparate multiple of over ten times simply cannot be reconciled.

While it is difficult to place a value on human life, it is also easy for Plaintiffs' counsel to provide the jury with inflated valuations by analogizing to firefighters saving a human life in lieu of a $50 million painting.  [6:RT:37].  Here, after seemingly reaching unanimous decisions on multiple liability issues in near record time, the jury somehow managed to quickly agree upon damage awards in six separate categories.  As evidenced by the jury's first question about who would receive pain and suffering damages [Doc. 156], the amounts awarded become highly speculative and not based on decedent's pain and suffering

- 23 -

**DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW AND NEW TRIAL**

JM
JONES MAYER
LAW

or any other evidence:

- Given that decedent's daughters at least actually lived with him for several years and allegedly continued to maintain contact with him even after he left home, the jury awarded each daughter $2 million.

- However, the jury then arbitrarily awarded the same $2 million to decedent's son whom decedent abandoned at birth and who had spent a grand total of 1-2 hours with decedent in their sole meeting over a decade prior to his death.  The damage disparity between decedent's offspring cannot be reconciled in light of the almost complete absence of "companionship, assistance, society, etc." [Doc. 155, Instruction No. 31] provided by decedent to his son.

- Perhaps even more amazingly, the jury inexplicitly awarded an outrageous $1 million to Wendy Garcia who had not seen decedent since he abandoned her after their 2001 wedding, who had sought a divorce from decedent and given birth to a daughter with another man in the decades since decedent had subsequently fathered two daughters with another woman in the United States. Just as with the virtually complete absence of "love, companionship, assistance, etc." decedent provided to his abandoned son, the undisputed evidence is that Wendy Garcia essentially had no contact with decedent for over two decades.  Not that she would ever see anywhere close to $1 million in her lifetime, but an award of $1 million based on the evidence simply cannot be supported.

- Similarly, while it is easy for Plaintiffs' counsel to arbitrarily suggest $3-5 million for decedent's "pain and suffering" and his "loss of life", an exorbitant award of $10 million is precisely that – i.e. arbitrary.  On the contrary, it is clear from the jury's first question [Doc. 156] that the jury intended these funds to compensate the surviving family rather than having any remote nexus to decedent's pain and suffering or loss of life.  Although Garcia likely "survived" for perhaps fifteen minutes, he was either non-responsive,

- 24 -

**DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW AND NEW TRIAL**

JM
JONES MAYER
LAW

unconscious or heavily sedated for the majority of that time.

Nuclear damage awards such as the $17 million hastily awarded here bear no nexus to the evidence and are instead clearly assessed based on sympathy, passion and a misguided belief that public entities such as the City of Tustin represent "deep pockets" capable of withstanding such excessive awards.  Quite the contrary, many if not most public entities, are operating with deficits and these nuclear verdicts will soon result in the loss of reinsurance for public entities which could then fall into bankruptcy.

Although there is certainly no objective measure for non-economic damages in these cases, damage awards must only encompass an amount which will "reasonably and fairly compensate" the plaintiffs.  [Doc. 155, Instruction No. 31]  With virtually no parameters beyond the inflated suggestions of Plaintiffs' counsel, the jury was free to simply award "millions" of dollars from the City of Tustin to Plaintiffs who would otherwise never see even a million dollars.  This unfettered trend cannot continue, and damage awards must be limited to "reasonable" compensation without regard to any potential "deep pocket".

By not bifurcating liability from damages and instructing the jury that the non-defendant City of Tustin would be vicariously liable for damages, Officer Silva was unduly prejudiced throughout the trial and the jury returned a grossly excessive damage award.

## 12.   CONCLUSION.

Whether based on some or all of the above grounds, Defendants respectfully urge the Court to remedy this extreme miscarriage of justice by granting JMOL and/or a new trial.

DATED: June 3, 2026                                       JONES MAYER

By: */s/ Bruce D. Praet*
      Bruce D. Praet,
      Attorneys for Defendants



**DEFENDANT'S MOTION FOR JUDGMENT
AS A MATTER OF LAW AND NEW TRIAL**