LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Renee V. Masongsong, Esq. (SBN 281819)
rvalentine@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA  91367
Telephone:   (818) 347-3333
Facsimile:    (818) 347-4118

Attorneys for Plaintiffs EMILY GARCIA
and C.G.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMILY GARCIA and C.G., by and through her guardian ad litem, Rosalia Becerra, individually and as successors-in-interest,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF TUSTIN and ESTELA SILVA,<br><br>Defendants.<br><br>*Consolidated with*:<br>WENDY GALICIA RAMIREZ and KEVIN GALICIA RAMIREZ,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF TUSTIN and ESTELA SILVA,<br><br>Defendants. | Case No. 8:22-cv-00131-SPG-KES<br><br>Assigned to:<br>*District Judge Sherilyn Peace Garnett*<br><br>**GARCIA PLAINTIFFS' MOTION FOR ATTORNEYS' FEES**<br><br>[*Filed concurrently with supporting declarations and exhibits thereto*]<br><br>Date:        July 29, 2026<br>Time:       1:30 p.m.<br>Crtrm:      5C |

Case No. 8:22-cv-00131-SPG-KES

GARCIA PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

**TO THE HONORABLE COURT AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on July 29, 2026, at 1:30 p.m., or as soon thereafter as is practicable for this Honorable Court, the Garcia Plaintiffs will and hereby do move this Court for an Order awarding reasonable attorneys' fees and costs pursuant to 42 U.S.C. Section 1988, Federal Rule of Civil Procedure 54(d), California Civil Code § 52 *et seq*. and Local Rule 54 in the enhanced lodestar amount of **$2,865,585**.  This amount includes a 2.0 multiplier based on Plaintiffs' success on their claim for violation of the Bane Act. In addition to requesting compensation for time spent litigating the civil case and bringing it to trial, Plaintiffs are also requesting compensation for their counsel's time necessarily spent in drafting this motion and the anticipated reply brief, as well as compensation for their time spent opposing Defendants' post-trial motions and any appeal, and appearing at any related hearings. This Motion is based on grounds that the Plaintiffs were the prevailing party at trial on their 42 U.S.C. Section 1983 claim and on their Bane Act claim and are entitled to statutory attorneys' fees as a matter of law.

**Statement of Meet and Confer Compliance**: This motion is made following communications between the Parties' counsel indicating that a motion for attorneys' fees and other post-trial motions would be filed. During the communications, the Parties indicated that oppositions would be filed to all post-trial motions.

This Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the concurrently filed declarations, the attached exhibits, the pleadings on file herein, and such other oral and documentary evidence as may be presented at the time of the hearing.

Respectfully submitted,

DATED: June 3, 2026              LAW OFFICES OF DALE K. GALIPO


                                By_____ /s/ Renee V. Masongsong_____
                                    Dale K. Galipo
                                    Renee V. Masongsong
                                    Attorneys for Garcia Plaintiffs

iii                          Case No. 8:22-cv-00131-SPG-KES

## TABLE OF CONTENTS

I.      INTRODUCTION.................................................................................1

II.     PLAINTIFFS ARE ENTITLED TO FEES UNDER BOTH § 1983 AND CALIFORNIA LAW .......................................................................2

    A. Legislative History of 42 U.S.C. § 1988........................................2

    B. The Supreme Court's Standard in *Hensley v. Eckerhart*. ............3

    C. Plaintiffs Are the Prevailing Party ................................................4

III.    PLAINTIFFS' "LODESTAR" IS APPROPRIATE AND REASONABLE ...........................................................................6

    A. Counsels' Hours Are Reasonable given the Time and Labor Required and Preclusion from Other Employment. ...........................7

    B. Skill Necessary to Perform Proper Legal Services given the Complexity and Undesirability of the Case, and Risk of Non-Payment. .........9

    C. Counsel's Hourly Rates Are Reasonable Considering the Customary Fee, Contingency Basis, Experience and Reputation, and Awards in Similar Cases...........................................................................10

IV      A 2.0 LODESTAR ENHANCEMENT IS APPROPRIATE....................16

V.      CONCLUSION .................................................................................20

L.R. 11-6.2. CERTIFICATE OF COMPLIANCE ........................................21

iv                          Case No. 8:22-cv-00131-SPG-KES

## TABLE OF AUTHORITIES

Cases

*Amaral v. Cintas Corp.*
163 Cal. App. 4th 1157 (Cal. Ct. App. 2008) ....................................................17

*Arizona v. ASARCO LLC*
773 F.3d 1050 (9th Cir. 2014)...........................................................................2

*Ballen v. City of Redmond*
466 F.3d 736 (9th Cir. 2006)..............................................................................6

*Beaty v. BET Holdings, Inc.*
222 F.3d 607 (9th Cir. 2000)..............................................................................7

*Bell v. Farmers Ins. Exch.*
2004 WL 1281818 (Cal. Ct. App. June 9, 2004) ............................................19

*Bender v. Cty. of Los Angeles*
217 Cal. App. 4th 968 (2013)...........................................................................18

*Blum v. Stenson*, 465 U.S. 886 (1984)...............................................................5, 10, 12

*Bouman v. Block*
940 F.2d 1211 (9th Cir. 1991)............................................................................3

*Brewster v. Dukakis*
786 F.2d 16 (1st Cir. 1986) ................................................................................4

*Camacho v. Bridgeport Financial, Inc.*
523 F.3d 973 (9th Cir. 2008)............................................................................12

*Chavez v. City of Los Angeles*
47 Cal. 4th 970 (2010).........................................................................................5

*Chavez v. Netflix, Inc.*
162 Cal. App. 4th 43 (Cal. Ct. App. 2008) ......................................................19

*City of Riverside v. Rivera*
477 U.S. 561 (1986) ......................................................................................4, 11

*Clark v. City of Los Angeles*
803 F.2d 987 (9th Cir. 1986)............................................................................15

*Colgan v. Leatherman Tool Grp., Inc.*
2007 WL 4532916 (Cal. Ct. App. Dec. 27, 2007) ..........................................19

*Collins v. Chandler Unified Sch. Dist.*
644 F.2d 759 (9th Cir. 1981)..............................................................................3

*Compare Burlington v. Dague*
505 U.S. 557 (1992)............................................................................................6

v                    Case No. 8:22-cv-00131-SPG-KES

GARCIA PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

*Crommie v. PUC*
840 F. Supp. 719 (N.D. Cal. 1994) .................................................................19

*Dang v. Cross*
422 F.3d 800 (9th Cir. 2005) ....................................................................10, 11

*Davis v. City & County of San Francisco*
976 F.2d 1536 (9th Cir. 1992), ......................................................................4

*Dennis v. Chang*
611 F.2d 1302 (9th Cir. 1980) ........................................................................3

*Donastorg v. City of Ontario*
2021 WL 6103545 (C.D. Cal. Sept. 23, 2021) ..........................................13, 15

*Estate of Diaz v. City of Anaheim*
840 F.3d 592 (9th Cir. 2016) ..........................................................................8

*Fair Housing of Marin v. Combs*
285 F.3d 899 (9th Cir. 2002) ..........................................................................4

*Farrar v. Hobby*
506 U.S. 103 (1992) ........................................................................................5

*Fish v. St. Cloud State Univ.*
295 F.3d 849 (8th Cir. 2002) ........................................................................11

*French v. City of Los Angeles*
2022 WL 2189649, (C.D. Cal. May 10, 2022) ..............................................13

*Garcia v. Los Angeles Cnty. Sheriff's Dep't*
2015 WL 13646906 (C.D. Cal. Sept. 14, 2015) ............................................11

*Gates v. Deukmjian*
987 F.2d 1392 (9th Cir. 1992); ...........................................................4, 11, 13

*Glass v. Pfeffer*
849 F.2d 1261 (10th Cir. 1988) ....................................................................15

*Graham v. Daimler Chrysler Corp.*
34 Cal. 4th 553 (2004) ............................................................................16, 17

*Gregory v. Oliver*
2003 WL 1860270 (N.D. Ill. Apr. 9, 2003) ....................................................8

*Guam Society of Obstetricians & Gynecologists v. Ada*
100 F.3d 691 (9th Cir. 1996) ..........................................................................3

*Hall v. Cole*
412 U.S. 1 (1973) ............................................................................................3

*Hensley v. Eckerhart*
461 U.S. 424 (1983) ..................................................................................3, 4, 5

vi                    Case No. 8:22-cv-00131-SPG-KES

*Hernandez v. George*
   793 F.2d 264 (10th Cir. 1986)................................................................15

*Hernandez v. Kalinowski*
   146 F.3d 196 (3rd Cir. 1998)................................................................15

*Hiken v. Dep't of Def.*
   836 F.3d 1037(9th Cir. 2016)................................................................12

*Horsford v. Bd. Of Trustees of Cal. State Univ.*
   132 Cal. App. 4th 359 (2005)................................................................8

*Horsford v. Bd. of Trustees of Cal. State Univ.*
   132 Cal. App. 4th 359 (Cal. Ct. App. 2005) .............................................17, 18

*Jordan v. Multnomah Cnty.*
   815 F.2d 1258 (9th Cir. 1987)................................................................7

*Kerr v. Screen Extras Guild, Inc.*
   526 F.2d 67 (9th Cir. 1975).................................................................6

*Ketchum v. Moses*
   24 Cal.4th 1122 (2001).........................................................6, 7, 16, 17

*Leuzinger v. Cnty. of Lake*
   2009 WL 839056 (N.D. Cal. Mar. 30, 2009)................................................19

*Lund v. Affleck*
   587 F.2d 75 (1st Cir.1978) ..................................................................15

*Maldonado v. Club Fresh*
   2009 WL 3246450 (Cal. Ct. App. Oct. 9, 2009)............................................19

*Mangold v. PUC*
   67 F.3d 1470 (9th Cir. 1995)................................................................19

*McCown v. City of Fontana*
   565 F.3d 1097 (9th Cir. 2009)...............................................................20

*McGrath v. County of Nevada*
   67 F.3d 248 (9th Cir. 1995).................................................................6

*McKibben v. McMahon*
   2019 WL 1109683 (C.D. Cal. Feb. 28, 2019)...............................................11

*Mendez v. County of San Bernardino*
   540 F.3d 1109 (9th Cir. 2009)...............................................................2

*Missouri v. Jenkins by Agyei*
   491 U.S. 274 (1989) .........................................................................13

*Moore v. James H. Matthews & Co.*
   682 F.2d 830 (9th Cir. 1982)................................................................7

vii                    Case No. 8:22-cv-00131-SPG-KES

*Morales v. City of San Rafael*
   96 F.3d 359 (9th Cir. 1996) ................................................................ 20

*Moreno v. City of Sacramento*
   534 F.3d 1106 (9th Cir. 2008) ........................................................ 7, 12

*National Ass'n of Corder v. Gates*
   688 F. Supp. 1418 (C.D. Cal. 1988) ..................................................... 4

*Odima v. Westin Tucson Hotel*
   53 F.3d 1484 (9th Cir. 1995) ............................................................... 3

*Orr v. Brame*
   727 F. App'x 265 (9th Cir. 2018) ...................................................... 19

*Parker v. Vulcan Materials Co. Long Term Disability Plan*
   2012 WL 843623 (C.D. Cal. Feb. 16, 2012) ...................................... 12

*Peak-Las Positas Partners v. Bollag*
   171 Cal. App. 4th 101 (2009) .............................................................. 7

*Pellegrino v. Robert Half Int'l, Inc.*
   182 Cal. App. 4th 278 (Cal. Ct. App. 2010) ..................................... 19

*Pennsylvania v. Delaware Valley Citizens' Counsel for Clean Air*
   483 U.S. 711(1987) ........................................................................... 13

*Premier Med. Mgmt. Sys., Inc. v. Cal. Ins. Guarantee Assn.*
   163 Cal. App. 4th 550 (Cal. Ct. App. 2008) ....................................... 8

*Prison Legal News v. Schwarzenegger*
   608 F.3d 446 (9th Cir. 2010) ............................................................ 11

*Ramon v. County of Santa Clara*
   173 Cal. App. 4th 915 (Cal. Ct. App. 2009) ....................................... 7

*Roberts v. City of Honolulu*
   938 F.3d 1020 (2019) ........................................................................ 12

*Rodriguez v. Cty. of Los Angeles*
   96 F. Supp. 3d 1012 (C.D. Cal. 2014), aff'd, 891 F.3d 776 (9th Cir. 2018) . 17, 18

*Schwarz v. Secretary of Health & Human Servs.*
   73 F.3d 895 (9th Cir. 1995) ................................................................. 4

*Serrano v. Priest*
   20 Cal. 3d 25(1977) .......................................................................... 18

*Serrano v. Unruh*
   32 Cal. 3d 621 (1982) .................................................................... 3, 10

*Sethy v. Alameda County Water Dist.*
   602 F.2d 894 (9th Cir. 1979) ............................................................... 2

*Texas Teachers v. Garland School Dist.*
489 U.S. 782 (1989) ............................................................................5

*Trevino v. Gates*
99 F.3d 911 (9th Cir. 1996)...............................................................11

*United Steelworkers of Am. v. Phelps Dodge Corp.*
896 F.2d 403 (9th Cir. 1990).........................................................6, 11

*Uphold our Heritage v. Town of Woodside*
2008 WL 4868816 (Cal. Ct. App. Nov. 12, 2008)...........................19

*Ustrak v. Fairman*
851 F.2d 983 (7th Cir. 1988)................................................................4

*Valenzuela v. City of Anaheim*
No. SACV1700278CJCDFMX, 2023 WL 2249178 (C.D. Cal. Feb. 23, 2023)
...........................................................................................................14

*Vo v. Las Virgenes Municipal Utility Dist.*
79 Cal. App. 4th 440 (2000)................................................................7

*W. Century 102, Ltd. v. City Of Inglewood*
2004 WL 886384 (Cal. Ct. App. Apr. 27, 2004) ..............................19

*Welch v. Metro. Life Ins. Co.*
480 F.3d 942 (9th Cir. 2007)............................................................11

*Wershba v. Apple Computer, Inc.*
91 Cal. App. 4th 224 (Cal. Ct. App. 2001) ......................................19

*Wiersta v. Heffernan*
789 F.2d 968 (1st Cir. 1986) ...............................................................8

*Wilson v. Union Pacific R. Co.*
56 F.3d 1226 (10th Cir. 1995)..............................................................8

*Zeigler v. Cnty. of San Luis Obispo*
2023 WL 3432238 (C.D. Cal. Mar. 1, 2023) ....................................13

*Zelaya v. City of Los Angeles*,
2024 WL 3183882 .............................................................................19

Statutes

42 U.S.C. § 1988....................................................................................3, 5, 6

42 U.S.C. 1983...............................................................................................5

California Civil Code § 52.1......................................................................5, 14

Rules

1976 U.S. Code Cong. & Ad. News
5908.  Section 1988 ..............................................................................2

ix                    Case No. 8:22-cv-00131-SPG-KES

1976 U.S.C.C.A.N. 5908 ........................................................................................ 11

Legislative History of Section 1988
    S. Rep. No. 94-1011, 94th Cong. 2d Session ............................................. 2, 12

x                    Case No. 8:22-cv-00131-SPG-KES

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

On April 21, 2026, the jury in this matter reached a unanimous verdict against Defendants Officer Estela Silva and the City of Tustin by and through the City of Tustin Department and in favor of Plaintiffs on their claims for excessive force under 42 U.S.C. Section 1983 and the Fourth Amendment, and on Plaintiffs' claims for negligence, battery and violation of the Bane Act under state law. The jury awarded Plaintiffs damages totaling $17 million. As the prevailing party, the Garcia Plaintiffs now request attorneys' fees pursuant to 42 U.S.C. § 1988 and California Civil Code § 52.1(i), § 52(a), in the amount of **$1,432,792.5**. Plaintiffs also request that this Court apply a 2.0 multiplier to the statutory attorneys' fees pursuant to California Civil Code § 52.1 and § 52(a), making this amount **$2,865,585** for the Garcia Plaintiffs. At a minimum, this Court should apply a 1.5 multiplier. The attorney fee award is justified by the significant verdict in Plaintiffs' favor, Plaintiffs' counsels' skill and experience in the civil rights field, the challenges of this case, and the risk assumed by Plaintiffs' counsel. Plaintiffs' counsel litigated this case for approximately five years, with diligence and dedication to vindicating decedent Luis Garcia's constitutional rights, ultimately culminating in a tremendously favorable result for Plaintiffs. Police misconduct lawsuits such as the instant matter advance the significant public benefit of deterring abuse by law enforcement officers who would otherwise operate free of any meaningful restraints. The instant case exemplifies that, but for competent willing counsel, police misconduct would have gone without consequences.  For the reasons set forth herein and in the accompanying declarations, Plaintiffs' counsels are highly deserving of the full amount of the attorneys' fees requested herein.

/ / /

1                                              Case No. 8:22-cv-00131-SPG-KES

## II. PLAINTIFFS ARE ENTITLED TO FEES UNDER § 1983 AND CALIFORNIA LAW

### A. Legislative History of 42 U.S.C. § 1988.

The Civil Rights Attorney's Fees Awards Act of 1976, codified as 42 U.S.C. § 1988, was enacted to encourage competent counsel to undertake and enforce civil rights cases by assuring them that if they were successful in vindicating federally protected rights, they would be paid in the same manner as "is traditional with attorneys compensated by feepaying clients," even when the results obtained are entirely non-pecuniary or solely of nominal pecuniary value. *See* Legislative History of Section 1988, S. Rep. No. 94-1011, 94th Cong. 2d Session, reprinted in 1976 U.S. Code Cong. & Ad. News 5908. Section 1988 clearly provides that "[i]n any action or proceeding to enforce a provision of section[] . . . 1983 . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee."

Congress has recognized that "civil rights laws depend heavily upon private enforcement, and fee awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which these laws contain." *Id.* at 5910. "[T]he citizen who must sue to enforce the law has little or no money with which to hire a lawyer," thus, "citizens must have the opportunity to recover what it costs them to vindicate these rights in court." *Id.* Given this purpose, courts have long established that a court's discretion to deny attorney's fees to a successful civil rights litigant "is very narrow and . . . fee awards should be the rule rather than the exception." *Mendez v. County of San Bernardino*, 540 F.3d 1109, 1126 (9th Cir. 2009), *overruled on other grounds by Arizona v. ASARCO LLC*, 773 F.3d 1050 (9th Cir. 2014); *see also Sethy v. Alameda County Water Dist.*, 602 F.2d 894, 897 (9th Cir. 1979) ("Congress plainly intended that successful Plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.").

The application for attorneys' fees "must be liberally construed to achieve Congress' purpose to encourage compliance with and enforcement of the civil rights laws." *Collins v. Chandler Unified Sch. Dist.*, 644 F.2d 759, 764 (9th Cir. 1981) (citation omitted). Justice Brennan opined that "[n]ot to award counsel fees in cases such as this would be tantamount to repealing the Act itself by frustrating its basic purpose." *Hall v. Cole*, 412 U.S. 1, 13 (1973). The difficulty for citizens to stand up to the police is great, especially considering the disparity in funding. *See id.* "An award in these circumstances serves the purposes of the Act for two reasons: (1) the award encourages the legal services organization to expend its limited resources in litigation aimed at enforcing the civil rights statutes; and (2) the award encourages potential defendants to comply with civil rights statutes." *Dennis v. Chang*, 611 F.2d 1302, 1306 (9th Cir. 1980).

## B. The Supreme Court's Standard in *Hensley v. Eckerhart*

In *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983), the Supreme Court held that the purpose of 42 U.S.C. § 1988 is to ensure effective access to the judicial process for persons with civil rights grievances. Courts have repeatedly held that attorneys in civil rights suits are entitled to recover their full fees and costs if they achieve meaningful and substantial relief, even if they do not prevail on every theory or against every party. *Bouman v. Block*, 940 F.2d 1211, 1237 (9th Cir. 1991). "Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters." *Hensley*, 461 U.S. at 435. Otherwise, attorneys would be discouraged from taking on high risk cases such as this one. *Id.*; *see also Odima v. Westin Tucson Hotel*, 53 F.3d 1484, 1499 (9th Cir. 1995); *Serrano v. Unruh*, 32 Cal. 3d 621 (1982); *Guam Society of Obstetricians & Gynecologists v. Ada*, 100 F.3d 691, 700 (9th Cir. 1996) (Plaintiff cannot be faulted for their thoroughness in pleading related claims).

A full fee is one that encourages the vindication of constitutional and statutory rights through recovery of all time spent on the case, calculated at private market rates. It must ensure that attorneys are paid for all the time they devote to the litigation. It is not limited by the number of causes of action on which relief is awarded, or the amount of damages recovered. *See City of Riverside v. Rivera*, 477 U.S. 561 (1986). Parsing discrete issues according to their relative importance or outcome is disfavored because doing so would require the trial court to make mini determinations of prevailing party status on each dispute. *See Brewster v. Dukakis*, 786 F.2d 16, 18 (1st Cir. 1986). Once a plaintiff has been determined to be the prevailing party, he is entitled to all reasonable time spent:

> Where 'the plaintiff's claims of relief . . . involve a common core of facts or [are] based on related legal theories,' so that 'much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis, . . . the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.'

*Ustrak v. Fairman*, 851 F.2d 983, 988 (7th Cir. 1988) (quoting *Hensley*, 461 U.S. at 435 (1983)). Once the party claiming fees presents evidence supporting the claimed rate, the burden shifts to the party opposing fees to present equally specific countervailing evidence. *See Gates v. Deukmjian*, 987 F.2d 1392, 1405 (9th Cir. 1992); *Davis v. City & County of San Francisco*, 976 F.2d 1536, 1546 (9th Cir. 1992), modified on other grounds (9th Cir. 1993) 984 F.2d 345; *National Ass'n of Corder v. Gates*, 688 F. Supp. 1418, 1422 (C.D. Cal. 1988), aff'd in part and rev'd in part 947 F2d 374 (9th Cir. 1991); *see also Fair Housing of Marin v. Combs*, 285 F.3d 899, 908 (9th Cir. 2002); *Schwarz v. Secretary of Health & Human Servs.*, 73 F.3d 895, 908 (9th Cir. 1995).

### C. Plaintiffs Are the Prevailing Party

Plaintiffs are the prevailing party in this litigation, and judgment was entered

4

Case No. 8:22-cv-00131-SPG-KES

in Plaintiffs' favor on their claims under the 42 U.S.C. Section 1983 and California Civil Code § 52.1. The jury awarded Plaintiffs a total of $17 million in damages. Under 42 U.S.C. § 1988 and California Civil Code § 52.1(i), civil rights plaintiffs who have prevailed on some significant issue in their litigation are entitled to an award of fees. *See, e.g., Hensley*, 461 U.S. at 433; *Chavez v. City of Los Angeles*, 47 Cal. 4th 970, 989 (2010) (citing *Hensley* and indicating that California law was "consistent" with it). Once the fee entitlement threshold has been crossed, the prevailing plaintiff's fee award is based upon the lodestar method. "[T]he number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified." *Hensley*, 461 U.S. at 435. The appropriate rate is the "market rate," which is demonstrated by the moving party submitting "satisfactory evidence in addition to the attorney's own affidavit that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984). Such a rate "is normally deemed to be reasonable, and is referred for convenience as the prevailing market rate." *Id.*

The Supreme Court in *Texas Teachers v. Garland School Dist.*, 489 U.S. 782, 792 (1989) expressly held that *Hensley* sets forth the appropriate test for determining a plaintiff's prevailing party status. In determining whether a plaintiff has succeeded on any significant issue in litigation, the *Garland* court looked at whether the relief on the merits of the plaintiff's claim changes the legal relationship between plaintiff and defendant. Applying this test, the Court in *Farrar v. Hobby,* 506 U.S. 103, 114 (1992), held that a money judgment in favor of the plaintiff for any amount modified the defendant's behavior in a way that benefits the plaintiff by

5                    Case No. 8:22-cv-00131-SPG-KES

forcing the defendant to pay an amount that would otherwise not be paid. In the foregoing respects, federal and California law are parallel. Ordinarily, where a case has gone to trial and a plaintiff has prevailed, the only significant distinction between the standards for an award of fees under federal or state law is the availability of a multiplier. *Compare Burlington v. Dague*, 505 U.S. 557, 567 (1992) (generally no fee enhancements), *with Ketchum v. Moses*, 24 Cal.4th 1122, 1133 (2001) (fee enhancements available where the contingent fee market would support it).

### III. PLAINTIFFS' "LODESTAR" IS APPROPRIATE AND REASONABLE

"In the Ninth Circuit, the method of determining the permissible amount of attorneys' fees under § 1988 is the 'lodestar' method." *Ballen v. City of Redmond*, 466 F.3d 736, 746 (9th Cir. 2006). The lodestar method multiples the number of hours the prevailing party reasonably expended on litigation by a reasonable hourly rate. *Id.* (quoting *McGrath v. County of Nevada*, 67 F.3d 248, 252 (9th Cir. 1995)) (quotations omitted). After computation, courts then assess whether it is necessary to adjust the lodestar figure on the basis of the twelve *Kerr* factors. *Id.* (citations omitted). These twelve factors are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975). "[T]here is a strong presumption" that the lodestar calculation "is a reasonable fee." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 405 (9th Cir. 1990)

(citing *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1262 (9th Cir. 1987)).

## A.   Counsels' Hours Are Reasonable given the Time and Labor Required and Preclusion from Other Employment.

The total number of hours for which Plaintiffs' counsel request compensation, to be reflected in their declarations and timesheets, is reasonable. Under California law, every hour reasonably spent on the case is compensable. "Absent circumstances rendering the award unjust, an attorney fee award should ordinarily include compensation for *all* the hours *reasonably spent*, including those relating solely to the fee." *Ketchum*, 24 Cal. 4th at 1133; *see also Beaty v. BET Holdings, Inc.*, 222 F.3d 607, 612 (9th Cir. 2000) (Attorneys who take FEHA cases "ordinarily . . . can anticipate receiving full compensation for every hour spent litigating a claim.").  Hours are reasonable if "at the time rendered, [they] would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest in the pursuit of a successful recovery . . . ." *Moore v. James H. Matthews & Co.*, 682 F.2d 830, 839 (9th Cir. 1982) (internal quotations omitted); *see also Ramon v. County of Santa Clara*, 173 Cal. App. 4th 915, 925 (Cal. Ct. App. 2009).

In making that determination, courts must look at "the entire course of the litigation, including pretrial matters, settlement negotiations, discovery, litigation tactics, and the trial itself . . . ." *Vo v. Las Virgenes Municipal Utility Dist.*, 79 Cal. App. 4th 440, 447 (2000); *see also Peak-Las Positas Partners v. Bollag*, 171 Cal. App. 4th 101, 114 (2009) (fees reasonable because of complexity of issues, results obtained, and defendants' aggressive litigation). As the courts have recognized, civil rights lawyers working without payment from their clients have little to gain from "inflating their fees," as the payoff is too uncertain. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). Accordingly, they should be fully compensated for taking the steps that they reasonably believe are necessary to *win* the case: "By and large, the court should defer to the winning lawyer's professional

judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Id.*

Counsels' sworn declarations and attached timesheets filed concurrently herewith document the attorney and legal assistant hours reasonably spent in the successful prosecution of this action. These time records are *prima facie* evidence that counsels' hours were reasonable. *See Horsford v. Bd. Of Trustees of Cal. State Univ.*, 132 Cal. App. 4th 359, 396 (2005) ("[T]he verified time statements of the attorneys, as officers of the court, are entitled to credence in the absence of a clear indication the records are erroneous."). The burden shifts to Defendants to prove that any specific time is unreasonable and "to point to the specific items challenged, with a sufficient argument and citations to the evidence." *Premier Med. Mgmt. Sys., Inc. v. Cal. Ins. Guarantee Assn.*, 163 Cal. App. 4th 550, 564 (Cal. Ct. App. 2008). Defendants cannot meet that burden. The hours for which Plaintiffs' counsel request compensation were reasonably necessary for the prosecution of Plaintiffs' claims for approximately five years. Plaintiffs' counsel had an obligation to be diligent and thorough. Excessive force cases are extremely difficult given the inherent bias in favor of the police, especially in a case such as this where there was damaging evidence. *Gregory v. Oliver*, 2003 WL 1860270, at *2 (N.D. Ill. Apr. 9, 2003); *Wiersta v. Heffernan*, 789 F.2d 968, 972 (1st Cir. 1986); *Wilson v. Union Pacific R. Co.*, 56 F.3d 1226, 1231 (10th Cir. 1995); *Estate of Diaz v. City of Anaheim*, 840 F.3d 592 (9th Cir. 2016).

Defendants' position was that the case had little value, as was reflected in their arguments to the jury and their settlement posture. Thus, Plaintiffs' counsel correctly anticipated that the case would go to trial, and they took the steps to successfully try the case. That came at a heavy burden and with great risk. Plaintiffs' counsel devoted a large time and economic commitment to this case. For example, Mr. Galipo compensated the attorneys and staff at the Law Offices of Dale K.

8                                    Case No. 8:22-cv-00131-SPG-KES

Galipo throughout the time that Mr. Galipo's office litigated this case, and incurred costs, including expert retention fees, without any interim payments from the Plaintiffs or guarantee of success at trial. Plaintiffs' counsels' detailed preparation and review and analysis of the evidence proved worthwhile for the successful result for all Plaintiffs.

**B.      Skill Necessary to Perform Proper Legal Services given the Complexity and Undesirability of the Case, and Risk of Non-Payment.**

In general, successfully litigating police misconduct cases requires extensive experience and skill and an understanding of issues that are unique to civil rights victims as compared to general civil practice. Even experienced civil rights attorneys have difficulty overcoming the built-in bias favoring the police. The favorable trial result in this case was the product of a tremendous amount of hard work and skill on the part of Plaintiffs' counsel in preparing and presenting this case at trial.

Upon their first review of the video of the shooting giving rise to this lawsuit, Plaintiffs' counsel believed that the shooting was egregious, and that this was a particularly strong case in favor of Plaintiffs. Plaintiffs' counsel felt that it was clear that Mr. Garcia posed no immediate threat of death or serious bodily injury at the time of the shooting, and the jury ultimately agreed. At the same time, Plaintiffs' counsel acknowledged certain challenges presented by this case. For example, Mr. Garcia was under the influence of drugs at the time of the shooting, he had a criminal history and prior contacts with Officer Silva, he had a large stick at the time of the shooting, and he was homeless. The fact that the shooting officer was a small female also presented a challenge. Despite Plaintiffs' counsel's arguments that evidence of drugs, criminal history, and prior contacts was inadmissible at trial, this evidence came in during trial, and Plaintiffs' counsel successfully overcame this

negative evidence and achieved a favorable result for Plaintiffs.

Defendants battled this case every step of the way, including filing a motion for summary judgment asserting qualified immunity, fighting Plaintiffs' Ninth Circuit appeal, and forcing the case to trial even after Plaintiffs prevailed on the Ninth Circuit appeal. To succeed, Plaintiffs' counsel had to conduct depositions, review numerous discovery materials, retain, pay and consult with a police practices expert, file an affirmative motion for summary judgment, oppose Defendants' motion for summary judgment, file and argue a Ninth Circuit appeal of this Court's grant of Defendants' motion for summary judgment, work up the case for trial, and spend almost two weeks away from the office at trial. Defendants vigorously defended this case. Defendants argued that Mr. Garcia attempted to "jab" Officer Silva with the stick, that the stick was a deadly weapon, that Mr. Garcia was coming toward her and Officer Frias with the large stick raised over his head, and that Officer Silva fired in self-defense and in defense of Officer Frias. The jury disagreed with Defendants' arguments and resolved the factual disputes in Plaintiffs' favor. "[Defendants] cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response." *Serrano v. Unruh*, 32 Cal. 3d 621, 633 (1982).

### C. Counsel's Hourly Rates Are Reasonable Considering the Customary Fee, Contingency Basis, Experience and Reputation, and Awards in Similar Cases.

As set forth in the accompanying declarations filed concurrently herewith, Garcia Plaintiffs' counsel's requested hourly rates ($1,500 for Mr. Galipo; $1,000 for Mr. Carrillo; $1,000 for Mr. Flores; $900 for Ms. Masongsong) are reasonable. The "prevailing market rates in the relevant community," in the forum where the district court sits, govern the reasonable hourly rate for computing the lodestar amount. *See Dang v. Cross*, 422 F.3d 800, 813 (9th Cir. 2005) (quoting *Blum*, 465

10                    Case No. 8:22-cv-00131-SPG-KES

U.S. at 895); *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010). Within this community, the Court should take into account the "experience, skill and reputation of the [requesting] attorney." *Dang*, 422 F.3d at 813; *see Trevino v. Gates*, 99 F.3d 911, 924 (9th Cir. 1996); *see also Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 947 (9th Cir. 2007). Within the relevant community, the Court should take into account the "experience, skill and reputation of the [requesting] attorney." *Dang*, 422 F.3d at 813; *see Trevino v. Gates*, 99 F.3d 911, 924 (9th Cir. 1996); *see also Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 947 (9th Cir. 2007).

"Affidavits of the Plaintiff's attorney . . . and rate determinations in other cases, particularly those setting a rate for the Plaintiff's attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am.*, 896 F.2d at 407. "[C]ourts can also use survey data to evaluate the reasonableness of attorneys' rates." *Garcia v. Los Angeles Cnty. Sheriff's Dep't*, No. CV 09-8943 MMM (SHX), 2015 WL 13646906, at *16 (C.D. Cal. Sept. 14, 2015) (citing *Fish v. St. Cloud State Univ.*, 295 F.3d 849, 852 (8th Cir. 2002)); *McKibben v. McMahon*, 2019 WL 1109683, at *14 (C.D. Cal. Feb. 28, 2019)). Once the party claiming fees presents evidence supporting the claimed rate, the burden shifts to the party opposing fees to present equally specific countervailing evidence. *Gates*, 987 F.2d at 1405 (9th Cir. 1992). Congress expressly recognized that fees in federal civil rights cases should be comparable to those in complex federal civil litigation. *See City of Riverside v. Rivera*, 477 U.S. 561, 575-76 (1986) ("Congress made clear that it 'intended that the amount of fees awarded under [§ 1988] be governed by the same standards which prevail in other types of equally complex Federal litigation.'" (citing S. Rep. No. 94-1011, at 6 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5908, 5913).

In determining what constitutes a reasonable fee in civil rights litigation, courts should consider the hourly rates that similarly skilled and experienced

11                                    Case No. 8:22-cv-00131-SPG-KES

attorneys in private practice charge their paying clients. *Blum v. Stevenson*, 465 U.S. 886, 895 (1984); *see* Legislative History of Section 1988, S. Rep. No. 94-1011, 94th Cong. 2d Session, reprinted in 1976 U.S. Code Cong. & Ad. News 5908. Market rates may be established by declarations regarding prevailing fees and fee awards in other cases. *United Steelworkers v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990); *see also LA International Corp. v. Prestige Brands Holdings, Inc.*, 168 F.4th 608, 624-26 (9th Cir. 2026) (holding that small firms can be awarded big law rates in a motion for attorney fees, and the district court abused its discretion in setting rates based on the attorney's prior fee award, with a slight adjustment for complexity and inflation, rather than calculating the fee based on the prevailing market rate)

Moreover, the Ninth Circuit has repeatedly held that "in determining the prevailing market rate a district court abuses its discretion to the extent it relies on cases decided years before the attorneys actually rendered their services." *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 981 (9th Cir. 2008); *Hiken v. Dep't of Def.*, 836 F.3d 1037, 1045 (9th Cir. 2016) (reversing because "the court simply re-invoked the 2015 rates and added a $30 enhancement, without discussion of why the 2015 rates are an appropriate anchor or why an increase in $30 is reasonable"); *Moreno*, 534 F.3d at 1115 ("If the lodestar leads to an hourly rate that is higher than past practice, the court must award that rate . . . ."); *Roberts v. City of Honolulu*, 938 F.3d 1020, 1024-25 (2019) ("Examining prior fee awards to Holcomb and Beck in the district was not an acceptable substitute for considering the declarations submitted by Holcomb, and explaining why those declarations did or did not establish the prevailing hourly rate in the district."). Courts also appropriately recognize that rates, and inflation, increase over time. *Parker v. Vulcan Materials Co. Long Term Disability Plan*, No. EDCV 07–1512 ABC (OPx), 2012 WL 843623, *7 (C.D. Cal. Feb. 16, 2012) (approving as reasonable an approximate 10 percent

increase between 2011 rates and 2012 rates and because "[i]t is common practice for attorneys to periodically increase their rates for various reasons, such as to account for expertise gained over time, or to keep up with the increasing cost of maintaining a practice").

Additionally, the Supreme Court in *Missouri v. Jenkins by Agyei*, 491 U.S. 274 (1989), recognized that compensation received several years after an attorney renders his or her services "is not equivalent to the same dollar amount received promptly as the legal services are performed, as would normally be the case with private billings." *Id.* at 283. Accordingly, "an appropriate adjustment for delay in payment—whether by the application of current rather than historic hourly rates or otherwise—is within the contemplation of [§ 1988]." *Id.* at 284; *see also Pennsylvania v. Delaware Valley Citizens' Counsel for Clean Air*, 483 U.S. 711, 716 (1987) ("In seeing fees for prevailing counsel, the courts have regularly recognized delay factor, either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value.").

Thus, the Ninth Circuit "recognize[s] that district courts have discretion to compensate prevailing parties for any delay in the receipt of fees by awarding fees at current rather than historic rates in order to adjust for inflation and loss of the use of funds." *Gates*, 987 F.2d at 1406. The prevailing practice is to award the current requested rate for all work performed. *See e.g.*, *Zeigler v. Cnty. of San Luis Obispo*, No. CV179295MWFAFMX, 2023 WL 3432238, at *5 (C.D. Cal. Mar. 1, 2023) (awarding requested rates commensurate with current practice experience for work that commenced years prior); *French v. City of Los Angeles*, No. EDCV2000416JGBSPX, 2022 WL 2189649, at *1, 17-19 (C.D. Cal. May 10, 2022) (same); *Donastorg v. City of Ontario*, No. EDCV18992JGBSPX, 2021 WL 6103545, at *1, 8-9 (C.D. Cal. Sept. 23, 2021) (same).

//

13   Case No. 8:22-cv-00131-SPG-KES

### 1.      Mr. Galipo's $1,500 Hourly Rate is Justified

Given Mr. Galipo's precedent-setting jury verdicts, the number of verdicts in Mr. Galipo's civil rights cases, Mr. Galipo's published appellate opinions, his numerous prior attorney fee awards, and the recognition he has received as a trial attorney for his work in police excessive force cases, including his admission to the Inner Circle of Advocates, the "2020 Consumer Attorney of the Year" from CAOC and "2020 Trial Lawyer of the Year" award from CAALA, Mr. Galipo's request for **$1,500** per hour is reasonable. *See* "Exhibit 12" to Galipo Decl. (Sobel Decl.) at ¶¶ 32, 41-44, 48, 52.

In 2012, Mr. Galipo received the Defender of the Constitution Award from the Inland Empire Chamber of the Federal Bar Association. Galipo Decl. at ¶ 5. In 2019, Mr. Galipo was elected to the American College of Trial Lawyers. *Id.* ¶ 9. He was also elected to the Inner Circle of Advocates, which is limited to one hundred members nationwide, representing some of the top plaintiff's attorneys in the country. *Id.* ¶ 8. In 2020, Mr. Galipo was recognized as both CAALA Trial Lawyer of the Year and CAOC Consumer Attorney of the Year. *Id.* ¶ 11, 12. From 2017 to present, Mr. Galipo prevailed in thirty-eight jury trials. Nearly all of the jury trials were civil rights cases. *Id.* ¶ 18. Mr. Galipo has had approximately twenty published opinions in civil rights cases, and has argued numerous appellate cases before the Ninth Circuit. *Id.* ¶ 16.

Courts within this district have consistently recognized Mr. Galipo as one of the top civil rights attorneys in the area of police misconduct in Los Angeles. *See, e.g., Valenzuela v. City of Anaheim*, No. SACV1700278CJCDFMX, 2023 WL 2249178, at *3 (C.D. Cal. Feb. 23, 2023) ("The Court found that a $1,200 hourly rate, although high, was reasonable for Mr. Galipo's work over the past three years, pointing to Mr. Galipo's strong reputation with the legal community, his continued consistent record of success with over $85 million in recovery in civil rights cases

14                    Case No. 8:22-cv-00131-SPG-KES

since 2019, and multiple courts that awarded him $1,100 hourly rates as early as 2020.”); *Craig v. Cnty. of Orange*, Case No. SACV 17-00491-CJC (KESx), Dkt. 280, at 5-6 (awarding Mr. Galipo an hourly rate of $1,200 because “[w]hen it comes to police excessive force cases, Mr. Galipo continues to be without question at the top of his field.”); *Donastorg v. City of Ontario*, Case No. EDCV 18-992 JGB (SPx), 2021 WL 6103545, at *8 (C.D. Cal. Sept. 23, 2021) (“The Court agrees with the courts that have recognized that, when it comes to police excessive force cases in Los Angeles, Mr. Galipo is without question at the top of his field.”) (cleaned up); *see also Hurtado v. State of California*, Case No. 2:19-cv-02343-DAD-AC (“Ex. 11” to Galipo. Decl.) (“I mean, you just look at all the judges that have said in fee awards, hey, Mr. Galipo is as good as it gets.”). Since September of 2025, Mr. Galipo has prevailed in seven consecutive §1983 cases, including consecutive trial wins since February 2026. Accordingly, Mr. Galipo’s requested hourly rate of **$1,500** is reasonable for an attorney with his experience, skill, expertise, and reputation.

### D.     Plaintiffs’ Counsels Are Entitled to Fees and Costs for Litigating the Instant Motion and Defendants’ Post-Trial Motions

In addition to the attorneys’ fees derived from legal work performed in preparing and litigating a case, Plaintiffs’ counsels are entitled to attorneys’ fees for their time spent establishing their right to attorneys’ fees in the amount requested, and on all work anticipated in opposing any further post-trial motion filed by Defendants. *See Clark v. City of Los Angeles*, 803 F.2d 987, 992 (9th Cir. 1986) (“We, like every other court that has considered the question, have held that the time spent in establishing entitlement to an amount of fees awardable under section 1988 is compensable.”); *see also Hernandez v. Kalinowski*, 146 F.3d 196, 199 (3rd Cir. 1998); *Glass v. Pfeffer*, 849 F.2d 1261, 1266 (10th Cir. 1988); *Hernandez v. George*, 793 F.2d 264, 269 (10th Cir. 1986); *Lund v. Affleck*, 587 F.2d 75, 77 (1st Cir.1978)

15                           Case No. 8:22-cv-00131-SPG-KES

("It would be inconsistent with the purpose of the Fees Act to dilute a fees award by refusing to compensate the attorney for the time reasonably spent in establishing and negotiating his rightful claim to the fee.").

Plaintiffs' counsel will supplement and amend this instant Motion to include their hours spent on the anticipated reply brief, preparation for and appearance at the related hearing, and in opposing Defendants' post-trial motions.

**IV    A 2.0 LODESTAR ENHANCEMENT IS APPROPRIATE**

The application of a 2.0 lodestar enhancement is justified in this case by the great risk counsel took that after spending hundreds of hours and incurring significant costs working on the case, they would end up with no compensation. In this case, Plaintiffs prevailed on their Bane Act claim, which supports the granting of a multiplier under state law. California Civil Code section 52(a) provides for damages up to three times actual damages on the violations of certain civil code sections. The Bane Act refers to section 52. *See* Civ. Code, § 52.1(b) (indicating that damages may be recovered under both subsections (a) and (b) of Section 52). "The purpose of a fee enhancement, or so-called multiplier, for contingent risk is to bring the financial incentives for attorneys enforcing important . . . [rights] into line with incentives they have to undertake claims for which they are paid on a fee-for-services basis . . . [.]" *Ketchum*, 24 Cal. 4th at 1132. "In effect, the court determines, retrospectively, whether the litigation involved a contingent risk or required extraordinary legal skill justifying augmentation of the unadorned lodestar in order to approximate the fair market rate for such services." *Graham v. Daimler Chrysler Corp.*, 34 Cal. 4th 553, 579 (2004). "[An enhancement] is intended to approximate market-level compensation for such services, which typically includes a premium for the risk of nonpayment or the delay in payment of attorney fees." *Ketchum*, 24 Cal.4th at 1138.

Risk enhancements reflect the attorney's risk of receiving no payment at all.

16                    Case No. 8:22-cv-00131-SPG-KES

*See Graham*, 34 Cal. 4th at 583-84. That financial risk commands a premium in the legal marketplace for attorneys whose compensation is wholly dependent upon achieving success for their clients. *See Ketchum*, 24 Cal. 4th at 1132, 1138; *see also Horsford v. Bd. of Trustees of Cal. State Univ.*, 132 Cal. App. 4th 359, 394-95 (Cal. Ct. App. 2005). Indeed, the risk of litigating the case and receiving no compensation if the case is lost is often the most significant lodestar enhancement factor. *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1217 (Cal. Ct. App. 2008). Unless risk is compensated, the purpose of the statute will not be fulfilled. *Ketchum*, 24 Cal. 4th at 1132-33 ("A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions. If he is paid no more, competent counsel will be reluctant to accept fee award cases."). Here, Plaintiffs' requested multiplier is justified based on the great risk Plaintiffs' counsel assumed in litigating this case on a contingency basis and on counsels' demonstrated skill. Counsel invested several hours of work without any interim payments from Plaintiffs and also risked costs paid out of pocket since the inception of this case in 2021.

In *Rodriguez v. Cty. of Los Angeles*, 96 F. Supp. 3d 1012, 1026 (C.D. Cal. 2014), aff'd, 891 F.3d 776 (9th Cir. 2018), Judge Conseulo B. Marshall applied a 2.0 multiplier to the attorneys' fees, resulting in over $5 million in attorneys' fees payable to the plaintiff's attorneys. The Ninth Circuit affirmed Judge Marshall's decision, approving that her decision was "based . . . on the substantial financial risk that appellees' counsel assumed in investing $3.4 million of attorney time in a contingency case; the difficulty of representing prisoners with the Men's Central Jail's highest security classifications, in an excessive force action against high-ranking jail officials, all the while facing "aggressive opposition" from appellants; and the opportunity costs the years-long litigation in this case required.  The court expressly noted that it had considered the burden to California's taxpayers that the

17                    Case No. 8:22-cv-00131-SPG-KES

fee award would represent, and found that the award was justified given the factors described above and the importance of civil rights suits in protecting the public against abuses at the hands of "large or politically powerful defendants." *Rodriguez*, 96 F. Supp. at 1026. Refusing a multiplier in a civil rights case based only on the source of the fee would 'effectively immunize large or politically powerful defendants' engaging in conduct that harms the public. *Id.* (citing *Horsford*, 132 Cal. App. 4th at 399-401); *Serrano v. Priest*, 20 Cal. 3d 25, 49 (1977) ("The experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong.").

Additionally, in *Bender v. Cty. of Los Angeles*, 217 Cal. App. 4th 968, 988 (2013), following a jury verdict for plaintiff Bender, including on the Bane Act claim, the Superior Court applied a 1.2 multiplier and awarded $989,258 in attorneys' fees. *Id.* at 976. The *Bender* court explained:

> Proof both of excessive force claims and of liability on a statutory cause of action authorizing recovery of legal fees . . . , [that] counsel put both their time and their purse at risk, investing capital to pay trial expenses; that the time invested limited trial counsel's availability for other cases; that counsel achieved a trial victory "against the united testimony of three deputy sheriffs, and over a vigorous defense"; and that their prosecution of the case was "tenacious, skillful and effective." The court acknowledged payment of the legal fees by the taxpayers counted against a high multiplier, but "every excessive force case in which a plaintiff prevails encourages better supervision within our police agencies and thus reinforces the constitutional protections to which citizens are entitled.

*Bender*, at 988.

In light of certain challenges presented in this case, the hard fought litigation, and the public interest served by obtaining a verdict that brought justice for Officer Silva's behavior, a multiplier of 2.0 is appropriate here. At minimum, this Court should apply a 1.5 multiplier.

Many cases have awarded multipliers of 1.5 to 2.0 in civil rights and public

18                          Case No. 8:22-cv-00131-SPG-KES

interest litigation. *See, e.g.*, *L.D. v. City of Los Angeles*, order attached as "Ex. 2" to Masongsong Decl.; *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66 (Cal. Ct. App. 2008) (2.5 multiplier); *Crommie v. PUC*, 840 F. Supp. 719, 726 (N.D. Cal. 1994) (2.0 multiplier regarding age discrimination actions), *aff'd sub nom Mangold v. PUC*, 67 F.3d 1470 (9th Cir. 1995); *Uphold our Heritage v. Town of Woodside*, No. A120749, 2008 WL 4868816 (Cal. Ct. App. Nov. 12, 2008) (multiplier of 2.0 under § 1021.5); *Leuzinger v. Cnty. of Lake*, No. C 06-00398-SBA, 2009 WL 839056 (N.D. Cal. Mar. 30, 2009) (multiplier of 2.0 in FEHA case); *Colgan v. Leatherman Tool Grp., Inc.*, No. B196650, 2007 WL 4532916 (Cal. Ct. App. Dec. 27, 2007) (multipliers of 2.0 and 1.5 for trial and appellate work in consumer class action); *Ketchum*, 24 Cal. 4th 1122 (multiplier of 2.0 in anti-SLAPP motion); *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 255 (Cal. Ct. App. 2001) (multiplier of 1.42, recognizing multipliers as high as 4.0); *Bell v. Farmers Ins. Exch.*, No. A101246, 2004 WL 1281818 (Cal. Ct. App. June 9, 2004) (1.833 multiplier in overtime class action); *Pellegrino v. Robert Half Int'l, Inc.*, 182 Cal. App. 4th 278 (Cal. Ct. App. 2010) (multiplier of 1.75 in wage and hour case); *W. Century 102, Ltd. v. City Of Inglewood*, No. B164350, 2004 WL 886384 (Cal. Ct. App. Apr. 27, 2004) (multiplier of 1.75 in inverse condemnation case); *Maldonado v. Club Fresh*, No. C055954, 2009 WL 3246450 (Cal. Ct. App. Oct. 9, 2009) (1.5 multiplier in disability discrimination case); *Zelaya v. City of Los Angeles*, No. 2:20-CV-08382-ODW (MAAX), 2024 WL 3183882 at *12 (finding that an enhanced award would be justified, although counsel did not seek a fee multiplier in that case).

It is well-established that excessive force cases inure "a public benefit of deterring unconstitutional conduct by law enforcement officials." *Orr v. Brame*, 727 F. App'x 265, 269 (9th Cir. 2018) (holding that the district court abused its discretion where it reduced an attorney fee award and disregarded a long line of case law that fee awards have deterrent effects); citing *McCown v. City of Fontana*, 565

19

Case No. 8:22-cv-00131-SPG-KES

F.3d 1097, 1105 (9th Cir. 2009); *Morales v. City of San Rafael*, 96 F.3d 359, 364 (9th Cir. 1996). Nevertheless, these cases are extremely difficult to win and require plaintiff's lawyers to take significant risks. In the legal marketplace, law firms simply do not commit thousands of hours of uncompensated time to such a highly risky case without the expectation that, if they are successful, they will be compensated for their risk with a fee that is significantly greater than if they had been paid hourly rates, win or lose. Thus, a multiplier is appropriate.

## V.    **CONCLUSION**

For the foregoing reasons, Garcia Plaintiffs respectfully request that the Court award attorneys' fees in the amount of **$2,865,585** for the work performed by Garcia Plaintiffs' counsel. Plaintiffs also request that the Court award attorneys' fees for work performed in the litigation of the instant motion for attorney fees, including drafting the related reply and attending hearing on the motion for attorneys' fees, and for work performed in opposing any post-trial motions filed by Defendants. The table below summarizes the fees requested.

| Attorney/Biller | Yrs. Practice | Rate | Hours | Total |
|---|---|---|---|---|
| Dale K. Galipo | 36 | $1,500 | 567.7 | $851,550 |
| Renee V. Masongsong | 15 | $900 | 439.7 | $395,730 |
| Michael S. Carrillo | 18 | $1,000 | 99.15 | $99,150 |
| J. Miguel Flores | 20 | $1,000 | 63.45 | $63,450 |
| Darci Gilbert | Legal Assist. | $250 | 24.8 | $6,200 |
| Alejandro Monguia | Legal Assist. | $250 | 33.6 | $8,400 |
| Santiago Laurel | Legal Assist. | $250 | 33.25 | $8,312.5 |
| **Subtotal**: | | | | $1,432,792.5 |
| **Total with 2.0 multiplier:** | | | | $2,865,585 |

| In the alternative, total with 1.5 multiplier: | $2,149,188.75 |
| --- | --- |

DATED: June 3, 2026                    LAW OFFICES OF DALE K. GALIPO


By_____/s/ Dale K. Galipo_____
   Dale K. Galipo
   Renee V. Masongsong
   Attorneys for Garcia Plaintiffs


### L.R. 11-6.2. CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Garcia Plaintiffs, certifies that this brief contains 6,769 words (excluding the caption page, signature blocks, and certificate of compliance), which complies with the word limit of L.R. 11-6.2.


Dated: June 3, 2026                    LAW OFFICES OF DALE K. GALIPO

By:_____/s/ Renee V. Masongsong_____
   Dale K. Galipo
   Renee V. Masongsong
   Attorneys for Garcia Plaintiffs

21                    Case No. 8:22-cv-00131-SPG-KES