# EXHIBIT 11

# Galvan v. Corrigan

Superior Court of California, County of Los Angeles

June 21, 2024, Decided; June 21, 2024, Filed

Case No.: BC703891, consolidated with 19STCV07689

**Reporter**

2024 Cal. Super. LEXIS 59325 *; 2024 LX 120357

RICHARD GALVAN, Plaintiff, v. DENNIS CORRIGAN, Defendant;RICHARD GALVAN, Plaintiff v. UNITED PARCEL SERVICE, et. al., Defendants

**Judges:  [*1]** KRISTIN S. ESCALANTE, SUPERIOR COURT JUDGE.

**Opinion by:** KRISTIN S. ESCALANTE

# Opinion

**ORDER ON PLAINTIFF'S MOTIONS FOR ATTORNEY FEES AND FOR PREJUDGMENT INTEREST**

**MOTION FOR ATTORNEY FEES**

Plaintiff's Motion for Attorney Fees is GRANTED in the reduced amount of S1,220,227.50.

## I. RELEVANT PROCEDURAL HISTORY

On April 25, 2018, the case *Galvan v. Corrigan*, Case No. BC703891 was filed by the Law Offices of Kevin Riva on behalf of plaintiff Richard Galvan against his co-worker Dennis Corrigan for assault, battery, and other related claims. On March 5, 2019, Shegerian & Associates filed *Galvan v. United Parcel Services*, Case No. 19STCV07689 against Galvan's employer United Parcel Service, Galvan's supervisor. John Pipkin, and co-worker Dennis Corrigan for violation of Labor Code section 1102.5, wrongful termination, and other related claims. The claims arose out of UPS's termination of Galvan on January 23, 2017 in retaliation for his complaints about violations of law. The two actions were consolidated and the claims against Corrigan and Pipkin were eventually dismissed.

Trial proceeded on the Labor Code section 1102.5 claim against UPS. The jury returned a verdict of $5,450,000 in compensatory damages. The recovery was ultimately reduced to $3,362,602.96 after post-trial **[*2]** motions and phase two of the trial regarding offsets for workers' compensation.

## II. WHETHER PLAINTIFF IS ENTITLED TO FEES

2024 Cal. Super. LEXIS 59325, *2

At the time this action was filed, in March 2019, Labor Code section 1102.5 did not have any provision allowing a prevailing party to be awarded attorneys fees. The statute was amended effective January 1, 2021 to add section 1102.5, subdivision (j), which provides: "The court is authorized to award reasonable attorney's fees to a plaintiff who brings a successful action for a violation of these provisions." The parties dispute whether this provision applies to an action that was filed before the effective date , but where the verdict and judgment were obtained after the effective date.

"It has long been recognized that a new statute governing the standard for awarding attorney's fees applies to actions pending on the statute's effective date." *(Dragones v. Calkins* (2024) 98 Cal.App.5th 1075, 1083-1084.) The California Supreme Court has "'authoritatively held' that in the absence of express legislative intent to the contrary, 'a new statute authorizing an award of attorney fees' or a statute 'increasing or decreasing litigation costs, including attorneys' fees' applies to actions pending at the time of the enactment." *(USS-Posco Industries v. Case* (2016) 244 Cal.App.4th 197, 220-221*(USS-Posco)*, citing *Stockton Theaters, Inc. v. Palermo* (1956) 47 Cal.2d 469, 477, *Woodland Hills Residents Assn., Inc. v. City Council* (1979) 23 Cal.3d 917, and a number of Court of Appeal cases.)

*USS-Posco* explained: **[*3]**  "[The California Supreme Court and many, many Courts of Appeal have treated legislation affecting the recovery of costs, including attorney fees, as addressing a 'procedural' matter that is 'prospective' in character and thus not at odds with the general presumption against retroactivity." The court applied that principle to a change in Labor Code section 218.5 affecting a defendant's right to obtain attorney's fees, and concluded that the version of the statute that was in effect at the time the fee motion was ruled upon had to be applied. *(USS-Posco Industries, supra*, 244 Cal.App.4th at pp. 220-221; *see also Dragones, supra*, 98 Cal.App.5th at pp. 1083-1084, n.3.)

UPS argues that the Legislature has expressly indicated its intent that that the section 1102.5, subdivision (j) should not be applied to actions that were filed before its effective date. Section 4 provides of the Labor Code provides:

"No action or proceeding commenced before this code takes effect, and no right accrued, is affected by the provisions of this code, but all procedure thereafter taken therein shall conform to the provisions of this code so far as possible."

Courts have interpreted this statute as a rule against retroactive application of provisions of the Labor Code, akin to Civil Code section 3. Labor Code section 4 applies not just to the original provisions of the Labor Code but also to amendments.

But as noted, courts **[*4]**  have interpreted the application of a newly enacted attorneys fee clause as a procedural matter that is prospective in character and thus applying a new attorneys fees provision to existing litigation is not considered to be a retroactive application of the statute. Thus, for example, the *USS-Posco* court applied the amended version of an attorney fees provision in the Labor Code to a case that was filed before the amendment took place. The court recognizes that construing a new attorney fee provision as a procedural change that only has prospective effect is to some extent a legal fiction. As the court in *Dragones* explained:

2024 Cal. Super. LEXIS 59325, *4

"The *USS-Posco* court pointed out an anomaly in the case law: Courts applying an amended attorney fee statute to a case currently pending do not deem such application "'retroactive'"; instead, they term such application "'prospective'" because an attorney fee statute is deemed to address a 'procedural' matter that is 'prospective' in character and thus not at odds with the general presumption against **retroactivity.**' [Citation.] Courts have consistently adhered to this terminology, even though, as the *USS-Pasco* court noted, 'legislation changing when **attorney fees** are available could readily **[*5]** be said to change the legal consequences of past conduct and substantially affect preexisting rights and obligations.' [Citation.] Notwithstanding the oddity in nomenclature and its potential for masking a material change in rights and obligations, the *USS-Posco* court followed the well-established rule, applying the amended Labor Code attorney fee statute to the pending case. [Citation.]."

*(Dragones, supra*, 98 Cal.App.5th at pp. 1083-1084, n.3.)

However, as the *Dragones* Court noted, this "oddity" is supported by a long line of authority, including cases favorably cited and relied upon by the Supreme Court in *Woodland Hills Residents Assn., Inc., supra*, 23 Cal.3d 917 (citing and relying on *Olson v. Hickman* (1972) 25 Cal.App.3d 920, 922). The court follows this longstanding authority here. (The court is not aware of any published decisions that have considered the application of these principles to section 1102.5, subdivision (j), but there are a number of cases currently pending before the Court of Appeal.)

UPS also argues that the Legislature indicated its intent that the new provision should not be applied to existing actions in a Senate Judiciary Committee Report for 2019 California Assembly Bill No. 1947. The court does not read the Committee Report in the way UPS does. AB 1947 proposed two changes to claims under Labor Code section 1102.5 — the addition of the attorney fee provision and the lengthening of **[*6]** the statute of limitations for the filing of a complaint with the Division of Labor Standards Enforcement. While there is some ambiguity. the portion of the Committee Report cited by UPS appears to apply solely to the statute of limitations issue. The report states:

> "The bill is silent about its effect on pre-existing claims. In the absence of clear legislative intent to the contrary, a statute is presumed to operate only prospectively. *(Aetna Cas. & Sur. Co. v. Industrial Acc. Commission* (1947) 30 Cal.2d 388, 393.) In the specific context of legislation. like this bill, that extends a statute of limitation, the California Supreme Court has written that: [enlargement of statute of limitations period does not revive lapsed claims. The extensive quotation is omitted.] Applying these rules to this bill, it would automatically extend the time to file for incidents that occurred before the effective date of the change in law, but for which the limitations period has not expired. On the other hand, claims based on incidents for which the existing period has expired, or will expire prior to enactment of this bill, would not be revived."

That section of the Senate Judiciary Report says nothing about the attorney fees provision, and the court cannot interpret it as an **[*7]** explicit statement that the new attorney fees provision should not apply to pending cases. (In the future, counsel should request that the court take judicial notice of legislative history materials and should provide a copy for the court.)

2024 Cal. Super. LEXIS 59325, *7

## III. AMOUNT OF FEES

The court has carefully reviewed the time records. The court finds that the number of hours recorded by attorneys Shegerian, Madjidi, Hale, and Rodriguez were reasonable (except the court disallows time for local travel, including to and from the courthouse for trial).

The court awards no fees for the time of Anthony Nguyen, who recorded 29.6 hours of time to the case. Virtually all of the time billed by Mr. Nguyen appears to be for reviewing litigation documents prepared by someone else. It does not appear from the billing entries that Mr. Nguyen added value to the case, and in any case the time appears to be duplicative of that billed by other lawyers to the case. The court strikes the time for Rosie Zilifvan for the same reason.

The court reduces the time of John David and Beatriz Alfaro. Their staffing on the case appears to have resulted in inefficiencies and duplicative time for internal meetings and internal correspondence **[*8]**  and the duplicative review materials that was also reviewed by other lawyers.

As to rates, the court finds that Mr. Shegerian's performance at trial was exceptional and commands premium rates. Ms. Madjidi also performed well at trial, and commands higher-than-average rates than other well-performing lawyers at her experience level. Further, both were extremely well prepared and had an exceptional command of the facts and details in the case. The rates set forth in the chart below for Mr. Shergarian and Ms. Madjidi reflect the excellence of their work in the courtroom, their reputation in the community, and other relevant factors. Ms. Madjidi also ably argued the scores of motions in this case and was well-versed in the facts and relevant legal authority. (The comment in the following paragraph does not apply to Ms. Madjidi's work.)

The court finds that the work of the other lawyers at the firm (including the written work product on motions and other papers prepared in the case), while competent, is not at the same elite level as Mr. Shegerian's trial work. This is not meant as a criticism, but instead explains why the court has not awarded rates at the levels sought for the lawyers preparing **[*9]**  the papers. In the end, the firm achieved an exceptional result for its client, and the papers were as good as they needed to be to achieve that result, but the rates that are sought for much of the written work product are not justified, in the court's view.

The court is extremely familiar with the rates in the Los Angeles legal market and sets rates based on the court's assessment of the rates that the work would command on the open market. The court has considered all of the relevant factors, and finds that a multiplier is not warranted.

The following chart sets forth the calculation of the fees.

| Lawyer | Gross Hours | Deductions for travel | Hours Net of Travel | Hourly rate | Total |
|---|---|---|---|---|---|
| Shegarian | 453.9 | 53.5 | 400.4 | $1,300 | $520,650.00 |
| Madjidi | 703.7 | 46.5 | 657.2 | $750 | $492,900.00 |
| Matthew Hale | 305.2 | 41.7 | 25 3.> | $475 | $120,317.50 |
| Griselda | 134 | (none | 134 | $475 | $63,650.00 |

2024 Cal. Super. LEXIS 59325, *9

| Lawyer | Gross Hours | Deductions for travel | Hours Net of Travel | Hourly rate | Total |
|---|---|---|---|---|---|
| Rodriguez | | identified by defendant in opposition) | | | |
| John David | 46.8 (reduced) | (already deducted) | 46.8 | $350 | $16,380.00 |
| Beatriz Alfaro | 15 (reduced) | | 15 | $350 | $5,250.00 |
| Bryan Kirsh | 2.7 | | 2.7 | $400 | $1,080.00 |
| | | | TOTAL | | TOTAL |
| | | | 1,492 | | $1,220,227.50 |

## MOTION FOR PREJUDGMENT INTEREST

Plaintiff's Motion for Prejudgment Interest Pursuant to Civil Code Section 3291 and 3287 is DENIED.

## A. REQUEST FOR PREJUDGMENT INTEREST PURSUANT TO CIVIL CODE SECTION 3291

Plaintiff seeks prejudgment **[*10]** interest on the portion of the judgment for non-economic damages pursuant to Civil Code section 3291.

Section 3291 provides in relevant part:

"In any action brought to recover damages for personal injury sustained by any person resulting from or occasioned by the tort of any . . . corporation . . . , whether by negligence or by willful intent of the . . . corporation . . . , and whether the injury was fatal or otherwise, it is lawful for the plaintiff in the complaint to claim interest on the damages alleged as provided in this section. [¶] If the plaintiff makes an offer pursuant to Section 998 of the Code of Civil Procedure which the defendant does not accept prior to trial or within 30 days, whichever occurs first, and the plaintiff obtains a more favorable judgment, the judgment shall bear interest at the legal rate of 10 percent per annum calculated from the date of the plaintiffs first offer pursuant to Section 998 of the Code of Civil Procedure which is exceeded by the judgment, and interest shall accrue until the satisfaction of judgment."

On June 2, 2020, Galvan served an offer to compromise under section 998 in the amount of $1,959,999, which defendant rejected. Judgment was entered in the amount of $3,362,602.96, of which $2,500,000 was for non-economic damages. Plaintiff argues that section 3291 applies to the non-economic **[*11]** damages.

The court disagrees. This is not an "action brought to recover damages for personal injuries," and thus section 3291 does not apply.

*Holmes v. General Dynamics Corporation* (1993) 17 Cal.App.4th 1418, 1435-1436 is closely on point. In that case, the defendant fired the plaintiff in retaliation for plaintiff's disclosure to management that the company had violated the False Statements Act (18 USC § 1001.) Plaintiff

brought suit for wrongful termination in violation of public policy, and sought damages for lost wages and emotional distress. The jury awarded $106,000 in lost wages, $200,000 in emotional distress, and $500,000 in punitive damages. The court affirmed the trial court's decision denying prejudgment interest under section 3291, finding a tortious wrongful termination claim based on retaliation for reporting violations of law is not an action to recover personal injury damages within the meaning of the statute. "A wrongful termination claim primarily involves the infringement of property rights, not personal injury." *(Id.* at p. 1436.) "I he court stated: "We reach the foregoing conclusion even though we are well aware that GD's conduct caused Holmes to suffer extensive personal damages. As *[Gourly v. State Farm Mutual Auto Insurance Co.* (1991) 53 Cal.3d 121, 125-126] makes clear, in analyzing whether an action falls within the ambit of section 3291 a court must focus on the nature **[*12]** of the tort rather than the type or extent of the damages suffered in the particular case." (Holmes, p. 1436-1437.)

Here, the nature of the tort was identical to the nature of the tort at issue in Holmes. As in Holmes, plaintiff contended he was wrongfully terminated in retaliation for his numerous complaints about violations of law. Although plaintiff brought his claim under Labor Code section 1102.5 instead of the common law, that difference in immaterial in assessing the nature of the tort.

Plaintiff contends that the claim is one for personal injury because one of the violations of law that plaintiff complained about was a battery by his co-worker, Dennis Corrigan. But the claim that was tried to the jury was not a battery claim; it was a claim for wrongful termination. The fact that one of the violations complained of was battery does not change the nature of the tort.

## B. REQUEST FOR PREJUDGMENT INTEREST PURSUANT TO CIVIL CODE SECTION 3287

The court finds that the motion for prejudgment interest pursuant to Civil Code section 3287 is untimely. The court denies the motion on that ground.

"[R]equests for prejudgment interest under section 3287 by a successful plaintiff must be made by way of motion prior to entry of judgment, or the request must be made in the form of a motion for new **[*13]** trial no later than the time allowed for filing such a motion." *(North Oakland Medical Center Clinic v. Roger* (1998) 65 Cal.App.4th 824, 831.) The motion may also be brought as a motion for a modification of a judgment under Code of Civil Procedure section 657. *(Watson Bowman Acme Corp. v. RGW Construction, Inc.* (2016) 2 Cal.App.5th 279, 297.) The motion does not need to be labeled as a motion for a new trial or a motion for modification of a judgment, but the motion must be brought within the time for such a motion. *(Id.)*

Here, judgment was entered on January 4, 2024. The clerk mailed notice of entry of judgment on the same day. Plaintiff did not make a motion for prejudgment interest pursuant to section 3287 prior to entry of judgment, thus any motion for prejudgment interest had to be made within the time for a motion for a new trial or for a modification of a judgment.

Under Code of Civil Procedure section 659, a party intending to move for a motion for a new trial shall file and serve a notice of intention to move for a new trial, designating the grounds upon which the motion shall be made "within 15 days of the date of mailing notice of entry of judgment by the clerk." Here, defendant timely filed and served a notice of intent to move for a new trial on

January 18, 2024. Plaintiff had 15 days after the service of notice upon him to serve a notice of intention to move for a new trial. Plaintiff timely served a **[*14]** notice of intent to move for a new trial on January 19, 2024. Section 659a provides that within 10 days of filing the notice, the moving party must serve and file any briefs or accompanying documents. Plaintiff filed a brief and evidence in support of his motion on January 29, 2024. ***Plaintiff did not seek prejudgment interest pursuant to Civil Code section 3287 in that motion***. Further, the motion was later withdrawn.

Plaintiff argues that the time for a motion for prejudgment interest runs from the time the amended judgment was entered. The judgment was amended after plaintiff accepted the Court's remittitur which reduced the amount of future non-economic damages. Acceptance of the remittitur and entry of an amended judgment did not reopen the time for a new motion for a new trial or modification of the judgment.

Plaintiff also argued the parties stipulated that the motion could be brought after the amended judgment. The court finds that there was no stipulation between the parties to allow the motion to be brought at a date after the expiration of the time for the motion for a new trial. Thus, *Steiny & Co., Inc, v. California Electric Supply Co.* (2000) 79 Cal.App.4th 285 is inapplicable.

In sum, the motion for prejudgment interest is DENIED.

Dated: JUN 21 2024

/s/ Kristin S. Escalante

**KRISTIN S. ESCALANTE [*15]**

**SUPERIOR COURT JUDGE**

---

End of Document