# EXHIBIT 2

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 20-00416 JGB (SPx)** | Date | May 10, 2022 |
|---|---|---|---|
| Title | ***Paola French, et al. v. City of Los Angeles, et al.*** | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| TANISHA CARRILLO | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

Attorney(s) Present for Plaintiff(s):        Attorney(s) Present for Defendant(s):

None Present                                None Present

Proceedings:    **Order (1) DENYING Defendant's Motion for Judgment as a Matter of Law (Dkt. No. 138); (2) GRANTING IN PART Plaintiffs' Motion for Attorneys' Fees (Dkt. No. 145); and (3) VACATING the May 16, 2022 Hearing (IN CHAMBERS)**

Before the Court are two post-trial motions: (1) a motion for judgment as a matter of law, or alternatively for new trial, filed by Defendant City of Los Angeles ("City") ("Rule 50b Motion," Dkt. No. 138); and (2) Plaintiffs Paola French and Russell French's ("Plaintiffs") motion for attorneys' fees ("Fee Motion," Dkt. No. 145) (collectively, "Motions"). The Court finds these matters appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of and in opposition to the Motions, the Court DENIES the Rule 50(b) Motion and GRANTS IN PART the Fee Motion. The hearing set for May 16, 2022 is VACATED.

## I.   BACKGROUND

On February 28, 2020, Paola French and Russell French ("Plaintiffs") commenced this action against Defendants City of Los Angeles ("City") and Salvador Sanchez ("Sanchez") (collectively, "Defendants"). ("Complaint," Dkt. No. 1.) Plaintiffs alleged that Mr. Sanchez, who was an officer with the Los Angeles Police Department ("LAPD") at the time, used excessive force against them and their son Kenneth French ("Decedent," or "Kenneth") inside of a Costco warehouse store in Corona, California. (See id.) On April 1, 2020, Plaintiffs filed a first amended complaint as of right. ("FAC," Dkt. No. 10.) Following the Court's order dismissing Plaintiffs' federal causes of action (Dkt. No. 19), Plaintiffs filed a second amended complaint on July 20, 2020. ("SAC," Dkt. No. 21.) On January 8, 2021, the Court dismissed-in-

part one of Plaintiffs' municipal liability claims, dismissed Plaintiffs' second municipal liability claim and negligent training, hiring, and retention claim, and granted Plaintiffs leave to amend. (Dkt. No. 45.)  On January 18, 2021, Plaintiffs filed a third amended complaint, the operative complaint.  ("TAC," Dkt. No. 46.)

The TAC asserted twelve causes of action: (1) unreasonable search and seizure, unlawful detention and arrest in violation of 42 U.S.C. § 1983 ("Section 1983"); (2) unreasonable search and seizure, excessive force in violation of Section 1983; (3) unreasonable search and seizure, denial of medical care in violation of Section 1983; (4) interference with familial relationship in violation of the Fourteenth Amendment's Substantive Due Process Clause and Section 1983; (5) municipal liability, unconstitutional custom, practice, or policy in violation of Section 1983; (6) false arrest/false imprisonment; (7) battery, including wrongful death; (8) negligence, including wrongful death; (9) negligent infliction of emotional distress; (10) violation of the Bane Act, Cal. Civil Code § 52.1; (11) negligent training, hiring, and retention; and (12) loss of consortium.  (See TAC.)

On October 4, 2021, the Court granted in part and denied in part the City's motion for summary judgment.  ("MSJ Order," Dkt. No. 92.)  The Court dismissed Plaintiffs' municipal liability claim (Count Five), but denied summary judgment on Plaintiffs' state law claims (Counts Six through Twelve).  (Id. at 16.)

Following oral arguments on Plaintiffs' two motions in limine on October 4, 2021, the Court granted the motions on October 12, 2021.  ("MIL Order," Dkt. No. 94.)  The Court precluded any references to Kenneth's alleged theft of a vehicle; statements relating to the alleged theft and Kenneth's mental health; and references to certain conclusions and determinations by the Riverside County District Attorney, Riverside grand jury, the California Attorney General, the Los Angeles Police Commission, and the City, including that Mr. Sanchez's actions were "out of policy."  (Id. at 4–5.)

On October 19, 2021, a jury trial began on Plaintiffs' federal and state law claims.  (Dkt. No. 106.)

On October 26, 2021, following the parties' presentation of the evidence, Plaintiffs voluntarily dismissed their Section 1983 claims for unlawful detention and arrest (Count One), denial of medical care (Count Three), and interference with familial relationship (Count Four), as well as their state law claims for false arrest/false imprisonment (Count Six) and negligent training, hiring, and retention claim (Count Eleven).  (Dkt. No. 129, 10-26-21 RT 550:4-20.) Plaintiffs' remaining six claims were as follows: (1) excessive force under Section 1983 (Count Two), (2) battery (Count Seven), (3) negligence (Count Eight), (4) negligent infliction of emotional distress ("NIED") (Count Nine), (5) violation of the Bane Act (Count Ten), and (6) loss of consortium (Count Twelve).  (10-26-21 RT 550:21-551:13.)

//
//

The Court also heard arguments on the parties' respective motions for judgment as a matter of law under Federal Rule of Civil Procedure 50(a) ("Rule 50a") that day. The Court granted in part and denied in part Plaintiffs' motion and denied the City's motion, ruling that (1) Mr. Sanchez's use of force was unreasonable and, therefore, excessive, and (2) Mr. Sanchez's excessive force caused Plaintiffs' and Kenneth's injuries as a matter of law. (Id. 562:7-25.) The Court determined that, as a result, the corresponding elements for Plaintiffs' battery, negligence, NIED, and Bane Act claims were also satisfied as a matter of law. (Id. 562:12-16.) However, the Court found that disputed factual issues required the jury to determine whether Mr. Sanchez acted under color of state law and in the course and scope of his employment. (Id. 563:1-3.)

On October 27, 2021, the jury returned a verdict for Plaintiffs. ("Special Verdict," Dkt. No. 114.) The jury answered, "Yes," to all questions: whether Mr. Sanchez acted under color of state law during the incident, whether Mr. Sanchez acted within the course and scope of his employment with the City as a peace officer during the incident, whether he negligently inflicted severe emotional distress on Plaintiffs, and whether Plaintiffs suffered loss of consortium as a result of Mr. Sanchez's use of unreasonable force against them. (Id. at 3–4.) The jury awarded $17,002,000.00 in total damages: (1) $4,000,000.00 for Kenneth's pre-death pain and suffering and loss of life damages; (2) $4,771,000.00 in compensatory damages for Paola French; (3) $400,000.00 in loss of consortium damages for Paola French; (4) $5,431,000.00 in compensatory damages for Russell French; (5) $400,000.00 in loss of consortium damages for Russell French; and (6) $2,000,000.00 for Plaintiffs' past and future wrongful death damages. (Id. at 5–7.)

On November 29, 2021, the Court entered judgment consistent with the Special Verdict. (Dkt. No. 133.)

On December 27, 2021, the City timely filed the Rule 50b Motion. (See Rule 50b Mot.) Plaintiffs opposed on January 10, 2022. ("Rule 50b Mot. Opp'n," Dkt. No. 142.) On January 11, 2022, they corrected the Rule 50b Opposition. (Dkt. No. 144.) On January 24, 2022, the City replied. ("Rule 50b Mot. Reply," Dkt. No. 148.)

On January 24, 2022, Plaintiffs filed the Fee Motion.[1] (See Fee Mot.) In support, Plaintiffs filed the following documents:

- Declaration of Dale K. Galipo, with attached exhibits ("Galipo Declaration," Dkt. No. 145-2);
- Declaration of Eric Valenzuela, with attached exhibits ("Valenzuela Declaration," Dkt. No. 145-10);
- Declaration of John Fattahi, with attached exhibits ("Fattahi Declaration," Dkt. No. 145-16);
- Declaration of Alejandro Monguia, with attached exhibits ("Monguia Declaration," Dkt. No. 145-21);

---

[1] Plaintiffs initially filed the Fee Motion as a motion for application to tax costs, but filed a notice of errata to clarify that it is a motion for attorneys' fees. (Dkt. No. 149.)

- Declaration of Renee V. Masongsong, with attached exhibits ("Masongsong Declaration," Dkt. No. 150);
- Declaration of Karen Slyapich, with attached exhibits ("Slyapich Declaration," Dkt. No. 145-24);
- Declaration of Santiago Laurel, with attached exhibits ("Laurel Declaration," Dkt. No. 145-26);
- Declaration of Marielle Sider, with attached exhibits ("Sider Declaration," Dkt. No. 145-29); and
- Declaration of Benjamin Nisenbaum ("Nisenbaum Declaration," Dkt. No. 147).

On February 7, 2022, the City opposed the Fee Motion.  ("Fee Mot. Opp'n," Dkt. No. 151.)

On February 22, 2022, Plaintiffs replied.  ("Fee Mot. Reply," Dkt. No. 156.)  In support, Plaintiffs filed the following additional documents:

- Supplemental Declaration of Mr. Galipo ("Supplemental Galipo Declaration," Dkt. No. 156-1);
- Supplemental Declaration of Mr. Valenzuela ("Supplemental Valenzuela Declaration," Dkt. No. 156-2);
- Supplemental Declaration of Ms. Masongsong ("Supplemental Masongsong Declaration," Dkt. No. 156-3);
- Supplemental Declaration of Mr. Fattahi ("Supplemental Fattahi Declaration," Dkt. No. 156-4); and
- Declaration of John Burton ("Burton Declaration," Dkt. No. 156-5).

## II.   DEFENDANT'S RULE 50(B) MOTION

The City renews its motion for judgment as a matter of law on Plaintiffs' Section 1983 and state law claims, arguing that no reasonable jury could have found that Mr. Sanchez acted in the course and scope of his employment or under color of state law.  (See Rule 50b Mot.)  The City alternatively asserts that errors by the Court serve as grounds for a new trial.  (Id. at 12–19.)

### A.  Legal Standard

#### 1.   Rule 50(b): Motion for Judgment as a Matter of Law

Under Federal Rule of Civil Procedure 50(b) ("Rule 50(b)"), a court may grant a motion for judgment as a matter of law ("JMOL") after a jury trial if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue."  Fed. R. Civ. P. 50(a)(1).  "The test applied is whether the evidence permits only one reasonable conclusion."  E.E.O.C. v. Go Daddy Software, Inc., 581 F.3d 951, 961 (9th Cir. 2009).  This standard mirrors the summary judgment standard.  Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 150 (2000) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)).  If

there is substantial evidence to support a contention, the court may not grant JMOL.  Watec Co. v. Liu, 403 F.3d 645, 651 n.5 (9th Cir. 2005).  Substantial evidence must be sufficient for reasonable minds to accept it as support for a conclusion, even when the evidence might also support a contrary conclusion.  George v. City of Long Beach, 973 F.2d 706, 709 (9th Cir. 1992).  The court must view the facts and draw inferences in the manner most favorable to the non-moving party.  United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

Procedurally, a Rule 50(b) motion is "a renewed Rule 50(a) motion."  E.E.O.C., 581 F.3d at 961.  Accordingly, a party must first make a Rule 50(a) JMOL motion "before the case is submitted to the jury."  Fed. R. Civ. P. 50(a)(2).  If the court denies the Rule 50(a) motion and allows the case to go to the jury, a party may make a renewed motion for judgment as a matter of law within twenty-eight days after the entry of judgment.  Fed. R. Civ. P. 50(b).  The renewed JMOL motion "may include an alternative or joint request for a new trial under Rule 59."  Id.  Because a Rule 50(b) motion is a renewed motion, "[a] party cannot raise arguments in its post-trial motion [under Rule 50(b)] that it did not raise in its pre-verdict Rule 50(a) motion."  Freund v. Nycomed Amersham, 347 F.3d 752, 761 (9th Cir. 2003).

### 2.  Rule 59: Motion for New Trial

Federal Rule of Civil Procedure 59 ("Rule 59") authorizes new trials "for any reason for which a new trial has heretofore been granted in an action at law in federal court."  Fed. R. Civ. P. 59(a)(1)(A).  A motion for new trial "must be filed no later than 28 days after the entry of judgment."  Fed. R. Civ. P. 59(b).  For a timely motion, a court generally "must uphold a jury verdict if it is supported by substantial evidence."  Guy v. City of San Diego, 608 F.3d 582, 585–86 (9th Cir. 2010).  Evidence is "substantial" to support a jury's finding when it is "'adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion.'"  Id. (internal citations omitted).  The Court has "a duty to reconcile the jury's special verdict responses on any reasonable theory consistent with the evidence."  Id. at 586.

However, the court may grant a new trial, even when substantial evidence supports the verdict, if "the verdict is contrary to the clear weight of the evidence, or is based upon evidence which is false, or to prevent … a miscarriage of justice."  United States v. 4.0 Acres of Land, 175 F.3d 1133, 1139 (9th Cir. 1999).  Courts may also grant a new trial where the amount of damages is "grossly excessive or monstrous, clearly not supported by the evidence, or based only on speculation or guesswork."  Del Monte Dunes v. City of Monterey, 95 F.3d 1422, 1435 (9th Cir. 1996).  "[T]he district court can weigh the evidence, make credibility determinations, and grant a new trial for any reason necessary to prevent a miscarriage of justice."  Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd., 762 F.3d 829, 841 (9th Cir. 2014).

"Unless justice requires otherwise, no error in admitting or excluding evidence—or any other error by the court or a party—is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order."  Fed. R. Civ. P. 61.  "[T]he court must disregard all errors and defects that do not affect any party's substantial rights."  Id.

### 3. Rule 51: Objections to Jury Instructions and Verdict Form

Federal Rule of Civil Procedure 51 ("Rule 51") controls post-trial objections to jury instructions and the form of the verdict. Fed. R. Civ. P. 51(c); <u>Ayuyu v. Tagabuel</u>, 284 F.3d 1023, 1026 (9th Cir. 2002). "A party who objects to an instruction or the failure to give an instruction must do so on the record, stating distinctly the matter objected to and the grounds for the objection." Fed. R. Civ. P. 51(c)(1). To be timely, a party must object (1) "on the record and out of the jury's hearing before the instructions and arguments are delivered," or (2) if "a party was not informed of an instruction or action on a request before" the aforementioned opportunity, then "promptly after learning that the instruction or request will be, or has been, given or refused." Fed. R. Civ. P. 51(c)(2), (b)(2). Objections that a party fails to raise "until after the jury has rendered its verdict and was discharged" are "waived." <u>Yeti by Molly, Ltd. v. Deckers Outdoor Corp.</u>, 259 F.3d 1101, 1109 (9th Cir. 2001).

## B. Defendant's Rule 50(b) Motion

The City moves for judgment as a matter of law on the grounds that: (1) no reasonable jury could have found that Mr. Sanchez acted within the course and scope of his employment as an LAPD officer when he shot Plaintiffs; and (2) no reasonable jury could have found that Mr. Sanchez acted under color of state law to impose liability under 42 U.S.C. § 1983. (Rule 50b Mot. at 6–11.) For the reasons below, the Court disagrees.

### 1. Vicarious Liability for State Law Claims

The City first contests the jury's verdict that Mr. Sanchez acted "within the course and scope of his employment with the City of Los Angeles as a peace officer during the incident" on Plaintiffs' vicarious liability claim. (Special Verdict at 3.)

The parties are familiar with the doctrine of respondeat superior by now; the Court summarizes just the pertinent principles. "[A]n employer is vicariously liable for the torts of its employees committed within the scope of the employment." <u>Lisa M. v. Henry Mayo Newhall Mem'l Hosp.</u>, 12 Cal. 4th 291, 296 (1995). A tort occurs within the scope of employment when it is "engendered by or arise[s] from the work," meaning that: (1) the act is an "outgrowth of the employment," or the risk of tortious injury is "inherent in the working environment" or "typical of or broadly incidental to the [employer's] enterprise; or (2) the act is "a generally foreseeable consequence" of "the employer's enterprise." <u>Lisa M.</u>, 12 Cal. 4th at 298–99. The scope of employment inquiry is "a question of fact," but becomes a "question of law" when "the facts are undisputed and no conflicting inferences are possible." <u>Mary M. v. City of Los Angeles</u>, 54 Cal. 3d 202, 213 (1991). Governmental entities can be held vicariously liable "when a police officer acting in the course and scope of employment uses excessive force or engages in assaultive conduct." <u>Id.</u> at 215. In such cases, a court should consider all facts "in the context of the enterprise of policing." <u>Perez v. City & Cnty. of S.F.</u>, 75 Cal. App. 5th 826, 841 (2022).

Renewing its argument from trial, the City argues that the undisputed evidence showed "that Sanchez was off-duty, out of uniform, and shopping with his family when he opened fire on the Frenches in a crowded store far outside the Los Angeles city limits." (Rule 50b Mot. at 7.) The only possible evidence linking Mr. Sanchez to the LAPD was, in the City's view, his possession of an LAPD-approved gun, which is insufficient. (Id.) Because no reasonable jury could conclude from this record that Mr. Sanchez's shooting arose from, or was a foreseeable risk inherent to, LAPD's enterprise, the City asserts that Mr. Sanchez did not act within the scope of his employment and vicarious liability should not have attached. (Id. at y–9.)

The City's argument ignores countervailing evidence presented to the jury. True, Mr. Sanchez was not dressed as a police officer. Mr. Sanchez testified in his videotaped deposition played at trial that he had come home at the end of a shift, changed out of his uniform, then drove to Costco in a personal vehicle. (10-22-21 RT 415:19-417:7.) He wore a polo shirt, shorts, and tennis shoes, and witnesses at Costco did not recognize him as a police officer offhand. (Id. 417:8-10; 10-20-21 RT 31:22-32:21; 10-21-21 RT 136:13–15.)

However, substantial evidence supported a causal nexus between Mr. Sanchez and his employment with LAPD before and during his use of force. Despite leaving his shift and changing his clothes, Mr. Sanchez went to Costco carrying his LAPD-approved gun that contained LAPD-approved ammunition, as well as his LAPD identification card. (10-22-21 RT 404:18-24, 10-20-21 RT 94:7-95:15.) According to LAPD's Person Most Knowledgeable ("PMK") Andrew Kukla's testimony, the only reason why Mr. Sanchez could enter Costco with a concealed firearm at the time was because he was a police officer authorized to do so by the state. (10-21-21 RT 153:2-9.) Firearms also hold a "central role … in policing." Perez, 75 Cal. App. 5th at 837. A jury could reasonably infer from this evidence that Mr. Sanchez was cloaked with the authority of an LAPD officer.

Moreover, this was not a case where "possession of a Department-approved firearm" alone linked Mr. Sanchez's actions to his employment. Perez, 75 Cal. App. 5th at 842. Instead, the jury heard additional evidence tending to show that Mr. Sanchez deployed LAPD training and invoked peace officer authority during the incident—even though he was off-duty. According to William Harmening and Mr. Sanchez, Mr. Sanchez drew his concealed, LAPD-approved gun after he was struck on the head by Kenneth. (10-20-21 RT 280:14-16; 10-22-21 RT 404:18-24.) PMK Kukla testified that off-duty police officers have peace officer authority to respond to public offenses, whether or not they are in uniform or outside the City's geographic jurisdiction, and that being struck on the head could constitute a public offense. (10-21-21 RT 156:7-157:4, 301:6-11.) Paola French testified that she saw Mr. Sanchez pull his gun out and heard him say he was a police officer.[2] (10-20-21 RT 94:7-95:15.) When Mr. Sanchez began to

---

[2] The City challenges the credibility of this testimony. (Rule 50b Mot. at 3.) The City misapprehends the analysis applicable on a motion for judgment as a matter of law. The Court "may not make credibility determinations or weigh the evidence," but may ask only whether the jury had sufficient evidence to support its conclusion. E.E.O.C., 581 F.3d at 961 (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)).

shoot, a witness observed that he used the gun like a police officer by shooting from the hip. (10-20-21 RT 48:5-10, 13-16, 58:18-25.) The witness testified that this stance is taught in law enforcement and indicated that Mr. Sanchez might have been a police officer. (Id.) Others testified that after the shooting, Mr. Sanchez verbally identified himself as an off-duty officer, showed his LAPD identification card to officers and witnesses responding to the scene, and indicated that Kenneth was "the shooter." (Id. 65:22-66:1, 76:6-24; 10-21-21 RT 128:7-15, 129:1-12, 142:5-10.) Drawing all inferences in Plaintiffs' favor, a jury could reasonably conclude that Mr. Sanchez's conduct was an outgrowth of his employment and a generally foreseeable consequence of LAPD's policing enterprise.

Of course, the jury also heard testimony that could support the City's depiction of Mr. Sanchez as an individual who abused his position for personal reasons. Mr. Sanchez testified in his deposition that he believed he was acting to protect his life and his son's life. (10-22-21 RT 434:9-15.) A jury could find that Mr. Sanchez was more interested in his son's safety than the public's. A jury could further conclude that Mr. Sanchez only identified himself as an LAPD officer to avoid the consequences of his actions.

But that is not the only possible conclusion, which is what the City must prove at this stage. While "[a]n act serving only the employee's personal interest is less likely to arise from or be engendered by the employment," Lisa M., 12 Cal. 4th at 298, an "abuse of authority" motivated by personal desire "arise[s] out of the employment" when it does "not evince a complete departure from [an employee's] duties." Rizzo v. Ins. Co. of State of Penn., 969 F. Supp. 2d 1180, 1192 (C.D. Cal. 2013); see also Farmers Ins. Grp. v. County of Santa Clara, 11 Cal. 4th 992, 1004 (1995) ("[W]here the employee is combining his own business with that of his employer, or attending to both at substantially the same time, no nice inquiry will be made as to which business he was actually engaged in at the time of injury, unless it clearly appears that neither directly nor indirectly could he have been serving his employer."). A jury, viewing the evidence in the light most favorable to Plaintiffs and drawing all inferences in their favor, could reasonably find that Mr. Sanchez's desire to protect his son overlapped with his duties as a peace officer. Because he acted, at least in part, as a police officer, his actions were not "purely" motivated by self-interest. Rizzo, 969 F. Supp. 2d at 1192. Accordingly, the Court concludes that there was substantial evidence for the jury to reasonably conclude that Mr. Sanchez acted within the scope of employment for LAPD.

The City's arguments for a contrary conclusion—many of which the Court considered and dismissed in the summary judgment order ("MSJ Order," Dkt. No. 92)—are unavailing. The City first contends that Mr. Sanchez's conduct was not a foreseeable risk as a matter of law because Mr. Sanchez committed an "off-duty battery." (Rule 50b Mot. at 9.) California courts, however, have rejected drawing a hard line between on-duty and off-duty actions to determine employer liability.[3] A police officer's "off-duty" status does not "insulate" an employer "from

---

[3] This aversion reflects the "'deeply rooted sentiment' that it would be unjust for an enterprise to disclaim responsibility for injuries occurring in the course of its characteristic activities." Perez, 2022 WL 611530, at *3 (quoting Mary M., 54 Cal. 3d at 208).

Case 8:22-cv-00131-SPG-KES    Document 177-55    Filed 06/03/26    Page 10 of 31
Page ID #:3124
Case 5:20-cv-00416-JGB-SP    Document 165    Filed 05/10/22    Page 9 of 30    Page ID #:3543

potential liability for the torts of these officers." <u>Inouye v. County of Los Angeles</u>, 30 Cal. App. 4th 278, 281 (Cal. Ct. App. 1994). Instead, the City can be held vicariously liable for "injuries caused after work hours," as long as the action was "engendered by events or conditions relating to the employment." <u>Farmers Ins. Grp.</u>, 11 Cal. 4th at 1006. There is no presumption against vicarious liability solely because an officer is off-duty.[4] Moreover, as discussed above, the evidence supports a conclusion that Mr. Sanchez's off-duty actions occurred within the scope of his or her employment.

The City next claims that the act of "declaring one's self to be a police officer and then summarily opening fire on people in a crowded store" is utterly divorced from "the business of law enforcement." (Rule 50b Mot. at 9.) Yet courts have imposed vicarious liability under similar facts. In <u>Reason v. City of Richmond</u>, 2021 WL 2268892, at *1, 5 (E.D. Cal. June 3, 2021), the court found that an off-duty police sergeant acted within the scope of his employment when—following a confrontation over a parking spot at "a busy gas station" in a different city from his employer—he "identified himself as a police officer and opened fire into the back of [the decedent's] body." In <u>Bradley v. County of San Joaquin</u>, 2018 WL 4026996, at *1, 6 (E.D. Cal. Aug. 23, 2018), a court found that an off-duty deputy sheriff, who was engaged in an illicit transaction in a parking lot, acted within the scope of his employment when he "declared his status as law enforcement" then open fired on individuals in the parking area. <u>Reason</u> and <u>Bradley</u> suggest that erratic shootings by off-duty police officers are "not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business." <u>Rizzo</u>, 969 F. Supp. 2d at 1191 (quoting <u>Lisa M.</u>, 12 Cal. 4th at 302).[5]

The City finally argues that Mr. Sanchez's actions after he shot the French family are irrelevant to the inquiry. (Rule 50b Mot. Reply at 3.) The City offers no authority in support of this assertion.[6] Even if the Court assumed this position to be true, however, the evidence discussed above substantially supports a jury finding that Mr. Sanchez acted in the course and scope of his employment <u>during</u> the shooting. Therefore, this argument fails.

---

[4] As Plaintiffs note, the City's citations to cases about the "coming and going rule" are inapposite.

[5] The City further asserts that because the shooting occurred "hours away" from the City's jurisdiction, it was not a risk inherent to LAPD's enterprise. (Rule 50b Mot. at 7–8.) <u>Reason</u> rejected this same argument, finding there was no "binding or persuasive authority which states that police officers … outside their jurisdiction are per se unable to act within the scope of their employment." <u>Reason</u>, 2021 WL 2268892, at *6.

[6] Courts, at times, seem to consider may consider an officer's actions after his or her use of force in the scope of employment analysis. <u>See</u> <u>Reason</u>, 2021 WL 2268892, at *5 (noting that after officer open-fired on decedent, he "showed his badge to deter witnesses from attending to [decedent]" and "identif[ied] himself" as an officer when calling for police backup); <u>Jasso v. County of Los Angeles</u>, 2015 WL 13916216, at *14 (C.D. Cal. Oct. 13, 2015) (finding probative defendant's use of his "badge to allegedly deter witnesses from intervening" after he assaulted an individual).

---

Case 8:22-cv-00131-SPG-KES    Document 177-55    Filed 06/03/26    Page 11 of 31
Page ID #:3125
Case 5:20-cv-00416-JGB-SP    Document 165    Filed 05/10/22    Page 10 of 30    Page ID #:3544

In sum, the City fails to meet its burden of showing that only one reasonable conclusion exists. Because the Court concludes that substantial evidence supports the jury's verdict that Mr. Sanchez acted within the scope of his employment, judgment as a matter of law is unwarranted on Plaintiffs' vicarious liability claim.

## 2. Color of State Law under 42 U.S.C. § 1983

The City also challenges the jury's verdict finding that Mr. Sanchez acted "under color of state law during the incident" for Plaintiffs' Fourth Amendment excessive force claim under 42 U.S.C. § 1983. (Special Verdict at 3.)

To prevail on their Section 1983 claim, Plaintiffs must have shown that Mr. Sanchez acted under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). "[G]enerally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." Id. at 50. However, an officer acts as a private citizen if he or she does not act under color of state law. Van Ort v. Estate of Stanewich, 92 F.3d 831, 835 (9th Cir. 1996). For off-duty officers, the Ninth Circuit has outlined "three critical requirements" to determine whether they acted under color of state law: (1) "the defendant's action must have been performed while the officer is acting, purporting, or pretending to act in the performance of his or her official duties"; (2) "the officer's pretense of acting in the performance of his duties must have had the purpose and effect of influencing the behavior of others"; and (3) "the challenged conduct must be related in some meaningful way either to the officer's governmental status or to the performance of his duties." Anderson v. Warner, 451 F.3d 1063, 1068–69 (9th Cir. 2006) (internal citations omitted).

As with its vicarious liability arguments, the City recycles many of the same authority and arguments the Court rejected in the MSJ Order. To warrant judgment as a matter of law, however, the City must show that the evidence at trial gives rise to only one reasonable jury conclusion: that Mr. Sanchez did not act under color of state law when he shot the French family. Viewing all evidence in the light most favorable to Plaintiffs, the Court finds that the City fails to meet this burden because there was substantial evidence for the jury to conclude that Mr. Sanchez acted under color of state law.

First, the jury heard testimony that tended to show that Mr. Sanchez acted or pretended to act as a peace officer. As discussed above, Paola French, who was located nearest to Mr. Sanchez, testified that she heard him say he was a police officer during the shooting. (10-20-21 RT 94:7-95:15.) It is well-established that officers who identify themselves as law enforcement act or pretend to act in the performance of their official duties. See Anderson, 451 F.3d at 1069 (plaintiff testified that he "heard [the officer] tell witnesses he was a cop"); c.f. Hyun Ju Park v. City & Cnty. of Honolulu, 952 F.3d 1136, 1140 (9th Cir. 2020) (officers "never identified themselves as officers, displayed their badges, or 'specifically associated' their actions with their law enforcement duties"); Huffman v. County of Los Angeles, 147 F.3d 1054, 1058 (9th Cir. 1998) (officer "never identified himself as a sheriff's deputy"); Van Ort v. Estate of Stanewich,

Case 8:22-cv-00131-SPG-KES  Document 177-55  Filed 06/03/26  Page 12 of 31
Page ID #:3126
Case 5:20-cv-00416-JGB-SP  Document 165  Filed 05/10/22  Page 11 of 30  Page ID #:3545

92 F.3d 831, 838 (9th Cir. 1996) (officer "conceal[ed] his identity," "did not display a badge to plaintiffs and denied being a police officer"). The City acknowledges, and this Court has already stated, that cases in which the officer "never identified himself" are readily distinguishable. (Rule 50b Mot. at 10–11 (citing Huffman, 147 F.3d at 1058); MSJ Order at 12–13.)

The City's attempt to diminish the significance of Mr. Sanchez's self-identifying statement fails. (Rule 50b Mot. at 11 (citing Cook v. Morrow, 2007 WL 3022607, at *6 (N.D. Cal. Oct. 12, 2007)).) This is not a case where the jury heard just "one comment" without additional "affirmative representations" that Mr. Sanchez was performing official duties. Cook, 2007 WL 3022607, at *6. Witnesses and officers at the scene testified that after the shooting, Mr. Sanchez again verbally identified himself as an off-duty officer and showed his LAPD identification card. (Id. 65:22-66:1, 76:6-24; 10-21-21 RT 128:7-15, 129:1-12, 142:5-10.) Accordingly, there was sufficient evidence to demonstrate the first requirement under Anderson.

Second, the record supports the conclusion that Mr. Sanchez's actions had the purpose and effect of influencing the behavior of others. Again, Mr. Sanchez identified himself as an LAPD officer on scene. While the City argues that this act could further no purpose, a jury could find that Mr. Sanchez announced himself to reassure witnesses and officers that he was not the perpetrator of a crime.[7] Moreover, witness testimony showed that his statements achieved this intended effect. One witness, Omar Barraza, testified that once Mr. Sanchez said he was an off-duty officer and "provid[ed] his ID and badge," he felt that it was not only safe to approach Mr. Sanchez, but also "necessary to believe" Mr. Sanchez's words "[b]ecause he [was] a member of law enforcement." (10-20-21 RT 66:9-15, 69:23-71:5.) Mr. Barraza further testified that he told Mr. Sanchez to "make his weapon safe and holster his weapon" as "the scene did not appear to be a danger anymore." (Id. 68:14-69:3.) A jury could infer that Mr. Barraza, who had served in the Air Force and worked for California's correctional system, could have disarmed Mr. Sanchez

---

[7] The City makes many broad assertions of law—some of which are incorrect—yet includes few citations to the actual record. For example, the City limits its discussion of the evidence to Mr. Sanchez's identification of himself before he began to shoot, then asserts that "[i]t is unclear … how Sanchez could have intended [his comment] to influence the conduct of people whom he then summarily shot." (Rule 50b Mot. at 11.) The City misunderstands the law. In Anderson, the Court found that plaintiff's observations of the officer's actions after plaintiff "regained consciousness" and the assault had ended were significant to the color of state law analysis. Anderson, 451 F.3d at 1066, 1069. Accordingly, the Court's review of the record is not limited to Mr. Sanchez's statements before he fired his gun.

The City also argues that the only difference between a police officer who uses deadly force with a gun under peace officer authority and a private citizen who does the same is an officer's ability to detain and arrest an individual. (Rule 50b Mot. at 10; Rule 50b Mot. Reply at 4–5.) The City stretches the imagination with this incredulous claim. Perhaps the City forgets that private citizens do not ordinarily say that they are a police officer then show law enforcement identification—unless they are officers. See Anderson, 451 F.3d at 1069 (finding that "a janitor employed by the Sheriff's Office" who says, "I am a cop, stand back," is "not invoking his governmental status—for the simple reason that he is not, in fact, a 'cop'") (emphasis omitted).

Case 8:22-cv-00131-SPG-KES   Document 177-55   Filed 06/03/26   Page 13 of 31
Page ID #:3127
Case 5:20-cv-00416-JGB-SP   Document 165   Filed 05/10/22   Page 12 of 30   Page ID #:3546

if necessary—but simply asked Mr. Sanchez to holster the gun because he had learned that Mr. Sanchez was a police officer.  (Id. 64:1-10.)  Corona Police Department Officer Steven Hungerford, who responded to the shooting, similarly testified that he did not handcuff Mr. Sanchez due, in part, to Mr. Sanchez's statement that he was an off-duty LAPD officer.  (10-21-21 RT 128:7-131:8.)  Taken together, a jury could reasonably infer that Mr. Sanchez identified himself with the purpose and effect of receiving this more deferential treatment.

Finally, the same evidence that supports the first two Anderson requirements sufficiently demonstrates that Mr. Sanchez's conduct meaningfully related to his governmental status or the performance of his duties.  As the Court previously stated, this third requirement means that Mr. Sanchez "invoked his actual status."  (MSJ Order at 13 (quoting Anderson, 451 F.3d at 1069).)  The jury heard testimony that Mr. Sanchez said he was a police officer during the shooting, told Mr. Barraza and Mr. Hungerford that he was an off-duty officer, and showed his LAPD identification card to Mr. Barraza and Mr. Hungerford.  (10-20-21 RT 94:7-95:15, 65:22-66:23, 128:7-16.)  A jury could reasonably conclude that at each of these moments Mr. Sanchez invoked his status as a police officer.

Accordingly, the Court concludes that substantial evidence supports the jury's verdict that Mr. Sanchez acted under color of state law when he shot the French family then told witnesses and responding officers that he was an off-duty officer.  "[M]isuse of power, possessed by virtue of state law and possibly only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of state law.'"  Dang Vang v. Vang Xiong X. Toyed, 994 F.2d 476, 479 (9th Cir. 1991) (quoting Lugar v. Edmonson Oil Co., 457 U.S. 922, 929 (1982)).

Because the City fails to show that the evidence permits only one conclusion on either Plaintiffs' vicarious liability claim or Section 1983 claim, the Court DENIES the Rule 50b Motion for judgment as a matter of law.

## C.  Defendant's Alternative Rule 59 Motion

The City alternatively moves for a new trial on the grounds that: (1) the jury instruction defining course and scope of employment for vicarious liability under California law was erroneous; (2) the failure to bifurcate trial into damages and liability phases resulted in undue prejudice to the City; (3) the special verdict form failed to specifically allocate damages for the state law claims and the Section 1983 claim; (4) the Court erroneously admitted evidence of Mr. Sanchez's subjective beliefs; (5) the Court should have submitted the City's proposed special interrogatories to the jury; and (6) the Court failed to instruct the jury to find intent under the Bane Act.  (Rule 50b Mot. at 12–19.)  The Court considers each argument in turn.

//
//
//
//
//

Case 8:22-cv-00131-SPG-KES    Document 177-55    Filed 06/03/26    Page 14 of 31
Page ID #:3128
Case 5:20-cv-00416-JGB-SP    Document 165    Filed 05/10/22    Page 13 of 30    Page ID #:3547

### 1. Jury Instructions for "Scope of Employment"

First, the City argues that the Court's jury instructions defining "scope of employment" for Plaintiffs' vicarious liability claims were erroneous. The City asserts that the Court should have used California Civil Jury Instructions ("CACI") No. 3721, instead of CACI No. 3720, and should have included the City's proposed instruction that the jury should not consider Mr. Sanchez's subjective beliefs. The City raised these objections before and during trial. (Dkt. No. 97 at 41; Dkt. No. 110 at 2; 10-26-21 RT 582:20-584:23.)

"Jury instructions must fairly and adequately cover the issues presented, must correctly state the law, and must not be misleading." Hung Lam v. City of San Jose, 869 F.3d 1077, 1085 (9th Cir. 2017) (quoting Hunter v. County of Sacramento, 652 F.3d 1225, 1232 (9th Cir. 2011)). The district court holds "substantial latitude in tailoring jury instructions." Mockler v. Multnomah County, 140 F.3d 808, 812 (9th Cir. 1998).

The Court rejects the City's assertion that CACI No. 3721 is the proper "scope of employment" instruction for police officers. CACI No. 3721 provides model jury instructions for determining scope of employment with respect to "Peace Officer's Misuse of Authority." (See CACI No. 3721.) However, as the Court previously noted, CACI No. 3721 applies to "on-duty" officers. (Id. § 3721(a) ("The conduct occurs while the peace officer is on duty as a peace officer…."); 10-26-21 RT 583:23-584:10.) During trial, the Court overruled the City's proposal to use CACI No. 3721 because the City failed to address whether CACI No. 3721 applied to the actions of off-duty officers, like Mr. Sanchez. Its only suggestion then was to simply delete any references to "on duty" from the instruction, including required elements. (10-26-21 RT 583:2-6.) The Court was not obligated to instruct the jury using CACI No. 3721 based on this faulty reasoning. In the instant motion, the City again fails to cite any authority for its position that CACI No. 3721 covers off-duty officers. Accordingly, the Court finds that it did not err by declining to follow CACI No. 3721.

Moreover, the Court's given instruction is an accurate statement of the law. Jury Instruction No. 21 was based on CACI No. 3720, the model instruction for "scope of employment." (See CACI No. 3720.) Relying on CACI No. 3720, as well as CACI No. 3722 ("Scope of Employment – Unauthorized Acts"), Jury Instruction No. 21 stated the following:

> With respect to Paola French and Russell French's state law claims only, in order to obtain a verdict against the City of Los Angeles, they must prove that Salvador Sanchez was acting within the scope of his employment as a police officer for the City of Los Angeles when he fired the shots at Plaintiffs and Decedent.
>
> Salvador Sanchez's acts were within the scope of his employment with the City of Los Angeles Police Department if:
>
> (a) They are reasonably related to the kinds of tasks that Salvador Sanchez was employed to perform; or

Case 8:22-cv-00131-SPG-KES   Document 177-55   Filed 06/03/26   Page 15 of 31
Page ID #:3129
Case 5:20-cv-00416-JGB-SP   Document 165   Filed 05/10/22   Page 14 of 30   Page ID #:3548

(b) They are reasonably foreseeable in light of the Los Angeles Police Department's business or Salvador Sanchez's job as a police officer.

The liability of the City of Los Angeles extends beyond its actual or possible control of Salvador Sanchez to include risks inherent in or created by the enterprise.  Salvador Sanchez need not have been engaged in an act directly benefiting the City of Los Angeles.

(Jury Instruction ¶ 21; see also CACI No. 3722.)  This instruction is consistent with established California precedent.  See Lisa M., 12 Cal. 4th at 298–99 (finding tort arises from employment when the risk of tortious injury is "typical of or broadly incidental" to the employer's enterprise or the tort is, "in a general way, foreseeable from the employee's duties"); Farmers Ins. Grp., 11 Cal. 4th at 1006 (noting that off-duty employees act within the scope of employment when their "tortious actions are engendered by events or conditions relating to the employment"); Carr v. Wm. C. Crowell Co., 28 Cal. 2d 652, 655–56 (1946) (holding that "[t]he employer's responsibility for the tortious conduct of his employee 'extends far beyond his actual or possible control" and involve risks of injury "inherent in the working environment").

The City argues that an instruction based on CACI No. 3720 was too "general" and failed to adequately instruct jurors on the scope of employment for off-duty officers.  (Rule 50b Mot. at 13.)  Yet, as just discussed, courts apply the same, foundational test reflected in CACI No. 3720 to determine whether any officer acts within the scope of his or her employment, rather than CACI No. 3721's formulation.  See Farmers Ins. Grp., 11 Cal. 4th at 1007 (finding that a deputy sheriff who sexually harassed his colleagues did not act within the scope of his employment because his actions "were motivated for strictly personal reasons unrelated to" his duties as a deputy sheriff"); Mary M., 54 Cal. 3d at 214 (reiterating the same test, without alteration, to determine whether a sergeant acted within the scope of his employment); Inouye, 30 Cal. App. 4th at 281–82 (stating that "[a]n employer's liability extends to torts of an employee committed within the scope of his employment" and holding that the County of Los Angeles could be held vicariously liable for the tortious conduct of an off-duty officer).  In addition, Jury Instruction No. 21 is specifically tailored to LAPD's "business" as a law enforcement agency and Mr. Sanchez's "job as a police officer."  (See Jury Instruction No. 21.)

For the same reason, the City's claim that "reasonably related" and "reasonably foreseeable" are "legally erroneous and very vague" fails.  (Rule 50b Mot. at 14; Rule 50b Mot. Reply at 7.)  Jury Instruction No. 21 reflects the law.  The City's contentions do not.[8]  Further, a

---

[8] For example, the City asserts that "California courts have been clear that 'reasonably foreseeable is not the standard in determining whether an off-duty police officer was acting within the course and scope of employment," citing Bussard v. Minimed, Inc., 105 Cal. App. 4th 798, 805 (2003).  (Rule 50b Mot. Reply at 7 (emphasis in original).)  In fact, Bussard states that in going-and-coming cases, "case law applies a foreseeability test."  Bussard, 105 Cal. App. 4th at 804.  It is unclear how Bussard supports the City's seemingly incorrect statement of law.

Case 8:22-cv-00131-SPG-KES   Document 177-55   Filed 06/03/26   Page 16 of 31
Page ID #:3130
Case 5:20-cv-00416-JGB-SP   Document 165   Filed 05/10/22   Page 15 of 30   Page ID #:3549

plain reading of Jury Instruction No. 21 shows that it does not, as the City asserts, allow a finding of acting within the scope of employment solely on the basis of Mr. Sanchez's employment as a police officer.  (Rule 50b Mot. at 13.)

The City finally argues that the Court erred by excluding its proposed instruction concerning Mr. Sanchez's subjective beliefs.  (Rule 50b Mot. at 14.)  The proposed instruction stated that "Mr. Sanchez's subjective beliefs should not be considered in determining whether he was acting within the course and scope of his employment with the City of Los Angeles" and that the jury "should consider the totality of Mr. Sanchez's actions at the time of the incident." (See Dkt. No. 110.)  However, an "employee's motive is [not] irrelevant" to the scope of employment analysis.  Lisa M., 12 Cal. 4th at 298.  Mr. Sanchez's belief that he acted within the scope of his employment tended to show whether he acted only in his personal interest or if his conduct, "even if misguided, was intended to serve the employer in some way."  Lisa M., 12 Cal. 4th at 298.  Therefore, the Court's exclusion of the City's proposed instruction was proper.

Accordingly, the Court concludes that Jury Instruction No. 21 fairly and adequately instructed the jury on the scope of employment elements, correctly stated the law, and was not misleading.  The Court DENIES the Rule 50b Motion for a new trial on this basis.

### 2.  Bifurcation

The City next argues that the Court erred by not bifurcating liability from damages at trial.  (Rule 50b Mot. at 15–16.)  The City asserts that evidence of Plaintiffs' "severe and traumatic damages" and "the amount of their alleged economic losses" was unduly prejudicial and irrelevant to whether Mr. Sanchez's use of deadly force was excessive and whether the City was vicariously liable.  (Id. at 15.)

As an initial matter, the City never formally moved for bifurcation before or during trial. Instead, the City submitted a one-sentence request to bifurcate—devoid of any arguments—in its proposed pretrial conference order.[9]  (Dkt. No. 90-1 at 25–26.)  While this request preserved the argument, the City, as the moving party, still held the "burden of proving that the bifurcation will promote judicial economy and avoid inconvenience or prejudice to the parties."  Spectra-Physics

---

The City also contends without support that the jury should have found that Mr. Sanchez's actions were "meaningfully related" to "the LAPD's business of providing police services in the City of Los Angeles."  (Rule 50b Mot. Reply at 7.)  But there is no "meaningfully related" test for vicarious liability.  Instead, this test pertains to the color of state law analysis under Section 1983.  Anderson, 451 F.3d at 1069 (holding that "the challenged conduct must be related in some meaningful way either to the officer's governmental status or to the performance of his duties").  Nor did the City object at trial to Jury Instruction No. 21's definition of relevant enterprise.  Even if it had, this argument fails: because the scope of employment analysis is a "question of fact," the jury, not the Court, determines the scope of the City's "business."

[9] Indeed, the Court wonders why the City failed to lodge any motions in limine of its own if it believed that Plaintiffs would present prejudicial evidence.

---

Case 8:22-cv-00131-SPG-KES   Document 177-55   Filed 06/03/26   Page 17 of 31
Page ID #:3131
Case 5:20-cv-00416-JGB-SP   Document 165   Filed 05/10/22   Page 16 of 30   Page ID #:3550

Lasers, Inc. v. Uniphase Corp., 144 F.R.D. 99, 101 (N.D. Cal. 1992).  The City utterly failed to meet this burden in the pretrial conference order.

Nor has the City satisfied its burden of proving that a single trial on liability and damages was clearly erroneous.  Federal Rule of Civil Procedure 42(b) ("Rule 42(b)") "confers broad discretion upon the district court to bifurcate a trial."  Hangarter v. Provident Life & Acc. Ins. Co., 373 F.3d 998, 1021 (9th Cir. 2004) (quoting Zivkovic v. S. Cal. Edison Co., 302 F.3d 1080, 1088 (9th Cir. 2002)).  A court may order bifurcation "[f]or convenience, to avoid prejudice, or to expedite and economize."  Fed. R. Civ. P. 42(b).  While Rule 42(b) authorizes courts "to separate trials into liability and damage phases," Estate of Diaz v. City of Anaheim, 840 F.3d 592, 601 (9th Cir. 2016), it "does not require" bifurcation.  Hangarter, 373 F.3d at 1021. Bifurcation "is the exception rather than the rule."  Clark v. I.R.S., 772 F. Supp. 2d 1265, 1269 (D. Haw. 2009) (citing Hangarter, 373 F.3d at 1021).

Here, the City contends that Plaintiffs presented "inflammatory and unduly prejudicial" evidence, but fails to identify any specific item of evidence or testimony or note in the motion the objections it made during trial regarding the allegedly prejudicial evidence.  (Rule 50b Mot. at 15.) The City belatedly attempts to cure this deficiency in its reply by noting that "the medical witnesses, Kevin French, and Emma [sic] French," and "[t]he admitted exhibits concerning damages" should have been considered separately.  (Rule 50b Mot. Reply at 7.)  But the City fails to define who the "medical witnesses" were or specify what exhibits pertained to damages.[10] Even if such a vague assertion were sufficient to warrant a new trial—which it is not—neither the law nor the full record supports the City's position.

First, evidence of "the severity of injuries" is relevant to "evaluating the amount of force used."  Felarca v. Birgeneau, 891 F.3d 809, 817 (9th Cir. 2018) (citing Santos v. Gates, 287 F.3d 846, 855 (9th Cir. 2002)).  Evidence of the French family's injuries was thus relevant to Plaintiffs' excessive force claim.  Second, none of the testimony from any of the six medical professionals, Kevin French, or Ema French was so "inflammatory" as to cause undue prejudice. To be sure, some of the evidence presented was grim.  But that reason alone is not enough to bifurcate a trial, particularly for an excessive force case.  Moreover, whatever prejudicial effect their testimonies could have was limited by the City's opportunity to cross-examine the witnesses and by jury instructions on the elements for each claim.  ("Jury Instructions," Dkt. No. 120.)  See Benson Tower Condo. Owners Ass'n v. Victaulic Co., 105 F. Supp. 3d 1127, 1208 (D.

---

[10] At trial, seventeen witnesses testified, including four doctors and two nurses.  The witnesses in medical professions testified on a variety of topics, however, including "life-care planning," which is not strictly medical.  Elizabeth Holakiewicz, a registered nurse, testified that a life-care plan is "a spreadsheet that itemizes out the items of care" a patient needs, the price of such care, and the frequency that the various components of care are required over the course of a patient's projected life.  (10-22-21 RT 355:18-356:9.)  It is unclear whether Ms. Holakiewicz falls within the City's category of "medical witnesses."  In addition, the parties admitted twenty exhibits during trial.  It is the City's burden, and not that of the Court's, to articulate which exhibits matter on the City's motion.

Case 8:22-cv-00131-SPG-KES    Document 177-55    Filed 06/03/26    Page 18 of 31
Page ID #:3132
Case 5:20-cv-00416-JGB-SP    Document 165    Filed 05/10/22    Page 17 of 30    Page ID #:3551

Or. 2015) (finding no error in declining to bifurcate when defendants "fail[ed] to explain how the Court's jury instructions were insufficient to cure any potential jury confusion"). Finally, nothing in the record supports the conclusion that a separate trial to prove actual damages would have promoted judicial economy and avoided inconvenience.

The City's reliance on Estate of Diaz v. City of Anaheim, 840 F.3d 592 (9th Cir. 2016), is misplaced. There, the district court had granted in part a motion to bifurcate, "severing punitive damages from liability and compensatory damages." Estate of Diaz, 840 F.3d at 597. The court also ruled pretrial that evidence about the decedent's gang membership and drug use could be admitted for the limited purpose of damages. Id. at 598–600. On appeal, the Ninth Circuit held that the district court abused its discretion by admitting evidence that was beyond the scope of its pretrial ruling and irrelevant to any issue—damages or liability. Id. at 601. The Court noted that even "the parties and district court had repeated trouble tracking precisely why this prejudicial evidence was admissible for any purpose." Id. at 602 (emphasis added). In addition, because "gang evidence ha[d] the potential to be particularly prejudicial," the Court found that the district court should have fully bifurcated the liability and damages phases. Id.

Here, evidence and testimony pertaining to the French family's physical and mental damages were relevant to damages and, to a lesser extent, liability. There is no evidence that the jury confused the issues before it because it heard evidence of damages at the same time as that of liability. Nor does the City cite any authority for the proposition that, in excessive force cases, "evidence of severe and traumatic damages" is categorically unduly prejudicial.[11] (Rule 50b Mot. at 15; Rule 50b Mot. Reply at 7.) Therefore, Estate of Diaz is clearly distinguishable.

Accordingly, the Court DENIES the Rule 50b Motion on the basis of bifurcation.

### 3. Special Verdict Form

The City argues, as it did at trial, that the Court erred by rejecting its proposed special verdict form that separated damages for violations of federal and state law.[12] (Rule 50b Mot. at 16–17.) The special verdict form used did not require the jury to specifically allocate damages for Plaintiffs' Section 1983 claim and for the state law claims. (Special Verdict at 5–7.) The City avers that the state law claims may give rise to post-trial, indemnity claims, but the Special

---

[11] Indeed, such a position would be untenable. As Plaintiffs argue, excessive force cases resulting in death or serious injury would be unable to proceed in a single trial. (Rule 50b Mot. Opp'n at 19.)

[12] To the extent the City challenges the absence of a jury instruction that advised the jury to "separate the amount of the damages between the federal claims and the state law claims on the verdict form," the objection is untimely. (Rule 50b Mot. at 16.) The City withdrew this objection at trial and did not object to Jury Instruction Nos. 24 and 25.[12] (10-26-21 RT 585:14-587:15.) For Jury Instruction No. 25, the Court adopted the City's proposed revision to it. (10-26-21 RT 587:1-16.)

Case 8:22-cv-00131-SPG-KES    Document 177-55    Filed 06/03/26    Page 19 of 31
Page ID #:3133
Case 5:20-cv-00416-JGB-SP    Document 165    Filed 05/10/22    Page 18 of 30    Page ID #:3552

Verdict prevents it from discerning the exact amount at issue.  (Rule 50b Mot. at 17.)
Accordingly, the City seeks a new trial on damages.

The district court holds "complete discretion" over the use of a special or general
verdict, including "the form of the verdict."  Mangold v. Cal. Pub. Utilities Comm'n, 67 F.3d
1470, 1476 (9th Cir. 1995).  The Court need only ensure that "the questions are adequate to
obtain a jury determination of all the factual issues essential to judgment."  Saman v. Robbins,
173 F.3d 1150, 1155 (9th Cir. 1999).  That is why "it is preferable not to combine theories [of
liability]" on a verdict form, Mangold, 67 F.3d at 1476, but not necessarily for damages that have
become "a postverdict legal issue for the court."  Duran v. Town of Cicero, 653 F.3d 632, 640
(7th Cir. 2011).[13]

Based on the above principles, the Court finds that its use of the special verdict form was
not clearly erroneous.  First, indemnification was not an issue before the jury, as the City had not
asserted indemnification as a counterclaim or affirmative defense.  ("City Answer," Dkt. No. 47;
City's Proposed Pretrial Conference Order," Dkt. No. 90-1 at 16; 10-26-21 RT 570:17-24.)  If the
City had done so, a jury would require a special verdict form that specifically apportions damages
for the state law claims and the Section 1983 claim to determine liability.  See, e.g., Magnum
Foods, Inc. v. Continental Cas. Co., 36 F.3d 1491, 1498–99 (10th Cir. 1994) (holding that in an
insurance action "when grounds of liability are asserted" by an insured against the insurer, the
insurer holds a "duty not to prejudice the insured's rights by failing to request special
interrogatories or a special verdict in order to clarify coverage of damages").  However, because
the City did not seek indemnification in the instant litigation, damages are no longer a liability
issue, but "a postverdict legal issue for the court."  Duran, 653 F.3d at 640.

Second, because "[d]amages are not assessed 'by defendant' or 'by claim' but 'for' an
injury," a verdict form need not allocate damages between the separate claims when a plaintiff
suffered "a single, indivisible injury" from "a continuous course of action."  Archibald v.
County of San Bernardino, 2018 WL 6017032, at *9 (C.D. Cal. Oct. 2, 2018) (citing Duran, 653
F.3d at 640); c.f. Thomas v. Cannon, 289 F. Supp. 3d 1182, 1199 (W.D. Wash. 2018) (denying
plaintiff's Rule 50 challenge regarding a verdict form that "listed each claim brought by that
Plaintiff and a line for the jury to assign damages for that claim," where the plaintiff had asserted
divisible injuries arising from multiple federal and state law claims).  This is because "the jury's
task is to award a sum of money to compensate the plaintiff for that injury, not to enter a damages
award against each defendant who is or will be liable on the judgment."  Duran, 653 F.3d at 640
(emphasis in original).

//
//

---

[13] When a plaintiff seeks punitive damages, the Ninth Circuit has expressed that "a
separate verdict for each claim and a separate verdict on punitive damages is strongly preferred."
Cancellier v. Federated Dep't Stores, 672 F.2d 1312, 1317 (9th Cir. 1982).  However, Plaintiffs
did not seek punitive damages here.

Case 8:22-cv-00131-SPG-KES    Document 177-55    Filed 06/03/26    Page 20 of 31
Page ID #:3134
Case 5:20-cv-00416-JGB-SP    Document 165    Filed 05/10/22    Page 19 of 30    Page ID #:3553

Archibald addressed the exact issue the City raises. There, parents of an individual killed by a deputy sheriff brought excessive force and denial of medical care claims under Section 1983 and battery, negligence, and Bane Act claims under state law against the deputy and county. Archibald, 2018 WL 6017032, at *1. The jury returned a verdict for the plaintiffs on all claims and awarded $7 million in pre-death pain and suffering damages for the decedent and $6.5 million and $2 million damages to the parents, respectively. Id. The defendants "complain[ed] that the Special Verdict Form for damages does not allocate damages between the state law negligence claim and the § 1983 claims, or between damages awarded" against the sheriff and the County. Id. at *9. The Archibald court disagreed, finding that "it would have made no sense to ask the jury to apportion [the] damages" because the deputy's "conduct resulting in [the decedent's] injury and death was a continuous course of action resulting in a single indivisible injury." Id. Moreover, the county's liability "was not a fact issue for the jury," as vicarious liability for the state law claims had been established and there was no Monell claim. Id. The court further noted that "asking the jury to award damages per claim and per defendant for an indivisible injury can result in reversible error because it arguably invites the jury to award multiple recoveries for a single injury." Id.

Like in Archibald and as the Court ruled at trial, Plaintiffs suffered a single, indivisible injury from Mr. Sanchez's conduct: the same facts presented to the jury supported a finding of damages under either the state law claims or Section 1983 claim. (10-27-21 RT 617:19-22.) Accordingly, the special verdict form adequately allowed the jury to determine damages on the relevant injury. Moreover, the jury found that Mr. Sanchez had acted in the course and scope of his employment, which established the City's vicarious liability for the state law claims. (Special Verdict at 3.) The Court dismissed Plaintiffs' Monell claims at summary judgment, so the City's liability was no longer a fact issue for the jury. The jury had no obligation to separately determine the City's and Mr. Sanchez's respective shares of the judgment. Indeed, a special verdict form that required specific damages allocations for the state law and Section 1983 claims carried the risk of greater jury confusion and double recovery. Accordingly, the Court concludes that the special verdict form does not warrant a new trial.

### 4. Admission of Evidence

The City next argues that the Court erred when it admitted evidence of Mr. Sanchez's subjective beliefs about his compliance with LAPD training and policies, but excluded rebuttal evidence of the City's finding that Mr. Sanchez's actions were "out of policy." (Rule 50b Mot. at 17–18.) Though the City fails to specifically identify the Court's allegedly objectionable rulings, it appears to challenge the Court's orders: (1) granting Plaintiffs' motion in limine to exclude ex post facto determinations by the Los Angeles Police Commission, the City, and LAPD that Mr. Sanchez's actions were "out of policy," which the City had opposed (MIL Order at 5); and (2) admitting testimony from Lieutenant David Smith of LAPD's Force Investigation Decision about Mr. Sanchez's statements in his employee's report, to which the City specifically objected. (10-26-21 RT 538:23-539:7.)

//

Case 8:22-cv-00131-SPG-KES   Document 177-55   Filed 06/03/26   Page 21 of 31
Page ID #:3135
Case 5:20-cv-00416-JGB-SP   Document 165   Filed 05/10/22   Page 20 of 30   Page ID #:3554

The "harmless error" standard governs whether a court's admission or exclusion of evidence warrants a new trial.  Fed. R. Civ. P. 61.  "[T]he court must disregard all errors and defects that do not affect any party's substantial rights."  Id.; Haddad v. Lockheed Cal. Corp., 720 F.2d 1454, 1457 (9th Cir. 1983).

The Court initially notes that the City never sought to exclude evidence of Mr. Sanchez's belief that he acted as an off-duty officer through a motion in limine.  Nor did the City object at trial to the admission of Mr. Sanchez's videotaped deposition, in which he testified to the contents of his employee report, even though it knew the jury would hear this segment.  (10-22-21 RT 406:23-410:8.)  Further, the City itself introduced Mr. Sanchez's employee report into evidence.  In light of these actions, the Court finds the City's current objection unpersuasive.

Furthermore, the Court finds that its rulings were neither erroneous nor affected the City's substantial rights under the "harmless error" standard.  First, evidence of Mr. Sanchez's subjective beliefs was relevant to the vicarious liability analysis for Plaintiffs' state law claims.  As discussed above regarding the jury instructions, Mr. Sanchez's motives are relevant to whether he acted in the course and scope of his employment as a police officer.  Lisa M., 12 Cal. 4th at 298.  His statements in the employee report that he acted pursuant to his LAPD training and job tended to show that he did not act solely to serve his "personal interest," but "intended to serve the employer in some way."  Id.  The probative value of this evidence was also high given that Mr. Sanchez did not testify at trial.

Second, the admission of this evidence did not unduly prejudice the City.  Because the City introduced Mr. Sanchez's employee report into evidence during its examination of Mr. Smith, Plaintiffs were entitled to cross-examine Mr. Smith about the employee report.  In addition, as noted above, before the Court admitted the objected to witness testimony, the jury had watched Mr. Sanchez's videotaped deposition, in which he testified to the same statements in his employee report.  It was not more prejudicial for the jury to hear the same testimony from the City's own witness than to hear Mr. Sanchez testify about the contents of the report.  Moreover, even before this evidence came in, the record was replete with evidence from which a jury could determine that Mr. Sanchez had acted in the course and scope of his employment and under color of state law.  As discussed at length above, the jury heard many witnesses testify that Mr. Sanchez had identified himself as an officer multiple times on the scene verbally and by showing his LAPD identification card.  Given this testimonial evidence, it is unlikely that the jury afforded much weight to Mr. Sanchez's statements in his employee report.

Nor did the Court's exclusion of the "out of policy" findings make Mr. Smith's testimony more prejudicial to the City.  The City chose to introduce Mr. Sanchez's employee report—knowing its contents, without seeking any exclusions or limitations, and knowing it could not rely on LAPD's "out of policy" finding to rebut the contents of the report.  The City cannot now argue that its own misstep requires reversal of the MIL Order.  Moreover, the Court maintains, as it did before trial, that the ex post facto determinations by LAPD and the City would have been unfairly prejudicial to Plaintiffs.  As the Court explained at the motion in limine hearing, whether Mr. Sanchez acted outside of LAPD policy was an administrative standard,

Case 8:22-cv-00131-SPG-KES   Document 177-55   Filed 06/03/26   Page 22 of 31
Page ID #:3136
Case 5:20-cv-00416-JGB-SP   Document 165   Filed 05/10/22   Page 21 of 30   Page ID #:3555

whereas whether he acted under the color of state law and in the course and scope of his employment were constitutional and state law standards. A jury, however, might confuse the relevant standards at issue and give undue weight to "official" decisions and confuse the relevant standards at issue. (MIL Order at 5.) Even with the admission of evidence of Mr. Sanchez's beliefs, the undue prejudice of the LAPD findings outweigh their probative value.

Accordingly, the Court concludes that neither the admission of Mr. Sanchez's statements in his employee report nor the exclusion of LAPD's findings that he acted "out of policy" substantially affected the City's rights. Moreover, because any purported error was harmless, a new trial is not warranted on this basis.

### 5. City's Special Interrogatories

The City further argues that the Court erred when it denied the City's proposed special interrogatories. (Rule 50b Mot. at 18–19.) The Court disagrees.

Federal Rule of Civil Procedure 49(b)(1) allows a court to submit interrogatories "on one or more issues of fact" to the jury with a general verdict form. Fed. R. Civ. P. 49(b)(1). "The decision whether to submit special interrogatories to the jury is a matter committed to the discretion of the district court." Hung Lam, 869 F.3d at 1086 (internal citations and quotation marks omitted).

Here, the proposed special interrogatories included a broad range of questions, such as whether Mr. Sanchez was off-duty during the incident,[14] whether he had probable cause to believe that Plaintiffs committed a public offense, and whether he acted with malice, fraud, or corruption. (Dkt. No. 98.) Contrary to the City's assertion, these interrogatories would not have allowed the Court to determine whether as a matter of law Mr. Sanchez acted under color of law or in the scope of his employment. (Rule 50b Mot. at 18.) The questions focus on specific facts that support the City's theory of the case. However, they omit other disputed facts relevant to the inquiry. Further, the City concedes that some of the questions were directed toward post-trial indemnification issues that were not before the Court. (Rule 50b Mot. Opp'n at 22.) The City's belief that such interrogatories would assist judicial efficiency is insufficient reason to submit unnecessary and potentially confusing questions to the jury. Accordingly, the Court's decision to refuse the City's proposed special interrogatories was not a miscarriage of justice.

### 6. Bane Act

The City finally argues that the Court erred by finding that the intent element of Plaintiffs' Bane Act claim had been met. (Rule 50b Mot. at 19.) It contends that insufficient evidence supported a determination that Mr. Sanchez intended to shoot each Plaintiff and Kenneth and that the jury should have received instructions to find specific intent. (Id.)

---

[14] Whether Mr. Sanchez was off-duty during the incident was not in dispute at trial, as the Court had found it was undisputed that he was off-duty in the MSJ Order. (MSJ Order at n.4.)

Case 8:22-cv-00131-SPG-KES    Document 177-55    Filed 06/03/26    Page 23 of 31
Page ID #:3137
Case 5:20-cv-00416-JGB-SP    Document 165    Filed 05/10/22    Page 22 of 30    Page ID #:3556

Neither the record nor the law supports the City's position. After the parties' presentations, the Court found based on overwhelming evidence that Mr. Sanchez used excessive force against Plaintiffs and Kenneth. It is established law that "the elements of [an] excessive force claim under [California Civil Code] § 52.1 are the same as under § 1983." Cameron v. Craig, 713 F.3d 1012, 1022 (9th Cir. 2013). Because "[e]xcessive force … is by its very nature egregious," a finding of excessive force establishes the necessary intent to interfere with or attempt to interfere with Plaintiffs' rights under the Bane Act. Orr v. Brame, 727 F. App'x 265, 268–69 (9th Cir. 2018) (agreeing with majority of California federal district courts that had held that a plaintiff need not prove "coercion independent from the coercion inherent in the seizure or use of force" in Fourth Amendment excessive force cases). Therefore, the Court was not required to find separate intent or instruct the jury to determine intent under the Bane Act.

In sum, the Court concludes that none of the issues raised by the City support a new trial. Accordingly, the Court DENIES the Rule 50b Motion.

### III. PLAINTIFFS' MOTION FOR ATTORNEY'S FEES

Plaintiffs move for attorneys' fees as the prevailing party under 42 U.S.C. § 1988 and California law. (See Fee Mot.) The Court considers whether the requested fees are reasonable.

### A. Legal Standard

In general, courts apply the "American Rule," where "each party in a lawsuit ordinarily shall bear its own attorney′s fees unless there is express statutory authorization to the contrary." Hensley v. Eckerhart, 461 U.S. 424, 429 (1983). Under 42 U.S.C. § 1988 ("Section 1988"), a court may, in its discretion, award reasonable attorneys′ fees in a suit seeking to vindicate rights under 42 U.S.C. § 1983. Braunstein v. Ariz. Dep′t of Transp., 683 F.3d 1177, 1187 (9th Cir. 2012); 42 U.S.C. § 1988(b). Plaintiffs who prevail on a Bane Act claim are also entitled to attorneys' fees. Chaudhry v. City of Los Angeles, 751 F.3d 1096, 1112 (9th Cir. 2014) (citing Cal. Civ. Code § 52.1(h)).

The customary method of determining the reasonableness of attorneys' fees under either 42 U.S.C. § 1988 or the Bane Act is the lodestar method. Ballen v. City of Redmond, 466 F.3d 736, 746 (9th Cir. 2006) (Section 1988); Chaudhry, 751 F.3d 1096 (Bane Act). Under this method, a court multiplies "the time spent" with the "reasonable hourly compensation of each attorney involved in the presentation of the case." Hensley, 461 U.S. at 433. This lodestar figure is "presumptively reasonable." Id. "The district court may then adjust [the lodestar] upward or downward based on a variety of factors." Moreno v. City of Sacramento, 534 F.3d 1106, 1111 (9th Cir. 2008). These factors include:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5)

Case 8:22-cv-00131-SPG-KES    Document 177-55    Filed 06/03/26    Page 24 of 31
Page ID #:3138
Case 5:20-cv-00416-JGB-SP    Document 165    Filed 05/10/22    Page 23 of 30    Page ID #:3557

the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases."

Id. Because "California law allows for a multiplier of the lodestar to compensate for the risk of contingent representation," the Ninth Circuit allows a "a plaintiff [who] succeeds on both federal and state claims" to seek "the state-law multiplier." Chaudhry, 751 F.3d at 1112 (citing Ketchum v. Moses, 24 Cal. 4th 1122, 1133 (2001), and Mangold v. Cal. Pub. Utilities Comm'n, 67 F.3d 1470, 1478–79 (9th Cir. 1995)). The fee applicant holds the "burden of showing that the claimed rate and number of hours are reasonable." Blum v. Stenson, 465 U.S. 886, 897 (1984).

## B. Lodestar Analysis

Plaintiffs' counsel requests $1,928,781.00[15] in attorneys' fees for 1,801.05 hours worked. (See Fee Mot. Reply at 11–12.) The requested fee amount includes time associated with drafting the Fee Motion Reply and represents the lodestar figure multiplied by a 1.5 enhancement, as detailed below:

| Attorney / Biller | | Hours | Hourly Rate | Lodestar |
|---|---|---|---|---|
| Dale K. Galipo | Attorney | 547.3 | $1,100.00 | $602,030.00 |
| John Fattahi | Attorney | 37.4 | $785.00 | $29,359.00 |
| Renee V. Masongsong | Attorney | 462.8 | $600.00 | $277,680.00[16] |
| Eric Valenzuela | Attorney | 459 | $700.00 | $321,300.00 |
| Alejandro Monguia | Legal Assistant | 11.4 | $200.00 | $2,280.00 |
| Karen Slyapich | Legal Assistant | 176.9 | $200.00 | $35,380.00 |
| Santiago Laurel | Legal Assistant | 37.75 | $200.00 | $7,550.00 |
| Marielle Sider | Legal Intern | 68.5 | $150.00 | $10,275.00 |
| **SUBTOTAL** | | **1,801.05** | | **$1,285,854.00** |
| 1.5 Multiplier | | | | $642,927.00 |
| **TOTAL** | | | | **$1,928,781.00** |

The City argues that the requested fee award is unreasonable and challenges the hourly rates, number of hours, and lodestar multiplier as excessive. (See Fee Mot. Opp'n.)

---

[15] Plaintiffs' counsel requests $1,929,231.00 in the Fee Motion Reply. (Fee Mot. Reply at 11–12.) However, this amount includes errors in calculation that the Court notes below. As such, the Court construes the requested fee amount as $1,928,781.00.

[16] Plaintiffs' counsel calculates Ms. Masongsong's lodestar as $277,980.00. (Fee Mot. Reply at 12.) However, the Court's own calculation of 462.8 hours at $600 per hour yields $277,680.00.

Case 8:22-cv-00131-SPG-KES   Document 177-55   Filed 06/03/26   Page 25 of 31
Page ID #:3139
Case 5:20-cv-00416-JGB-SP   Document 165   Filed 05/10/22   Page 24 of 30   Page ID #:3558

### 1. Hourly Rate

Reasonable fees under Section 1988 are calculated according to the prevailing market rates in the relevant legal community.  Gates v. Deukmejian, 987 F.2d 1392, 1405 (9th Cir. 1992).  Because "the relevant community is the forum in which the district court sits," Prison Legal News v. Schwarzenegger, 608 F.3d 446, 454 (9th Cir. 2010), the prevailing rates in the Central District of California control here.

#### a.  Dale Galipo

Plaintiffs' counsel requests an hourly rate of $1,100 per hour for Mr. Galipo.  (Fee Mot. at 22.)  The City does not contest this rate.  (Fee Mot. Opp'n at 3.)  As both parties recognize, this Court has previously found Mr. Galipo's requested rate reasonable.  See Donastorg v. City of Ontario, 2021 WL 6103545, at *8 (C.D. Cal. Sept. 23, 2021).  The Court finds no reason to reach a different conclusion here.  Mr. Galipo's requested rate of $1,100 per hour is reasonable.

#### b.  John Fattahi

Plaintiffs' counsel requests an hourly rate of $785 per hour for Mr. Fattahi.  (Fee Mot. at 22.)  The City argues that Mr. Fattahi's rate should be reduced either to $725 per hour, the rate awarded to him by a federal court in 2020, or $740 per hour, which the City states is the upper boundary for rates for litigation associates in the Los Angeles area.  (Fee Mot. Opp'n at 2–3.)

Mr. Fattahi is a solo practitioner who has practiced for fifteen years and manages his own firm, the Law Office of John Fattahi, since 2011.  (Fattahi Decl. ¶¶ 4, 6; Galipo Decl. ¶ 26.)  He has litigated plaintiff's civil rights cases for thirteen years.  (Fattahi Decl. ¶¶ 4–6.)  In 2020, a different court in this District approved Mr. Fattahi's hourly rate of $725 per hour in another excessive force case against the City.  (Id. ¶ 3; id., Ex. 2 (attaching "Order Granting Plaintiff L.D.'s Supplemental Fee Motion" in L.D., et al. v. City of Los Angeles, No. 2:16-cv-04626-PSG-SK (C.D. Cal. June 30, 2020)).)

Based on Mr. Fattahi's experience, the Court finds that hourly rates for partners provide a more appropriate measure for Mr. Fattahi's compensation than rates for associates.  The Court, on its own motion, takes judicial notice of the 2021 Real Rate Report: The Industry's Leading Analysis of Law Firm Rates, Trends, and Practices ("2021 Real Rate Report").  While Plaintiffs are correct that the Real Rate Report does not address civil rights practice, this Court has found that the report provides a helpful reference point and consults it here.  According to the 2021 Real Rate Report, the median rate for litigation partners in Los Angeles was $715 per hour, while the mean rate was $759 per hour.  (2021 Real Rate Report at 17.)  Litigation partners in the third quartile earned $1,042 per hour.  (Id.)  Mr. Fattahi's requested rate of $785 per hour is within the range of what other litigation partners earn.  Moreover, this rate reflects a moderate increase from Mr. Fattahi's approved rate in 2020 to account for inflation.  The Court, therefore, concludes that Mr. Fattahi's requested rate of $785 per hour is reasonable.

Case 8:22-cv-00131-SPG-KES   Document 177-55   Filed 06/03/26   Page 26 of 31
Page ID #:3140
Case 5:20-cv-00416-JGB-SP   Document 165   Filed 05/10/22   Page 25 of 30   Page ID #:3559

### c. Renee Masongsong

Plaintiffs' counsel requests an hourly rate of $600 per hour for Ms. Masongsong. (Fee Mot. at 22.) The City does not contest this rate. (Fee Mot. Opp'n at 3.) Ms. Masongsong is a senior associate attorney at the Law Offices of Dale K. Galipo, who has practiced for ten years. (Masongsong Decl. ¶¶ 5, 8.) She has worked almost exclusively on civil rights litigation for the past nine years. (Id. ¶¶ 8–11.) For the instant action, she was one of two associates who handled the day-to-day case management, and she worked on law and motion and discovery issues. (Id. ¶ 12; Valenzuela Decl. ¶ 17.) Mr. Galipo declares that Ms. Masongsong was influential in obtaining the successful verdict here. (Galipo Decl. ¶¶ 24–25.) In April 2020, another court in this district approved Ms. Masongsong's hourly rate of $550 per hour in an officer-involved, excessive force case against the City. (Masongsong Decl. ¶ 14; "Frias Fee Order," Id., Ex. 2 (attaching Juan Frias v. City of Los Angeles, et al., No. 2:16-cv-04626-PSG-SK, ECF No. 199).) Under these facts, the Court finds that Ms. Masongsong's requested rate of $600 per hour is reasonable.

### d. Eric Valenzuela

Plaintiffs' counsel requests a rate of $700 per hour for Mr. Valenzuela. (Fee Mot. at 22.) The City argues that his rate should be reduced to $600 per hour, like that of Ms. Masongsong. (Fee Mot. Opp'n at 3.) Plaintiffs' counsel responds that Mr. Valenzuela's higher rate is justified because he second chaired the trial and examined witnesses. (Fee Mot. Reply at 1.)

It is true that Mr. Valenzuela and Ms. Masongsong share similarities in practice experience. Like Ms. Masongsong, Mr. Valenzuela is a senior associate attorney at the Law Offices of Dale K. Galipo. (Valenzuela Decl. ¶ 5.) He has practiced for nine years and litigates police excessive force cases almost exclusively. (Id. ¶¶ 5–9.) In this case, he also handled the day-to-day case management with Ms. Masongsong, drafted motions, and propounded discovery. (Id. ¶¶ 16–17.) However, as Plaintiffs' counsel notes, Mr. Valenzuela conducted examinations of four witnesses at trial. (Id. ¶ 10; Galipo Decl. ¶ 22; Fee Mot. Reply at 1.) Accordingly, a higher hourly rate for Mr. Valenzuela is reasonable.

### e. Alejandro Monguia, Karen Slyapich, and Santiago Laurel

Plaintiffs' counsel requests a rate of $200 per hour for Mr. Monguia, Ms. Slyapich, and Mr. Laurel, all legal assistants. (Fee Mot. at 22.) The City does not contest this rate. (Fee Mot. Opp'n at 3.) This Court has previously approved this same rate for paralegals. See Donastorg, 2021 WL 6103545, at *9; see also Di Gioia v. Ford Motor Co., 2020 WL 1955311, at *5 (C.D. Cal. Apr. 1, 2020). Mr. Galipo attests to the significant contributions Ms. Slyapich and Mr. Monguia made in the instant case. (Galipo Decl. ¶¶ 27–29.) Accordingly, the Court finds that $200 per hour is a reasonable rate for Mr. Monguia, Ms. Slyapich, and Mr. Laurel.

//
//
//

Case 8:22-cv-00131-SPG-KES    Document 177-55    Filed 06/03/26    Page 27 of 31
Page ID #:3141
Case 5:20-cv-00416-JGB-SP   Document 165   Filed 05/10/22   Page 26 of 30   Page ID #:3560

### f.  Marielle Sider

Plaintiffs' counsel requests an hourly rate of $150 per hour for Ms. Sider, a legal extern at the Law Offices of Dale K. Galipo.  (Fee Mot. at 22; Sider Decl. ¶ 1.)  The City argues that Ms. Sider's rate should be reduced to $125 per hour, the rate this Court approved for her last year. (Fee Mot. Opp'n at 3 (citing Donastorg, 2021 WL 6103545, at *9).)

The City correctly notes that the Court previously found that an hourly rate of $125 per hour was reasonable for Ms. Sider.  Donastorg, 2021 WL 6103545, at *9.  The Court based this determination on the evidence submitted to support Ms. Sider's rate as a legal intern and a 2020 case finding $125 per hour reasonable for law student interns.  Id.  Since then, however, Ms. Sider declares that she has been hired as a permanent employee with the title "legal extern." (Sider Decl. ¶ 3.)  Moreover, a modest increase of her rate to account for inflation is appropriate. Accordingly, the Court finds that Ms. Sider's requested rate of $150 per hour is reasonable.

In sum, the Court concludes that Plaintiffs' counsel's requested rates are reasonable.

### 2.  Hours Billed

Plaintiffs' counsel requests attorneys' fees for a total of 1,801.05 hours worked on this case.  (Fee Mot. at 22; Fee Mot. Reply at 12.)  The City argues that these hours should be reduced because they include (1) unbillable clerical tasks, (2) impermissible block billing and travel time, and (3) duplicative billing.  (Fee Mot. Opp'n at 3–10.)

### a.  Clerical Tasks

The City challenges certain hours billed by Mr. Galipo, Ms. Masongsong, Mr. Laurel, Ms. Slyapich, and Mr. Monguia as clerical tasks that should be excluded.  (Fee Mot. Opp'n at 6– 8.)  This Court has previously found that "copying and scanning documents and calendaring dates" are "purely clerical tasks," whereas "prepar[ing ] a letter to opposing counsel requesting production of documents," "prepar[ing ] deposition notices," "reviewing and organizing case files and creating and updating pleading clips" are not purely clerical tasks.  Smith v. County of Riverside, 2019 WL 4187381, at *8 (C.D. Cal. June 17, 2019).

The City first contends that Mr. Galipo's travel time for hearings and work on the federal complaints were unwarranted.  (Fee Mot. Opp'n at 6.)  The Court disagrees.  The Court expects counsel for parties to appear in person unless they request a virtual appearance.  Moreover, all "[r]easonable travel time by the attorney is compensable, at full rates."  Rodriguez v. County of Los Angeles, 96 F. Supp. 3d 1012, 1025 (C.D. Cal. 2014).  The City also offers no evidence in support of its contention that the hours billed for Mr. Galipo's review of the federal complaints were inflated simply because Plaintiffs had already filed a complaint in state court.  Accordingly, changes to Mr. Galipo's hours are unnecessary on this basis.

//

---

**CIVIL MINUTES—GENERAL**                      Initials of Deputy Clerk TC_

Case 8:22-cv-00131-SPG-KES    Document 177-55    Filed 06/03/26    Page 28 of 31
Page ID #:3142
Case 5:20-cv-00416-JGB-SP    Document 165    Filed 05/10/22    Page 27 of 30    Page ID #:3561

The City also challenges various time entries by Ms. Masongsong, such as reviewing and organizing case files, undertaking "paralegal type" tasks, and packing boxes. (Fee Mot. Opp'n at 6–7.) However, reviewing and organizing case files are not purely clerical tasks. Moreover, as Plaintiffs argue, it was reasonable for Ms. Masongsong to directly prepare certain trial exhibits, communicate with the mortuary about expenses, coordinate witnesses and experts, and calculate medical billing because the tasks were essential to proving Plaintiffs' claims and theory of the case. (Fee Mot. Reply at 6.) By contrast, the Court agrees with the City that time spent to pack boxes after trial is not billable. (Masongsong Decl., Ex. 1 at 15 (10/27/2021).) Though Ms. Masongsong's timesheet does not state how long this task took, the Court determines that a reduction of 0.5 hours is appropriate.

The City next asserts that Mr. Laurel, Ms. Slyapich, and Mr. Monguia have multiple time entries for purely clerical tasks. The Court agrees. These tasks include: printing and copying files (Mr. Laurel), as well as downloading and saving court filings and calendaring deadlines (Ms. Slyapich and Mr. Monguia). Accordingly, the Court reduces Mr. Laurel's hours by 5.5 hours, Ms. Slyapich's hours by 5.2 hours, and Mr. Monguia's hours by 0.5 hours.

### b. Block Billed Time

The City argues that Mr. Galipo, Ms. Masongsong, Mr. Valenzuela, and Mr. Laurel have impermissibly block-billed time. (Fee Mot. Opp'n at 8.) In general, courts look unfavorably on block billing in timesheets because it "does not allow the Court to scrutinize the amount of time spent performing each task." Rahman v. FCA US LLC, -- F. Supp. 3d --, 2022 WL 1013433, at *4 (C.D. Cal. Mar. 29, 2022) (internal citations omitted). A court may "reduc[e] or eliminat[e] certain claimed hours" based on such billing practices, but it may not "deny[] all fees." Mendez v. County of San Bernardino, 540 F.3d 1109, 1129 (9th Cir. 2008), overruled on other grounds by Arizona v. ASARCO LLC, 773 F.3d 1050 (9th Cir. 2014). However, a court need not reduce hours for block-billing if it can determine the reasonableness of the hours spent on each task. See Donastorg, 2021 WL 6103545, at 13–14.

The City challenges Mr. Galipo's time entries for "trial preparation" as overbroad. (Fee Mot. Opp'n at 8.) For each of these entries, however, he explains that "[t]rial preparation includes: discussions and meetings with co-counsel and staff, meeting with and preparing witnesses, reviewing statements, investigation reports, medical records, photos, audio, video, depositions, expert reports, pleadings, pre-trial documents including jury instructions, verdict forms, exhibits, client preparation, preparation for voir dire, opening statement, direct and cross examination, [and] closing and rebuttal arguments." (Galipo Decl., Ex. 1 at 6.) Further, his trial and trial preparation time totals 206 hours over 19 days, which is reasonable. See Donastorg, 2021 WL 6103545, at *14 (finding reasonable Mr. Galipo's 224.8 hours billed for "trial and trial preparation" over 17 days). Thus, the Court will not reduce Mr. Galipo's hours on this basis.[17]

//

---

[17] The City again asserts that travel time is not recoverable, but this is incorrect.

Case 8:22-cv-00131-SPG-KES   Document 177-55   Filed 06/03/26   Page 29 of 31
Page ID #:3143
Case 5:20-cv-00416-JGB-SP   Document 165   Filed 05/10/22   Page 28 of 30   Page ID #:3562

The City also contests certain time entries by Ms. Masongsong, Mr. Valenzuela, and Mr. Laurel.  (Fee Mot. Opp'n at 8.)  The Court finds that Ms. Masongsong's hours billed to "other trial participation" are not vague or unreasonable.  See Rodriguez, 96 F. Supp. 3d at 1025 (finding the presence of more than one attorney reasonable where "[a] second attorney may serve as a sounding board or be necessary to assure that valuable testimony … is obtained during the limited time allotted").  However, the Court agrees that some hours entered by Ms. Masongsong, Mr. Valenzuela, and Mr. Laurel are impermissibly block-billed.  (Masongsong Timesheet at 7/20/20, 12/07/20, 12/09/20, and 5/17/21; Valenzuela Timesheet at 9/20/21, 10/01/21, 10/13/21; Laurel Timesheet at 10/01/21.)  Accordingly, the Court reduces these block-billed hours by 10%.[18]  See Banas v. Volcano Corp., 47 F. Supp. 3d 957, 968 (N.D. Cal. 2014) (recognizing "a district court's authority to reduce block-billed hours by 10% to 30%).  Ms. Masongsong's hours are reduced by 0.8 hours, Mr. Valenzuela's hours are reduced by 1.2 hours, and Mr. Laurel's hours are reduced by 0.2 hours.

### c.  Duplicative Billing

The City finally argues that the timesheets of Mr. Galipo, Ms. Masongsong, Mr. Valenzuela, Mr. Fattahi, and Ms. Sider reflect duplicative billing and unnecessary staffing.  (Fee Mot. Opp'n at 9–10.)  "Even duplicative work, however, is not a justification for cutting a fee, unless 'the lawyer does unnecessarily duplicative work."  Mendez, 540 F.3d at 1129 (quoting Moreno v. City of Sacramento, 534 F.3d 1106, 1113 (9th Cir. 2008)) (emphasis in original).

The Court has reviewed the time entries identified by the City and finds that Plaintiffs' counsel sufficiently explains that such hours were not unnecessarily duplicative.  (Fee Mot. Reply at 8–10.)  Therefore, the Court declines to reduce any hours on this basis.

Accordingly, the Court concludes that Plaintiffs' counsel may seek fees for a total of 1,787.15 hours, as detailed below:

| Attorney / Biller | Hours Billed | Revised Hours |
|---|---|---|
| Dale K. Galipo | 547.3 | **547.3** |
| John Fattahi | 37.4 | **37.4** |
| Renee Masongsong | 462.8 | **461.5** |
| Eric Valenzuela | 459 | **457.8** |
| Alejandro Monguia | 11.4 | **10.9** |
| Karen Slyapich | 176.9 | **171.7** |
| Santiago Laurel | 37.75 | **32.05** |
| Marielle Sider | 68.5 | **68.5** |
| **TOTAL** | 1,801.05 | **1,787.15** |

[18] The Court rounds this figure up to the nearest tenth decimal place.

Case 8:22-cv-00131-SPG-KES   Document 177-55   Filed 06/03/26   Page 30 of 31
Page ID #:3144
Case 5:20-cv-00416-JGB-SP   Document 165   Filed 05/10/22   Page 29 of 30   Page ID #:3563

### 3. Multiplier

Based on the Court's reduced hours, Plaintiffs' counsel's lodestar is $1,281,954.00. Plaintiffs' counsel seeks a 1.5 multiplier of the lodestar to bring their total requested fee amount to $1,922,931.00. (Fee Mot. at 17–21.) Though the City argues that a multiplier is unwarranted under federal or state law, this is incorrect. (Fee Mot. Opp'n at 11–15.) As noted above, the Ninth Circuit allows a plaintiff who succeeds on both federal claims and a Bane Act claim to seek "the state-law multiplier." Chaudhry, 751 F.3d at 1112. That is the case here.

To determine whether to apply the state-law multiplier, the Court looks to: "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, [and] (4) the contingent nature of the fee award." Ketchum, 24 Cal. 4th at 1132; see also Frias Fee Order at 9.

Here, the issues in this case were more simplified than in other excessive force cases. The determinative questions were whether Mr. Sanchez acted under color of state law and in the course and scope of his employment during the incident. However, the case presented its own difficulties as Mr. Sanchez was off-duty and outside of Los Angeles County at the time. (Galipo Decl. ¶ 20; Fattahi Decl. ¶ 6.) Since Mr. Sanchez did not testify at trial, Plaintiffs' counsel also had to skillfully piece together evidence from numerous witnesses, experts, and Mr. Sanchez's videotaped deposition to make their case to the jury. (Galipo Decl. ¶ 20.) Mr. Galipo and Mr. Fattahi declare that working on this case precluded other employment opportunities for their respective firms. (Id. ¶ 18; Fattahi Decl. ¶ 6.) Finally, Plaintiffs' counsel litigated the case on a contingency basis without receiving interim payments and incurred over $154,000.00 in costs. (Galipo Decl. ¶ 30; Fattahi Decl. ¶ 6.) Under these facts, the Court finds that the requested multiplier is justified. Accordingly, the Court applies a 1.5 multiplier to the lodestar calculation of $1,281,954.00 for a total award of $1,922,931.00.

In sum, the Court GRANTS IN PART the Fee Motion as follows:

| Attorney / Biller | | Revised Hours | Hourly Rate | Revised Lodestar |
|---|---|---|---|---|
| Dale K. Galipo | Attorney | 547.3 | $1,100.00 | $602,030.00 |
| John Fattahi | Attorney | 37.4 | $785.00 | $29,359.00 |
| Renee v. Masongsong | Attorney | 461.5 | $600.00 | $276,900.00 |
| Eric Valenzuela | Attorney | 457.8 | $700.00 | $320,460.00 |
| Alejandro Monguia | Legal Assistant | 10.9 | $200.00 | $2,180.00 |
| Karen Slyapich | Legal Assistant | 171.7 | $200.00 | $34,340.00 |
| Santiago Laurel | Legal Assistant | 32.05 | $200.00 | $6,410.00 |
| Marielle Sider | Legal Intern | 68.5 | $150.00 | $10,275.00 |
| **SUBTOTAL** | | 1,787.15 | | **$1,281,954.00** |
| 1.5 Multiplier | | | | $640,977 |
| **TOTAL** | | | | **$1,922,931.00** |

Case 8:22-cv-00131-SPG-KES   Document 177-55   Filed 06/03/26   Page 31 of 31
Page ID #:3145
Case 5:20-cv-00416-JGB-SP   Document 165   Filed 05/10/22   Page 30 of 30   Page ID #:3564

## IV.   CONCLUSION

For the above reasons, the Court ORDERS the following:

1.   The Court DENIES the City's Rule 50b Motion;

2.   The Court GRANTS IN PART Plaintiffs' Fee Motion and AWARDS Plaintiffs' counsel $1,922,931.00 in attorneys' fees; and

3.   The May 16, 2022 hearing is VACATED.


**IT IS SO ORDERED.**