LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Renee V. Masongsong, Esq. (SBN 281819)
rvalentine@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA  91367
Tel:    (818) 347-3333
Fax:   (818) 347-4118

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMILY GARCIA and C.G., by and through her guardian ad litem, Rosalia Becerra, individually and as successors-in-interest, <br><br> Plaintiffs, <br><br> vs. <br><br> CITY OF TUSTIN and ESTELA SILVA, <br><br> Defendants. <br><br> *Consolidated with*: <br> WENDY GALICIA RAMIREZ, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> CITY OF TUSTIN and ESTELA SILVA, <br><br> Defendants. | Case No. 8:22-cv-00131-SPG-KES <br><br> *Assigned to*: <br> District Judge Sherilyn Peace Garnett <br> Magistrate Judge Karen E. Scott <br><br> **PLAINTIFFS' JOINT OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW AND NEW TRIAL** <br><br> [*Filed concurrently with the Declaration of Renee V. Masongsong and exhibits thereto*] <br><br> Date:        July 29, 2026 <br> Time:       1:30 p.m. <br> Ctrm:       5C, First Street Courthouse |

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................ 1

II.   DEFENDANTS ARE NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW .............................................................................................. 2

    A. Silva is Not Entitled to Qualified Immunity ..................................... 3

    B. The Jury Reasonably Found Silva Used Excessive Force .......................... 7

    C. Substantial Evidence Supports the Jury's Bane Act Finding ...................... 9

    D. Substantial Evidence Supports the Jury's Battery Finding ........................ 10

    E. Substantial Evidence Supports the Jury's Finding of Negligence and No Comparative Fault ........................................................................... 11

III.  DEFENDANTS ARE NOT ENTITLED TO A NEW TRIAL ........................ 12

    A. The Court's Allocation of Peremptory Challenges Does Not Warrant a New Trial ........................................................................... 13

    B. The Court's Decision Not to Bifurcate Liability from Damages Does Not Warrant a New Trial. ....................................................... 15

    C. The Vicarious Liability Instruction Was Appropriate, and the Damages Are Not Excessive. ................................................................ 16

IV.  CONCLUSION ............................................................................... 21

L.R. 11-6.2. CERTIFICATE OF COMPLIANCE ................................................ 22

PLAINTIFFS' JOINT OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW AND NEW TRIAL

# TABLE OF AUTHORITIES

Cases

*A.D. v. Cal. Highway Patrol*,
   712 F.3d 446 (9th Cir. 2013)................................................................................3

*A.K.H. v. City of Tustin*,
   837 F.3d 1005 (9th Cir. 2016)..............................................................................7

*Avichail v. St. John's Mercy Health*,
   686 F.3d 548 (8th Cir. 2012)..............................................................................16

*Bell v. Williams*,
   108 F. 4th 809 (9th Cir. 2024)......................................................................19, 21

*Clark v. IRS*,
   772 F. Supp. 2d 1265 (D. Haw. 2009) ...............................................................18

*Costa v. Desert Palace, Inc.*,
   299 F.3d 838 (9th Cir. 2002).................................................................................2

*Crawford v. Tribeca Lending Corp.*,
   815 F.3d 121 (2d Cir. 2016) ...............................................................................14

*Estate of Aguirre v. Cnty. of Riverside*,
   131 F.4th 702 (9th Cir. 2025)................................................................................8

*Estate of Aguirre v. Cnty. of Riverside*,
   29 F.4th 624 (9th Cir. 2022)..................................................................................6

*Estate of Lopez v. Gelhaus*,
   871 F.3d 998 (9th Cir. 2017).................................................................................7

*George v. Morris*,
   736 F.3d 829 (9th Cir. 2013)..............................................................................6, 7

*Glenn v. Washington Cnty.*,
   673 F.3d 864 (9th Cir. 2011).................................................................................7

*Goldstein v. Kelleher*,
   728 F.2d 32 (1st Cir. 1984) ...........................................................................16, 17

*Gordon v. Cnty. of Orange*,
   6 F.4th 961 (9th Cir. 2021)....................................................................................7

*Hangartner v. Provident Life and Acc. Ins. Co.*,
   373 F.3d 998 (9th Cir. 2004)...............................................................................17

*Harper v. City of Los Angeles*,
   533 F.3d 1010 (9th Cir. 2008).......................................................................14, 19

*Hayes v. County of San Diego*,
   736 F.3d 1223 (9th Cir. 2013).............................................................................6, 7

*Hughes v. Kisela*,
862 F.3d 775 (9th Cir. 2016)......................................................................7

*Hung Lam v. City of San Jose*,
869 F.3d 1077 (9th Cir. 2017)....................................................................3

*In re Air Crash Disaster*,
86 F.3d 498 (6th Cir. 1996).......................................................................15

*Jimenez v. City of Chicago*,
732 F.3d 710 (7th Cir. 2013).....................................................................17

*Johnson v. Paradise Valley Unified Sch. Dist.*,
251 F.3d 1222 (9th Cir. 2001)....................................................................2

*Josephs v. Pac. Bell*,
443 F.3d 1050 (9th Cir. 2006)....................................................................2

*Landes Const. Co., Inc. v. Royal Bank of Canada*,
833 F.2d 1365 (9th Cir. 1987)..................................................................13

*Longoria v. Pinal County*,
873 F.3d 699 (9th Cir. 2017)......................................................................4

*Meza-Perez v. Sbarro LLC*,
No. 23-15702, 2024 WL 4532903 (9th Cir. Oct. 21, 2024)......................15

*Nehad v. Browder*,
929 F.3d 1125 (9th Cir. 2019)....................................................................6

*Newmaker v. City of Fortuna*,
842 F.3d 1108 (9th Cir. 2016)....................................................................7

*Penny v. Azmy*,
2024 WL 489287 (9th Cir. 2024)...............................................................8

*Reese v. Cnty. of Sacramento*,
888 F.3d 1030 (9th Cir. 2018)..................................................................10

*Reeves v. Sanderson Plumbing Prods., Inc.*,
530 U.S. 133 (2000) ...................................................................................2

*Rivera v. Illinois*,
556 U.S. 148 (2009) .................................................................................16

*Rubalcava v. City of Los Angeles*,
64 F.3d 1323 (9th Cir. 1995).....................................................................14

*S.B. v. County of San Diego*,
864 F.3d 1010 (9th Cir. 2017)....................................................................7

*Soto v. BorgWarner Morse TEC, Inc.*,
239 Cal. App. 4th 165 (2015)...................................................................22

*Swain v. Alabama*,
380 U.S. 202 (1965) .................................................................................16

PLAINTIFFS' JOINT OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW AND NEW TRIAL

*Tortu v. Las Vegas Metro. Police Dep't*,
    556 F.3d 1075 (9th Cir. 2009)..............................................................................3

*United States v. Lindsey*,
    634 F.3d 541 (9th Cir. 2011)..................................................................15, 16

*United States v. Patterson*,
    215 F.3d 776 (7th Cir. 2000)...............................................................................16

*Valenzuela v. City of Anaheim*,
    6 F.4th 1098 (9th Cir. 2021)...............................................................................19

*Wallace v. City of San Diego*,
    479 F.3d 616 (9th Cir. 2007)...............................................................................14

*Wilkinson v. Torres*,
    610 F.3d 546 (9th Cir. 2010)...............................................................................11

*Wright v. City of Los Angeles*,
    219 Cal. App. 3d 318 (1990)...............................................................................19

Statutes

28 U.S.C. § 1870.....................................................................................................15

Other Authorities

Ninth Circuit Model Jury Instruction 9.27 (2025)...................................................8

Rules

Federal Rules of Civil Procedure, Rule 50 ..............................................................3

Federal Rules of Civil Procedure, Rule 61 ......................................................14, 16

PLAINTIFFS' JOINT OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW AND NEW TRIAL

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

This Court should deny Defendants' post-verdict motion in full. This is one of the most egregious police shootings that Plaintiffs' counsel and police practices expert have ever seen in their lengthy careers in this field. Overwhelming evidence supports the jury's conclusion that Garcia posed no immediate threat of death or serious bodily injury at the time of Silva's two shots. Garcia was a homeless man who was asleep in a bush. Silva knew Garcia and knew he was not the blond Caucasian described in the call for service. Silva positioned herself at the opening of the bush, abruptly woke Garcia up, impatiently forced him out of the bush, and then shot him twice while he was under the effects of the Taser and moving away from the Taser. At the time of the shooting, Garcia was holding a bag of recyclables, a water bottle, and a stick that he used to collect recycling. Garcia never swung the stick at anyone, and the stick was never coming down toward anyone from a raised position. Silva failed to give Garcia a verbal warning, and she had reasonable alternatives to shooting, including tactically repositioning as trained, giving Garcia a command to drop the stick, and waiting to determine whether the Taser was effective.

Under these facts, any reasonable jury could find that Silva's use of force was excessive and unreasonable, that Silva acted with a reckless disregard for Garcia's constitutional right to be free from excessive force, and that Garcia was not negligent. The jury likely found Silva's testimony at trial not credible, including her assertion that she fired the second shot to protect Frias and not herself, given that both shots were fired almost simultaneously. Silva is not entitled to qualified immunity; she failed to preserve this defense in her Rule 50(a) motion, and even if she had, existing precedent was sufficiently settled such that shooting under these circumstances violated Garcia's clearly established constitutional right.

None of the grounds Defendants raise warrant a new trial. The allocation of peremptory challenges, to which Defendants failed to object, was neither an abuse of

PLAINTIFFS' JOINT OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW AND NEW TRIAL

discretion nor prejudicial. The separately represented Plaintiffs each used only two of three challenges, while Defendants accepted the panel believing that they were more defense-friendly than the next-up prospective jurors. This Court had discretion to conduct the trial in a single phase, and non-bifurcation of liability from damages was not prejudicial to Defendants. The Court's jury instructions on Bane Act and vicarious liability were appropriately given and are correct statements of the law. Finally, the jury's damages award was supported by the evidence, is not excessive, and is on par with comparable cases.

## II.    DEFENDANTS ARE NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW

A party seeking judgment as a matter of law under Rule 50(b) has a "very high" standard to meet. *Costa v. Desert Palace, Inc.*, 299 F.3d 838, 859 (9th Cir. 2002). A court ruling on a Rule 50(b) motion may not substitute its own view of evidence for that of a jury. *Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1227 (9th Cir. 2001). "[T]he court . . . may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000). Rather, the Court "must view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." *Josephs v. Pac. Bell*, 443 F.3d 1050, 1062 (9th Cir. 2006). "The test applied is whether the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *Id.* "Further, unlike a motion to dismiss or motion for summary judgment, [the court] must defer to the facts as they were reasonably found by the jury[.]" *A.D. v. Cal. Highway Patrol*, 712 F.3d 446, 459 (9th Cir. 2013).

This Court has already correctly denied Defendants' Rule 50(a) motion, and the same result is mandated here. Plaintiffs presented substantial evidence supporting the jury's finding that Silva's use of deadly force violated Garcia's right to be free from excessive and unreasonable force under federal and state law.

-2-                    Case No. 8:22-cv-00131-SPG-KES

PLAINTIFFS' JOINT OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW AND NEW TRIAL

## A. Silva is Not Entitled to Qualified Immunity

Defendants failed to preserve their qualified immunity defense by raising it as a ground under Rule 50(a). [5:RT:119]; *see Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1083 (9th Cir. 2009) (the district court may revisit the "clearly established" analysis only if properly preserved at trial); Fed. R. Civ. P. 50 ("A post-trial motion for judgment can be granted only on grounds advanced in the pre-verdict motion."); *Hung Lam v. City of San Jose*, 869 F.3d 1077, 1088 (9th Cir. 2017).

Even if Defendants had preserved qualified immunity, the dispositive question in this case—whether "any reasonable officer with the same knowledge, circumstances, and facts as Officer Silva would have believed that Luis Garcia posed an immediate threat of serious bodily injury or death"—was genuinely disputed, and the jury expressly answered it in Plaintiffs' favor. [Dkt. 159]. In reversing the prior grant of qualified immunity to Silva at summary judgment, the Ninth Circuit stated, "[w]hether [Ninth Circuit] precedent "clearly established" that using lethal force under these circumstances was unlawful depends on how the jury resolves the disputed issues of material fact. [Masongsong Decl., "Ex. I," p.3 (citing *Longoria v. Pinal County*, 873 F.3d 699, 710–11 (9th Cir. 2017))]. As the Ninth Circuit held, "[i]f a jury concludes that Garcia did not pose an immediate threat of death or serious bodily harm, [which it did here, then] Ninth Circuit precedent has clearly established that using lethal force would be unlawful." *Id*.

It was the province of the jury to decide credibility, weigh the evidence, and draw inferences, including from the videos, in deciding whether Garcia posed an immediate threat of death or serious bodily injury. Silva's qualified-immunity argument usurps the jury's role by resolving disputes in her favor. The jury was entitled to reject Silva's entire testimony, and that of the other officers and Defendants' expert Mr. Handy. By contrast, Plaintiffs' evidence must be accepted as true:

PLAINTIFFS' JOINT OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW AND NEW TRIAL

- The call for service identified the suspect as Caucasian with blond hair. [4(PM):RT:30; 1:RT:203][1]. Silva knew Garcia, and that he was Hispanic with dark hair. [4(PM):RT:30; 5:RT:100; 1:RT:205-06, 209-11].

- During prior contacts with Silva, Garcia was cooperative and never assaultive. [1:RT:219-20, 223-24; 4(PM):RT:33]. Silva never told the other officers that Garcia was violent or problematic in the past. [1:RT:212, 222; 4(PM):RT:33, 42-43; 5:RT:193].

- Garcia was homeless. [4(PM):RT:12; 1:RT:212].

- When Silva contacted Garcia, there was no crime in progress. [2:RT:119; 4(PM):RT:30].

- Garcia was asleep until Silva woke him up. [4(PM):RT:12; 5:RT:172; 1:RT:211-12; 2:RT:19].

- Silva blocked the opening of the bushes and commanded Garcia to exit. [4(PM):RT:12, 31; 1:RT:212, 215; 2:RT:120].

- Garcia said, "Okay. Let me get out." [2:RT:45; 5:RT:88].

- Garcia asked Silva, "Why are you hitting me?" and "Why are you grabbing me?" [2:RT:45].

- Garcia exited the bushes as Silva had commanded. [2:RT:122; 4(PM):RT:12, 14, 19].

- When Garcia exited the bushes, he was tased immediately. [4(PM):RT:13].

- The Taser probes struck Garcia. [4(PM):RT:38].

- When Garcia exited the bushes, he held a bag of recycling in one hand. [1:RT:212, 226; 2:RT:15, 41; 4(PM):RT:14].

- Garcia also held a stick, but not a gun or knife. [2:RT:11, 18, 127].

---

[1] Relevant portions of the trial transcripts ("RT") are filed concurrently herewith.

- Garcia never swung the stick, and the stick never came down toward anyone. [2:RT:29; 4(PM):RT:15; 5:RT:189].
- Silva never commanded Garcia to drop the stick. [1:RT:239; 4(PM):RT:26, 36-37; 5:RT:101].
- Silva did not verbally warn Garcia that she might shoot him. [5:RT:101, 159; 1:RT:239].
- Videos do not show Garcia jabbing the stick toward Silva, and the other officers never saw that. [1:RT:232; 4(PM):RT:35].
- Silva shot twice, almost simultaneously, which indicates she did not assess between shots and disputes her claim that she fired the second shot to protect Frias. [1:RT:247; 2:RT:35; 4(PM):RT:44-45].
- At the time of the shooting, Frias was ten feet away from Garcia. [2:RT:30].
- No other officer, including Frias, pulled out their gun. [2:RT:16; 4(PM):RT:41].
- Silva shot Garcia during the Taser cycle. [1:RT:244; 2:RT:27-28].
- When Silva shot, Garcia was screaming from the Taser and turning away from Silva and the Taser. [5:RT:97; 2:RT:27-28].
- At the time Silva shot, there were two patrol cars parked next to the curb blocking the curb lane, where Silva could have taken cover. [1:RT:238].
- Garcia was outnumbered by the officers four-to-one.

Viewing these facts and all reasonable inferences therefrom in the light most favorable to Plaintiffs, this is one of those rare cases where the constitutional violation was "obvious." *See Estate of Aguirre v. Cnty. of Riverside*, 29 F.4th 624, 629 (9th Cir. 2022) ("*Estate of Aguirre* I") (holding that as of the 2016 shooting, "no 'body of relevant case law' is necessary in an 'obvious case' like this one," where decedent was shot without warning while holding a baseball bat, and there was evidence that

PLAINTIFFS' JOINT OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW AND NEW TRIAL

decedent had turned away from the shooting officer).

Even if this were not an "obvious" case, the law was clearly established that shooting under these circumstances would violate Garcia's constitutional right to be free from excessive force. *See, e.g., Aguirre*, 29 F.4th at 627 (holding that in addition to the constitutional violation being "obvious," *Hayes v. County of San Diego*, 736 F.3d 1223 (9th Cir. 2013), and *George v. Morris*, 736 F.3d 829, 837 (9th Cir. 2013), clearly established the constitutional right); *Nehad v. Browder*, 929 F.3d 1125, 1134 (9th Cir. 2019) (holding that the fact that the subject possesses an object that could be used as a weapon does not decide the reasonableness inquiry); *Estate of Lopez v. Gelhaus*, 871 F.3d 998, 1029–31 (9th Cir. 2017) (denying qualified immunity where the subject held a gun that was pointed down); *S.B. v. County of San Diego*, 864 F.3d 1010, 1014 (9th Cir. 2017) (holding that a jury could find the use of deadly force unreasonable where the decedent suddenly grabbed a knife); *A.K.H. v. City of Tustin*, 837 F.3d 1005, 1013 (9th Cir. 2016); *Hughes v. Kisela*, 862 F.3d 775, 785 (9th Cir. 2016); *Newmaker v. City of Fortuna*, 842 F.3d 1108, 1115 (9th Cir. 2016) (denying qualified immunity where the decedent swung a baton at the officers' head); *Hayes*, 736 F.3d 1223, 1235 (holding that when seen in the light most favorable to the plaintiff, the decedent was complying with the deputy's order "when he raised the knife and posed no clear threat at the time he was shot without warning"); *George*, 736 F.3d 829; *Glenn v. Washington Cnty.*, 673 F.3d 864 (9th Cir. 2011). A decision with identical facts is not required to "clearly establish" a constitutional right. *Gordon v. Cnty. of Orange*, 6 F.4th 961, 969 (9th Cir. 2021) (advising against casting an allegedly violated right too particularly).

Contrary to Defendants' argument, Plaintiffs are not required to find a case where a court decided that the use of force was excessive as a matter of law. [Mot. at p.8]. It is rare for excessive-force plaintiffs to seek judgment as a matter of law that would create such a case. Rather, in determining whether the law was clearly established, the deciding court looks to cases holding that "a reasonable jury could

PLAINTIFFS' JOINT OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW AND NEW TRIAL

find that the force employed was greater than is reasonable under the circumstances." *See Penny v. Azmy*, 2024 WL 489287, at *2 (9th Cir. 2024) (holding that "although at [the time *Vos* was decided] the law was not clearly established," *Vos* clearly established Penny's constitutional right to be free from excessive force under the circumstances of the 2022 shooting).

Even if Silva was "mistaken," as Defendants assert, whether Silva's "mistake was reasonable" was a question of fact that the jury presumably resolved in Plaintiffs' favor. [Mot. at p.8]; *Estate of Aguirre v. Cnty. of Riverside*, 131 F.4th 702, 709–10 (9th Cir. 2025) ("*Estate of Aguirre* II"); Ninth Cir. Model Jury Instruction 9.27 (2025) (listing "whether a reasonable officer would have or should have accurately perceived a mistaken fact" as factor to consider).

Accordingly, this Court should reject Silva's qualified-immunity defense.

**B. The Jury Reasonably Found Silva Used Excessive Force**

Viewing the facts in Plaintiffs' favor, including reasonable inferences, Plaintiffs presented substantial evidence to support the jury's conclusion that Silva used excessive force, and Garcia posed no immediate threat of death or serious bodily injury. In fact, the evidence in this case was so overwhelming in Plaintiffs' favor that the jury returned a verdict in three–four hours,[2] and Plaintiffs' police practices expert, Scott DeFoe, on initial review of the video, formed the opinion that this was one of the worst shootings out of the 450 he has evaluated. [4(PM):RT:13-14; 5:RT:103]. Mr. DeFoe agreed, as Defendants assert, that the best evidence in the case is the video in real time, and the jury repeatedly viewed the videos in real time during the trial. [4(PM):RT:43; Mot. at p.13]. The videos, scene photographs, and testimony of the officers and Mr. DeFoe are more than sufficient evidence supporting the jury's finding

[2] The jury retired to the jury room at 11:54 am and returned a note at 3:52 pm that it reached a verdict. [6:RT:96; 6(PM):RT:5]. The Court must discard Defendants' speculation that the jury's deliberation time and disinterest in debriefing after a six-day trial demonstrate misconduct, particularly where the information that Defendants wanted to obtain would have been inadmissible under Rule 606(b).

that Silva violated Garcia's right to be free from excessive force under the Fourth Amendment. The jury even viewed the physical stick that Garcia had at the time of the shooting, which was held in a raised position in a Court-directed demonstration near the jury. [5:RT:223-24].

As set forth above and in the trial transcripts filed concurrently herewith, Garcia was a homeless man sleeping in the bushes, who was cooperative with Silva in all of their prior contacts and did not meet the description of the suspect. [1:RT:203, 211-12 219-20, 223-24; 4(PM):RT:30]. Silva dictated her proximity to Garcia when she went up to the bushes and abruptly woke him up. [1:RT:212, 215]. Silva escalated the situation by barking at him impatiently and reaching into the bushes to grab him. [1:RT:224; 4(PM):RT:12, 27-28]. Garcia complied with Silva's commands to come out of the bushes and was immediately Tased. [4(PM):RT:12-13]. Silva shot Garcia without warning and without giving him a command to drop the stick, aiming at center mass with the knowledge that it was likely to kill him. [1:RT:239, 245-46]. When Silva fired, Garcia was under the effects of the Taser, screaming, and turning away from the Taser and away from Silva. [1:RT:244; 5:RT:97]. Garcia never swung the stick or brought it down toward anyone. [4(PM):RT:15]. Silva did not assess during her two shots. [4(PM):RT:44-45]. Silva claims that she fired her second shot to protect Frias, not herself. [1:RT:247]. At the time of the second shot, Garcia was ten feet away from Frias, and Frias never took out his gun. [2:RT:16, 30].

The jury reasonably resolved the factors listed in Ninth Circuit Instruction 9.27 in Plaintiffs' favor, including whether Garcia posed an immediate threat of death or serious bodily injury (specifically answered in Plaintiffs' favor by special interrogatory), the extent of Garcia's injury, the severity of the security problem at issue, and whether Silva gave a warning before using deadly force. [Dkt. 155, J.I. 24]. The jury reasonably found that Silva's assertions that Garcia attempted to "jab" her— which the record sharply disputed—were not credible. Even if Garcia had "jabbed" the stick toward Silva before coming out of the bushes—which also was highly

-8-  Case No. 8:22-cv-00131-SPG-KES

disputed—that would not justify Silva's later use of deadly force. [4(PM):RT:35-36]. The jury also reasonably doubted Silva's claim that she fired the second shot to protect Frias, not herself. Silva fired both shots almost simultaneously, and it strains credulity that Silva reasonably believed that Garcia was coming toward her at the time of the first shot but not the second. A careful review of the video shows Garcia starting to turn away from Silva and away from the Taser at the time of the first shot. Further damaging Silva's credibility, she testified that even if she knew nothing about Garcia at the time, including any history of drug use or violence, she still would have shot him. [2:RT:116]. The jury followed the Court's instructions and reasonably concluded that Silva's fear that Garcia "could have" struck someone with the stick was an unreasonable subjective fear that did not justify the use of deadly force. [4(PM):RT:15-16, 46].

### C. Substantial Evidence Supports the Jury's Bane Act Finding

The Ninth Circuit specifically held that "reckless disregard" is sufficient to satisfy the Bane Act's intent requirement—"it is not necessary for the defendants to have been thinking in constitutional or legal terms at the time of the incidents, because a reckless disregard for a person's constitutional rights is evidence of a specific intent to deprive that person of those rights." *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1045 (9th Cir. 2018) (quoting *United States v. Reese*, 2 F.3d 870, 885 (9th Cir. 1993)). The above-recited evidence—including shooting a homeless person who posed no immediate threat of death or serious bodily injury without giving him a warning or opportunity to comply—support a reasonable inference that, as the jury found, Silva recklessly disregarded Garcia's constitutional right to be free from excessive force.

Defendants' misplaced reference to *Wilkinson v. Torres*, 610 F.3d 546 (9th Cir. 2010), a Fourteenth Amendment case, diverges from the applicable Bane Act standard. [Mot. at p.15]. Defendants never argued the irrelevant "purpose to harm" standard under Rule 50(a) as a basis for judgment on the Bane Act claim, waiving it as a Rule 50(b) ground, and their motion cites no authority for the proposition that a

PLAINTIFFS' JOINT OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW AND NEW TRIAL

certain amount of time is required to form a reckless disregard for a person's constitutional rights.

To the extent Defendants' Motion purports to challenge the Court's Bane Act instruction, that would be a new trial issue, not a Rule 50 issue. In any event, the instruction would not entitle Defendants to a new trial. The Court's modification of CACI 3066 (Bane Act) to clarify that "intent" can be "demonstrated by a reckless disregard for Mr. Garcia's constitutional right to be free from excessive force" was a correct statement of the law. Defendants did not object at the Rule 51(b)(2) charging conference to the inclusion of reckless disregard. [5:RT:19–20]. Indeed, at Defendants' request, the Court included a definition of "reckless disregard," [Dkt. 155, J.I. 26], that Defendants agreed was "fine." [5:RT:20, 127]. Further, trial courts enjoy "substantial latitude in tailoring the instructions." *White v. Ford Motor Co.*, 312 F.3d 998, 1012 (9th Cir. 2002).

**D. Substantial Evidence Supports the Jury's Battery Finding**

Viewing the facts set forth above in the light most favorable to Plaintiffs, as this Court must do in deciding a motion for judgment as a matter of law, the jury reasonably concluded that an "objectively reasonable officer" in Silva's position would not have believed that Garcia posed an "imminent threat of death or serious bodily injury" based on the evidence at trial.

Importantly, under CACI 1305B,[3] Silva had "a duty to use reasonable tactical repositioning or other deescalation tactics" [Dkt. 155, J.I. 27], but she failed to do so. [4(PM):RT:27-28; 1:RT:237]. Silva chose to position herself at the opening of the

---

[3] Defendants' argument that Plaintiffs' counsel somehow misled the jury by reading the Court's jury instruction, which was a correct statement of the law, is another misdirected new trial argument not a valid ground for Rule 50(b) relief, and is unpersuasive. [Mot. at 15:22]. The jury was correctly instructed, pursuant to CACI 1305B, that "[a] threat of death or serious bodily injury is "imminent" when … a reasonable officer … would believe [the] person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury." [Dkt. 155, J.I. 27].

bushes and even started to enter the bushes before her partner officer stopped her. [1:RT:224; 4(PM):RT:12, 27-28]. Rather than creating distance and time to de-escalate the situation while giving commands, Silva remained at the opening and shouted impatiently at Garcia, whom she had just woken up. [4(PM):RT:27-28]. Silva could have easily taken a few steps back or to her right rather than shooting, particularly considering that she repeatedly asked Garcia to come out of the bushes, heard him say, "let me come out," but still left little space for him to do so. [1:RT:215; 2:RT:45; 5:RT:88]. The jury viewed photographs and videos of the bushes behind Silva, which revealed that the bushes were not as tall as Silva made them out to be in her statement and showed spaces in the bushes between the sidewalk and the curb. [1:RT:227-28]. Two patrol cars were parked at the curb behind the bushes, blocking the curb lane from traffic, and there was a block wall to Silva's right that could have provided cover. [1:RT:227-28, 238].

There is no mystery to solve concerning the verdict. The jury reasonably disagreed with Defendants' paid expert, Mr. Handy, and the other officers on scene, who prepared for trial with Silva's attorney. The conclusions of the California DOJ and Attorney General cannot support Rule 50(b) judgment as a matter of law—they are not in evidence, because Defendants agreed they were inadmissible. [Dkt. 129]. Moreover, those agencies were deciding whether criminal charges were appropriate under a different standard of review.

**E. Substantial Evidence Supports the Jury's Finding of Negligence and No Comparative Fault**

The foregoing evidence also supports the jury's verdict on Plaintiffs' negligence claim. CACI 441 (to which Defendants made no objection) correctly instructed the jury that "[i]n determining whether Officer Silva's use of deadly force was necessary in defense of human life, you must consider Officer Silva's tactical conduct and decisions before using deadly force against Luis Garcia." [Dkt. 155, J.I. 28]. Mr. DeFoe's expert testimony was evidence of Silva's violations of police

-11-                    Case No. 8:22-cv-00131-SPG-KES

training and tactics, including Silva's failure to give Garcia a command to drop the stick and a reasonable opportunity to comply with that command, failure to give Garcia a warning, Silva attempting to go into the bush, Silva positioning herself at the opening of the bush with her handgun out, and Silva's failure to reposition when there was no crime in progress and no rush. [Mot. at p.16; 4(PM):RT:26-28].

Defendants did not preserve their Rule 50(b) motion for judgment as a matter of law on comparative fault by making a Rule 50(a) motion on that ground. Even if they had, they bore the burden of proving their affirmative defense of comparative fault, including proving that any negligence by Garcia was a "substantial factor in causing his death." [Dkt. 155, J.I. 29]. Plaintiffs' counsel correctly argued in closing argument that based on the evidence and the law, Garcia was not negligent. [6:RT:35-36]. The jury reasonably found that Garcia was not negligent for coming out of the bushes after he was repeatedly asked to do so, and coming out of the bushes with a bag of recycling and the stick that he used to collect the recyclables was consistent with a homeless person gathering his only belongings. Garcia did not try to swing the stick at any of the officers, the stick was never coming down toward anyone from a raised position, and he was being tased at the time of the shooting.

## III.   DEFENDANTS ARE NOT ENTITLED TO A NEW TRIAL

A verdict should only be set aside where, after giving full respect to the jury's findings, the judge "is left with the definite and firm conviction that a mistake has been committed by the jury." *Landes Const. Co., Inc. v. Royal Bank of Canada*, 833 F.2d 1365, 1371–72 (9th Cir. 1987). Courts "should not be quick to revisit a jury's credibility determinations, and must proceed with caution and great restraint when asked to do so." *Crawford v. Tribeca Lending Corp.*, 815 F.3d 121, 128 (2d Cir. 2016). A court may not grant a new trial simply because it would have arrived at a different verdict. *Wallace v. City of San Diego*, 479 F.3d 616, 630 (9th Cir. 2007).

"Unless justice requires otherwise, no error in admitting or excluding evidence—or any other error by the court or a party—is ground for granting a new

trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order." Fed. R. Civ. P. 61. "[T]he court must disregard all errors and defects that do not affect any party's substantial rights." *Id.* "A new trial is only warranted when an erroneous evidentiary ruling 'substantially prejudiced' a party." *Rubalcava v. City of Los Angeles*, 64 F.3d 1323, 1328 (9th Cir. 1995) (internal citations omitted). Prejudice is found only if the error "more probably than not…tainted the verdict." *Harper v. City of Los Angeles*, 533 F.3d 1010, 1030 (9th Cir. 2008).

None of the grounds Defendants raise in their Motion warrant granting a new trial.

## A. The Court's Allocation of Peremptory Challenges Does Not Warrant a New Trial

Defendants did not properly object to the Court's allocation of peremptory challenges. [1:RT:126–28]. Thus, they are limited to plain-error review. *United States v. Lindsey*, 634 F.3d 541, 550 (9th Cir. 2011). Yet Defendants do not recite the elements of plain error, let alone attempt to satisfy them, waiving that exceedingly narrow review. Even if Defendants had argued plain error, the Court's allocation of peremptory challenges was not even simple error. The default rule is that each party is entitled to three peremptory challenges. 28 U.S.C. § 1870. "Several defendants or several plaintiffs may be considered as a single party for the purposes of making challenges, or the court may allow additional peremptory challenges and permit them to be exercised separately or jointly." *Id.* "A trial court has broad discretion under 28 U.S.C. § 1870 to allocate peremptory challenges . . . ." *In re Air Crash Disaster*, 86 F.3d 498, 518 (6th Cir. 1996).

In *Meza-Perez v. Sbarro LLC*, No. 23-15702, 2024 WL 4532903, at *5 (9th Cir. Oct. 21, 2024), the Ninth Circuit held in an unpublished disposition that the district court did not abuse its discretion by treating defendants, who were represented by different counsel and did not have identical interests, as different parties and granting

-13-    Case No. 8:22-cv-00131-SPG-KES

them three peremptory challenges each. As the Court noted here, this trial involved two separate groups of plaintiffs with two separate complaints that had been consolidated for trial. [1:RT 127]. The Garcia and Galicia Plaintiffs were represented by different counsel and, as Defendants themselves argue, had individualized claims for wrongful-death damages that were potentially disparate or even adverse to each other. [Mot. at 24:2-21]. Defendants' cited authority only emphasizes that the Court acted well within its discretion here. *See Goldstein v. Kelleher*, 728 F.2d 32, 36–37 (1st Cir. 1984) (court should not treat as a single party two defendants who were represented by single attorney and had indistinguishable interests). If one party has "even colorably different interests" from a co-party, then courts have unquestioned discretion to not treat them as a single party. *Id.* at 37 (finding error, but affirming because losing party did not make a minimal showing of any prejudice).

Even assuming *arguendo* that the Court's allocation was plain error, Defendants also cannot show that it prejudiced them. *See* Fed. R. Civ. P. 61. Defendants argue that reversal is automatic, erroneously relying on stale dicta from *Swain v. Alabama*, 380 U.S. 202 (1965). [Mot. at 20:3-5]. But it is now well established that a mistaken allocation of peremptory challenges is not reversible error without a showing of prejudice, even in a criminal case. *Rivera v. Illinois*, 556 U.S. 148, 160–61 (2009); *United States v. Lindsey*, 634 F.3d 541, 550 (9th Cir. 2011); *Avichail v. St. John's Mercy Health*, 686 F.3d 548, 553 (8th Cir. 2012).

"Doubtless it will often be impossible to show that a change in the number of peremptory challenges affected the outcome of a trial—but inability to trace adverse effects to a mistake does not justify reversing a [judgment]; it shows instead that there is no warrant for disturbing the judgment." *United States v. Patterson*, 215 F.3d 776, 782 (7th Cir. 2000). Defendants concede that neither they nor Plaintiffs exercised all their peremptory challenges. *Goldstein*, 728 F.2d at 37 ("It is well established in the case law that one who does not exercise all his peremptory challenges cannot assign as error the court's refusal to allow a greater number."). Indeed, Defendants maintain

-14-                                                    Case No. 8:22-cv-00131-SPG-KES

that they accepted the jury panel as constituted because "the next several prospective jurors were clearly more favorable to the Plaintiffs." [Mot. at 19:20-21].

Defendants' failure to show prejudice is further doomed by their failure to argue for a particular allocation of challenges. Relatedly, they do not contend that a specific juror was favorable or unfavorable to any party, or would or would not have been stricken under any hypothetical allocation. *See Goldstein*, 728 F.2d at 38 ("We think that before a reversal is granted, the complaining party should be able to point to some convincing indication in the record that if a further peremptory challenge had been allowed, he meant to challenge one or more jurors."). There also is no suggestion that a specific juror was biased—indeed, Defendants admit that "none of the jurors qualified to be excused for cause." Mot. at 20:24; *see Jimenez v. City of Chicago*, 732 F.3d 710, 716 (7th Cir. 2013) (no reversible error "[w]ithout a showing that a biased juror was seated"). For the independent reason that Defendants have not shown prejudice, the Court's allocation of peremptory challenges does not warrant a second bite at the apple.

## B. The Court's Decision Not to Bifurcate Liability from Damages Does Not Warrant a New Trial.

Defendants' request for a new trial based on non-bifurcation, devoid of any citations to supporting caselaw, lacks merit. The Court acted well within its "broad discretion" under Rule 42(b) in denying Defendants' motion in limine to conduct separate trials on liability and damages. *See Hangartner v. Provident Life and Acc. Ins. Co.*, 373 F.3d 998, 1021 (9th Cir. 2004). Bifurcation "is the exception rather than the rule of normal trial procedure." *Clark v. IRS*, 772 F. Supp. 2d 1265, 1269 (D. Haw. 2009). The moving party has the burden of proving that bifurcation will promote judicial economy or avoid inconvenience or prejudice to the parties. *Id.* Defendants' motion in limine, filed after the deadline, said nothing about survival damages or the video evidence of Garcia's pain and suffering. It argued only that Plaintiffs' testimony about their wrongful-death damages would be lengthy and prejudicially emotional.

-15-

Case No. 8:22-cv-00131-SPG-KES

[Dkt. 111 at 3–5]. Plaintiffs responded that the wrongful-death evidence would be brief, and bifurcation would be inefficient, inconvenient, and prejudice Plaintiffs by creating an unacceptable risk that the jury would find no liability merely to avoid having to stay for a second phase of trial. The Court agreed, finding it inefficient and unnecessary for each party to present two opening statements and two closing arguments, and for witnesses to take the stand twice, where there is substantial overlap between liability and pain and suffering damages. The Court properly exercised its discretion in denying the motion, as reflected by Defendants' abandonment of their prior argument.

Defendants' unpreserved post-trial argument for bifurcation also lacks merit. The evidence regarding a decedent's survival damages, including pre-death pain and suffering, had substantial overlap with the evidence on liability, as often is true. The best evidence of Garcia's pain and suffering was the video directly proving it. We must presume that the jury followed the Court's instruction to not be influenced by sympathy. Defendants' speculation regarding any alleged prejudicial effect on the jury's liability verdict finds no support in the record.

**C. The Vicarious Liability Instruction Was Appropriate, and the Damages Are Not Excessive.**

Courts in police misconduct cases routinely give CACI 3703 when the plaintiff maintains state law claims against an officer acting within the course and scope of employment with the municipality. [*See* Dkt. 146-2-12 (providing eleven examples of CACI 3703 given in similar recent cases)]. Excluding this jury instruction would have misled the jury into believing that Silva may be personally responsible for paying any damages award and would have confused the jury as to why the City of Tustin was a named defendant. There is no evidence in the record that this standard instruction influenced damages, which the jury was properly instructed it must award based on the trial evidence.

Unless a damages award "is grossly excessive or monstrous, clearly not

supported by the evidence, or based only on speculation or guesswork," the jury's verdict must be upheld. *Harper*, 533 F.3d at 1028 (rejecting similar argument that several plaintiffs' identical damages awards warranted reversal). "Whether due to inflation or changing attitudes toward certain types of official misconduct, a damages award based on emotional distress can be substantial if a plaintiff presents sufficient evidence to support it." *Bell v. William*s, 108 F. 4th 809, 832 (9th Cir. 2024). The court's power to curtail excessive damages exists only when the facts are such where the excess appears as a matter of law. *Wright v. City of Los Angeles*, 219 Cal. App. 3d 318, 354 (1990). The mere fact that the judgment is large does not validate the losing party's claim that the verdict is the result of passion or prejudice of the jury. *Id*. It is only in a case where the damages award is so disproportionate to the injuries suffered that the result reached may be said to shock the conscience, that the court will step in and reverse a judgment because of greatly excessive damages. *Id.* If the jury's verdict is supported by substantial evidence, it must be upheld. *Id.*; *see Valenzuela v. City of Anaheim*, 6 F.4th 1098, 1103 (9th Cir. 2021) (rejecting defendants' contention that the damages were too speculative, holding that it is "better for juries to decide whether a plaintiff has received sufficient compensation."). The jury was correctly instructed that there is no fixed standard for deciding the amount of noneconomic damages to be awarded. [Dkt. 155, J.I. 31]. The Court instructed the jury, consistent with the model instructions, that the "award must be based upon evidence and not upon speculation, guesswork or conjecture," and we presume that the jury followed this instruction. *Id*.

There is no evidence that the jury's damages award was "based on passion, prejudice, or to punish" and no indication that the award was the result of any so-called "attorney misconduct." [Mot. at 23:14-15]. Defendants now take issue with Plaintiffs' counsels' analogy of human life to a $50 million painting during closing argument, but Defendants made no objection at trial, waiving this argument. [Mot. at 23:14; 6:RT:37]. Contrary to Defendants' Motion, Plaintiffs' counsel Arias did not urge the jury to award large damages to "send a message"—rather, he simply

questioned what the message would be if the jury returned a defense verdict, and he agreed with the wrongful death damages amounts suggested by the Garcia Plaintiffs' counsel. [6:RT:50, 52]. The Court sustained defense counsel's objections to Arias' "message" comments in the presence of the jury, and Defendants did not request any further admonition or for these comments to be struck. *Id*. Rather than double down on the painting analogy or reference to "the message" in his rebuttal argument, Plaintiffs' counsel simply told the jurors it was left to them what damages they thought were fair. [6:RT:95].

Evidence at trial supports the jury's award of $10 million in survival damages, including video of Garcia being handcuffed after the shooting while bleeding out on the pavement, writhing in excruciating pain, and exclaiming that he was dying, as well as video of Garcia alive in the ambulance after the shooting. [6:RT:93]. Plaintiffs did not play these videos to appeal to the jury's sympathy; Plaintiffs presented this as relevant evidence of the "nature and extent of [Garcia's] injuries" and the "mental, physical, and emotional pain and suffering experienced prior to [Garcia's] death." [Dkt. 155, J.I. 31]. The survival damages are also supported by the autopsy report that was admitted into evidence, which describes Garcia's emergency surgery, internal bleeding, and damage to his lungs, diaphragm, and liver.

Plaintiffs' testimonies and photographs with Garcia support the wrongful-death damages awards, which were significantly less than the $5—$8 million suggested by Plaintiffs' counsel. [3:RT:243-48; 6:RT:41]. Plaintiff Emily Garcia testified that she lived with her father for thirteen "unforgettable" years she deeply cherished. [3:RT:242]. Emily and her sister, Plaintiff C.G., experienced many activities and adventures with their father, who always made them feel loved and safe. [3:RT:245-47]. The relationship continued with frequent visits, where Garcia encouraged Emily and C.G. to study and follow their dreams. [3:RT:248-251, 254; 4:RT:29, 31, 34]. Emily and C.G. will never have their father—their biggest cheerleader—at their graduations, weddings, or other milestones. [3:RT:253; 4:RT:35].

PLAINTIFFS' JOINT OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW AND NEW TRIAL

Plaintiff Wendy Galicia testified she loved her husband until the day he died, she clung to the memories she had with him, and her husband loved her and his son, despite everything. [4:RT:63, 66, 71-72]. Plaintiff Kevin Galicia also provided heartfelt testimony, during which he shared with the jury how much he loved his father and cherished the little memories of him, how it was his dream to spend time with his father in the future and grow to be a successful musician just to have his father in the crowd. [4:RT:97, 98, 100-02].

Where, as here, "the evidence is sufficient to support even a high award, there is no need to compare cases." *Bell v. Williams*, 108 F.4th 809, 832 (9th Cir. 2024). However, verdicts in similar cases also support the jury's award of $5 million for Garcia's pre-death pain and suffering, $5 million for Garcia's loss of life, and $7 million in wrongful death damages shared between the four Plaintiffs. *Soto v. BorgWarner Morse TEC, Inc.*, 239 Cal. App. 4th 165, 199 (2015) (holding that a court may "consider amounts awarded in similar cases").

- In the 2025 police shooting case *Lewis v. County of Kern*, No. 1:21-cv-00378-KES-CBD, the jury awarded $3.5 million in wrongful death damages to each of the seven children of the decedent ($24.5 million total—far more than the instant case) and $5 million for the decedent's loss of life. (Masongsong Decl., "Ex. L").

- In *Murillo v. City of Los Angeles*, No. 21-cv-08738-FMO-AGR, the jury awarded $12 million to one plaintiff for the loss of her adult son and $6.5 million for the decedent's pre-death pain and suffering, even where the medical examiner testified that the decedent died within minutes of being shot by police. (Masongsong Decl., "Ex. M," ¶14).

- In the police shooting case *Archibald v. County of San Bernardino*, No.: 5:16-cv-01128-AB-SP, the jury awarded the decedent's parents $8.5 million for the loss of their adult son and $7 million for the decedent's pre-death pain and suffering and loss of life, even when

presented with evidence that the decedent was mentally ill and living in a motel. (Masongsong Decl., "Ex. N," ¶15).

- In *Najera v. Ponder*, No. 18-cv-00762-DMG-SP, the jury awarded $10 million in survival damages, even where the decedent did not survive for a significant period of time after the officer-involved-shooting, and he was a 32-year-old semi-homeless laborer. (Masongsong Decl., "Ex. O," ¶16).
- In *Valenzuela v. City of Anaheim*[4], No. 17-cv-00278-CJC-DFM, the jury awarded $3.6 million in wrongful death damages to the parents of the decedent and $6 million for the decedent's pre-death pain and suffering. (Masongsong Decl., "Ex. P").
- In *Zelaya v. City of Los Angeles*, No. 20-cv-08382-ODW, the jury awarded $6 million for the decedent's pre-death pain and suffering and $1.5 million in wrongful death damages to the adult daughter of the decedent, who had not seen him in over ten years. (Masongsong Decl., "Ex. Q," ¶18)
- In *Alves v. Riverside County, et al.*, No. 5:19-CV-02083-JGB, the jury awarded $7.5 million in wrongful death damages entirely to the decedent's one sister. (Masongsong Decl. "Ex. R").
- In the police shooting case *R.S. v. City of Long Beach*, No. 11-cv-00536-AG-RNB, the jury awarded $3.5 million in wrongful death damages to the decedent's child. (Masongsong Decl. "Ex. S").
- In the police shooting case *Dajyne G., et al. v. Culver City*, No. 10-cv-09497-MWF-MAN, the jury awarded $2 million in wrongful death damages to each of the decedent's four children ($8 million total). (Masongsong Decl. "Ex. T").

[4] Although *Valenzuela* and *Zelaya* involved prolonged restraint, the survival damages in those cases were higher than in the instant case.

PLAINTIFFS' JOINT OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW AND NEW TRIAL

- In *L.D. v. City of Los Angeles*, No. 2:16-cv-04626-PSG-SK, the jury awarded $2 million in wrongful death damages to the decedent's daughter, who was not born when her father was shot by police. (Masongsong Decl. "Ex. U").

Based on the substantial evidence presented at trial and these comparable awards, this Court should not disturb the jury's verdict and damages awards.

## IV.   CONCLUSION

For each of the foregoing reasons, this Court should deny Defendants' Motion in full.

DATED: July 1, 2026            LAW OFFICES OF DALE K. GALIPO
                               CARRILLO LAW FIRM, LLP

                        By:   */s/ Renee V. Masongsong*
                              Dale K. Galipo
                              Renee V. Masongsong
                              Michael S. Carrillo
                              Attorneys for Garcia Plaintiffs


DATED: July 1, 2026            LAW OFFICE OF JESUS EDUARDO
                               ARIAS, APC

                        By:   */s/ Jesus Eduardo Arias*
                              Jesus Eduardo Arias
                              Attorney for Galicia Plaintiffs

PLAINTIFFS' JOINT OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW AND NEW TRIAL

## **L.R. 11-6.2. CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for the Garcia Plaintiffs, certifies that this brief contains 6,833 words (excluding the caption page, tables, signature blocks, and certificate of compliance), which complies with the word limit of L.R. 11-6.1.

DATED: July 1, 2026                         LAW OFFICES OF DALE K. GALIPO

                                       By:   */s/ Renee V. Masongsong*
                                             Renee V. Masongsong
                                             Attorney for Garcia Plaintiffs

PLAINTIFFS' JOINT OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW AND NEW TRIAL