# EXHIBIT I

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

AUG 8 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| EMILY GARCIA; C.G., by and through her guardian ad litem, Rosalia Becerra,<br><br>        Plaintiffs - Appellants,<br><br>   v.<br><br>CITY OF TUSTIN; ESTELA SILVA,<br><br>        Defendants - Appellees. | No. 24-2224<br><br>D.C. No.<br>8:22-cv-00131-SPG-KES<br><br>MEMORANDUM[*] |
| WENDY LORENA GALICIA RAMIREZ; KEVIN JOSUE GALICIA RAMIREZ,<br><br>        Plaintiffs - Appellants,<br><br>   v.<br><br>CITY OF TUSTIN; ESTELA SILVA,<br><br>        Defendants - Appellees. | No. 24-2259<br><br>D.C. No.<br>8:22-cv-00131-SPG-KES |

Appeal from the United States District Court
for the Central District of California
Sherilyn Peace Garnett, District Judge, Presiding

Argued and Submitted January 17, 2025

---

[*]      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Pasadena, California

Before: TALLMAN, FRIEDLAND, and BENNETT, Circuit Judges.
Partial Dissent by Judge BENNETT.

On August 9, 2021, Luis Garcia was shot and killed by Officer Estela Silva of the Tustin Police Department. Garcia's family members[1] sued Officer Silva and the City of Tustin, alleging excessive force under 42 U.S.C. § 1983, unlawful interference with familial relations in violation of the Fourteenth Amendment's substantive due process clause, and violations of California law. The Garcia Plaintiffs appeal the district court's (1) denial of their motion for summary judgment, (2) grant of summary judgment to Defendants on the Fourth Amendment excessive force claim based on qualified immunity, and (3) grant of summary judgment to Defendants on the Fourteenth Amendment claim.[2]

"Though a denial of summary judgment is ordinarily unappealable because it is not a final order, where it is coupled with a grant of summary judgment to the opposing party, both orders are reviewable de novo." *McKeen-Chaplin v. Provident Sav. Bank*, 862 F.3d 847, 850 (9th Cir. 2017) (citation and internal quotation marks

---

[1] Garcia's daughters, Emily Garcia and C.G. ("Garcia Plaintiffs"), and Garcia's wife and son, Wendy Lorena and Kevin Josue Galicia Ramirez ("Galicia Ramirez Plaintiffs") filed separate suits, which were consolidated for argument on appeal.
[2] The Galicia Ramirez Plaintiffs appeal only the latter two rulings because they opposed Defendants' motion for summary judgment but did not cross-move for summary judgment. Neither the Garcia Plaintiffs nor the Galicia Ramirez Plaintiffs appeal the district court's grant of summary judgment to Defendants on the Fourth Amendment claim for denial of medical care or on the *Monell* claim.

omitted). We have jurisdiction under 28 U.S.C. § 1291. We reverse the grant of summary judgment to Defendants on the Fourth Amendment excessive force claim, affirm the grant of summary judgment to Defendants on the Fourteenth Amendment claim, and affirm the denial of the Garcia Plaintiffs' motion for summary judgment.

1.     The district court erred in granting summary judgment to Defendants on the Fourth Amendment excessive force claim based on qualified immunity because disputed facts remain that preclude immunity at this stage in the litigation. On the first prong of the qualified immunity analysis, the district court concluded that triable issues of material fact remained as to whether Officer Silva used unreasonable force in violation of the Fourth Amendment. The district court properly held that, viewing the evidence in the light most favorable to Plaintiffs, a reasonable jury could find that Silva's use of deadly force violated the Fourth Amendment.

Whether our precedent "clearly established" that using lethal force under these circumstances was unlawful depends upon how the jury resolves the disputed issues of material fact.[3] *See Longoria v. Pinal County*, 873 F.3d 699, 710–11 (9th

---

[3] The dissent oversteps our authority by declaring that the body-worn camera footage shows that Garcia's movements were objectively threatening. Dissent at 4. We cannot make that determination because, as the district court properly ruled, whether a reasonable officer confronted with the same knowledge, circumstances, and facts as Officer Silva would have considered Garcia an immediate threat is a triable issue of material fact.

Cir. 2017) (citations omitted).  Much like the defendant officer's credibility in *Longoria*, here the disputed material facts identified by the district court[4] are solely within the province of the jury.[5]  *See id.*; *see also Est. of Lopez v. Gelhaus*, 871 F.3d 998, 1021–22 (9th Cir. 2017) (holding that a jury must determine the facts relevant to qualified immunity: whether the officer could have reasonably perceived the decedent turning while holding a toy AK-47 to pose an imminent threat).  If a jury concludes that Garcia did not pose an immediate threat of death or serious bodily harm, Ninth Circuit precedent has clearly established that using lethal force would be unlawful.  Alternatively, a reasonable jury could find that any reasonable officer would have believed Garcia posed an immediate threat, so Officer Silva's use of lethal force was lawful and no constitutional violation occurred.  "[B]ecause there is a material issue of fact as to whether [Officer Silva] violated [Garcia]'s clearly established constitutional right," we hold that granting qualified immunity here was

---

[4] Material facts at issue include (1) whether Garcia's wooden pole qualifies as a deadly weapon; (2) whether Garcia was actively "advancing" or "lunging at" Officer Silva with the pole raised when he was shot or whether the Taser caused him to move involuntarily; and (3) whether Garcia was resisting arrest or attempting to flee when, after being tased and shot once, he moved away from Officers Silva and Yuhas.

[5] The dissent suggests that *Longoria*'s reasoning was limited to factual disputes involving an officer's credibility in light of conflicting evidence.  Dissent at 5.  But credibility determinations are not the only functions reserved for a jury.  So too must a jury, rather than a judge, weigh the evidence and draw legitimate inferences from the facts.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

24-2224

improvident at the summary judgment stage.[6] *See Longoria*, 873 F.3d 699 at 711. Because the district court declined to exercise supplemental jurisdiction over Plaintiffs' state law claims based on its grant of summary judgment to Defendants on Plaintiffs' federal claims, its dismissal of those claims is also reversed. *See Brodheim v. Cry*, 584 F.3d 1262, 1273 (9th Cir. 2009).

2.      The district court did not err in granting summary judgment to Defendants on the Fourteenth Amendment familial association claim.  Given that the situation here rapidly escalated over less than a minute and a half, the district court correctly applied the "purpose to harm" standard.  *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010) (citing *Porter v. Osborn*, 546 F.3d 1131, 1140 (9th Cir. 2008)).  Though the Garcia Plaintiffs suggest that Officer Silva could have used deadly force against Garcia "to 'teach him a lesson' or to retaliate against him for not immediately complying with commands," nothing in the record supports the claim that Officer Silva acted with any purpose besides her subjective belief that she was defending herself and other officers.

---

[6] Although qualified immunity is unavailable at this stage, if Defendants raise qualified immunity as a defense at trial, and the jury finds that the Defendants violated Garcia's constitutional rights, on a Federal Rule of Civil Procedure 50(b) motion the district court may revisit the "clearly established" analysis if properly preserved after the jury has resolved the disputed factual questions. *See Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1083 (9th Cir. 2009).  Doing so may require special interrogatories to the jury and a special verdict form to resolve the relevant disputed material facts. *See Morales v. Fry*, 873 F.3d 817, 821–24 (9th Cir. 2017); *see also* Ninth Circuit Model Civil Jury Instruction 9.34 (2025).

3.     We affirm the denial of the Garcia Plaintiffs' motion for summary judgment for the same reason that we reverse the grant of summary judgment to Defendants.  Summary judgment is only proper where no triable issues of material fact persist, and the movant has demonstrated they are entitled to judgment as a matter of law. *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (per curiam) (quoting Fed. R. Civ. P. 56(a)).  The Garcia Plaintiffs have failed to meet that standard.

In summary, we reverse the district court's grant of summary judgment to Defendants on the Fourth Amendment excessive force claim and its decision to decline supplemental jurisdiction over the state law claims, but we affirm the district court's grant of summary judgment to Defendants on the Fourteenth Amendment claim and its denial of the Garcia Plaintiffs' motion for summary judgment.  We remand this case for a trial to resolve the material disputed facts.

Costs are awarded to the Garcia Plaintiffs and the Galicia Ramirez Plaintiffs.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

FILED

*Garcia v. City of Tustin*, Nos. 24-2224, 24-2259

AUG 8 2025

BENNETT, Circuit Judge, dissenting in part:

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

Because I would affirm the district court's grant of summary judgment to Defendants on the Fourth Amendment excessive force claim based on qualified immunity, I respectfully dissent in part.

Even assuming Officer Estela Silva's use of deadly force against Luis Garcia was excessive under the Fourth Amendment, I believe that her conduct was not obviously unlawful and did not violate clearly established law. To overcome the defense of qualified immunity, plaintiffs must show "(1) [the defendant officer] violated . . . [a] constitutional right, and (2) the unlawfulness of [the officer's] conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). While "there can be the rare 'obvious case,' where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances," *id.* at 64 (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (per curiam)), meeting the second prong usually requires "controlling authority or a robust consensus of cases of persuasive authority," *id.* at 63 (internal quotation marks omitted) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741–42 (2011)).

No party disputes the authenticity or accuracy of the body-worn camera footage available in this case, so we must "view[] the facts in the light depicted by

the videotape." *Scott v. Harris*, 550 U.S. 372, 381 (2007). As the district court noted, the footage does not capture "the intent, if any, behind [Garcia's] actions," but the video does capture the actions themselves—namely, Garcia's movements with the pole he was holding as he emerged from a hedge.

Even Plaintiffs' version of the facts, based on what was captured on video, establishes that Garcia was holding vertically a nearly five-foot-long pole, extending from his knee to above his head, and was standing within two to three feet of Officer Silva before she shot him. And Plaintiffs' version of the facts, based on the video evidence, establishes that Garcia was still holding the pole, ten feet away from another officer but with Garcia turning unknowingly in that officer's direction, when Officer Silva shot Garcia again.

As the district court concluded, these facts fall short of presenting an "obvious" violation of the "general constitutional rule" that "[d]eadly force is not justified '[w]here the suspect poses no immediate threat to the officer and no threat to others.'" *Est. of Aguirre v. County of Riverside*, 29 F.4th 624, 629 (9th Cir. 2022) (second alteration in original) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002); *Tennessee v. Garner*, 471 U.S. 1, 11 (1985)).

Nor did existing precedent clearly establish that Officer Silva's use of force was unconstitutional. While we "do[] not require a case directly on point," "existing precedent must have placed the . . . constitutional question beyond debate." *Rivas-*

2

*Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (per curiam) (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017) (per curiam)).  In other words, the law must have been "sufficiently clear that every reasonable official would have understood that what [s]he is doing violates that right," *id.* (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam)), had she possessed "the perspective and . . . the knowledge of the defendant officer," *Kingsley v. Hendrickson*, 576 U.S. 389, 399 (2015).  No existing precedent would have put every reasonable official in Officer Silva's position on notice that she would violate the Fourth Amendment by using deadly force against an individual maneuvering a pole, vertically extended above his head, as he stood within striking distance of herself and then approached another officer, ten feet away.[1]

The majority posits that a reasonable jury could conclude that Garcia posed no immediate threat to the officers, thereby precluding summary judgment based on qualified immunity.  Maj. at 3.  Even if triable issues of material fact remain at prong

---

[1] Plaintiffs contend that the district court, in comparing this case to existing precedent, improperly resolved in Defendants' favor factual disputes over whether Garcia was armed with a weapon.  We have recognized that "[i]f the person is armed—or *reasonably suspected* of being armed—a furtive movement, harrowing gesture, or serious verbal threat might create an immediate threat" that justifies the use of deadly force.  *George v. Morris*, 736 F.3d 829, 838 (9th Cir. 2013) (emphasis added).  It was permissible for the district court to consider that Officer Silva reasonably suspected that Garcia was "armed" based on the uncontroverted video evidence, while still resolving in Plaintiffs' favor that Garcia did not intend to use the pole as a weapon.

one, *see* Maj. 3 n.3, 4 n.4, prong two asks whether "the facts as alleged could support a reasonable belief that the conduct in question conformed to the established law," *Easley v. City of Riverside*, 890 F.3d 851, 856 (9th Cir. 2018) (quoting *Green v. City & County of San Francisco*, 751 F.3d 1039, 1052 (9th Cir. 2014)); *see also Act Up!/Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir. 1993) ("[T]he determination whether th[e] facts support an objective belief that probable cause . . . existed is ordinarily a question for the court. It is not in itself a factual issue that can preclude summary judgment."). In other words, "[w]hile the constitutional violation prong concerns the reasonableness of the officer's *mistake of fact*, the clearly established prong concerns the reasonableness of the officer's *mistake of law*." *Torres v. City of Madera*, 648 F.3d 1119, 1127 (9th Cir. 2011). Material facts concerning Garcia's movements of the pole, including its height and distance in relation to the officers, are captured by the video evidence and undisputed by Plaintiffs. These facts alone support an objectively reasonable belief that deadly force was lawful. That resolves the qualified immunity question here.[2]

---

[2] Though I believe that Officer Silva is entitled to qualified immunity based on the above facts, I also note that Officer Silva had recognized Garcia from three recent prior encounters. Two of those encounters resulted in arrests of Garcia—one on a felony warrant for assault with a deadly weapon and the other for an alleged robbery during which the victim was reportedly knocked unconscious. Knowledge of alleged prior misconduct alone cannot justify the use of deadly force. But when evaluating whether a defendant officer is entitled to qualified immunity, we consider "the facts that were knowable to the defendant officer[]." *White*, 580 U.S. at 77

4

The majority cites *Longoria v. Pinal County*, 873 F.3d 699 (9th Cir. 2017), for the proposition that factual disputes at the first prong of the qualified immunity analysis can preclude summary judgment at the second prong.  Maj. at 3.  But *Longoria* turned on whether, as the defendant officer claimed, Longoria had "threatened him or his fellow officers with a 'shooter's stance'" immediately before the defendant officer fired.  873 F.3d at 705.  We held that it was the province of a jury to "determine [the defendant officer]'s credibility in light of conflicting accounts from his partner, other officers, Longoria's expert, and the videos in real-time," *id.* at 710—videos in which "the moment [the defendant officer] describe[d] as a 'shooter's stance' is not perceptible," *id.* at 706; *see also Est. of Lopez v. Gelhaus*, 871 F.3d 998, 1009 (9th Cir. 2017) (affirming denial of summary judgment when the "record furnishe[d] abundant grounds for a jury to reasonably question [the defendant officer]'s credibility and accuracy").  By contrast, that Garcia emerged from a hedge holding vertically a nearly five-foot pole that extended above his head, within two to three feet of Officer Silva, immediately before she fired, is established by the video evidence and uncontested by the parties.

Only an unreasonable belief that her conduct was lawful would preclude summary judgment in Officer Silva's favor at prong two.  "Qualified immunity gives

---

(citing *Kingsley*, 576 U.S. at 399).  And here, that undisputed knowledge included two recent arrests for alleged assaultive felony behavior by Garcia.

5

government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (internal quotation marks omitted) (quoting *al-Kidd*, 563 U.S. at 743).  Because I do not believe Officer Silva's split-second resort to deadly force under the circumstances captured by the uncontroverted video evidence can be described as "plainly incompetent" or "knowingly violat[ing] the law," I would affirm the district court's grant of qualified immunity.  Thus, I respectfully dissent in part.