Bruce D. Praet, SBN 119430
**JONES MAYER**
3777 North Harbor Boulevard
Fullerton, CA  92835
Telephone: (714) 446-1400
Facsimile: (714) 446-1448
bpraet@aol.com

Attorney for Defendants

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMILY GARCIA and C.G., by and through her guardian ad litem, Rosala Becerra, individually and as successors-in-interest; WENDY LOREN GALICIA RAMIREZ, Individually and as Successor in Interest (Decedent's Wife) and KEVIN JOSUE GALICIA RAMIREZ, Individually and as Successor in Interest (Decedent's Son),<br><br>  Plaintiffs,<br><br>  v.<br><br>CITY OF TUSTIN, ESTELLA SILVA and Does 1 through 10, Inclusive,<br><br>  Defendants. | Case No: 8:22-cv-00131- SPG-KES<br><br>**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION FOR JUDGMENT AS A MATTER OF LAW AND NEW TRIAL**<br><br><br>**DATE: July 29, 2026**<br>**TIME: 1:30 p.m.**<br>**COURTROOM: 5C** |

-1-

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR JUDGMENT AS A MATTER OF LAW AND NEW TRIAL**

# TABLE OF CONTENTS

**Pages**

1.   PREFATORY STATEMENT..................................................................................... 1

2.   OFFICER SILVA CANNOT BE DENIED QUALIFIED IMMUNITY ................... 2

3.   NONE OF PLAINTIFFS' CLAIMS HAVE MERIT ...................................... 4

    A.   The Force Used Was Reasonable ................................................. 4

    B.   Plaintiffs' Bane Act Remains Unsupported...................................... 5

    C.   Plaintiffs' Battery Claim Continues to Fail ..................................... 5

    D.   Officer Silva Violated No Established Tactical Duty and Plaintiffs Completely Ignore Garcia's Comparative Fault. .............................. 6

4.   DEFENDANTS ARE ENTITLED TO A NEW TRIAL ............................... 7

    A.   The Imbalance of Peremptory Challenges Was Prejudicial .......... 7

    B.   The Denial of Bifurcation Was Unduly Prejudicial......................... 8

    C.   The Vicarious Liability Instruction Resulted in an Excessive Damage Award…………………………………………………………………9

5.   CONCLUSION ...................................................................................... 9

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR JUDGMENT AS A MATTER OF LAW AND NEW TRIAL**

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*George v. Long Beach,*
  *973 F2d 706 (9th Cir. 1992)* .................................................................................6

*George v. Morris,*
  *736 F3d 829 (9th Cir. 2013)* .................................................................................4

*Hogan v. Carter,*
  *85 F3d 1113 (11th Cir. 1996)* ...............................................................................3

*Huizar v. Anaheim,*
  *840 F3d 592 (9th Cir. 2016)* .................................................................................8

*Monzon v. Murrieta,*
  *978 F3d 1150 (9th Cir. 2020)* ...............................................................................2

*Mullenix v. Luna,*
  *136 S.Ct. 305 (2015)* ............................................................................................3

*Napouk v. L.V. Metro Police,*
  *123 F4th 906 (9th Cir. 2024)* ...............................................................................2

*Newmaker v. Fortuna,*
  *842 F3d 1108 (9th Cir. 2016)* ...............................................................................3

*Plumhoff v. Rickard,*
  *572 U.S. 765 (2014)* ............................................................................................6

*San Francisco v. Sheehan,*
  *135 S.Ct. 1765 (2015)* ..........................................................................................4

*Scott v. Henrich,*
  *39 F3d 912 (9th Cir. 1994)* ...................................................................................6

*Tortu v. L.V. Metro Police,*
  *556 F3d 1075 (9th Cir. 2009)* ...............................................................................2

*Wilson v. Layne,*
  *526 U.S. 603 (1999)* ............................................................................................3

*Zorn v. Linton,*
  *146 S.Ct. 926 (2026)* ............................................................................................3

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR JUDGMENT AS A MATTER OF LAW AND NEW TRIAL**

JONES MAYER LAW

**California Cases**

*Villalobos v. Santa Maria,*
    85 Cal.App. 5th 383 (2022) ....................................................................................6

**California Statutes**

Bane Act ..............................................................................................................5

**Other Authorities**

Fourth Amendment .......................................................................................... 2, 5, 6

Rule 42(b) ............................................................................................................8

Rule 50(a) ............................................................................................................2

Rule 59 .................................................................................................................7

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR JUDGMENT
AS A MATTER OF LAW AND NEW TRIAL**



## 1.    PREFATORY STATEMENT.

To Plaintiffs' credit, they seemingly figured out a way to salvage this otherwise unjust, rogue verdict – simply view only their evidence with the 20/20 vision of hindsight and to the total exclusion of the totality of the circumstances actually facing Officer Silva. Then, just ignore all controlling law and voila, the verdict stands.  Fortunately, however, our justice system does not work that way and instead requires a fair and impartial view of all of the evidence guided by the controlling law.

Without regurgitating Plaintiffs' myopic account of the evidence [Opp:4-5], it quickly becomes apparent that it completely omits virtually all of the evidence encompassing the "totality of the circumstances" necessarily considered when determining the objective reasonableness of Officer Silva's split-second decision to defend herself from the undeniably imminent threat posed by Garcia as he advanced to within 2-3 feet of the officer with a five foot pole raised above his head.  Plaintiffs' version also conveniently ignores the undisputed knowledge of Officer Silva regarding Garcia's prior violent history; methamphetamine use and that he had reportedly knocked a victim unconscious with a wooden stick during a recent robbery.  [See: Doc. 174:8-9].

Although the jury's rationale for their verdict will never be known, the Supreme Court continues to stress that, notwithstanding the possibility that an officer's use of force may be unreasonable, the officer must still be insulated from liability by qualified immunity unless it was "beyond debate" to the officer at the time, even if mistaken, that under the specific facts she was facing, she would be violating some clearly established constitutional right.  As set forth in Defendants' moving papers and below, Officer Silva simply cannot be said to have violated clearly established law when this Court, a Ninth Circuit judge, the California Attorney General and Department of Justice, a highly respected retired police chief and three officers contemporaneously viewing the same facts independently concluded that the use of force was objectively reasonable.

/ / /

/ / /

-1-



**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR JUDGMENT
AS A MATTER OF LAW AND NEW TRIAL**

While qualified immunity alone virtually mandates reversal of the injustice imposed by this verdict, the individual and cumulative effect of the myriad other issues raised by Defendants simply add to the need to set this verdict aside. Having already set forth overwhelming grounds for reversal of this verdict, Defendants will address only Plaintiffs' limited and inadequate opposition.

### 2.   OFFICER SILVA CANNOT BE DENIED QUALIFIED IMMUNITY.

At every phase of litigation since the Ninth Circuit remanded this case, it has been inescapably clear that qualified immunity has been preserved pending the resolution of disputed facts. [Ninth Circuit opinion, Doc. 89, fn.6; Def's Trial Brief, Doc. 99]. Plaintiffs' suggestion that qualified immunity was somehow waived pursuant to *Tortu v. L.V. Metro Police, 556 F3d 1075 (9th Cir. 2009)* is misplaced in that the defendant therein never even raised qualified immunity in a summary judgment motion, much less by way of a Rule 50(a) motion at trial. In the instant case, however, qualified immunity was not only raised on summary judgment, but again at the Pre-trial Conference with underlying factual issues expressly incorporated into the special verdict. It would have been premature for Defendant to raise qualified immunity at the Rule 50(a) motion at the close of Plaintiffs' evidence since the underlying factual issues had not yet been decided. As the Ninth Circuit made clear, qualified immunity could not be determined in this case until factual issues had been decided (i.e. post-verdict).

Plaintiffs' argument that the jury's determination of disputed factual issues somehow bars qualified immunity completely misses the point. Because the qualified immunity analysis is a two-prong process, it doesn't end with a finding that an officer's use of force was unreasonable. The Ninth Circuit has made it clear that "**even if the officer's use of force was not reasonable, the second prong of the qualified immunity analysis would still compel affirmance because the officer did not violate a clearly established right.**" *Monzon v. Murrieta, 978 F3d 1150, 1161-62 (9th Cir. 2020)* Cf. *Napouk v. L.V. Metro Police, 123 F4th 906, 922 (9th Cir. 2024)* – "even if an officer's conduct did violate the Fourth Amendment, they would still be entitled to qualified immunity because they did not



violate clearly established law."

Yet, Plaintiffs completely disregard their burden to "identify a case where an officer acting under similar circumstances. . . was held to have violated the Constitution." *Zorn v. Linton, 146 S.Ct. 926 (2026),* citing *Escondido v. Emmons, 586 U.S. 38, 43 (2019)* (per curiam). Without addressing each case cited by Plaintiffs, not one case comes even remotely close to meeting the "specificity" required by the Supreme Court to meet this stringent standard. *Mullenix v. Luna, 136 S.Ct. 305, 308 (2015)* While Plaintiffs attempt to mislead the Court by suggesting that the "decedent swung a baton at officers" in *Newmaker v. Fortuna, 842 F3d 1108 (9th Cir. 2016),* such was not the case. Instead, qualified immunity was simply denied on summary judgment in the absence of BWC video and conflicting testimony among involved officers. Neither *Newmaker* nor any other case cited by Plaintiffs even remotely establishes "beyond debate" that the split-second decision of Officer Silva to defend herself from the undisputed fact that a known violent subject was advancing on her with a raised five-foot pole violated a clearly established constitutional violation.

As Defendants outlined in their moving papers, Plaintiffs cannot dispute or overcome the Supreme Court's mandate that "**it would be unfair to subject a police officer to money damages**" for making a mistaken or even wrong choice in a real-world tense and uncertain situation when even "**judges disagree on a constitutional question.**" *Wilson v. Layne, 526 U.S. 603, 618 (1999);* Cf. *Hogan v. Carter, 85 F3d 1113, 1116, fn.3 (11th Cir. 1996).* Here, Defendants have already listed and, Plaintiffs cannot dispute, that this Court on summary judgment, Ninth Circuit Judge Nelson, the California Attorney General and DOJ, the highly respected Chief Handy and three other officers actually on scene all independently viewed the same facts as Officer Silva and unequivocally reached the same logical conclusion – i.e. Officer Silva's use of force not only conformed to all "clearly established" rights but was objectively reasonable.

/ / /

/ / /

/ / /

- 3 -



Thus, while this rogue jury may have somehow concluded that the force used was unreasonable, the jury does not dictate "clearly established" law.  As such, both the Supreme Court and the Ninth Circuit have made it clear that Officer Silva remains entitled to qualified immunity notwithstanding the verdict.

### 3.    NONE OF PLAINTIFFS' CLAIMS HAVE MERIT.

Having already addressed the lack of evidence supporting any of Plaintiffs' individual claims, Defendants will only briefly address the minimal arguments made by Plaintiffs as to each claim.

### A.  The Force Used Was Reasonable.

While the evidence on a JMOL must be viewed favorably to the non-moving party, there must still be substantial evidence to support the jury's conclusion.  Here, the only way Plaintiffs attempt to support a finding of excessive force is by necessarily viewing only their evidence in a vacuum to the complete exclusion of all evidence offered by the defense.  By ignoring Officer Silva's undisputed knowledge of Garcia's violent history and drug use as well as the undisputed BWC video evidence that Garcia was not impaired by the Taser as he raised a five-foot pole toward the retreating Officer Silva, Plaintiffs attempt to create the illusion that Officer Silva shot a totally innocent homeless man for no reason.  However, when correctly viewed without the vision of 20/20 hindsight, the totality of the circumstances presented at trial and outlined in Defendants' moving papers supports only one finding – i.e. Officer Silva's use of force was reasonable.

Whether Garcia was actually intending to strike Officer Silva, the Supreme Court has declared that officers must often act quickly (even if mistakenly) when delay might gravely endanger their lives.  *San Francisco v. Sheehan, 135 S.Ct. 1765, 1775 (2015).*  Plaintiffs' unsupported suggestion that Garcia was simply using the pole for recycling is simply not relevant to the determination of an officer's decision to defend themselves from a perceived threat since it is clear that officers are not required to wait until a suspect actually inflicts injury or death.  *Blanford v. Sacramento, 406 Fed 1110 (9th Cir. 2005); George v. Morris, 736 F3d 829, 838 (9th Cir. 2013)* - (furtive movement by an armed suspect may be sufficient

- 4 -

to create immediate threat.)  As noted above, virtually every judge, impartial expert, Attorney General, DOJ and officer on scene viewed the same evidence as this jury, but reached the only logical conclusion that Officer Silva's use of force was reasonable.

**B.   Plaintiffs' Bane Act Remains Unsupported.**

Other than to make the self-serving claim that their Bane Act claim was somehow supported by their myopic view of the evidence, Plaintiffs completely fail to address the fact that it would be impossible for Officer Silva to have "intentionally" or even used "reckless disregard" to violate a constitutional right which was not "clearly established". *Supra.*  [See: Doc. 174:14-15]  Plaintiffs' Bane Act claim becomes even more difficult to sustain in view of the somewhat vague definition of "reckless disregard" ultimately incorporated into the final jury instruction. *Infra.*

**C.   Plaintiffs' Battery Claim Continues to Fail.**

Consistent with their entire opposition, Plaintiffs necessarily view isolated portions of both the evidence and the jury instructions.  For example, Plaintiffs cite only the last line of Jury Instruction CACI 1305B [Doc. 155, p. 33] implying that Officer Silva had a "duty" to reposition to the exclusion of "no duty to retreat".  As noted in Defendants' moving papers, this was similar to counsel's repeated emphasis on out of context language suggesting that the officer's use of force must be "necessary" despite the fact that the actual law (i.e. jury instruction) defines "necessary" as the same Fourth Amendment objective reasonableness of the officer's belief of an imminent threat.  Once again, while the findings of the California Attorney General, DOJ and Ninth Circuit Judge Nelson obviously could not have been shared with the jury, their compelling, independent findings that Officer Silva's use of force was objectively reasonable cannot be ignored.

This same pattern of isolating evidence to create the illusion of substantial evidence to support this verdict is illustrated by Plaintiffs' claim that Officer Silva's second shot (stipulated to be within one second of the first) was somehow unreasonable or excessive.  Yet, the actual undisputed evidence was that Officer Silva's first shot entered Garcia's chest (i.e. he was facing the officer head-on with the pole raised). [5:RT:84] With her second shot



**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR JUDGMENT AS A MATTER OF LAW AND NEW TRIAL**

fired within a second, the Supreme Court has made it clear that "officers need not stop firing until the threat has ended." *Plumhoff v. Rickard, 572 U.S. 765, 777 (2014)* [Fifteen shots over a ten second period are reasonable]

For the same reasons that Plaintiffs' verdict on their Fourth Amendment claim is unsupported, their battery claim cannot survive the objective reasonableness analysis when the "totality of the circumstances" is viewed without the vision of 20/20 hindsight.

**D.   Officer Silva Violated No Established Tactical Duty and Plaintiffs Completely Ignore Garcia's Comparative Fault.**

While the standard CACI 441 jury instruction correctly references consideration of an officer's pre-shooting tactics, Defendants were forced to get both police practices experts to educate the jury regarding as to what would constitute reasonable tactics.  Here, both experts confirmed that officers need only act within a broad range of reasonable tactics.  [5:RT:146][1] This standard of not requiring officers to choose the most reasonable tactics is set forth and consistently reinforced in *Villalobos v. Santa Maria, 85 Cal.App. 5th 383, 390-391 (2022)*, *Lopez v. Los Angeles, 196 Cal.App. 4th 675, 686 (2011)* and even by the Ninth Circuit in *Scott v. Henrich, 39 F3d 912, 915 (9th Cir. 1994)*

Once again, however, the only pre-shooting tactic isolated by Plaintiffs is a misleading suggestion that Office Silva somehow had a (non-existent) duty to retreat.  While the evidence must be viewed favorably to Plaintiffs, it cannot be to the exclusion of all other evidence and must be sufficient to support the verdict.  *George v. Long Beach, 973 F2d 706, 709 (9th Cir. 1992).*  Here, Plaintiffs not only disregard the testimony of their own expert but completely ignore the law in their misguided attempt to suggest that Officer Silva's pre-shooting tactics were somehow negligent.

Even more astounding, however, is the fact that Plaintiffs fail to even address the inescapable fact that all the evidence, no matter how viewed, supports a finding Garcia at

---

[1] Because a relief court reporter transcribed the afternoon session of Plaintiffs' expert, DeFoe, transcripts have not yet been completed despite timely orders by all parties. However, Mr. DeFoe's agreement to this broad standard is referenced at 5:RT:148]

- 6 -

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR JUDGMENT AS A MATTER OF LAW AND NEW TRIAL**



least partially contributed to the circumstances leading up to the use of force. If the jury had fulfilled their duty to follow the law as instructed, it is impossible to conclude that Garcia "used reasonable care to prevent harm to himself" or "did something a reasonably careful person would not do in the same situation." [Jury Instruction No. 29, Doc. 155, p. 36]. Whether it was ingesting methamphetamine, failing to comply with officer's instructions or advancing on Officer Silva with a raised pole, the jury (and Plaintiffs) simply ignored this substantial and undisputed evidence as well as the applicable law.

### 4. DEFENDANTS ARE ENTITLED TO A NEW TRIAL.

Although the aforementioned points and qualified immunity provide more than adequate grounds to reverse this injustice, the more liberally construed standards under Rule 59 further reinforce the need for a new trial.

### A. The Imbalance of Peremptory Challenges Was Prejudicial.

Whether the imbalance of allowing Plaintiffs a total of six peremptory challenges while granting only three to Officer Silva was plain or harmless error, the cumulative effect substantially prejudiced Defendants. Contrary to Plaintiffs' suggestion that Defendants did not object to the imbalanced allocation of peremptory challenges, this issue was timely raised. [1RT:126-127].

Following Plaintiffs' elimination of four prospective jurors by way of peremptory challenges, at least two of the remaining seated jurors, while not subject to dismissal for cause, would have been excused by the defense as peremptory challenges. Unfortunately, however, if Defendant had exercised their third peremptory challenge, juror #18 (a much more plaintiff-oriented juror) would have been seated. Moreover, Plaintiffs would then remain in a position to further stack the jury with additional plaintiff-oriented jurors from the remaining pool without challenge from the defense. Whereas, if the number of peremptory challenges had been equal per side, there is no doubt that a more fair and impartial jury would have been empaneled.

///

///

- 7 -

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR JUDGMENT AS A MATTER OF LAW AND NEW TRIAL**

**B.**  **The Denial of Bifurcation Was Unduly Prejudicial.**

While the decision whether to bifurcate a trial is generally within the Court's discretion under Rule 42(b), the denial of bifurcation can constitute reversible error when inflammatory evidence relevant solely to the issue of damages  introduced during the liability phase of a police excessive force case is so prejudicial that it outweighs the relevance.  *Huizar v. Anaheim, 840 F3d 592, 603 (9th Cir. 2016).*  Where, as here, "graphic and prejudicial evidence has little and in large part no, relevance to the liability issue, district courts should bifurcate." *Id.*

Up to and through the beginning of trial, the parties had stipulated to the showing of the first one minute and fifty seconds of the BWC video of Officer Yuhas, depicting the entire incident through handcuffing of Garcia with Defendants consistently objecting to the display of any video of Garcia's "pain and suffering" thereafter under 402 and 403. [See: Doc. 134, exh. 1]  The extreme prejudice of introducing ten minutes of Garcia's post-shooting "pain and suffering" was also set forth in Defendants' bifurcation motion [Doc. 111] and left unresolved at the pretrial conference.  Yet, on the third day of trial, Plaintiffs suddenly introduced an additional ten minutes of BWC video depicting Garcia bleeding and moaning for the sole purpose of establishing his "pain and suffering".  Following extensive discussion, the Court allowed this highly prejudicial evidence, redacting only Garcia's utterance that he was intending to run.  [3RT:27]

Although not captured on the record, at least two jurors were observed to be visibly upset during this prolonged presentation of the pain and suffering of Garcia on screen.  As set forth in all of Defendants' briefs and on the record, this highly emotional evidence had absolutely zero probative value to the issue of whether Officer Silva's use of force was reasonable under *Graham* or any jury instruction.  By showing this video in trial and again during closing argument, it instead served Plaintiffs' desired purpose of improperly elevating jury sympathy above the threshold issue of the reasonableness of Officer Silva's actions. *Huizar, supra., p. 603.*  At that point, not even the jury instruction precluding consideration of sympathy [Doc. 155, No. 32] could have offset the undue prejudice.

- 8 -

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR JUDGMENT AS A MATTER OF LAW AND NEW TRIAL**

Coincidentally, bifurcation of liability from damages would have further obviated the Court's inclusion of the objected to and prejudicial jury instruction regarding vicarious liability. *Infra.*

### C. The Vicarious Liability Instruction Resulted in an Excessive Damage Award.

Despite Defendants' mid-trial brief objecting to any vicarious liability instruction [Doc. 152] and, without repeating the extensive argument set forth in Defendants' moving papers [Doc. 174:22-25], Plaintiffs only response is to list a number of cases in which the standard CACI 3703 instruction was purportedly given. Although Plaintiffs do not address whether the public entity remained a direct defendant in any of those cases, it is undisputed that the City of Tustin had in fact been dismissed from the instant case prior to trial. Ironically, two of the cases Plaintiffs' list as including a vicarious liability instruction [Doc.. 146] involved trials between current defense counsel and Mr. Galipo's office. Contrary to the City of Tustin having been dismissed in the instant case, both of the employing public entities in *Harris v. City of Tulare* and *Landeros v. Elk Grove* remained as direct defendants. Plaintiffs have not cited and Defendants are unaware of a single case in which the vicarious liability instruction has been given despite the fact that the public entity has been dismissed.

Had liability been bifurcated from damages and the jury not been (erroneously) informed that the City of Tustin would be responsible for any damages, there is little to no doubt that damages, if at all, would have been substantially reduced. Entirely as a result of presenting the jury with a "deep pocket" or collateral source, it is clear that this jury assessed damages out of sympathy and ability to pay rather than any evidence otherwise required, but not presented, to support this nuclear verdict.

### 5. CONCLUSION.

Had there truly been sufficient evidence to find that it was objectively unreasonable for Officer Silva to make the split-second decision to defend herself from the imminent threat independently perceived by this Court, Ninth Circuit Judge Nelson, the California Attorney General and DOJ as well as other officers actually on scene as objectively reasonable, perhaps this verdict could stand. However, for all reasons set forth above and in

- 9 -

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR JUDGMENT AS A MATTER OF LAW AND NEW TRIAL**

Defendants' moving papers, it is respectfully urged that the manifest injustice represented by this rogue verdict and its accompanying nuclear verdict must be reversed.

DATED: July 10, 2026                          JONES MAYER

                                        By: /s/ Bruce D. Praet
                                            Bruce D. Praet,
                                            Attorneys for Defendants

- 10 -

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR JUDGMENT AS A MATTER OF LAW AND NEW TRIAL**