LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Renee V. Masongsong, Esq. (SBN 281819)
rvalentine@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Tel: (818) 347-3333
Fax: (818) 347-4118

LUIS A. CARRILLO, Esq. SBN 70398
MICHAEL S. CARRILLO, Esq. SBN 258878
CARRILLO LAW FIRM, LLP
1499 Huntington Drive, Suite 402
South Pasadena, CA 92030
Tel: (626) 799-9375
Fax: (626) 799-9380

Attorneys for Plaintiffs Emily Garcia and C.G.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMILY GARCIA and C.G., by and through her guardian ad litem, Rosalia Becerra, individually and as successors-in-interest,<br><br>              Plaintiffs,<br><br>      vs.<br><br>CITY OF TUSTIN and ESTELA SILVA,<br><br>              Defendants.<br><br>*Consolidated with*:<br>WENDY GALICIA RAMIREZ, et al.,<br><br>              Plaintiffs,<br><br>      vs.<br><br>CITY OF TUSTIN and ESTELA SILVA,<br><br>              Defendants. | Case No. 8:22-cv-00131-SPG-KES<br><br>*Assigned to*:<br>District Judge Sherilyn Peace Garnett<br>Magistrate Judge Karen E. Scott<br><br>**GARCIA PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO GARCIA PLAINTIFFS' ATTORNEY FEE MOTION**<br><br>[*Filed concurrently with Declarations and Updated Proposed Order*]<br><br>Date:     July 29, 2026<br>Time:     1:30 p.m.<br>Ctrm:     5C, First Street Courthouse |

Case No. 8:22-cv-00131-SPG-KES

GARCIA PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO GARCIA PLAINTIFFS' ATTORNEY FEE MOTION

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES............................................ 1

I.   INTRODUCTION.................................................................... 1

II.  ARGUMENT ...................................................................... 2

  A. Counsel's Requested Hourly Rates Are Reasonable and Are Not Inflated...................................................................2

   1. The Lodestar Method is Used to Determine Statutory Attorneys' Fees in Section 1983 Cases ....................................... 2

   2. Attorney Galipo's Requested Hourly Rate of $1,500 is Reasonable...... 2

   3. Attorney Masongsong's Requested Hourly Rate of $900 is Reasonable. ................................................................... 6

   4. Attorney Carrillo's Requested Hourly Rate of $1,000 is Reasonable.... 8

   5. Attorney Flores' Requested Hourly Rate of $1,000 is Reasonable ........ 8

   6. Legal Assistants' Requested Hourly Rates Are Reasonable ................ 10

  B. The Number of Hours Billed is Reasonable ...............................10

   1. Plaintiffs' Counsels' Time Spent on the Summary Judgment Motion to Ensure Plaintiffs' Case Was Not Disposed Was Reasonable........... 10

   2. Staffing Multiple Attorneys at Depositions Was Essential to the Success of the Case ................................................. 11

   3. Mr. Galipo Did Not Block Bill ................................................. 12

   4. Mr. Galipo Is Entitled to Bill for His Legal Research, Including His Time Spent Reviewing and Analyzing Every Case Cited in the Parties' Appellate Briefs ....................................................... 13

   5. Staffing Multiple Attorneys at Trial Was Essential to Plaintiffs' Success ................................................................ 13

  C. A Multiplier is Warranted ...................................................14

III. CONCLUSION.................................................................... 15

L.R. 11-6.2. CERTIFICATE OF COMPLIANCE ................................................. 17

GARCIA PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO GARCIA PLAINTIFFS'
ATTORNEY FEE MOTION

# TABLE OF AUTHORITIES

## Cases

*Barber v. County of San Bernardino*
  (No. 5:22-cv-00625-KK-DTB) ....................................................................3, 5, 6

*Charlebois v. Angels Baseball*
  993 F. Supp. 2d 1109......................................................................................6, 7

*Chaudhry v. City of Los Angeles*
  751 F.3d 1096 (9th Cir. 2014).............................................................................15

*D'Braunstein v. California Highway Patrol*
  131 F.4th 764 (2025).............................................................................................9

*Dang v. Cross*
  422 F.3d 800 (9th Cir. 2005).................................................................................4

*Downey Cares v. Downey Community Development Com.*
  196 Cal. App. 3d 983 (1987)..............................................................................15

*Flannery v. California Highway Patrol*
  61 Cal. App. 4th 629 (1998)...............................................................................15

*French v. City of Los Angeles*
  Case No. 5:20-cv-00416-JGB ..........................................................................5, 6

*Frias v. City of Los Angeles*
  2020 WL 4001620 (C.D. Cal. Apr. 23, 2020).....................................................12

*Horsford v. Board of Trustees of California State University*
  132 Cal. App. 4th 359 (2005).......................................................................11, 15

*Ketchum v. Moses*
  24 Cal. 4th 1122 (2001)......................................................................................14

*LA Int'l Corp. v. Prestige Brands Holdings, Inc.*
  168 F.4th 608 (9th Cir. 2026)................................................................................4

*LaPeter v. Canada Life Ins. Co. of Am.*
  2009 WL 1313336 (D. Idaho May 11, 2009)........................................................7

*Lewis v. County of Kern*
  (No. 1:21-cv-00378-KES-CBD) .....................................................................3, 5, 6

*Mangold v. California Pub. Utilities Comm'n*
  67 F.3d 1470 (9th Cir. 1995)...............................................................................15

*Moreno v. City of Sacramento*
  534 F.3d 1106 (9th Cir. 2008).............................................................................11

*Parker v. Vulcan Materials Co. Long Term Disability Plan*
  2012 WL 843623 (C.D. Cal. Feb. 16, 2012)......................................................4, 7

GARCIA PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO GARCIA PLAINTIFFS'
ATTORNEY FEE MOTION

*Parsons v. Ryan*
    949 F.3d 443(9th Cir. 2020)................................................................13

*Petit v. City of Los Angeles*
    No. 2:23-cv-00789-ODW-PVC.......................................................5, 6

*Pickett v. Sheridan Health Care Center*
    664 F.3d 632  (7th Cir. 2011)..............................................................2

*Pollinator Stewardship Council v. U.S. EPA*
    2017 WL 3096105 (9th Cir. June 27, 2017) .....................................13

*Prison Legal News v. Schwarzenegger*
    608 F.3d 446 (9th Cir. 2010)................................................................4

*Probe v. State Teachers' Ret. Sys.*
    780 F.2d 776 (9th Cir. 1986), *cert. denied*, 476 U.S. 1170 (1986)..................11

*PSM Holding Corp. v. Nat'l Farm Fin. Corp.*
    743 F. Supp. 2d 1136 (C.D. Cal. 2010)..............................................11

*Quan v. County of Los Angeles*
    No. 2:24-cv-04805-MCS-KS .................................................................5

*Rahman v. FCA US LLC*
    594 F.Supp.3d 1199 (2022)................................................................10

*Rodriguez v. County of Los Angeles*
    96 F. Supp. 3d 1012 (C.D. Cal. 2014)..........................................11, 15

*Rogel v. Lynwood Redevelopment Agency*
    194 Cal. App. 4th 1319 (2011)..............................................................5

*Schmid v. Lovette*
    154 Cal. App. 3d 466 (1984)................................................................5

*Seachris v. Brady-Hamilton Stevedore Co.*
    994 F.3d 1066 (9th Cir. 2021)..............................................................4

*Serrano v. Priest*
    20 Cal. 3d 25 (1977)...........................................................................14

*Trevino v. Gates*
    99 F.3d 911 (9th Cir. 1996)..................................................................4

*Venegas v. Mitchell*
    495 U.S. 82 (1990) ...............................................................................2

*Vilchis v. City of Bakersfield*
    2012 WL 113747 (E.D. Cal. Jan. 13, 2012)........................................9

*Welch v. Metro. Life Ins. Co.*
    480 F.3d 942 (9th Cir. 2007)................................................................4

GARCIA PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO GARCIA PLAINTIFFS'
ATTORNEY FEE MOTION

*Zelaya v. City of Los Angeles*
    Case No. 2:20-cv-08382-ODW ........................................................................6

GARCIA PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO GARCIA PLAINTIFFS'
ATTORNEY FEE MOTION

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

For the reasons set forth below and in the Garcia Plaintiffs' Attorney Fee Motion and accompanying declarations and exhibits thereto [Dkt. 177, 177-1-58], this Court should grant the Garcia Plaintiffs' counsels' requested lodestar, including the Garcia Plaintiffs' counsels' additional time spent in opposing Defendants' post-verdict motion and drafting the instant Reply Brief[1]. The Garcia Plaintiffs' counsels' requested hourly rates are reasonable, and all of the hours billed by the Garcia Plaintiffs' counsels were necessary and related to the successful outcome for the Plaintiffs. [Supplemental Declaration of Dale K. Galipo filed concurrently herewith ("Galipo Supp. Decl.") at ¶ 4]. Plaintiffs' counsels' hours are not duplicative or excessive, and in some instances, Plaintiffs' counsels underbilled for their time spent. [*Id*. at ¶ 5]. This Court should reject Defendants' suggestion that attorneys cannot "increase their hourly rates from one case to the next," which is standard practice supported by caselaw explaining that attorneys are entitled to increase their fees over time with gained experience and accomplishments, as well as increased costs of running a law firm. [Def. Mot. at 1:28].

A multiplier is warranted in this case. Although Defendants attempt to downplay the difficulties involved in this case, it is Defendants who dragged this case out for over four years and forced the case to trial by denying all responsibility and making no settlement offer. At trial, Officer Silva continued to allege that Mr. Garcia had a violent criminal history, attempted to "jab" her with the stick (although this was highly disputed and not supported by the evidence), and posed an immediate threat of death or serious bodily injury to her and Officer Frias while he was under the

---

[1] Concurrent with this filing, the Garcia Plaintiffs are submitting an updated proposed order that includes the Garcia Plaintiffs' counsels' time spent working on this case subsequent to the June 3, 2026 filing of the Garcia Plaintiffs' Attorney Fee Motion at Dkt. 177. Also concurrent with this Reply Brief, the Garcia Plaintiffs are filing supplemental declarations and billing logs of attorneys Renee V. Masongsong and Dale K. Galipo.

influence. Plaintiffs' counsel was able to overcome Defendants' contentions and the negative evidence that came into trial, including Mr. Garcia's criminal history and intoxication, and achieved a substantial verdict for the Plaintiffs, which was supported by substantial evidence at trial. Accordingly, Plaintiffs' counsels are deserving of their full requested lodestar and a multiplier.

## II.   ARGUMENT

### A. Counsel's Requested Hourly Rates Are Reasonable and Are Not Inflated

#### 1.   The Lodestar Method is Used to Determine Statutory Attorneys' Fees in Section 1983 Cases

Despite Defendants' suggestion that Plaintiffs' counsels' statutory attorneys' fees should be reduced to avoid a "windfall," the lodestar method is to be used for attorney fees even where a §1983 case was taken on a contingency basis. [Def. Mot. at 2:12-24]; *Pickett v. Sheridan Health Care Center*, 664 F.3d 632, 640-41 (7th Cir. 2011). The contractual fee that an attorney earns from his client, if any, and the statutory fee that a plaintiff recovers from the losing party, are two distinct entitlements. *Pickett*, 664 F.3d at 640-41; s*ee also Venegas v. Mitchell*, 495 U.S. 82, 110 (1990). In reviewing a fee motion, a district court is tasked only with examining whether the rate and hours requested are reasonable; the total amount that the attorney stands to recover must not influence this determination. *Pickett*, 664 F.3d at 640-41. For purposes of this analysis, the contingency nature of the representation should be considered for the sole limited purpose of determining the risk taken by Plaintiffs' counsel in accepting the case and all the time spent working on the case. Here, Plaintiffs' counsel bore a high risk of not receiving any payment and incurring significant costs in litigating this case for over four years if Defendants prevailed.

#### 2.   Attorney Galipo's Requested Hourly Rate of $1,500 is Reasonable

Mr. Galipo is highly deserving of his requested rate of $1,500/hour for the

reasons set forth in the Garcia Plaintiffs' Attorney Fee Motion (Dkt. 177) and Mr. Galipo's Declaration thereto (Dkt. 177-1). Mr. Galipo has 37 years of experience, the majority of which was spent litigating civil rights cases. Since September 2025 alone, Mr. Galipo has had seven consecutive multi-million verdicts in civil rights cases. [Galipo Supp. Decl. at ¶ 6]. His $27.35 million jury verdict in *Barber v. County of San Bernardino* (No. 5:22-cv-00625-KK-DTB) is believed to be the highest jury verdict in a non-fatal police shooting case out of the Riverside Federal Courthouse. Mr. Galipo also has the highest verdict in a police shooting case, which is a $33.5 million verdict against the County of San Bernardino and its involved deputy for the 2015 shooting of Nathanial Pickett. Mr. Galipo also obtained a $30.5 million verdict in March 2025 in the fatal police shooting case *Lewis v. County of Kern* (No. 1:21-cv-00378-KES-CBD). [Galipo Supp. Decl. at ¶ 7]. Mr. Galipo is a member of the Inner Circle of Advocates, which is limited to one hundred members nationwide, representing some of the top plaintiff's attorneys in the country. Mr. Galipo received the "2020 Consumer Attorney of the Year" from CAOC and the "2020 Trial Lawyer of the Year" award from CAALA. Mr. Galipo has also had over 20 published opinions in civil rights cases, and he has argued numerous appellate cases before the Ninth Circuit. Many consider Mr. Galipo to be the leading civil rights trial attorney in the country. [Galipo Supp. Decl. at ¶ 8].

Defendants' reference to Mr. Galipo's award of $400/hour six years ago in an Eastern District case in Fresno, where attorney rates are significantly lower than rates in the Los Angeles area where the instant case was litigated, is unpersuasive and disingenuous for two reasons. [Def. Mot. at 2:28]. First, subsequent to the $400/hour Eastern District award referenced by Defendants, Mr. Galipo was awarded $1,300/hour two years ago in another Eastern District case. [Declaration of Dale K. Galipo at Dkt. 177-1, ¶ 26 and Exhibits 10 and 11 thereto]. Second, the prevailing market rates in the relevant community in the forum where the district court sits (here, Los Angeles) govern the reasonable hourly rate for computing the lodestar amount,

making Mr. Galipo's hourly rate in Fresno six years ago irrelevant to his instant request of $1,500/hour. *See Dang v. Cross*, 422 F.3d 800, 813 (9th Cir. 2005); *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010). Within *the relevant community*, the Court should take into account the "experience, skill and reputation of the [requesting] attorney." *Dang*, 422 F.3d at 813 (emphasis added); *see Trevino v. Gates*, 99 F.3d 911, 924 (9th Cir. 1996); *see also Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 947 (9th Cir. 2007). As indicated above, even in the Eastern District, where rates are considerably lower than rates in the Central District, Mr. Galipo was awarded $1,300 an hour in 2024. [Declaration of Dale K. Galipo at Dkt. 177-1, ¶ 25 and "Exhibit 10" thereto].

Defendants take issue with Mr. Galipo giving himself an "annual raise." [Def. Mot. at 3:6]. However, "fee awards must be based on *current* rather than merely historical market conditions, and the adjudicator should rely on the most *current* information available." *LA Int'l Corp. v. Prestige Brands Holdings, Inc.*, 168 F.4th 608, 624 (9th Cir. 2026) (emphasis added) (citing *Seachris v. Brady-Hamilton Stevedore Co.*, 994 F.3d 1066, 1077–78 (9th Cir. 2021)). In *Parker v. Vulcan Materials Co. Long Term Disability Plan*, No. EDCV 07-1512 ABC (OPx), 2012 WL 843623, *7 (C.D. Cal. Feb. 16, 2012), a court sitting in the Central District approved an approximate 10 percent increase between 2011 and 2012 rates, acknowledging that "[i]t is common practice for attorneys to periodically increase their rates for various reasons, such as to account for expertise gained over time, or to keep up with the increasing cost of maintaining a practice." Mr. Galipo works solely on a contingency fee basis while maintaining his practice, the costs of which have increased with recent inflation.

Further, Defendants mischaracterize Mr. Galipo's requested increase as 15% by comparing his instant requested rate of $1,500/hour to his award of $1,300 two years ago in an Eastern District case. [Def. Mot. at 3:10-11]. In reality, Mr. Galipo's requested rate of $1,500/hour reflects only a 3.5% yearly increase from his 2024

-4-                                 Case No. 8:22-cv-00131-SPG-KES

award of $1,400 in *French v. City of Los Angeles*. [*See* Declaration of Dale K. Galipo at Dkt. 177-1, ¶¶ 25-26 and Exhibits 9 and 10 thereto].

Defendants describe Mr. Galipo's hourly rate of $1,400 in *French v. City of Los Angeles* as "one time" and "extraordinary." [Def. Mot. at p.3 fn. 1][2]. However, Mr. Galipo currently has four attorney fee motions pending, in addition to the instant case. In the 2025 case *Lewis v. County of Kern* (No. 1:21-cv-00378-KES-CBD), Mr. Galipo is requesting $1,400/hour in the pending attorney fee motion. In the 2026 cases *Petit v. City of Los Angeles* (No. 2:23-cv-00789-ODW-PVC), *Barber v. County of San Bernardino* (No. 5:22-cv-00625-KK-DTB), and *Quan v. County of Los Angeles* (No. 2:24-cv-04805-MCS-KS), Mr. Galipo is requesting $1,500/hour. This hourly rate is in line with the *current* prevailing market rates in Los Angeles. Notably, in the *Petit* case, Defendants City of Los Angeles and its involved officers did not even contest Mr. Galipo's request of $1,500/hour, implying that the rate is reasonable (*see* Dkt. 218 in Case No. 2:23-cv-00789-ODW-PVC). [Galipo Supp. Decl. at ¶ 10].

Finally, despite Defendants' assertion that "the City of Tustin is a relatively small city with a very limited budget," courts are "not permitted to use a public entity's status to negate a lodestar that would otherwise be appropriate." *Rogel v. Lynwood Redevelopment Agency*, 194 Cal. App. 4th 1319, 1331 (2011); *Schmid v. Lovette*, 154 Cal. App. 3d 466, 476 (1984). In their Motion, Defendants conveniently make no mention of any applicable insurance coverage. The City of Tustin is presumably covered by insurance, including an excess insurance carrier, to pay the judgment in this case.

//

---

[2] Defendants assert that the *French* case "involved extremely unique circumstances of establishing liability for an off-duty LAPD officer." While true, it is also true that the off-duty officer defendant's liability was uncontested at trial, whereas the instant case involved years of litigation regarding Officer Silva's liability for shooting Mr. Garcia, whom Defendants contended threatened Officer Silva while under the influence of drugs.

GARCIA PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO GARCIA PLAINTIFFS' ATTORNEY FEE MOTION

### 3. Attorney Masongsong's Requested Hourly Rate of $900 is Reasonable

Defendants suggest that Ms. Masongsong's hourly rate should be "modestly increase[d]" to $650/hour. [Def. Mot. at 4:1-4]. However, this would decrease Ms. Masongsong's most recently awarded rate (which was over two years ago) by $150/hour. "While *past* fee rates may be useful evidence to show a *floor* below which a court's fee calculations should not drop, past fee rates in no way support the conclusion that a court should *reduce* the fees in the present case to the rates awarded in the past. Defendants" logic would produce the absurd result of fee rates flat lining at the rate set by the first court to award fees." *Charlebois*, 993 F. Supp. 2d at 1122.

Ms. Masongsong has previously been awarded $550/hour (2020), $600/hour (2022), $700/hour (2024), and $800/hour (2024)[3] by courts in this district, with each award reflecting her increased experience, skill, and the inflation-adjusted market rate. [Dkt. 177-27 (Declaration of Renee V. Masongsong in Support of Garcia Plaintiffs' Motion for Attorneys' Fees) at ¶¶ 14-17 and Exhibits 2-5 thereto at Dkt. 177-29-32]. In December 2023, Ms. Masongsong requested an hourly rate of $700 in the case *Zelaya v. City of Los Angeles*, Case No. 2:20-cv-08382-ODW. In January 2024, Ms. Masongsong requested an hourly rate of $800 in the case *French v. City of Los Angeles*, Case No. 5:20-cv-00416-JGB. Neither the *Zelaya* court nor the *French* court reduced the hourly rate Ms. Masongsong requested in the attorney fee motions in those cases. [Supplemental Declaration of Renee V. Masongsong ("Masongsong Supp. Decl.") at ¶ 4; *see also* Dkt 177-31, 32]. In addition to her prior attorney fee awards in this district, Ms. Masongsong's requested hourly rate of $900 is supported

---

[3] Although Ms. Masongsong's most recently awarded hourly rate is $800, Ms. Masongsong also has three other pending attorney fee motions, in addition to this case. In the 2025 case *Lewis v. County of Kern*, No. 1:21-cv-00378-KES-CBD, Ms. Masongsong is requesting $850/hour in the pending attorney fee motion. In the 2026 cases *Petit v. City of Los Angeles* (No. 2:23-cv-00789-ODW-PVC) and *Barber v. County of San Bernardino* (No. 5:22-cv-00625-KK-DTB), Ms. Masongsong is requesting $900/hour in those pending attorney fee motions. [Masongsong Supp. Decl. at ¶ 5].

GARCIA PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO GARCIA PLAINTIFFS' ATTORNEY FEE MOTION

by the declaration of renowned civil rights attorney Carol Sobel (Dkt. 177-3 at ¶¶ 33, 39, 43, 46-47) and the declaration of Mr. Galipo (Dkt. 177-1 at ¶ 31). Ms. Masongsong has been practicing law in the civil rights arena for over thirteen (13) years, and she has been influential in several of Mr. Galipo's large verdicts in civil rights cases.

Courts routinely recognize that fee rates increase over time based on a variety of factors. *See Charlebois v. Angels Baseball*, 993 F. Supp. 2d 1109, 1122 (C.D. Cal. May 30, 2012); *Parker*, No. EDCV 07-1512 ABC (OPx), 2012 WL 843623 at *7 ("It is common practice for attorneys to periodically increase their rates for various reasons, such as to account for expertise gained over time . . ."); *LaPeter v. Canada Life Ins. Co. of Am.*, No. CV06–121–S–BLW, 2009 WL 1313336 *3 (D. Idaho May 11, 2009) ("It is typical for rates to increase on a yearly basis and, also, for associates' . . . rates to increase as they gain more experience."). An approximate 6% yearly increase from Ms. Masongsong's 2024 award of $800 to reflect two additional years of experience and market-rate inflation is reasonable. Ms. Masongsong was an integral part of Plaintiffs' team in this case. Ms. Masongsong handled the Garcia Plaintiffs' portions of the Joint MSJ and drafted the Garcia Plaintiffs' Ninth Circuit appellate briefing, which ultimately allowed the case to proceed to trial. Ms. Masongsong also handled expert retention and consultation, conducted both expert and fact depositions, assisted Mr. Galipo with preparation for the MSJ hearing and Ninth Circuit oral argument, argued the MSJ as to the state law claims following the Ninth Circuit reversal, handled all pretrial documents and trial exhibits, and was Mr. Galipo's primary support during the trial. Ms. Masongsong was also the primary attorney who drafted Plaintiffs' Joint opposition to Defendants' post-trial motions, and her participation in trial aided her ability to competently handle said opposition and any anticipated appellate work on this case. [Masongsong Supp. Decl. at ¶ 6].

//

GARCIA PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO GARCIA PLAINTIFFS' ATTORNEY FEE MOTION

#### 4. Attorney Carrillo's Requested Hourly Rate of $1,000 is Reasonable

Contrary to Defendants' beliefs, Attorney Michael Carrillo has extensive experience in civil rights cases and trial experience. Mr. Carrillo has served as lead trial counsel in all cases for the Carrillo Law Firm since 2016, which is why he was named to the Top 100 Lawyer list in the state of California by the Daily Journal. The cases referenced in his Declaration (Dkt. 177-47 at ¶16a.- j.) are not all-inclusive and do not include countless other civil rights cases in which he has served as lead trial counsel. That includes the *I.M.* case which resulted in a historic settlement against the CHP (2023) for the asphyxial death of Edward Bronstein; *Sahagun v. Long Beach Unified School District* (2023), which was another record settlement against a School District for the shooting death of Mona Rodriguez by a security guard; and, recently, *Diaz-Millan v. County of San Bernardino*, which resulted in a $7.99 million settlement against the County for the in-custody death of Jorge Diaz Millan. Those are just small samples of the civil rights cases in which Mr. Carrillo has served as lead trial counsel, in addition to the others referenced previously in his declaration.

As for this trial, while Mr. Carrillo was going through a personal loss on the eve of trial, he meaningfully participated in this trial including by assisting with witness preparation, jury selection, expert witness preparation, and other necessary features for the trial. Mr. Carrillo's involvement in the trial was necessary for this case to be properly prepared given his ample experience in litigating civil rights matters. As a result, the $1,000 per hour sought is fair and reasonable based on his years of experience and his work as lead trial counsel in many other civil rights cases.

#### 5. Attorney Flores' Requested Hourly Rate of $1,000 is Reasonable

Mr. Flores' experience in civil rights and as a litigator justifies his hourly rate of $1,000. Attorney Flores has been an advocate against government abuse since the beginning of his career. As a plaintiffs' land use attorney, he was part of three attorney

GARCIA PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO GARCIA PLAINTIFFS'
ATTORNEY FEE MOTION

firm that represented community groups and advocates against government intrusion on property and community rights. This included flagrant abuse by the Los Angeles Police Department in the planning and construction of one of its police stations. Mr. Flores' efforts to confront this government abuse was featured prominently in the media. *A landmark effort to save forgotten historic sites,* Los Angeles Times, Apr 2, 2007; *Evictions Questioned in Boyle Heights*, Los Angeles Times, March 12, 2005; *see also Shop Won't Have to Pack Its Bags*, Los Angeles Times, Sept. 28, 2006 (detailing litigation against a redevelopment agency).

Mr. Flores continued his litigation career in a Bakersfield firm where he was a primary attorney working on cases resulting in multi-million-dollar settlements against large oil and transportation corporations and utilities. Mr. Flores was also the primary attorney in civil rights cases against the California Highway Patrol and local law enforcement. One of Mr. Flores' civil rights cases was securing a settlement for a young war veteran who was a victim of excessive force by members of the Bakersfield Police Department after the vehicle he and his friends were travelling in was stopped. *Vilchis v. City of Bakersfield*, 2012 WL 113747 (E.D. Cal. Jan. 13, 2012).

At the Carrillo Law Firm, Mr. Flores was the primary attorney in *I.M. v. California Highway Patrol* (2023), in which a $24 million dollar settlement was secured against the CHP. The case involved excessive use of force by CHP officers on a motorist who refused a blood test. The Carrillo Law Firm was recognized by *Daily Journal* by awarding it a Clay Award in 2024 and the firm was a finalist for Street Fighter of the Year in 2024 by Consumer Attorneys of California for the results on the case. Mr. Flores was also the primary attorney in *D'Braunstein v. California Highway Patrol* which resulted in a multi-million-dollar settlement and a published Ninth Circuit decision, *D'Braunstein v. California Highway Patrol,* 131 F.4th 764 (2025). The case involved the denial of medical care for a motorist who had suffered a stroke, and a CHP officer who refused to call for medical care after the motorist displayed

GARCIA PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO GARCIA PLAINTIFFS' ATTORNEY FEE MOTION

objective signs of a medical emergency.

### 6. Legal Assistants' Requested Hourly Rates Are Reasonable

Courts in the Central District routinely approve paralegal rates in the $300 to $400 per hour range for experienced paralegals. In *Rahman v. FCA US LLC* 594 F.Supp.3d 1199 (2022), a 2022 case from the Central District of California, the court found that the requested hourly rates were reasonable where "numerous recent opinions had approved the same or substantially similar rates" for the legal team members. 594 F.Supp.3d 1199 (2022). Given that the Central District of California, particularly the Los Angeles area, typically commands higher legal rates than other California districts due to market conditions, paralegal rates in the $300 to $400 range for experienced paralegals would be consistent with the prevailing market rates in that jurisdiction, especially in complex litigation matters. Here, legal assistants Ms. Gilbert and Mr. Laurel are experienced (as set forth in their declarations filed concurrently with the Garcia Plaintiffs' Attorney Fee Motion) and are requesting only $250/hour, which is reasonable.

### B. The Number of Hours Billed is Reasonable

#### 1. Plaintiffs' Counsels' Time Spent on the Summary Judgment Motion to Ensure Plaintiffs' Case Was Not Disposed Was Reasonable

Plaintiffs disagree with Defendants' characterization of the joint motion for summary judgment ("Joint MSJ") as being more laborious for Defendants. Defense counsel points out that they billed 13.2 hours less than Plaintiffs' counsel for their work on the Joint MSJ, and that it "should have logically taken Plaintiffs' counsel less time than defense counsel." [Def. Mot. at 5:18-25]. Although it is accurate that, as instructed by this Court's Standing Order for Motions for Summary Judgment, Defendants formatted and filed the final Joint MSJ documents after receiving Plaintiffs' portions, the Garcia Plaintiffs' portions of the Joint MSJ were equally voluminous and required significant legal research, writing, analysis of the evidence,

consultation with the Garcia Plaintiffs' police practices expert, and preparation of the Garcia Plaintiffs' separate exhibits. Contrary to Defendants' contention, it is logical that Plaintiffs' counsels would expend more hours than Defendants on the Joint MSJ, where it is Plaintiffs who ran the risk of the Joint MSJ disposing of their entire case and Plaintiffs who bore the burden of identifying prior cases that clearly established the decedent's constitutional right to be free from excessive force under the facts of this case. Further, in addition to opposing Defendants' request for summary judgment and qualified immunity, the Garcia Plaintiffs also moved for summary judgment in their favor within the Joint MSJ, which took additional work.

## 2. Staffing Multiple Attorneys at Depositions Was Essential to the Success of the Case

This Court should reject Defendants' suggestion that Plaintiffs' counsel's hours spent conducting and defending the depositions should be reduced by an arbitrary 50%. [Def. Mot. at 6:17-19]. "Division of responsibility may make it necessary for more than one attorney to attend activities such as depositions . . . Multiple attorneys may be essential for planning strategy, eliciting testimony or evaluating facts or law." *PSM Holding Corp. v. Nat'l Farm Fin. Corp.*, 743 F. Supp. 2d 1136, 1157 (C.D. Cal. 2010). The participation of more than one attorney does not *per se* constitute an unnecessary duplication of effort. *See Probe v. State Teachers' Ret. Sys.*, 780 F.2d 776, 785 (9th Cir. 1986), *cert. denied*, 476 U.S. 1170 (1986). A second attorney may serve as a sounding board or be necessary to assure that valuable testimony is obtained during the limited time allotted for depositions . . . *Rodriguez v. County of Los Angeles*, 96 F. Supp. 3d 1012, 1025 (C.D. Cal. 2014); *see also Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) (noting that some degree of duplication is to be expected as an inherent part of the process and that the "district court may not set the fee based on speculation as to how other firms would have staffed the case"); *Horsford v. Board of Trustees of California State University*, 132 Cal. App. 4th 359, 396 (2005) (trial court's determination that it was unnecessary for

the plaintiff to have three attorneys at trial and two attorneys at depositions reversed).

Mr. Galipo conducted the depositions of Officers Silva and Yuhas, which were the first two depositions conducted in this case. Ms. Masongsong played a significant role in the depositions of Silva and Yuhas by consulting with Mr. Galipo before and during these depositions and preparing and displaying the deposition exhibits. Ms. Masongsong subsequently conducted the depositions of Officers Frias and Babb and defense expert Robert Handy, and her participation in the depositions of Silva and Yuhas was essential to her preparation to conduct the subsequent depositions. Mr. Galipo's preparation for these depositions as lead trial counsel was also crucial to the success of these depositions. Although Defendants assert that Mr. Galipo had deposed Mr. Handy in previous cases, this was the first time that Ms. Masongsong deposed Mr. Handy, and her preparation for Mr. Handy's deposition was reasonable and necessary. [Def. Mot. at 6:13-16].

Ms. Masongsong's participation in the depositions of Plaintiffs Emily Garcia and C.G.—which were defended by Mr. Flores—was also beneficial to the case, where Ms. Masongsong identified specific issues during these depositions to be addressed in a later motion in limine and also later assisted the Garcia Plaintiffs with their trial testimony. Likewise, Mr. Flores' participation in the deposition of Mr. DeFoe—which was defended by Ms. Masongsong—was beneficial to the case.

### 3. Mr. Galipo Did Not Block Bill

As Defendants acknowledge, Mr. Galipo's timesheet included a footnote describing the specific tasks involved in his "trial preparation." [Def. Mot. at 6:26-27]. "Although courts can reduce fees due to block-billing when it hinders their ability to discern the reasonable hours worked, block billing is not per se objectionable." *Frias v. City of Los Angeles*, Case No. CV 16-4626 PSG (SKx), 2020 WL 4001620, at *4 (C.D. Cal. Apr. 23, 2020) (internal citations omitted). Here, Mr. Galipo's "trial preparation," which Defendants identify as "block billing," provide enough clarity for the Court to discern the reasonable hours worked. The nature of trial preparation

generally lends itself to block-billing, and this trial preparation was all performed within a short (10-day) window before the trial started. [Dkt. 177-2]. "Counsel is not required to record in great detail how each minute of [their] time was expended.'" *Pollinator Stewardship Council v. U.S. EPA*, No. 13-72346, 2017 WL 3096105, at *7 (9th Cir. June 27, 2017) (internal quotations and citations omitted). "[A]ttorneys need only keep records in sufficient detail that a neutral judge can make a fair evaluation of the time expended, the nature and need for the service, and the reasonable fees to be allowed." *Parsons v. Ryan*, 949 F.3d 443, 462 (9th Cir. 2020) (internal quotations and citations omitted).

### 4. Mr. Galipo Is Entitled to Bill for His Legal Research, Including His Time Spent Reviewing and Analyzing Every Case Cited in the Parties' Appellate Briefs

This Court should reject Defendants' request to deduct Mr. Galipo's time spent conducting legal research. Although Mr. Galipo is exceptionally skilled, as Defendants note, [Def. Mot. at 7:3-4], it is obviously necessary for Mr. Galipo as lead counsel to stay current on the state of the law and to be prepared to discuss the facts and holdings of specific cases during oral argument. Mr. Galipo handled the MSJ hearing in front of this Court and the oral argument at the Ninth Circuit. To prepare for these oral arguments, it was necessary for Mr. Galipo to read, re-read, and analyze each and every case cited in the Parties' MSJ briefing, the Parties' appellate briefs, and this Court's MSJ order. [Galipo Supp. Decl. at ¶ 9]. This took a considerable amount of time, and Mr. Galipo actually underbilled for his time spent conducting this legal research. This meticulous legal research directly contributed to a successful outcome for all Plaintiffs in this case. [*Id*. at ¶ 5].

### 5. Staffing Multiple Attorneys at Trial Was Essential to Plaintiffs' Success

Defendants do not contest that Mr. Galipo, Ms. Masongsong, "and arguably even Mr. Carrillo" should be permitted to bill for trial for the Garcia Plaintiffs. [Def.

Mot. at 7:12-14]. Mr. Flores was also an integral part of the Garcia Plaintiffs' team. As reflected in Mr. Flores' timesheet and declaration [Dkt. 177-48], Mr. Flores took notes during trial, worked on Plaintiffs' trial brief regarding the stick as physical evidence, and participated in strategy sessions with Plaintiffs' team. Although the trial consisted of roughly six eight-hour days at the courthouse, Mr. Flores billed only 30.5 hours, including for his work on briefing outside of the courthouse.

### C. A Multiplier is Warranted

This Court should apply an upward multiplier of 2.0, or at minimum, a 1.5 multiplier, to the lodestar because the factors identified in *Serrano v. Priest*, 20 Cal. 3d 25, 49 (1977), weigh heavily in Plaintiffs' favor, and the jury returned a verdict in Plaintiffs' favor on their Bane Act claim. As to the first factor—the novelty and difficulty of the questions involved and the skill displayed in presenting them—in this case, "the quality of representation far exceed[ed] the quality of representation that would have been provided by an attorney of comparable skill and experience." *Ketchum v. Moses*, 24 Cal. 4th 1122, 1139 (2001). Mr. Galipo is one of the top one hundred trial lawyers in the nation, and no lawyer has achieved anywhere near as many verdicts and settlements against the police in excessive force cases.

As to the second factor—the extent to which this litigation precluded other employment—this case has been ongoing since 2021, and given that this case involved a Ninth Circuit appeal to allow the case to proceed to trial, it is clear that this case precluded Mr. Galipo and his associates from handling or focusing on other matters.

The third factor—the contingent nature of the fee award—also weighs heavily in Plaintiffs' favor. Applying an upward multiplier to the lodestar "reflect[s] the risk that the attorney will not receive payment if the suit does not succeed." *Id.* at 1138. A number of California cases have relied on the contingent risk factor to apply a lodestar multiplier when there is an applicable statutory fee provision (here, the Bane Act). *See, e.g., Flannery v. California Highway Patrol*, 61 Cal. App. 4th 629, 640-47

(1998); *Downey Cares v. Downey Community Development Com.*, 196 Cal. App. 3d 983, 995-997 (1987). The Ninth Circuit has held that where state law provides a greater award than federal law, the prevailing party is entitled to draw from state law to determine its fee award. *See*, *e.g.*, *Mangold v. California Pub. Utilities Comm'n*, 67 F.3d 1470 (9th Cir. 1995). Because Plaintiffs succeeded "on both federal and state claims that support a fee award, the state-law multiplier is available." *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1106 (9th Cir. 2014) (holding that "[i]f the Estate had prevailed on its § 52.1 claim, [as opposed to just a §1983 claim] it could have received a multiplier of its attorneys' fees to account for the risk of contingent representation."). Additionally, "[r]efusing a multiplier in a civil rights case based only on the source of the fee would 'effectively immunize large or politically powerful defendants' engaging in conduct that harms the public." *Rodriguez*, 96 F. Supp. 3d at 1026 (quoting *Horsford v. Bd. of Trustees of Cal. State Univ.*, 132 Cal. App. 4th 359, 399-401 (2005)).

## III.    CONCLUSION

For each of the foregoing reasons, this Court should award the Garcia Plaintiffs' counsels' full lodestar, including for the Garcia Plaintiffs' counsels' time spent opposing Defendants' post-verdict motion and drafting the instant Reply Brief. The updated table below summarizes the fees requested.

| Attorney/Biller | Yrs. Practice | Rate | Hours | Total |
|---|---|---|---|---|
| Dale K. Galipo | 36 | $1,500 | 579.2 | $868,800 |
| John Fattahi | 20 | $1,115 | 17.5 | $19,512.50 |
| Renee V. Masongsong | 15 | $900 | 503.6 | $453,240 |
| Michael S. Carrillo | 18 | $1,000 | 99.15 | $99,150 |
| J. Miguel Flores | 20 | $1,000 | 63.45 | $63,450 |
| Darci Gilbert | Legal Assist. | $250 | 24.8 | $6,200 |

GARCIA PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO GARCIA PLAINTIFFS' ATTORNEY FEE MOTION

| Alejandro Monguia | Legal Assist. | $250 | 33.6 | $8,400 |
|---|---|---|---|---|
| Santiago Laurel | Legal Assist. | $250 | 33.25 | $8,312.50 |
| **Subtotal**: | | | | $1,527,065 |
| **Total with 2.0 multiplier:** | | | | $3,054,130 |
| **In the alternative, total with 1.5 multiplier:** | | | | $2,290,597.50 |

DATED: July 15, 2026

LAW OFFICES OF DALE K. GALIPO
CARRILLO LAW FIRM, LLP

By: _/s/ Renee V. Masongsong_
Dale K. Galipo
Renee V. Masongsong
Michael S. Carrillo
Attorneys for Garcia Plaintiffs

GARCIA PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO GARCIA PLAINTIFFS' ATTORNEY FEE MOTION

# **L.R. 11-6.2. CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for the Garcia Plaintiffs, certifies that this brief contains 5,177 words (excluding the caption page, signature blocks, and certificate of compliance), which complies with the word limit of L.R. 11-6.2.

DATED: July 15, 2026                    LAW OFFICES OF DALE K. GALIPO

By:  */s/ Renee V. Masongsong*
     Renee V. Masongsong

GARCIA PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO GARCIA PLAINTIFFS' ATTORNEY FEE MOTION